engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent the fact that its lenders informed it that no further funds would be made available to the company outside of a negotiated bankruptcy filing from and to plaintiff and the investing public.

113. The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, concealed and made the misrepresentations of the material facts set forth herein with the intent to induce the plaintiff to rely on such concealment and material misrepresentations.

114. Such material misrepresentations were done knowingly, and without a reasonable basis, for the purpose and effect of concealing the true status of McDermott's financial condition and outlook from plaintiff and the investing public.

115. Plaintiff reasonably relied on the defendants' misrepresentations of material facts in connection with his purchases and retention of McDermott International common stock. Plaintiff, not knowing that adverse material facts had been concealed, relied on the defendants' material misrepresentations both directly to the extent they were personally made to plaintiff and indirectly to the extent they artificially inflated the market price. But for the defendants' concealment of adverse material facts and their material misrepresentations (wrongful conduct),

plaintiff would not have purchased and retained (held) his McDermott International stock.

116.  Plaintiff alleges that he was directly harmed by the actions of the defendants as described herein.  Plaintiff further alleges that the actions of the defendants as described herein did not harm or deplete the assets of the bankruptcy estate.

117.  As a direct and proximate result of the defendants' concealment of adverse material facts and the defendants' misrepresentations of material facts (wrongful conduct), plaintiff suffered damages in connection with his purchases and his retention (holding) of McDermott International common stock in excess of the jurisdictional limits of the Montgomery County, Texas, District Court.

118.  Pursuant to Section 41.003 of the Texas Civil Practice and Remedies Code, plaintiff is entitled to recover exemplary damages in an amount to be determined by the trier of fact.

<div align="center">

**COUNT 2**
**ASSAULT**
**INFLICTION OF BODILY INJURY**
**(State Claim against defendant Sussberg)**

</div>

119.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  As seen herein:

120.  Defendant Sussberg acted willfully.

121.  Defendant Sussberg acted intentionally, knowingly, or recklessly.

122.  Defendant Sussberg made contact with the plaintiff's Person.

123.  Defendant Sussberg intentionally made contact with the plaintiff's Person.

124.  Defendant Sussberg's contact caused bodily injury to the plaintiff.

125.  Plaintiff alleges that he was directly harmed by the actions of defendant Sussberg as described herein.  Plaintiff further alleges that the actions of defendant Sussberg as described herein did not harm or deplete the assets of the McDermott International bankruptcy estate.

**COUNT 3**
**ASSAULT**
**OFFENSIVE PHYSICAL CONTACT**
**(State Claim against defendant Sussberg)**

126.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  As seen herein:

127.  Defendant Sussberg acted willfully.

128.  Defendant Sussberg acted intentionally or knowingly.

129.  Defendant Sussberg made contact with the plaintiff's person.

130.  Defendant Sussberg knew or reasonably should have believed that the plaintiff would regard the contact as offensive or provocative.

131.  Defendant Sussberg's contact caused injury to the plaintiff.

132.  Plaintiff alleges that he was directly harmed by the actions of defendant Sussberg as described herein.  Plaintiff further alleges that the actions of

defendant Sussberg as described herein did not harm or deplete the assets of the McDermott International bankruptcy estate.

## COUNT 4
## ASSAULT
## THREAT OF BODILY INJURY
### (State Claim against defendant Sussberg)

133.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  As seen herein:

134.  Defendant Sussberg acted willfully.

135.  Defendant Sussberg acted intentionally or knowingly.

136.  Defendant Sussberg threatened the plaintiff with imminent bodily injury.

137.  Defendant Sussberg's threat caused injury to the plaintiff.

138.  Plaintiff alleges that he was directly harmed by the actions of defendant Sussberg as described herein.  Plaintiff further alleges that the actions of defendant Sussberg as described herein did not harm or deplete the assets of the McDermott International bankruptcy estate.

## COUNT 5
## FALSE IMPRISONMENT
### (State Claim against defendant Sussberg)

139.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  As seen herein:

140.  Defendant Sussberg willfully detained the plaintiff.

141.  The detention was without the plaintiff's consent.

142.  The detention was without legal authority or justification.

143.  Plaintiff was injured by the detention.

144.  Plaintiff alleges that he was directly harmed by the actions of defendant Sussberg as described herein.  Plaintiff further alleges that the actions of defendant Sussberg as described herein did not harm or deplete the assets of the McDermott International bankruptcy estate.

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT

145.  Plaintiff asserts all applicable state statutory, common law and contractual rights and theories related to the tolling and/or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule, and/or fraudulent concealment.

## JURY DEMAND

146.  Plaintiff demands a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiff prays that defendants be cited to appear herein and, after a trial on the merits, that the Court enter judgment awarding plaintiff the following:

## Count 1

1.  actual damages of $180,000;

2. exemplary damages in an amount determined by the trier of fact;

3. costs;

4. pre-judgment and post-judgment interest as allowed by law; and

5. all such other and further relief, both general and special, at equity and at law, to which plaintiff may be justly entitled.

## Counts 2, 3, 4 and 5

1. actual damages;

2. exemplary damages in an amount determined by the trier of fact;

3. costs;

4. pre-judgment and post-judgment interest as allowed by law; and

5. all such other and further relief, both general and special, at equity and at law, to which plaintiff may be justly entitled.

6. The maximum damages plaintiff seeks from defendant Sussberg on each count is $2,000,000.


Respectfully submitted,


/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

000507

This page intentionally left blank.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

## DEFENDANT JOSHUA SUSSBERG'S MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED PETITION AND FOR SANCTIONS

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorneys.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL BACKGROUND ..................................................................... 2

III.   SUBJECT MATTER JURISDICTION ...................................................... 8

IV.    LEGAL STANDARD ................................................................................ 9

V.     ARGUMENT ........................................................................................... 10

    A.   Plaintiff's claim for common law fraud against Mr. Sussberg
        should be dismissed because it fails to state a plausible claim
        for relief, particularly under the heightened pleading
        requirements of Federal Rule of Civil Procedure 9(b). .................... 10

        1.   Plaintiff's fraud allegations against Defendants,
            collectively, fail under Rule 9(b). .......................................... 10

        2.   Plaintiff's fraud allegations against Mr. Sussberg,
            specifically, fail under Rule 9(b). ........................................... 13

    B.   Plaintiff's assault and false imprisonment claims against Mr.
        Sussberg should be dismissed because they are implausible on
        their face. ........................................................................................... 15

        1.   As a "frequent filer," Van Deelen is not entitled to the
            leniency typically afforded *pro se* litigants in evaluating
            the sufficiency of his pleadings. ............................................. 15

        2.   Van Deelen's assault and false imprisonment
            allegations do not permit a reasonable inference of
            liability. ................................................................................... 16

    C.   Sanctions are warranted to deter Plaintiff's persistent bad-faith
        conduct and abuse of the judicial process. ....................................... 18

VI.    CONCLUSION AND PRAYER FOR RELIEF ........................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 9, 18

*Bauer v. Texas*,
  341 F.3d 352 (5th Cir. 2003) ............................................................ 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... 9, 10

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001) ............................................................... 14

*Chambers v. NASCO, Inc.*,
  501 U.S.32 (1991) ................................................................... 18, 19, 20

*Davis v. Bayless*,
  70 F.3d 367 (5th Cir. 1995) ............................................................. 16

*Deutsch v. Phil's Icehouse, Inc.*,
  716 F. Appx. 361 (5th Cir. 2018) .................................................. 19, 20

*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) ......................................................... 15

*In re Cochener*,
  360 B.R. 542 (Bankr. S.D. Tex. 2007) ................................................ 19

*In re U.S. Brass Corp.*,
  301 F.3d 296 (5th Cir. 2002) ............................................................. 8

*Ingalls v. Edgewater Private Equity Fund III, L.P.*,
  2005 WL 2647962 (S.D. Tex. Oct. 17, 2005) ....................................... 12

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998) ............................................................. 14

*Little v. KPMG LLP*,
  575 F.3d 533 (5th Cir. 2009) ........................................................... 12

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
  583 S.W.3d 553 (Tex. 2019) ......................................................... 14, 15

iii

*Newby v. Enron Corp.*,
   302 F.3d 295 (5th Cir. 2002) ................................................................ 19, 20

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................ 11, 12

*United States ex rel. Barrett v. Johnson Controls, Inc.*,
   2003 WL 21500400 (N.D. Tex. Apr. 9, 2003) ........................................ 10

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group*,
   193 F.3d 304 (5th Cir. 1999) ................................................................. 10

*Van Deelen v. Alamogordo Public Schools*,
   2008 WL 11417175 (D.N.M. Mar. 14, 2008) ................................. 15, 16, 17

*Van Deelen v. City of Kansas City, Missouri*,
   262 Fed. Appx. 723 (8th Cir. 2007) .......................................................... 20

*Van Deelen v. Johnson*,
   2006 WL 1764381 (D. Kan. June 27, 2006) .............................................. 16

*Williams v. WMX Techs.*,
   112 F.3d 175 (5th Cir. 1997) .......................................................... 10, 11, 13

## Statutes

11 U.S.C. § 105 .............................................................................. 1, 18, 20
28 U.S.C. § 157 ..................................................................................... 8
28 U.S.C. § 1334 ................................................................................... 8

## Rules

Fed. R. Civ. P. 9(b) ......................................................................... 10, 15
Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 15
Fed. R. Bankr. P. 7012 .......................................................................... 1

Defendant Joshua Sussberg files this Motion to Dismiss Plaintiff Michael Van Deelen's Third Amended Petition ("Amended Petition") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure, and for Sanctions pursuant to 11 U.S.C. § 105 and this Court's inherent power to manage its proceedings and litigants' conduct, and in support thereof, respectfully shows as follows:

## I.      PRELIMINARY STATEMENT

Michael Van Deelen has filed a frivolous lawsuit against Joshua Sussberg alleging meritless claims for fraud, assault and false imprisonment. This lawsuit is just one in a long history of similarly frivolous lawsuits Van Deelen has filed in state and federal courts across the country to vex and harass those who oppose him. Van Deelen's history as a "frequent filer" extends back to at least the 1990s and includes over 50 lawsuits with a nearly equivalent number of appeals. He is the quintessential "serial litigant." And although Van Deelen's "Third Amended Petition" purports to allege new claims against Mr. Sussberg, the main thrust of Van Deelen's lawsuit is clear—he is displeased with the McDermott bankruptcy plan from which he did not benefit.  Each of Van Deelen's claims, even those against Mr. Sussberg, arise from the McDermott bankruptcy proceedings—they all concern alleged conduct perpetrated in furtherance of an alleged "scheme" to misrepresent McDermott's financial viability before it filed for Chapter 11. Moreover, the alleged assault and false imprisonment claims concern events that occurred during and after the plan confirmation hearing in this very Court, after which the Court signed an order

1

prohibiting Van Deelen from any direct contact with the Court, its staff, or Mr. Sussberg and his family. This Court is not only the most appropriate and informed audience for this Motion to Dismiss, but also in the best position to protect judicial economy and efficiency by stopping this meritless pursuit in its tracks. Van Deelen's Third Amended Petition consists of nothing more than conclusory allegations that do not state a plausible claim to relief.  Van Deelen has had four bites at the apple in this Court—he has not shown and cannot show he is entitled to a fifth, in this Court or any other court. His lawsuit should be dismissed with prejudice.

## II.      FACTUAL BACKGROUND

### *The McDermott International, Inc. Bankruptcy Proceeding*

This adversary proceeding arises from the McDermott International, Inc. ("McDermott") bankruptcy proceeding. McDermott is a century-old multinational procurement, construction, and installation company in the energy space. In September 2019, after many years of growth and success, McDermott began facing severe liquidity issues due to a combination of culminating factors, including McDermott's cash being trapped in its joint venture operations and its inheritance of certain legacy projects that resulted in significant, unanticipated losses.

McDermott tried to restructure and avoid liquidation by obtaining, on an emergency basis, a liquidity infusion through a superpriority financing facility, the first tranche of which it received in October 2019. In the last months of 2019, McDermott engaged financial and legal advisors, as well as lenders and stakeholders, in an effort to reassess its

operations and financial condition. Ultimately, McDermott concluded a pre-packaged balance sheet restructuring was the best way to maximize value for its stakeholders.

Accordingly, on January 21, 2020, McDermott filed a voluntary petition for relief (Bankr. Dkt. 1) (the "Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), and on January 22, 2020, McDermott filed a chapter 11 plan of reorganization, which it subsequently amended or supplemented several times during the course of the bankruptcy proceedings (Bankr. Dkt. 121, 520, 620, 622, 647, 651) (collectively, the "Plan"). The Plan reflected substantial levels of support among McDermott's lenders, which was difficult to accomplish given the scale and complexity of McDermott's operations, the number of stakeholder constituencies and their divergent interests, and the urgent nature of McDermott's capital needs.

### The Court Confirms the Plan over Van Deelen's Objection

On February 27, 2020, Van Deelen filed a motion (Bankr. Dkt. 510) (the "Motion") with this Court alleging that McDermott had improperly sought chapter 11 relief and seeking denial of the Plan. Specifically, Van Deelen alleged that McDermott had proposed the Plan in bad faith because the Plan called for the cancellation of existing shares and the re-equitization of the company "for the sole purpose of enriching McDermott's management and Board." Bankr. Dkt. 510, Mot. at 6-15. Based on these allegations, Van Deelen requested that the Court deny McDermott's Plan.

The Court overruled and denied Van Deelen's Motion at a hearing on confirmation of the Debtors' plan of reorganization on March 12, 2020 (the "March 12th Hearing"). *See* Bankr. Dkt. 665, Confirmation Order ¶ 11, later amended at Bankr. Dkt. 684. The Court specifically found that Van Deelen's Motion was not filed in good faith. Dkt. 664 at 31:19. On March 14, 2020, the Court entered its *Amended Order Approving the Debtors' Disclosure Statement and Confirming the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization (Technical Modifications) of McDermott International, Inc. and Its Debtor Affiliates* (Bankr. Dkt. 684) (the "Confirmation Order").

### *Van Deelen Engages in Harassing, Abusive and Bad-Faith Conduct during and after the March 12, 2020 Plan Confirmation Hearing*

Van Deelen personally attended the March 12 Hearing. Defendant Joshua Sussberg ("Mr. Sussberg") also attended the hearing as the lead Kirkland & Ellis attorney for the Debtors. *See* Ex. A, Decl. of Joshua A. Sussberg, ¶ 3. Mr. Sussberg sat in the first seat on the left side of Debtors' counsel table, which is where he typically sits for hearings before this Court and where he had sat for the prior McDermott bankruptcy hearing. *Id*. ¶ 4. Van Deelen chose to sit at creditors' counsel table across from Mr. Sussberg. Mr. Sussberg had never met or seen Van Deelen before he appeared at the hearing. *Id*.

During the hearing, Van Deelen questioned numerous witnesses, usually asking the same questions over and over again, even though the witnesses addressed various different issues and topics. *Id*. ¶ 5. After Van Deelen's lengthy questioning of witnesses, Mr. Sussberg asked Van Deelen if he intended to keep asking the same questions of all the witnesses, taking up the Court's day. *Id*. Van Deelen confirmed that was what he intended

to do, and Mr. Sussberg shook his head in response. Van Deelen responded: "suck my d****." Shocked by the comment, Mr. Sussberg responded: "you are disgusting." *Id.*; Ex. B, Decl. of Christopher T. Greco, ¶ 5. At the end of the hearing, Van Deelen called the Court a "son of a b****," which was audible on the audio recording of the hearing. Ex. A ¶ 5; Ex. B ¶ 6; Dkt. 666, AUDIO CLIP, March 12, 2020 Hearing, 3:19:29-3:21:20.

After the hearing, Mr. Sussberg left the courtroom to use the restroom. Ex. A ¶ 6; Ex. B ¶ 7. As he left the restroom, Van Deelen was standing immediately outside the door. *Id.* Van Deelen asked Mr. Sussberg for his name, to which Mr. Sussberg responded: "it does not matter what my name is." *Id.* As Mr. Sussberg began walking back towards the courtroom and away from Van Deelen, Van Deelen called Mr. Sussberg a "pasty white f***," and said, "it will matter when I have my way with your wife." *Id.*; *see* Ex. C, Decl. of Damian S. Schaible ¶ 3 (affirming Mr. Schaible overheard Mr. Van Deelen say: "I'll have my way with your wife"). The two men were approximately ten feet apart from each other at this point. Ex. A ¶ 6. Upon hearing Van Deelen's comment, Mr. Sussberg turned around and, when he was a few feet from Van Deelen, asked him: "what did you say?" *Id.* Mr. Sussberg may have repeated his earlier comment that Van Deelen was "disgusting," but at no point called Van Deelen a "fool" and at no point made any physical contact with Van Deelen or moved in any manner to block Van Deelen from going anywhere. *Id.* ¶¶ 6, 9; Ex. B ¶ 7. Mr. Sussberg then returned to the courtroom to retrieve his briefcase and alerted the Court's chambers of the incident and Van Deelen's comments. Ex. A ¶ 7.

The day after the hearing, on March 13, 2020, Van Deelen sent an email to Mr. Sussberg at his Kirkland email address stating Van Deelen found Mr. Sussberg and his email on the Kirkland website, and to confirm it was Mr. Sussberg at the March 12 Hearing sitting across from Van Deelen. Bankr. Dkt. 694-1.Van Deelen had also engaged in other troubling behavior, including appearing unannounced at the home of McDermott's former CFO, Stuart Spence, on February 27, 2020, where Van Deelen spoke to Mr. Spence's wife and asked to confirm their address for purposes of issuing a subpoena. Bankr. Dkt. 694-2 ¶¶ 4-5.

### The Court Grants Debtors' Emergency Motion to Prohibit Further Contact from Van Deelen

On March 17, 2020, the Debtors filed an Emergency Motion seeking protection from Van Deelen's harassing conduct and requesting that Van Deelen be prohibited from further direct contact with Debtors, their officers, directors, and employees, their counsel or other professionals and their families. Bankr. Dkt. 694. Van Deelen filed a response and supporting affidavit that falsely denied statements he made during and after the proceedings. Bankr. Dkt. 701 and Ex. 2 thereto. Neither the response nor the supporting affidavit mentioned any physical contact with Mr. Sussberg, nor that Mr. Sussberg did anything to impede Van Deelen from leaving. *Id*. The Court granted the Emergency Motion in part and prohibited Van Deelen from directly contacting the Court, its staff, Mr. Sussberg and Mr. Sussberg's family in any manner. Bankr. Dkt. 719.

In the Court's Order, the Court acknowledged Van Deelen's "propensity to make false statements under oath," noting that although Van Deelen denied calling the Court a

6

"son of a b****" in his sworn affidavit attached to his response, "[u]nfortunately for Mr. Van Deelen, the Court's staff did hear Mr. Van Deelen's statement and immediately reported it to chambers," and the statement was audible on the original audio recording. Dkt. 719 at 1. Based on Van Deelen's demonstrated willingness to make false statements to the Court, the Court gave Van Deelen's affidavit "little weight," including his denial of the vulgar and threatening statements made to Mr. Sussberg. *Id*. at 1-2. The Court concluded that Van Deelen "poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position." *Id*. at 2.

### *Van Deelen Files Suit*

On June 23, 2020, three months after the Court confirmed the Plan, Van Deelen filed suit against Defendants (excluding Mr. Sussberg) in Texas state court asserting claims for fraud, negligent misrepresentation, conversion, breach of fiduciary duty and conspiracy. Dkt. 1, Ex. 1 ¶¶ 65-112. At the core of Van Deelen's suit were the same allegations made in his Motion objecting to confirmation of the Plan—that Defendants allegedly caused McDermott to undergo an unnecessary chapter 11 restructuring for their own benefit and to the detriment of Van Deelen and other shareholders. The claims concerned actions taken by McDermott officers, employees, or agents in association with the bankruptcy proceedings and related transactions. Defendants removed the lawsuit to this Court and moved to dismiss Van Deelen's claims on the grounds that they were subject to the exculpation, release and injunction provisions in the Confirmation Order and failed to satisfy federal pleading standards. *See* Dkt. 5 ¶¶ 18-44.

Van Deelen has since amended his complaint three times. His current Amended Petition alleges, for the first time, claims against Mr. Sussberg for fraud, assault and false imprisonment, thereby adding Mr. Sussberg as a Defendant in this case. Mr. Sussberg now files this Motion to Dismiss the Amended Petition because Van Deelen has completely failed to state a plausible claim for relief against Mr. Sussberg.

## III.    SUBJECT MATTER JURISDICTION

This Court's subject matter jurisdiction derives from 28 U.S.C. §§ 1334 and 157. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303-05 (5th Cir. 2002). The applicable sections provide bankruptcy courts with the power to hear (1) cases under title 11; (2) core proceedings "arising under" title 11; (3) core proceedings "arising in" a case under title 11; and (4) non-core proceedings "related to" a case under title 11. *See* 28 U.S.C. §§ 1334(b), 157(a)-(c)(1). The fourth category—"related to" proceedings—is the broadest, and encompasses any proceeding for which "the outcome . . . could *conceivably* have an effect . . . on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d at 304 (emphasis in original). Moreover, and because "the second, third, and fourth categories . . . operate conjunctively to define the scope of jurisdiction," bankruptcy courts often just need "to determine whether a matter is . . . 'related to' the bankruptcy." *Id.*

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) because the claims asserted in Plaintiff's Third Amended Petition are "related to" the McDermott Debtors' bankruptcy proceeding under title 11. The Amended Petition makes clear that the substance of Van Deelen's complaint is the same

8

now as it was in his original petition, namely, that he takes issue with the bankruptcy itself, and that his claims arise from the McDermott bankruptcy proceedings. Van Deelen alleges the same common law fraud claim against Mr. Sussberg has he has alleged against the other Defendants, pointing to alleged misconduct occurring before the petition. And even though Van Deelen's meritless assault allegations against Mr. Sussberg are technically new—and different from those in the affidavit he filed just five days after the confirmation hearing (*compare* Bankr. Dkt. 701, Ex. 2 *with* Dkt. 57 ¶¶ 87-95)—Van Deelen himself makes clear that he still alleges they arise from the alleged scheme to misrepresent McDermott's financial viability; *i.e.*, that the alleged assault was perpetrated to deter Van Deelen "in furtherance of" the alleged scheme. Dkt. 57 ¶ 95. Van Deelen's alleged claims plainly "relate to" the bankruptcy proceeding such that this Court has subject matter jurisdiction to decide this Motion to Dismiss.

## IV.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "formulaic recitation of the elements of a cause of action will not do." *Id.*;

*Twombly*, 550 U.S. at 555. The complaint's factual allegations "must be enough to raise a right to relief above the speculative level;" they must rise into the "realm of plausible liability." *Id.*

## V.   ARGUMENT

**A.   Plaintiff's claim for common law fraud against Mr. Sussberg should be dismissed because it fails to state a plausible claim for relief, particularly under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).**

1. Plaintiff's fraud allegations against Defendants, collectively, fail under Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, the Amended Petition must state "the who, what, when, and where" of the alleged fraud. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997). In other words, "to plead fraud with particularity a plaintiff must include the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the defendant] obtained thereby.'" *United States ex rel. Barrett v. Johnson Controls, Inc.*, 2003 WL 21500400, at *8 (N.D. Tex. Apr. 9, 2003) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)). Further, courts are required to "apply the rule with force, without apology." *Williams*, 112 F.3d at 178. Van Deelen's most recent Amended Petition completely fails to satisfy this standard.

First, the Amended Petition fails to identify with sufficient particularity the "false representations" any individual Defendant made to Van Deelen or why such alleged statements were false. Instead, Van Deelen excerpts certain press releases, letters, or reports and alleges in conclusory fashion that "Defendants," without specification, "wrote, reviewed, approved and published" these statements. *See* Dkt. 57 ¶¶ 24 (letter on company website), 26 (first quarter report), 30 (reports, slides, presentations), 37 (statement in connection with second quarter report), 44 (press release), 48 (press release), 56 (press release).

These allegations are plainly insufficient to satisfy Rule 9(b)'s requirements. Applicable Fifth Circuit authority expressly holds that merely reciting third-party public statements and vaguely attributing those statements to a collective group of Defendants fails the test. *See Williams*, 112 F.3d at 179 ("These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants. Many of the newspaper excerpts attached to [plaintiffs'] complaint . . . [do not] specify[] who gave information to the paper. These excerpts, standing alone, cannot satisfy the "who, what, when, where, and how" required by Rule 9(b)."). At a minimum, Van Deelen would need to either show each of the Defendants adopted the allegedly false statements or represented them to be true or "in accordance with [their] view[s]," or that each of the Defendants "used the [third party] as a conduit, making false and misleading statements to the [third party] with the intent that the [third party] communicate those statements to the market." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d

353, 373-74 (5th Cir. 2004). In *Southland*, for example, the Fifth Circuit held a complaint would need to "point to specific interactions between the [defendant] and the [third party] which allegedly gave rise to the entanglement [between the defendant's and third party's statements']," and state the dates the interactions occurred. *Id*. The Amended Petition fails to allege any such facts.

Second, Fifth Circuit courts have expressly and repeatedly rejected, as failing to satisfy Rule 9(b), attempts like Van Deelen's to "group plead" fraud claims against multiple Defendants collectively. *See, e.g., Southland*, 365 F.3d at 365  ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, No. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) ("Group pleading fails to satisfy the requirement of the who, what, where, why, and when of the fraud to be specified.").

In the Amended Petition, Van Deelen points to arbitrary date ranges during which he claims each of the Defendants participated in the alleged "scheme" to misrepresent McDermott's financial condition in an apparent attempt to plead more specifically, but to no avail. Dkt. 57 ¶ 23. Van Deelen alleges no facts whatsoever to substantiate any alleged "scheme," and, in any event, these allegations still fail to satisfy "the who, what, when, and

where" of the specific statements Van Deelen alleges were fraudulent. *Williams*, 112 F.3d at 178.

2. <u>Plaintiff's fraud allegations against Mr. Sussberg, specifically, fail under Rule 9(b).</u>

The Amended Petition's pleading deficiencies are particularly pronounced as to Mr. Sussberg. Van Deelen does not allege *any* "false representations" Mr. Sussberg individually made to Van Deelen whatsoever, let alone in Mr. Sussberg's *individual capacity*, which is the only capacity in which Van Deelen has sued Mr. Sussberg (*see* Dkt. 57 ¶ 107), though Mr. Sussberg has, at all relevant times, acted in his capacity as one of the lead counsel for the Debtors.

Instead, Van Deelen alleges in conclusory fashion without any factual support that Mr. Sussberg joined an alleged "scheme" to misrepresent McDermott's financial viability and "advised the other members of the scheme as to how to carry out and advance the scheme." Dkt. 57 ¶ 47. Such vague, conclusory allegations that fail to identify any particular statement made by Mr. Sussberg to Van Deelen plainly fail to satisfy Van Deelen's burden under Rule 9(b). And the only other mention of Mr. Sussberg, specifically, alleges he, Dickson and Lamb "wrote, approved and issued" a press release in December 2019. *Id*. ¶ 68. Van Deelen neither attributes any specific statement from the press release to Mr. Sussberg nor identifies what was allegedly fraudulent about the particular statements in the press release. And while Van Deelen alleges the press release was misleading because it did not disclose future funding plans or that the Lummus sale would occur

through the Chapter 11 process, Van Deelen has not alleged and cannot allege Mr. Sussberg

owed Van Deelen any duty to disclose such information. *Id*. ¶ 69.

Under Texas law, "a failure to disclose information does not constitute fraud unless

there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.

2001). Whether a duty to disclose exists is a question of law. *Id*. In his most recent

Amended Petition, Van Deelen eliminated allegations regarding Defendants' alleged duty

of disclosure that he had included in prior versions of his complaint, namely, that

Defendants had a "special fiduciary relationship" with Van Deelen or otherwise disclosed

partial information in a manner that created a duty to disclose. *Compare* Dkt. 50 ¶ 71 with

Dkt. 57. As a result, Van Deelen's Amended Petition is devoid of any allegation that Mr.

Sussberg or any other Defendant owed any duty of disclosure to Van Deelen. And, in any

event, Van Deelen has not alleged any facts to establish Mr. Sussberg had any special

relationship with him requiring disclosure (*see Ins. Co. of N. Am. v. Morris*, 981 S.W.2d

667, 674 (Tex. 1998) (a fiduciary duty can arise "as a matter of law in certain formal

relationships, including attorney-client, partnership, and trustee relationships" or

informally when "parties have dealt with each other in such a manner for a long period of

time")), or that Mr. Sussberg individually made any "representations" or "partial

disclosures" to Van Deelen that would trigger a duty, as set forth above. *See Mercedes-*

*Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562-63 (Tex. 2019) (defendants made

no affirmative disclosure or representation that could have triggered a legal duty to disclose

more). Van Deelen has not pleaded and cannot plead any duty of disclosure owed by Mr.
Sussberg to Van Deelen.

For the reasons stated above, Van Deelen has failed to plead a claim for common
law fraud against Mr. Sussberg in accordance with Rules 9(b) and 12(b)(6) and such claim
should therefore be dismissed.

**B.  Plaintiff's assault and false imprisonment claims against Mr. Sussberg should be dismissed because they are implausible on their face.**

Van Deelen's claims for assault and false imprisonment against Mr. Sussberg are
facially implausible and therefore should be dismissed pursuant to Rule 12(b)(6).

1.  <u>As a "frequent filer," Van Deelen is not entitled to the leniency typically afforded *pro se* litigants in evaluating the sufficiency of his pleadings.</u>

A *pro se* litigant's pleadings are typically "held to a less stringent standard than
formal pleadings drafted by lawyers" due to the litigant's lack of special training in the
law. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This principle is not absolute
and does not apply when the litigant demonstrates experience with and depth of knowledge
of legal proceedings and rules. In a prior lawsuit Van Deelen filed in the District of New
Mexico, the district court declined Van Deelen's request to give his filings "solicitous
construction" merely because he was appearing *pro se*. *See Van Deelen v. Alamogordo
Public Schools*, 2008 WL 11417175, at *1-2 (D.N.M. Mar. 14, 2008). The court concluded
that because Van Deelen had such extensive experience filing and litigating lawsuits on his
own behalf, including lawsuits involving complex constitutional rights claims, he was not
a "'run-of-the-mill' pro se litigant" and was not entitled to any leniency in adjudicating the

sufficiency of his pleadings. *See id*. Van Deelen has litigated many more lawsuits since 2008, when the *Alamogordo* case was pending. He is not entitled to liberal or lenient construction of his Amended Petition, nor is he entitled to additional opportunities to amend—indeed, this is his fourth attempt to make plausible claims in this case. He simply cannot do so.

### 2. Van Deelen's assault and false imprisonment allegations do not permit a reasonable inference of liability.

Although the 12(b)(6) inquiry is focused on the pleadings, the Court may consider certain specific categories of evidence in ruling on the motion, including documents in the public record and matters subject to judicial notice, such as public court records. *Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Accordingly, this Court may consider the prior filings, orders and other records in connection with this adversary proceeding and the McDermott bankruptcy proceeding, as well as records from other courts in which Van Deelen has previously litigated, in deciding this motion.

Described by the District of Kansas as a "frequent filer," Van Deelen has an extensive history of filing frivolous lawsuits. *Van Deelen v. Johnson*, 2006 WL 1764381 (D. Kan. June 27, 2006); *see Alamogordo*, 2008 WL 11417175, at *1-2 (recounting multiple lawsuits filed by Van Deelen between 1991 and 2006). The *Alamogordo* court observed "Van Deelen has a long history of engaging in extensive litigation against judges, attorneys, police and security officers, school districts, and governmental boards,

commissions, employees and employers, and of making very similar claims to the ones in the case at bar." *Id*. at *1.

Van Deelen's filings in this Court are riddled with self-contradiction. For instance, neither Van Deelen's response to the Debtors' Emergency Motion, nor the affidavit to his response, which were filed on March 18, 2020, just six days after the events of the March 12 Hearing, state that Mr. Sussberg had any physical contact with Van Deelen whatsoever or made any attempt to physically block Van Deelen from leaving. Yet now Van Deelen alleges in his Amended Petition that Mr. Sussberg "chest- bumped" and physically blocked him. Dkt. 57 ¶¶ 88-89. If Van Deelen had experienced physical contact of the kind he alleges now, he would have raised it in his response. He did not, because it did not happen. Van Deelen's new allegation even mimics language he used in the *Alamogordo* lawsuit, in which one of his allegations was that a student's mother "approached Van Deelen and 'bumped' him with her body." *Alamogordo*, 2008 WL 11417175, at *5.

Van Deelen also asserted in his response that it was the Debtor movants who had "fabricated evidence" by claiming Van Deelen called the Court a "son of a b****" during the March 12 Hearing, despite clear evidence of the statement in the audio recording of the hearing in the Court's record. Bankr. Dkt. 701 ¶ 24. Finally, Van Deelen's affidavit to his response misrepresented the Eighth Circuit's holding in his case against the City of Kansas City, Missouri as "significantly reduc[ing]" the sanctions against him on appeal, when in reality the court of appeals upheld the monetary sanctions entirely, and only limited the scope of the injunction on future filings to courts within the Eighth Circuit. Bankr. Dkt.

17

701 ¶ 16. In light of Van Deelen's self-contradiction in these proceedings, and his demonstrated history of making false statements in sworn filings both to this Court and to federal courts across the country, his claims against Mr. Sussberg are facially implausible.

The inquiry on a Rule 12(b)(6) motion is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Where the alleged facts do no more than permit an inference of the mere possibility of misconduct, then "the complaint has alleged—but it *has not shown*—that the pleader is entitled to relief." *Id.* (internal citations omitted) (emphasis added). Van Deelen's contradictory recitation of the alleged facts in his filings in this case, considered in the context of his history as a vexatious litigant, expose his assault and false imprisonment claims for what they really are—nothing more than conclusory allegations manufactured to fit the elements of these causes of action. Van Deelen's allegations fail to state a claim for which relief may plausibly be granted.

### C. Sanctions are warranted to deter Plaintiff's persistent bad-faith conduct and abuse of the judicial process.

Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition to the authority provided under Section 105(a), "Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). It is appropriate for a Federal court to invoke its inherent power when, for instance, a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," such as

when a party commits "fraud upon the court" or "delays or disrupts the litigation." *Id*. The court's inherent power to sanction is coextensive with, and not displaced or supplanted by, similar authority granted under other procedural rules and statutes. *Id*. When a court invokes its inherent power to sanction misconduct abusive of the judicial process, the court is to "exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees." *Id*.

Federal courts possess "the inherent power to impose sanctions against vexatious litigants." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002). Van Deelen is the definition of a vexatious litigant. He has persisted in abusive, harassing, and dilatory conduct throughout the pendency of this litigation. *See, e.g.*, Ex. A, Ex. B & Ex. C. And, as established above, this is not the first lawsuit where Van Deelen has engaged in such misconduct. Far from it. On multiple prior occasions, Van Deelen has consumed judicial resources with frivolous lawsuits, submitted false and fabricated affidavits and pleadings to the court, and sought to vex and harass other parties, counsel, and the court.[2]

"[A] federal court's inherent power to sanction bad faith conduct serves the dual purpose of covering the gaps where there are no applicable rules and also covering situation where 'neither the statute nor the Rules are up to the task.'" *In re Cochener*, 360 B.R. 542, 569 (Bankr. S.D. Tex. 2007) (quoting *Chambers*, 501 U.S. at 50). The rules, such as Rule 11, are "not up to the task," when the misconduct at issue ***extends beyond "improper***

---

[2] A search of Van Deelen's litigation history reveals he has filed over 50 lawsuits over the last couple decades, including civil rights cases; defamation, libel or slander cases; assault and battery; and fraud; among other miscellaneous contractual, collection, personal injury and other cases.

*filings" to "falsifying evidence"* and *exploiting the tribunal "to delay the litigation."* *Deutsch v. Phil's Icehouse, Inc.,* 716 F. Appx. 361, 363 (5th Cir. 2018). In *Deutsch*, the Fifth Circuit affirmed sanctions when the plaintiff's "contentions [were] frivolous and involve[d] serious misstatements of the law and facts." *Id.* at 363. The same reasoning applies here.

In affirming sanctions against Van Deelen in the *City of Kansas City, Missouri* case, the Eighth Circuit noted that the district court had specifically found Van Deelen filed the lawsuit "maliciously to vex and annoy the City." *Van Deelen v. City of Kansas City, Missouri*, 262 Fed. Appx. 723, 723 (8th Cir. 2007). Van Deelen's lawsuit against Mr. Sussberg is no different—it has no purpose other than to "vex" and harass. Van Deelen's conduct, at absolute minimum, rises to the level of bad faith and is sanctionable under the Court's inherent power under section 105 of the Bankruptcy Code and pursuant to the Supreme Court's holding in *Chambers*.

Sanctions in this case, including dismissal of Van Deelen's suit with prejudice and enjoining Plaintiff from filing or re-filing these or similar claims against Mr. Sussberg or Kirkland & Ellis LLP, or to seek permission from this Court before doing so, are appropriate and no more restrictive than necessary to deter Plaintiff's abusive conduct and facilitate the Court's ability "to orderly and expeditiously perform its duties" in connection with the McDermott bankruptcy proceeding. *Newby*, 302 F.3d at 302. Resorting to the Court's inherent power "to sanction a vexatious litigant [is] appropriate where there [is] repeated bad-faith conduct." *Id.*

20

## VI.    CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Joshua Sussberg respectfully requests that the Court grant this Motion to Dismiss and for Sanctions, dismiss Plaintiff's claims against Mr. Sussberg with prejudice, and impose appropriate sanctions for Plaintiff's bad-faith conduct, including dismissal of Van Deelen's suit with prejudice and enjoining Plaintiff from filing or re-filing these claims or similar claims against Mr. Sussberg or Kirkland & Ellis LLP.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
    David J. Beck
    Texas Bar No. 00000070
    dbeck@beckredden.com

1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT
JOSHUA A. SUSSBERG**

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF notification system and via email and regular mail to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle, Spring, Texas 77379
michaelvandeelen@gmail.com

                                        */s/ David J. Beck*
                                           David J. Beck

000534

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ——————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## <u>DECLARATION OF JOSHUA A. SUSSBERG</u>

I, Joshua A. Sussberg, hereby declare under penalty of perjury:

1.      My name is Joshua A. Sussberg.  I am over 21 years of age, and I am fully competent to make this declaration.  The facts stated herein are within my personal knowledge and are true and correct.

2.      I am the president of Joshua A. Sussberg, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").

3.      I am the lead attorney from Kirkland working on the above-captioned chapter 11 cases. I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York. There are no disciplinary proceedings pending against me.

4.      On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "Hearing"). When I entered Judge David Jones' courtroom for the scheduled Hearing, I sat in the first seat on the left side of Debtors' counsel table.  That is the seat I typically use in Judge Jones' courtroom, and it was the seat I sat in at the prior McDermott hearing.  I had never seen Mr. Michael Van Deelen as of that time, nor did I know what he looked like before he made an appearance.

5.      During the Hearing—and after Mr. Van Deelen had questioned several witnesses, usually asking the same questions over and over again, even though the witnesses had addressed varying and different issues and topics—I asked him if he intended to keep asking these same questions of all witnesses, thereby taking up most of the Court's day.  Mr. Van Deelen said "yes", or words to that effect.  I shook my head in response, whereupon he said, "suck my dick."  Being a bit shocked by his comment, I replied, "you are disgusting."

6.      After the Hearing ended, I quickly left the courtroom to use the restroom, which is located along a narrow hallway on the opposite side of the building from the courtroom entrance. The restroom is not near the elevator bank.  As I walked out of the restroom, Mr. Van Deelen was standing immediately outside the door.  He asked me for my name.  I replied, "it does not matter what my name is."  As I began walking back towards the courtroom and away from Mr. Van

wife."  We were approximately 10 feet away from each other at that point. Upon hearing his statement, I turned around, and when I was a few feet from him, I asked him, "what did you just say?"  To be clear, there was absolutely no physical contact whatsoever between me and Mr. Van Deelen.  It is possible that I repeated my earlier comment that Mr. Van Deelen was "disgusting," but at no time did I call Mr. Van Deelen "a fool."

7.     At that point, I thought it was best to simply walk away, and I returned to the courtroom to retrieve my briefcase. Given the nature of Mr. Van Deelen's conduct, I then alerted Judge Jones' Chambers as to what had happened, including Mr. Van Deelen's statements.

8.     The "narrow hallway" referred to in Mr. Van Deelen's Third Amended Petition (the "Petition") does not lead to the elevators; the elevators are located on the other side of the courtroom in the middle of the building. The remaining factual claims in paragraph 87 of the Petition are completely false.

9.     The factual claims contained in paragraph 89 of the Petition are also completely false.  My exchange with Mr. Van Deelen outside the restroom lasted only a few seconds.  At no time did I did ever move left or right to block Mr. Van Deelen from going anywhere.  After picking up my briefcase and informing the Court's Chambers about what had happened, I went down the elevator with several others.  There was no conversation with Mr. Van Deelen at the elevator, and I have not seen him since March 12, 2020.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Napa County, State of California, on July ___, 2021

_____
Joshua A. Sussberg

3

000538

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## <u>DECLARATION OF CHRISTOPHER T. GRECO</u>

I, Christopher T. Greco, hereby declare under penalty of perjury:

1.      I am over the age of 18 and, unless indicated otherwise, I have personal knowledge of the facts set forth.  I am the president of Christopher T. Greco, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "<u>Kirkland</u>").  Along with my partner, Joshua A. Sussberg, I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York. There are no disciplinary proceedings pending against me.

2.      I submit this Declaration in support of Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions.

3.      On March 12, 2020, this Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing"). During the March 12th Hearing, I was seated at counsel's table next to Mr. Sussberg and witnessed the events described in Mr. Sussberg's Declaration.

4.      I have reviewed Mr. Van Deelen's Third Amended Petition filed on June 18, 2021. (Docket No. 57). In light of various statements made in that Third Amended Petition, I submit this Declaration.

5.      I heard the sidebar conversation in the courtroom between Mr. Sussberg and Mr. Van Deelen during the March 12th Hearing. Mr. Van Deelen told Mr. Sussberg to "suck his dick." Mr. Sussberg replied by saying, "You are disgusting."

6.      I also heard Mr. Van Deelen refer to the Court as a "son of a bitch" during the March 12th Hearing.

7.      After the conclusion of the March 12th Hearing, I visited the restroom on the same floor as the courtroom, and I overheard another exchange between Mr. Van Deelen and Mr. Sussberg, both of whom were standing outside the restroom. Mr. Van Deelen first asked Mr. Sussberg for his name. Mr. Sussberg responded to Mr. Van Deelen that it "didn't matter" what his name was. Mr. Van Deelen then called Mr. Sussberg a "pasty white fuck" and said, "I'll have my way with your wife." At this point, Mr. Sussberg repeated his statement to Mr. Van Deelen

that he "was disgusting". At no time did I see Mr. Sussberg touch Mr. Van Deelen or impede his progress in any way.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Nantucket County, State of Massachusetts, on July 12, 2021

_____
Christopher T. Greco

3

000542

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*, | ) Case No. 20-30336 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF DAMIAN S. SCHAIBLE**

I, Damian S. Schaible, hereby declare under penalty of perjury:

1.      I am over the age of 18 and have personal knowledge of the facts set forth below. I am a partner in the law firm of Davis Polk & Wardwell LLP, located at 450 Lexington Avenue, New York, New York 10017. I am one of the lead attorneys from Davis Polk who worked on the above-captioned chapter 11 cases. I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York. There are no disciplinary proceedings pending against me.

2.      I could and would testify to the facts set forth herein.

3.      On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing"). After the March 12th Hearing, I witnessed Mr. Michael Van Deelen make certain vulgar remarks to Joshua A. Sussberg. More specifically, I overheard part of an exchange between Mr. Van Deelen and Mr. Sussberg. The exchange had begun out of my hearing, but as the two of them approached where I was standing in the hallway, I heard Mr. Van Deelen say to Mr. Sussberg "I'll have my way with your wife."

000544

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 12, 2021

_____

Damian S. Schaible

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | § | Case No. 20-30336 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| MICHAEL VAN DEELEN | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 20-03309 |
| | § | |
| v. | § | |
| | § | |
| DAVID DICKSON, | § | |
| and STUART SPENCE, | § | |
| and SCOTT LAMB, and | § | |
| JOSHUA SUSSBERG, | § | |
| and 10 JOHN/JANE DOES | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS DAVID DICKSON, STUART SPENCE, AND SCOTT LAMB'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorneys.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

Defendants David Dickson, Stuart Spence, and Scott Lamb (collectively, "MDR Defendants") hereby file this motion to dismiss (the "Motion") Plaintiff Michael Van Deelen's ("Van Deelen") Third Amended Petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 7012 of the Federal Rules of Bankruptcy Procedure (which incorporates by reference Federal Rule 12).  In support of the Motion, MDR Defendants respectfully state as follows:

## I.        PRELIMINARY STATEMENT

1.        In his original petition, Van Deelen brought claims against MDR Defendants for conversion, breach of fiduciary duty, conspiracy, negligent misrepresentation, and statutory and common law fraud based on actions MDR Defendants allegedly took in connection with McDermott's bankruptcy.  *See* Dkt. 1, Ex. 1.  MDR Defendants removed the case to this Court and then moved to dismiss these claims because they were subject to certain provisions of the Court's Confirmation Order, including the exculpation provision, and because the claims did not satisfy federal pleading standards.  Since that time, Van Deelen has amended his petition ***three*** times and dropped all of his claims against MDR Defendants except for common law fraud.

2.        Van Deelen actively participated in McDermott's bankruptcy proceedings and objected to confirmation of McDermott's chapter 11 plan of reorganization on the unsupported theory that McDermott never should have filed for chapter 11 and that its filing and the transactions leading up to and included as part of the plan were somehow fraudulent or otherwise wrongful. Despite having the opportunity, he presented no evidence in support of his theory and McDermott's plan was confirmed over his objection.  Van Deelen was made fully aware that the confirmed plan would include the exculpation and injunction provision and would thus prohibit parties from bringing a wide range of claims.  But in complete disregard of the Court's Confirmation Order, Van Deelen then brought this lawsuit against McDermott officers and

employees based on alleged conduct related to the chapter 11 proceedings and related transactions, conduct explicitly exculpated in the Confirmation Order.  While Van Deelen has now amended his claims to remove the specific claims against the MDR Defendants that were exculpated, the substance of his allegations remains virtually the same.

3.      In spite of having four bites at the apple, Van Deelen once again fails to remedy the shortcomings of his previous pleadings.  Specifically, Van Deelen fails to allege with particularity the circumstances giving rise to the MDR Defendants' purported fraud, or to allege facts showing that MDR Defendants had a duty to disclose any information they allegedly omitted to provide him. Because Van Deelen has demonstrated that he cannot provide even basic information necessary to plead fraud allegations, Van Deelen's claim against the MDR Defendants should be dismissed with prejudice.

## II.      FACTUAL BACKGROUND

**A.      McDermott's only viable option was to file for relief under chapter 11.**

4.      McDermott was founded nearly a century ago in east Texas. Since that time, and through strategic acquisitions and business combinations, McDermott has become a premier upstream and downstream engineering procurement, construction, and installation company. In this capacity, McDermott has focused on delivering fixed and floating production facilities, pipelines, installations, and subsea systems that allow for the safe production and transportation of hydrocarbons. McDermott currently operates in 54 countries, has over 42,000 employees and independent contractors, and maintains a diverse fleet of specialty marine construction vessels and fabrication facilities.

5.      Notwithstanding this growth and success, McDermott was facing a severe liquidity problem in September 2019. Much of McDermott's cash was trapped within its joint venture operations and McDermott had inherited from a previous combination certain legacy onshore

projects that resulted in large, unanticipated losses. The confluence of these and other factors created an acute liquidity crisis that McDermott could no longer manage. McDermott had to restructure.

6.      In an effort to facilitate this restructuring and avoid liquidation, McDermott obtained on an emergency basis a liquidity infusion through a superpriority financing facility. McDermott received the first tranche of this superpriority financing in October 2019, and used the additional runway to reassess its operations and financial condition. Over the next several months, McDermott engaged financial and legal advisors, shared a significant amount of information with its prepetition lenders, negotiated extensively with stakeholders, and considered all possible alternatives. Ultimately, McDermott determined that a pre-packaged balance sheet restructuring was the best way to maximize value for its stakeholders.

7.      To that end, on January 22, 2020, McDermott filed a voluntary petition for relief (Bankr. Dkt. 5) (the "Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). McDermott amended or supplemented the Petition and the plan of reorganization several times during the course of the bankruptcy proceedings (Bankr. Dkt. 121, 520, 620, 622, 647, 651) (collectively, the "Plan"). The Plan reflected substantial levels of support among McDermott's lenders--a difficult feat given the scale and complexity of McDermott's operations, the number of stakeholder constituencies and their divergent interests, and the urgent nature of McDermott's capital needs.

**B.      The Court confirmed McDermott's value-maximizing Plan over Van Deelen's objection, and Van Deelen then filed suit in state court asserting claims subject to the Confirmation Order's exculpation provision.**

8.      On February 27, 2020, Van Deelen filed a motion (Bankr. Dkt. 510) with this Court alleging that McDermott had improperly sought chapter 11 relief.  Specifically, Van Deelen alleged that McDermott had proposed the Plan in bad faith because the Plan called for the

3

cancellation of existing shares and the re-equitization of the company "for the sole purpose of enriching McDermott's management and Board." (Bankr. Dkt. 510 at 6-15.) Based on these allegations, Van Deelen requested that the Court deny McDermott's Plan.

9.    On March 14, 2020, the Court overruled and denied Van Deelen's Motion (*See* Bankr. Dkt. 684, Confirmation Order ¶ 11.) and entered an Amended Order Approving the Debtors' Disclosure Statement and Confirming the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization (Technical Modifications) of McDermott International, Inc. and Its Debtor Affiliates (Bankr. Dkt. 684) (the "Confirmation Order").

10.    Just three months after the Court confirmed McDermott's Plan, on June 23, 2020, Van Deelen filed suit against MDR Defendants in Texas state court asserting claims for (1) conversion; (2) common law fraud; (3) statutory fraud; (4) negligent misrepresentation; (5) breach of fiduciary duty; and (6) conspiracy. *See* Dkt. 1, Ex. 1 ¶¶ 65-112. MDR Defendants removed the case to this Court and moved to dismiss these claims on the grounds that the claims were subject to certain exculpation, release, and injunction provisions of the Court's Confirmation Order and did not satisfy federal pleading standards.  Following the Court's instructions at two hearings on Van Deelen's motion to remand, Van Deelen proceeded to amend his petition three times, filing the instant Third Amended Petition on June 18, 2021.  *See* Dkt. 57. In the Third Amended Petition, Van Deelen dropped all of his original claims against MDR Defendants except for common law fraud, and named Joshua Sussberg, who served as counsel for the Debtors during their bankruptcy proceedings, as a defendant.  *Id*.

### III.    <u>STANDARD OF REVIEW</u>

11.    To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). Though the court must accept the plaintiff's allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (plaintiff required to provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action"). Instead, the complaint "must provide the plaintiff's grounds for entitlement to relief -- including factual allegations that when assumed to be true raise a right to relief beyond the speculative level." *Trevino v. HSBC Mortgs. Servs., Inc. (In re Trevino)*, 535 B.R. 110, 126 (Bankr. S.D. Tex. 2015) (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted)).

12.     Finally, where a plaintiff has failed through amendment to cure deficiencies in his complaint, the court may dismiss such complaint without allowing leave to amend.  *See, e.g.*, *Hernandez v. Metropolitan Life Ins. Co.*, No. 5:19-CV-37-DAE, 2019 WL 11555188, at *4 (W.D. Tex. June 25, 2019) (dismissing deficient claim with prejudice because plaintiff "ha[d] already been given a chance to amend her complaint to address these deficiencies").

## IV.     <u>ARGUMENT</u>

**A.     The Court should dismiss Van Deelen's common law fraud claim because it fails to satisfy the heightened pleading requirements of Federal Rule 9(b).**

13.     Despite filing four different petitions against the MDR Defendants, Van Deelen's allegations against them remain substantively the same:  Van Deelen seeks to re-litigate his contention that McDermott never should have filed for chapter 11 or engaged in the transactions at the heart of the chapter 11 Plan for reorganization.  This contention flies directly in the face of this Court's determination to confirm the chapter 11 Plan.  In any event, the remaining fraud claim

against the MDR Defendants does not meet the basic requirements under the Federal Rules of Civil Procedure for setting out a fraud claim and should be dismissed.

14.     Federal Rule 9(b) requires that the Third Amended Petition state "the who, what, when, and where" of the alleged fraud. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997). In other words, "to plead fraud with particularity a plaintiff must include the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the defendant] obtained thereby.'" *United States ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 U.S. Dist. LEXIS 5973, at *32 (N.D. Tex. Apr. 9, 2003) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)). Further, courts are required to "apply the rule with force, without apology." *Williams*, 112 F.3d at 178.

15.     Despite having numerous opportunities to amend his allegations to address his pleading defects, Van Deelen again fails to satisfy his burden of pleading common law fraud for at least two reasons.

16.     **First**, Van Deelen does not identify with sufficient particularity the "false representations" that each of the MDR Defendants individually made to him or show why such statements were false. Instead, Van Deelen **repeatedly** excerpts various letters, press releases, or reports, and then alleges, in conclusory fashion, that "Defendants"—as an undifferentiated whole—made or reviewed or approved statements in the excerpted material. *See* Dkt. No. 57 ¶¶ 24 (Defendants published a letter), 26 (Defendants reviewed and approved first quarter report), 30 (Defendants reviewed and approved reports, slides, and presentations), 37 (Defendants issued a statement), 44 (Defendants issued a press release), 46 (Defendants had subsequent communications with plaintiff), 48 (Defendants issued a press release), 56 (Defendants created

and issued a press release), 63 (Defendants approved Form 10-Q), 68 (Dickson, Lamb, and Sussberg wrote and issued a press release).

17.     This does not satisfy Van Deelen's burden under Federal Rule 9(b). As a threshold matter, it is not enough for Van Deelen to excerpt third-party statements, allege that Defendants collectively reviewed or approved such statements, and then sue Defendants for fraud. *See Williams*, 112 F.3d at 179 ("These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants. Many of the newspaper excerpts attached to [plaintiffs'] complaint . . . [do not] specify[] who gave information to the paper. These excerpts, standing alone, cannot satisfy the "who, what, when, where, and how" required by Rule 9(b).").

18.     Van Deelen must, at the very least, show either that each MDR Defendant adopted the statements or that each MDR Defendant represented the statements "were true or at least in accordance with [their] view[s]," or that Defendants "used the [third party] as a conduit, making false and misleading statements to the [third party] with the intent that the [third party] communicate those statements to the market." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 373-74 (5th Cir. 2004) (also holding that the pleading should "point to specific interactions between the [defendant] and the [third party] which allegedly gave rise to the entanglement [between the defendant's and third party's statements]," and state the dates on which these interactions occurred). Van Deelen has failed to allege any such facts.

19.     Van Deelen has also failed to plead, with respect to the statements that "Defendants" allegedly authored themselves, *which* Defendant(s) individually made the statements. Instead, Van Deelen repeatedly refers to Defendants as a collective whole and fails to distinguish among them—exactly the kind of "group pleading" that courts in the Fifth Circuit have

found not to satisfy the heightened pleading requirements of Federal Rule 9(b). *See, e.g.*, *Southland*, 365 F.3d at 365  ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Luppino v. York*, No. SA-16-CV-00409-RCL, 2017 WL 8161008, at *3 (W.D. Tex. Nov. 27, 2017) ("[H]is failure to state with particularity in what fraudulent conduct each particular defendant engaged (i.e. what representations each made in his individual capacity, what knowledge each had of the falsity of any representations, etc.) was fatal to his claim for fraud."); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, No. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) ("Group pleading fails to satisfy the requirement of the who, what, where, why, and when of the fraud to be specified.") (quoting *Glaser v. Enzo Biochem, Inc.*, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003) (internal citation omitted)); *Coates v. Heartland Wireless Comms., Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) ("[A] plaintiff must 'plead with sufficient particularity attribution of the alleged misrepresentations and omissions to each defendant; the plaintiff is obligated to 'distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'").

20.     In his voluminous complaint, Van Deelen only points to a couple of specific statements by a particular Defendant.  But Van Deelen does not even identify what was allegedly fraudulent about these particular statements, which are general in nature, and Van Deelen does not allege that these statements reasonably induced reliance, nor could he plausibly allege as much. *See* Dkt. 57 ¶ 56 (citing statement allegedly made by David Dickson that "This new credit agreement is a continued signal from our lenders that they support McDermott, our underlying business growth strategy and ability to achieve a long-term balance sheet solution.  The Agreement

8

provides near-term liquidity for the Company to manage working capital and provide performance guarantees on expected new awards.   We remain focused on serving our customers' needs, supporting our dedicated employees and maintaining our valued relationships with our subcontractors, suppliers and other business counterparties, all as part of our efforts to enhance our position as a premier, fully integrated provided to technology, engineering and construction solutions to the energy industry.").

21.     **Second**, and as it concerns MDR Defendants' alleged omissions,[2] Van Deelen fails to plead facts showing that the MDR Defendants had a duty to disclose the allegedly omitted information to Van Deelen. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."); *id*. ("Whether such a duty exists is a question of law.").

22.     But that is not surprising. Under Texas law, "no duty of disclosure [generally] arises without evidence of a confidential or fiduciary relationship."  *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)).   In this case, Van Deelen does not and cannot plead facts to show that MDR Defendants had a formal fiduciary relationship with him. *See Morris*, 981 S.W.2d at 674 (a fiduciary duty can arise "as a matter of law in certain formal relationships, including attorney-

---

[2]     Dkt. No. 57 ¶¶ 25 (Defendants concealed material losses), 28-29 (same), 32-33 (same),  34 (Defendants did not disclose investigation), 35 (Defendants did not disclose "Financing Case"), 39 (same), 40 (Defendants concealed financial condition of company, losses, capital needs, Financing Case, and SEC investigation), 42 (Defendants concealed financial condition of company), 43 (Defendants concealed decision to declare bankruptcy), 45 (same), 46 (Defendants concealed financial condition of company), 48 (Defendants concealed decision to declare bankruptcy), 51 (Defendants concealed financial condition of company), 55 (same), 58 (same), 60 (Defendants concealed "October 22 Agreement"), 62 (Defendants concealed third quarter results), 64 (Defendants concealed SEC investigation), 74 (Defendants concealed financial condition of company and decision to declare bankruptcy), 99 (Defendants concealed financial condition of company), 105 (same), 108 (same), 109 (Defendants concealed losses), 110 (Defendants concealed decision to file for bankruptcy), 111 (Defendants concealed pre-packaged bankruptcy plan), 112 (Defendants concealed that future lending was tied to bankruptcy).

client, partnership, and trustee relationships") (citations omitted). Indeed, the Texas Supreme Court has expressly declined to "impos[e] on directors and officers a [formal] fiduciary duty to individual shareholders". *Ritchie v. Rupe*, 443 S.W.3d 856, 890 & n.62 (Tex. 2014). Moreover, and in reaching this decision, the court cited Mark J. Loewenstein & William K.S. Wang, *The Corporation as Insider Trader*, 30 Del. J. Corp. L. 45, 42 (2005) for the proposition that:

> The very idea that a corporation has a fiduciary duty to individual shareholders is troubling. The corporation can act only through its board of directors, officers, employees, and other agents. These actors are obligated to act in the best interests of the corporation, which may not coincide with the best interests of an individual shareholder transacting business with the corporation. ***There is no reason to impose a fiduciary obligation on these actors to act in the best interest of an individual shareholder when that shareholder proposes a course of conduct not in the best interests of the corporation***.

*Id*. (emphasis added). The same reasoning applies with equal force here: MDR Defendants were obligated to act in the best interests of McDermott, and owed only McDermott—not individual shareholders like Van Deleen—a formal fiduciary duty. Van Deelen's conclusory argument to the contrary must therefore fail. *Twombly*, 550 U.S. at 545 (plaintiff required to provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action").

23.     As must any argument concerning informal fiduciary duties. Informal fiduciary duties arise where the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674; *see also Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (an informal relationship giving rise to a duty may also be formed from "a moral, social, domestic or purely personal relationship of trust and confidence"). Van Deelen has pleaded no facts to show that he had any such relationship of trust with MDR Defendants.

24.     For these reasons, Van Deelen has failed to plead his common law fraud claim with sufficient particularity, and his claim should be dismissed accordingly.

## V.      <u>**CONCLUSION**</u>

Despite repeated opportunities to amend his petition, Van Deelen once again fails to state a common law fraud claim against <u>MDR</u> Defendants with particularity or satisfy the requirements of Federal Rule 9(b).  For these reasons, the Court should dismiss Van Deelen's Third Amended Petition against <u>MDR</u> Defendants with prejudice.

Houston, Texas
Dated:  July 12, 2021

*/s/ Matthew D. Cavenaugh*
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Facsimile:    (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              kpeguero@jw.com
              vpolnick@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anna G. Rotman, P.C. (TX Bar No. 24046761)
Jamie Alan Aycock (TX Bar No. 24050241)
609 Main Street
Houston, TX 77002
Telephone:   (713) 836-3600
Facsimile:    (713) 836-3601
Email:        anna.rotman@kirkland.com
              jamie.aycock@kirkland.com

-and-

John Christian (TX Bar No. 24109727)
1601 Elm Street
Dallas, TX 75201
Telephone:   (214) 972-1770
Facsimile:    (214) 972-1771
Email:        john.christian@kirkland.com

*Counsel to the Defendants*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2021, I caused a true and correct copy of the foregoing document to be served via the Court's ECF notification system to the parties listed below at the email addresses listed.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
michaelvandeelen@gmail.com


*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | § | Case No. 20-30336 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| MICHAEL VAN DEELEN | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 20-03309 |
| | § | |
| v. | § | |
| | § | |
| DAVID DICKSON, | § | |
| and STUART SPENCE, | § | |
| and SCOTT LAMB, and | § | |
| JOSHUA SUSSBERG, | § | |
| and 10 JOHN/JANE DOES | § | |
| | § | |
| Defendants. | § | |

<div align="center">

**ORDER GRANTING DEFENDANTS DAVID DICKSON, STUART SPENCE, AND**
**SCOTT LAMB'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION**

</div>

The Court having considered Defendants David Dickson, Stuart Spence, and Scott Lamb's Motion to Dismiss Plaintiff's Third Amended Petition, any opposition thereto, and the entire record herein, is of the opinion that the Motion should be granted. It is therefore, ORDERED that the Motion to Dismiss is GRANTED with prejudice.

Signed this _____ day of _____, 2021.

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**DEFENDANT JOSHUA SUSSBERG'S ORIGINAL ANSWER, DEFENSES AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED PETITION**

Defendant Joshua Sussberg ("Defendant" or "Mr. Sussberg") files this Original

Answer, Defenses and Affirmative Defenses in response to Plaintiff Michael Van Deelen's

Third Amended Petition ("Amended Petition") (Dkt. 57).

**DISCOVERY CONTROL PLAN**

1.      The allegations contained in paragraph 1 set forth legal conclusions and

questions of law to which no answer is required. To the extent an answer is required,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the
Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor
McDermott International, Inc.'s principal place of business and the Debtors' service address in these
chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

Defendant denies that the Texas Rules of Civil Procedure or the discovery levels set forth therein apply to this proceeding in federal bankruptcy court.

## PARTIES

2.      Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 2, and such allegations are, therefore, denied.

3.      Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 3, and such allegations are, therefore, denied.

4.      Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 4, and such allegations are, therefore, denied.

5.      Defendant admits he is an individual who is a citizen of New York and an attorney, and whose place of business is at Kirkland & Ellis, LLP, 601 Lexington Avenue, New York, New York 10022. Defendant admits he has represented clients of Kirkland & Ellis, LLP in the United States Bankruptcy Court for the Southern District of Texas, Houston Division and that he has appeared on behalf of McDermott International in its bankruptcy proceeding (Case No. 20-30336) in this Court. Defendant denies the remaining allegations in paragraph 5.

6.      Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 6, and such allegations are, therefore, denied.

## JURISDICTION AND VENUE

7.      Paragraph 7 sets forth jurisdictional allegations that present legal conclusions and questions of law to which no answer is required. To the extent an answer is required, Defendant denies that the personal jurisdiction of the Texas state district court for

Montgomery County, Texas has any bearing on this proceeding in federal bankruptcy court, and therefore denies paragraph 7 presents any issue for this Court to decide.

8.      Paragraph 8 sets forth jurisdictional allegations that present legal conclusions and questions of law to which no answer is required. To the extent an answer is required, Defendant denies that the minimum jurisdictional requirements for the amount in controversy in Texas state district court for Montgomery County, Texas have any bearing on this proceeding in federal bankruptcy court, and therefore denies paragraph 8 presents any issue for this Court to decide.

9.      Paragraph 9 sets forth venue allegations that present legal conclusions and questions of law to which no answer is required. To the extent an answer is required, Defendant denies the venue requirements pursuant to Section 15.002(a)(2) of the Texas Civil Practice & Remedies Code have any bearing on this proceeding in federal bankruptcy court, and therefore denies paragraph 9 presents any issue for this Court to decide.

10.     Defendant denies the allegations contained in paragraph 10 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 10 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

11.     Defendant is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 11, and such allegations are, therefore, denied.

## FACTUAL ALLEGATIONS

**Defendants Dickson and Spence Have a History of Being Accused of Making Material Misrepresentations in Their Communications to the Investing Public.**

12.     Defendant is without sufficient knowledge or information to admit or deny the allegations contained in the immediately preceding heading, and such allegations are, therefore, denied. With respect to paragraph 12 of the Amended Petition, Defendant admits a complaint was filed on November 15, 2018 in a lawsuit styled Case No. 4:18-cv-04330; *Edwards v. McDermott International, Inc., et al*., in the United States District Court for the Southern District of Texas, Houston Division (the "*Edwards* Lawsuit"). Defendant admits the complaint purportedly sought class action status for a group of alleged purchasers of McDermott securities and alleged a class period from January 24, 2018 to October 30, 2018. Defendant admits the named defendants in the complaint included McDermott, David Dickson, and Stuart Spence. Defendant admits David Dickson previously served as President and Chief Executive Officer for McDermott and resigned from that role on or about June 7, 2021. Defendant admits Stuart Spence previously served as McDermott's Chief Financial Officer and resigned from that role on or about November 4, 2019. Defendant admits the plaintiff in the *Edwards* Lawsuit claimed damages allegedly arising from alleged material misrepresentations and omissions concerning integration of the Chicago Bridge & Iron Company ("CB&I") business, the CB&I projects' fair values, and McDermott's business, operations and prospects. Defendant denies the remaining allegations in paragraph 12.

4

13.     Defendant admits that on April 14, 2021, the district court in the *Edwards* Lawsuit entered a Memorandum Opinion and Order (signed on April 13, 2021) denying each of two separate motions to dismiss filed by the defendants in that lawsuit. Defendant otherwise denies the remaining allegations contained in the first sentence of paragraph 13. The remaining allegations in paragraph 13 set forth legal conclusions to which no answer is required. To the extent an answer is required. Defendant denies the remaining allegations in paragraph 13 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 13 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

14.     Defendant admits that on January 14, 2019, a complaint was filed in a lawsuit styled Case No. 4:19-cv-00135; *The Public Employees' Retirement System of Mississippi v. McDermott International, Inc., et al*., in the United States District Court for the Southern District of Texas, Houston Division (the "*Mississippi* Lawsuit"). Defendant admits the complaint sought class action status for a group of alleged purchasers of McDermott securities as of April 4, 2018 who allegedly had the right to vote on the CB&I combination. Defendant admits the plaintiff in the *Mississippi* Lawsuit alleged the defendants named in that lawsuit made material misrepresentations and omissions in a 2018 proxy statement relating to the combination of McDermott with CB&I. Defendant admits the court granted the defendants' motion to consolidate the *Edwards* Lawsuit and the *Mississippi* Lawsuit on February 22, 2019 and signed an order regarding the same on June 4, 2019 in the *Edwards* Lawsuit. Defendant admits the consolidated *Edwards* Lawsuit is still pending. Defendant

is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 14, and such allegations are, therefore, denied.

15.    Defendant admits McDermott stated in its third-quarter Form 10-Q for 2019 that it received a letter dated July 26, 2019, together with accompanying subpoenas, in which the U.S. Securities and Exchange Commission ("SEC") notified McDermott that it was conducting an investigation related to disclosures McDermott made concerning the reporting of projected losses associated with the Cameron LNG project, and that McDermott had been and intended to continue cooperating with the SEC in the investigation, including by producing documents requested by the SEC. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 15, and such allegations are, therefore, denied.

16.    Defendant admits McDermott stated in its second-quarter Form 10-Q for 2020 that it received a letter dated February 25, 2020, together with an accompanying subpoena, in which the office of the United States Attorney for the Southern District of Texas within the U.S. Department of Justice ("DOJ") notified McDermott that a Federal Grand Jury was conducting a criminal investigation and requested various documents, including cost forecasts and other financial-related information, related to the Cameron LNG project, and that McDermott intended to cooperate with the U.S. Attorney's office and the Federal Grand Jury in the investigation, including by producing the documents requested. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 16, and such allegations are, therefore, denied.

**Timeline of Events**

17.     Defendant admits McDermott stated in a press release dated May 10, 2018 that it had completed its combination with CB&I as of that date. Defendant admits that as part of the combination, McDermott inherited the Cameron LNG and Freeport LNG projects, among others, from CB&I. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in the first four sentences of paragraph 17, and such allegations are, therefore, denied. Defendant is without sufficient knowledge or information to admit or deny the first half (before the comma) in the fifth and final sentence of paragraph 17. Defendant denies the remaining allegations in the fifth and final sentence of paragraph 17 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in the fifth and final sentence of paragraph 17 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

18.     Defendant admits that in September 2019, McDermott faced severe liquidity issues due to a combination of culminating factors. Defendant admits that in late 2019, McDermott concluded a pre-packaged balance sheet restructuring was the best way to maximize value for its stakeholders. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies the remaining allegations in paragraph 18 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 18 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

7

19.     Defendant denies the allegations in paragraph 19 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 19 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

20.     The allegations in paragraph 20 set forth legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the Amended Petition purports to assert claims against Defendant in his individual capacity, but Defendant denies the validity of plaintiff's claims in their entirety as to Defendant. Defendant denies the remaining allegations in paragraph 20 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 20 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

21.     Defendant denies the allegations in paragraph 21 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 21 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

22.     Defendant denies the allegations in paragraph 22 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 22 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

23.     Defendant denies the allegations in paragraph 23 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations

8

in paragraph 23 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

24.     Defendant admits that on March 22, 2019, McDermott's Independent Chair of the Board issued a "Letter to Stockholders." Defendant admits the Amended Petition purports to quote a portion of the "Letter to Stockholders," but denies the Amended Petition provides the full and correct content and context of that letter and further denies the Amended Petition's allegations to the extent they contradict the actual statements in the letter. Defendant denies the remaining allegations in the first sentence of paragraph 24 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in the first sentence of paragraph 24 as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 24, and such allegations are, therefore, denied.

25.     Defendant denies the allegations in paragraph 25 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 25 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

26.     Defendant admits that on April 29, 2019, McDermott released its first-quarter Form 10-Q report, and that the report speaks for itself. Defendant denies the Form 10-Q report contained the statement purportedly quoted in paragraph 26. Defendant admits the Amended Petition purports to quote a portion of the press release on McDermott's website announcing the April 29, 2019 Form 10-Q report, but denies the Amended Petition

provides the full and correct content and context of that press release and further denies the Amended Petition's allegations to the extent they contradict the actual statements in the press release or the report. Defendant is without sufficient knowledge or information to admit or deny the allegations in the second part of the first sentence of paragraph 26 as to when plaintiff allegedly viewed the report or the press release. Defendant denies the remaining allegations in paragraph 26 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 26 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

27.     Defendant denies the April 29, 2019 Form 10-Q report contained any "full-year 2019 earnings guidance." Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations in paragraph 27, and such allegations are, therefore, denied.

28.     Defendant denies the existence of any scheme involving Mr. Sussberg and otherwise denies the allegations in paragraph 28 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 28 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

29.     Defendant denies the allegations in paragraph 29 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 29 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

10

30.     Defendant admits the allegations in the first sentence of paragraph 30. Defendant denies the existence of any scheme involving Mr. Sussberg and denies the remaining allegations in the second sentence of paragraph 30 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in the second sentence of paragraph 30 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

31.     Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 31, and such allegations are, therefore, denied.

32.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 32 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 32 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

33.     Defendant denies the allegations in paragraph 33 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 33 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

34.     Defendant admits McDermott stated in its third-quarter Form 10-Q for 2019 that it received a letter dated July 26, 2019, together with accompanying subpoenas, in which the U.S. Securities and Exchange Commission ("SEC") notified McDermott that it was conducting an investigation related to disclosures McDermott made concerning the reporting of projected losses associated with the Cameron LNG project, and that

11

McDermott had been and intended to continue cooperating with the SEC in the investigation, including by producing documents requested by the SEC. Defendant denies the remaining allegations in paragraph 34.

35.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 35 as to Mr. Sussberg.  Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 35 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

36.     Defendant admits on July 29, 2019, McDermott released its second-quarter 2019 Form 10-Q report and that the report speaks for itself. Defendant admits the Amended Petition purports to quote figures from the report, but denies the Amended Petition quotes the report or provides the full and correct content and context of that report or the press release announcing the same, and further denies the Amended Petition's allegations to the extent they contradict the actual statements in the report or the press release announcing the report. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 36, and such allegations are, therefore, denied.

37.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 37 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 37 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

38.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 38 as to Mr. Sussberg. Defendant admits the Amended Petition purports to quote a statement from Mr. Dickson in paragraph 38, but denies the Amended Petition provides the full and correct content and context of that statement, and further denies the Amended Petition's allegations to the extent they contradict the actual statement. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 38 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

39.     Defendant denies the allegations in paragraph 39 as to Mr. Sussberg. Defendant admits the Amended Petition purports to represent the contents of the second-quarter 2019 Form 10-Q report and a statement on McDermott's website, but denies the Amended Petition provides the full and correct content and context of that report or statement, and further denies the Amended Petition's allegations to the extent they contradict the actual report or statement. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 39 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

40.     Defendant denies the allegations in paragraph 40 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 40 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

41.     Defendant denies the allegations in paragraph 41 as to Mr. Sussberg. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 41 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

42.     The allegations in paragraph 42 set forth legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 42 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 42 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

43.     The allegations in the first sentence of paragraph 43 set forth legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in the first sentence of paragraph 43 as to Mr. Sussberg. Defendant admits McDermott engaged AlixPartners in or around September 2019 and that McDermott's engagement of AlixPartners was publicly disclosed. Defendant admits McDermott's stock price was $6.08 on September 16, 2019 and $2.16 on September 18, 2019. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies the remaining allegations in paragraph 43 as to Mr. Sussberg. Defendant is without sufficient

14

knowledge or information to admit or deny the remaining allegations in paragraph 43 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

44.     Defendant admits McDermott issued a press release on September 18, 2019. Defendant admits the Amended Petition purports to quote the press release, but denies the Amended Petition provides the full and correct context of that press release and denies the Amended Petition's allegations to the extent they contradict the press release. Defendant admits he participated in discussions regarding preparation of the press release. Defendant denies the existence of any scheme involving Mr. Sussberg and denies the remaining allegations in paragraph 44 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 44 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

45.     Defendant denies the existence of any scheme involving Mr. Sussberg, denies any misrepresentation as to McDermott's reasons for hiring external advisors, and denies the remaining allegations in paragraph 45 as to Mr. Sussberg. Defendant denies McDermott had decided as of McDermott's September 18, 2019 press release to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies McDermott hired external advisors in September 2019 to prepare a bankruptcy filing and denies it was not routine for McDermott to hire external advisors and that McDermott had not hired external advisors in the past. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations

15

in paragraph 45 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

46.     Defendant denies the allegations in paragraph 46 as to Mr. Sussberg. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 46 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

47.     Defendant denies the existence of any scheme involving Mr. Sussberg and generally denies the allegations in paragraph 47.

48.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 48 as to Mr. Sussberg. Defendant admits the Amended Petition purports to paraphrase or summarize a September 20, 2019 press release from McDermott, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies McDermott only planned to sell Lummus Technology as part of a bankruptcy proceeding in court. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 48 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

49.     Defendant admits the Amended Petition purports to quote a September 20, 2019 press release from McDermott, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 49, and such allegations are, therefore, denied.

50.     Defendant is without sufficient knowledge or information to admit or deny the first four sentences of paragraph 50. Defendant admits McDermott's stock price was $2.01 on September 20, 2019 and represented an increase of 27.22%. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in the fifth sentence of paragraph 50, and such allegations are, therefore, denied.

51.     The allegations in the first sentence of paragraph 51 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant is without sufficient knowledge or information to admit or deny the allegations in the first sentence of paragraph 51, and such allegations are, therefore, denied. Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 51 as to Mr. Sussberg. Defendant denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies McDermott only planned to sell Lummus Technology as part of a bankruptcy proceeding in court. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 51 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

52.     Defendant admits the Amended Petition purports to paraphrase testimony from the March 12, 2020 bankruptcy hearing, but denies the Amended Petition provides the full and correct content and context of that testimony, and further denies the Amended Petition's allegations to the extent they contradict the actual testimony. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 52, and such allegations are, therefore, denied.

53.     Defendant admits the Amended Petition purports to paraphrase testimony from the March 12, 2020 bankruptcy hearing, but denies the Amended Petition provides the full and correct content and context of that testimony, and further denies the Amended Petition's allegations to the extent they contradict the actual testimony. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 53, and such allegations are, therefore, denied.

54.     Defendant admits the Amended Petition purports to quote a declaration from Mr. Dickson, but denies the Amended Petition provides the full and correct content and context of that declaration, and further denies the Amended Petition's allegations to the extent they contradict the actual declaration. Defendant admits Mr. Dickson's declaration speaks for itself. Defendant admits McDermott faced severe liquidity issues in or about September 2019. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 54, and such allegations are, therefore, denied.

55.     The allegations in paragraph 55 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 55 as to Mr.

18

Sussberg. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies McDermott only planned to sell Lummus Technology as part of a bankruptcy proceeding in court. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 55 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

56.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 56 as to Mr. Sussberg. Defendant admits McDermott issued a press release on October 21, 2019 and that the press release speaks for itself. Defendant admits the press release stated McDermott had entered into an agreement for up to $1.7 billion of additional financing subject to the terms of that agreement to finance working capital and support the issuance of required performance guarantees on new projects. Defendant admits the Amended Petition purports to quote the press release in paragraph 56, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 56 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

19

57.    Defendant admits the Amended Petition purports to quote the press release in paragraph 57, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant admits McDermott planned to sell Lummus Technology.

58.    Defendant admits the allegations in the first sentence of paragraph 58. The allegations in the remaining sentences of paragraph 58 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 58 as to Mr. Sussberg. Defendant admits the Amended Petition purports to represent the contents of the press release in paragraph 58, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant denies McDermott had decided as of the October 21, 2019 press release to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies McDermott only planned to sell Lummus Technology as part of a bankruptcy proceeding in court. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 58 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

59.    Defendant admits the Amended Petition purports to summarize an October 2019 agreement, but denies the Amended Petition provides the full and correct content and context of that agreement, and further denies the Amended Petition's allegations to the

extent they contradict the agreement. Defendant admits the agreement and court filings referenced in paragraph 59 speak for themselves. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 59, and such allegations are, therefore, denied.

60.     The allegations in paragraph 60 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 60 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 60 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

61.     Defendant admits on November 4, 2019, which was two weeks after the October 21, 2019 press release, McDermott released third-quarter 2019 results reporting a net loss of $1.887 billion or $10.37 per diluted share. Defendant denies the remaining allegations in paragraph 61.

62.     The allegations in paragraph 62 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 62 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

63.     Defendant admits that on November 4, 2019, McDermott filed a Form 10-Q for the third quarter 2019 and that the Form 10-Q speaks for itself. Defendant denies the

remaining allegations in the first sentence of paragraph 63 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 63 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

64.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 64 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

65.     Defendant admits that on April 14, 2021, the district court in the *Edwards* Lawsuit entered a Memorandum Opinion and Order (signed on April 13, 2021) denying each of two separate motions to dismiss filed by the defendants in that lawsuit. Defendant otherwise denies the remaining allegations contained in the first sentence of paragraph 65. The remaining allegations in paragraph 65 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the remaining allegations in paragraph 65 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 65 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

66.     Defendant admits that on November 4, 2019 McDermott filed a Form 10-Q for the third quarter 2019 and that the Form 10-Q speaks for itself. Defendant denies the remaining allegations in paragraph 66 as to Mr. Sussberg. Defendant denies McDermott had begun preparing a bankruptcy plan in late September 2019. Defendant denies

McDermott had decided as of November 4, 2019 to file for bankruptcy and further denies McDermott decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 66 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

67.     Defendant admits the allegations in the first sentence of paragraph 67. Defendant admits Mr. Spence resigned from McDermott on or about November 4, 2019. Defendant denies the existence of any scheme involving Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 67, and such allegations are, therefore, denied.

68.     Defendant admits on December 2, 2019 McDermott issued a press release entitled *McDermott to Access $350 Million Tranche B Financing Under Superpriority Senior Secured Credit Facility* and that the press release speaks for itself. Defendant admits the Amended Petition purports to paraphrase the press release, but denies the Amended Petition provides the full and correct content and context of that press release, and further denies the Amended Petition's allegations to the extent they contradict the press release. Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 68 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 68 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

69.     The allegations in paragraph 69 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the December 2, 2019 press release speaks for itself, and Defendant admits the declaration from John Castellano speaks for itself. Defendant admits the Amended Petition purports to quote John Castellano's declaration, but denies the Amended Petition provides the full and correct content and context of the declaration, and further denies the Amended Petition's allegations to the extent they contradict the declaration. Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 69 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 69 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

70.     Defendant admits the declaration from John Castellano speaks for itself. Defendant admits the Amended Petition purports to quote John Castellano's declaration, but denies the Amended Petition provides the full and correct content and context of the declaration, and further denies the Amended Petition's allegations to the extent they contradict the declaration. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott had decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 70 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

71.     The allegations in the second sentence of paragraph 71 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in paragraph 71 as to Mr. Sussberg. Defendant denies McDermott had decided as of December 26, 2019 to file for bankruptcy and further denies McDermott had decided it would be filing for bankruptcy prior to January 21, 2020. Defendant denies that as of December 26, 2019 a McDermott bankruptcy filing was being prepared. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 71 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

72.     Defendant denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 72 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 72 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

73.     Defendant admits on January 21, 2020 McDermott announced it was commencing a restructuring transaction to be implemented through a prepackaged Chapter 11 process and proposed cancellation of its common stock shares as part of the restructuring. Defendant admits McDermott's Chapter 11 petition was filed with this Court under Case Number 20-30336. Defendant denies the remaining allegations in paragraph 73.

74.     The allegations in the first two sentences of paragraph 74 constitute legal conclusion to which no answer is required. To the extent an answer is required, Defendant

denies the existence of any scheme involving Mr. Sussberg and denies the allegations in paragraph 74 as to Mr. Sussberg. Defendant admits the Amended Petition purports to vaguely represent the contents of numerous press releases, but denies the Amended Petition provides the full and correct content and context of the press releases, and further denies the Amended Petition's allegations to the extent they contradict the press releases. Defendant denies the remaining allegations in paragraph 74 as to Mr. Sussberg. Defendant denies McDermott had decided as of September 2019 to file for bankruptcy and further denies McDermott had decided it would be filing for bankruptcy prior to January 21, 2020. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 74 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

75.     Defendant admits that as of January 17, 2020, McDermott's stock price was approximately $.70 per share. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 75, and such allegations are, therefore, denied.

76.     Defendant admits McDermott stated in its second-quarter Form 10-Q for 2020 that it received a letter dated February 25, 2020, together with an accompanying subpoena, in which the office of the United States Attorney for the Southern District of Texas within the U.S. Department of Justice ("DOJ") notified McDermott that a Federal Grand Jury was conducting a criminal investigation and requested various documents, including cost forecasts and other financial-related information, related to the Cameron LNG project, and that McDermott intended to cooperate with the U.S. Attorney's office

and the Federal Grand Jury in the investigation, including by producing the documents requested. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 76, and such allegations are, therefore, denied.

77.     Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 77, and such allegations are, therefore, denied.

78.     Defendant admits on June 7, 2021, McDermott announced Mr. Dickson had resigned from his role as President and CEO. Defendant denies the remaining allegations in paragraph 78.

**Defendant Sussberg's Assault of Plaintiff**

79.     Defendant denies the allegations in the immediately preceding heading and denies the allegations in paragraph 79.

80.     Defendant admits and denies the allegations in the foregoing paragraphs as set forth above.

81.     Defendant admits the allegations in the first sentence of paragraph 81 and that the "Opposition and Objection to Confirmation of Debtor's Plan" speaks for itself. Defendant denies the remaining allegations in paragraph 81.

82.     Defendant denies the allegations in paragraph 82 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 82 as to the other defendants named in the Amended Petition or otherwise, and such allegations are, therefore, denied.

83.     Defendant admits the allegations in the first, second and third sentence of paragraph 83. Defendant is without sufficient knowledge or information to admit or deny

27

the allegations in the fourth sentence of paragraph 83, and such allegations are, therefore, denied. Defendant admits he sat in the first seat on the left side of the Debtors' counsel table, which is the seat he typically sits in for proceedings in this Court, and was the seat he had sat in at a prior hearing in the McDermott bankruptcy proceeding. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 83, and such allegations are, therefore, denied.

84.     Defendant admits he appeared as lead Kirkland & Ellis counsel for McDermott at the March 12, 2020 hearing and that part of his role as counsel for McDermott at the hearing was to seek confirmation of the plan for restructuring. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 84, and such allegations are, therefore, denied.

85.     Defendant admits plaintiff questioned multiple witnesses during the March 12, 2020 hearing, usually asking the same questions over and over again, even though the witnesses had addressed varying and different issues and topics. Defendant admits that he asked the plaintiff if he intended to keep asking these same questions of all witnesses, thereby taking up most of the Court's day, and that the plaintiff responded "yes." Defendant admits he shook his head in response, at which point plaintiff said, "suck my d***." Defendant admits that, being shocked by the comment, he replied, "you are disgusting." Defendant denies the remaining allegations in paragraph 85.

86.     Defendant admits he had never seen or spoken to plaintiff prior to the March 12, 2020 hearing. Defendant admits plaintiff asked Defendant for his name after the hearing as Defendant was leaving the restroom. Defendant admits he replied, "it does not matter

what my name is." Defendant admits that as Defendant began walking back towards the courtroom and away from plaintiff, plaintiff call Defendant a "pasty white f***" and said, "it will matter when I have my way with your wife," during which exchange Defendant and plaintiff were approximately ten feet apart. Defendant admits that upon hearing these statements he turned around and, when he was a few feet from plaintiff, asked him, "what did you say?" Defendant admits it is possible he repeated his earlier comment that plaintiff was "disgusting." Defendant denies calling plaintiff "a fool." Defendant lacks sufficient knowledge or information to admit or deny plaintiff's alleged age, and such allegations are, therefore, denied. Defendant denies the remaining allegations in paragraph 86.

87.     Defendant denies the allegations in paragraph 87.

88.     Defendant denies the allegations in paragraph 88.

89.     Defendant denies the allegations in paragraph 89.

90.     The allegations in paragraph 90 constitute a legal conclusion to which no answer is required. To the extent an answer is required, Defendant denies the allegations in paragraph 90.

91.     Defendant denies the allegations in paragraph 91.

92.     Defendant denies the allegations in paragraph 92.

93.     Defendant denies the allegations in paragraph 93.

94.     The allegations in paragraph 94 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations in paragraph 94.

95.     The allegations in paragraph 95 constitute a legal conclusion to which no answer is required. To the extent an answer is required, Defendant denies the allegations in paragraph 95.

96.     The allegations in paragraph 96 constitute legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the Amended Petition purports to assert claims against Defendant in his individual capacity, but Defendant denies the validity of plaintiff's claims in their entirety as to Defendant. Defendant admits the Amended Petition does not assert claims against McDermott or Kirkland & Ellis LLP. Defendant denies the remaining allegations in paragraph 96.

### COUNT 1
### COMMON LAW FRAUD
### (State Claim against all defendants)

97.     The preceding heading is merely a description or, alternatively, a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in the immediately preceding heading. Defendant admits and denies the allegations in the foregoing paragraphs as set forth above.

98.     Defendant denies the allegations contained in paragraph 98 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

99.     Defendant denies the allegations contained in paragraph 99 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the

allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

100.    Defendant denies the allegations contained in paragraph 100 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

101.    Defendant denies the allegations contained in paragraph 101 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

102.    Defendant denies the allegations contained in paragraph 102 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

103.    Defendant denies the allegations contained in paragraph 103 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

104.    Defendant denies the allegations contained in paragraph 104 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

105.    Defendant denies the allegations contained in paragraph 105 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

106.    Defendant denies the allegations contained in paragraph 106 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

107.    Defendant admits the Amended Petition purports to assert claims against Defendant in his individual capacity but denies the validity of plaintiff's claims in their entirety. Defendant denies the remaining allegations in paragraph 107 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

108.    Defendant denies the allegations contained in paragraph 108 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

109.    Defendant denies the allegations contained in paragraph 109 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

110.   Defendant denies the allegations contained in paragraph 110 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

111.   Defendant denies the allegations contained in paragraph 111 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

112.   Defendant denies the allegations contained in paragraph 112 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

113.   Defendant denies the allegations contained in paragraph 113 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

114.   Defendant denies the allegations contained in paragraph 114 as to Mr. Sussberg. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied.

115.   Defendant denies the allegations contained in paragraph 115 as to allegations concerning Mr. Sussberg's conduct. Defendant is without sufficient knowledge or

information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied. Defendant denies the remaining allegations in paragraph 115.

116.    Defendant denies the allegations contained in paragraph 116 as to allegations concerning Mr. Sussberg's conduct. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied. Defendant denies the remaining allegations contained in paragraph 116.

117.    Defendant denies the allegations contained in paragraph 117 as to allegations concerning Mr. Sussberg's conduct. Defendant is without sufficient knowledge or information to admit or deny the allegations as to the other defendants named in the Amended Petition, and such allegations are, therefore, denied. Defendant denies the remaining allegations contained in paragraph 117.

118.    Defendant denies the allegations contained in paragraph 118.

## COUNT 2
## ASSAULT
## INFLICTION OF BODILY INJURY
### (State Claim against defendant Sussberg)

119.    The preceding heading is merely a description or, alternatively, a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in the immediately preceding heading. Defendant admits and denies the allegations in the foregoing paragraphs as set forth above.

120.    Defendant denies the allegations contained in paragraph 120.

34

121.    Defendant denies the allegations contained in paragraph 121.

122.    Defendant denies the allegations contained in paragraph 122.

123.    Defendant denies the allegations contained in paragraph 123.

124.    Defendant denies the allegations contained in paragraph 124.

125.    Defendant denies the allegations in the first sentence of paragraph 125.
Defendant denies the allegations contained in the second sentence of paragraph 125 as to
alleged actions by Mr. Sussberg. Defendant denies the remaining allegations in paragraph
125.

### COUNT 3
### ASSAULT
### OFFENSIVE PHYSICAL CONTACT
### (State Claim against defendant Sussberg)

126.    The preceding heading is merely a description or, alternatively, a legal
conclusion to which no response is required. To the extent a response is required,
Defendant denies the allegations in the immediately preceding heading. Defendant admits
and denies the allegations in the foregoing paragraphs as set forth above.

127.    Defendant denies the allegations contained in paragraph 127.

128.    Defendant denies the allegations contained in paragraph 128.

129.    Defendant denies the allegations contained in paragraph 129.

130.    Defendant denies the allegations contained in paragraph 130.

131.    Defendant denies the allegations contained in paragraph 131.

132.    Defendant denies the allegations in the first sentence of paragraph 132.
Defendant denies the allegations contained in the second sentence of paragraph 132 as to

alleged actions by Mr. Sussberg. Defendant denies the remaining allegations in paragraph 132.

## COUNT 4
## ASSAULT
## THREAT OF BODILY INJURY
### (State Claim against defendant Sussberg)

133.    The preceding heading is merely a description or, alternatively, a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in the immediately preceding heading. Defendant admits and denies the allegations in the foregoing paragraphs as set forth above.

134.    Defendant denies the allegations contained in paragraph 134.

135.    Defendant denies the allegations contained in paragraph 135.

136.    Defendant denies the allegations contained in paragraph 136.

137.    Defendant denies the allegations contained in paragraph 137.

138.    Defendant denies the allegations in the first sentence of paragraph 138. Defendant denies the allegations contained in the second sentence of paragraph 138 as to alleged actions by Mr. Sussberg. Defendant denies the remaining allegations in paragraph 138.

## COUNT 5
## FALSE IMPRISONMENT
### (State Claim against defendant Sussberg)

139.    The preceding heading is merely a description or, alternatively, a legal conclusion to which no response is required. To the extent a response is required,

Defendant denies the allegations in the immediately preceding heading. Defendant admits and denies the allegations in the foregoing paragraphs as set forth above.

140.   Defendant denies the allegations contained in paragraph 140.

141.   Defendant denies the allegations contained in paragraph 141.

142.   Defendant denies the allegations contained in paragraph 142.

143.   Defendant denies the allegations contained in paragraph 143.

144.   Defendant denies the allegations in the first sentence of paragraph 144. Defendant denies the allegations contained in the second sentence of paragraph 144 as to alleged actions by Mr. Sussberg. Defendant denies the remaining allegations in paragraph 144.

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT

145.   Defendant denies the allegations contained in paragraph 145.

## JURY DEMAND

146.   Paragraph 146 constitutes a request for trial by jury to which no response is required.

## PRAYER

The remainder of the Amended Petition constitutes Plaintiff's request for relief to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought.

All allegations that have not been specifically admitted herein are denied.

## DEFENDANT JOSHUA SUSSBERG'S
## <u>DEFENSES AND AFFIRMATIVE DEFENSES</u>

Defendant Joshua Sussberg asserts the following defenses and affirmative defenses, without assuming the burden of proof when such burden would otherwise be on the Plaintiff, to the allegations in the Third Amended Petition. Defendant reserves the right to amend its answer to include additional defenses and affirmative defenses as this case proceeds.

1.      Plaintiff's claims against Defendant Joshua Sussberg are barred, in whole or in part, due to their failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## <u>PRAYER FOR RELIEF</u>

Defendant Joshua Sussberg respectfully requests that this Court enter judgment that Plaintiff takes nothing by his suit; that Plaintiff's claims against Defendant be dismissed with prejudice; that all relief prayed for by Plaintiff be denied; that final judgment be entered in favor of Defendant; and that Defendant be granted such other and further relief, both legal and equitable, to which he is entitled.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
David J. Beck
Texas Bar No. 00000070
dbeck@beckredden.com
Jacqueline M. Furlow
Texas Bar No. 24087551
jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT
JOSHUA A. SUSSBERG**

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2021, I caused a true and correct copy of the foregoing Defendant Joshua Sussberg's Original Answer, Defenses and Affirmative Defenses to Plaintiff's Third Amended Petition to be served via the Court's ECF notification system and via email and Federal Express to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle,
Spring, Texas 77379
michaelvandeelen@gmail.com

*/s/ Jacqueline M. Furlow*
Jacqueline M. Furlow

39

000599

United States Courts
Southern District of Texas
FILED

JUL 26 2021

Nathan Ochsner, Clerk of Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | Chapter 11 |
| | ) | |
| Reorganized Debtor(s). | ) | Case No. 20-30336 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| ————————————— | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS DAVID DICKSON, STUART SPENCE, AND SCOTT LAMB'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION (DOCUMENT 60); PROPOSED ORDER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

COMES NOW the Plaintiff, Michael Van Deelen, and for his Plaintiff's Response to Defendants David Dickson, Stuart Spence, and Scott Lamb's Motion to Dismiss Plaintiff's Third Amended Petition (Document 60) states as follows:

Plaintiff's Original Petition is a state law cause of action that was filed in state court but removed to Federal Court by the defendants.  The Plaintiff's Third Amended Petition (Document 57) is also a state law only cause of action filed in response to the Court's instruction on June 7, 2021, to file a third amended petition containing the state law claims plaintiff proposed filing with the Montgomery County, Texas, (state) District Court.

**Summary**

By their silence, the defendants have conceded that plaintiff was directly harmed by the fraudulent actions of the defendants complained of in plaintiff's Third Amended Petition and that the debtor was not at all harmed by the actions of the defendants complained of in plaintiff's Third Amended Petition.  The Court therefore has no choice but to remand this case to Montgomery County, Texas, District Court where it originated.

Given that this case must be remanded to state court, the arguments of the defendants concerning the sufficiency of plaintiff's common law fraud claim, although infirm, cannot be reached by this Court.

**It Is Premature To Hear The Defendants' Motion To Dismiss Plaintiff's Third Amended Petition Before Plaintiff's Motion To Remand (Document 4) Is Heard And Decided**

Plaintiff incorporates herein his Plaintiff's Motion to Remand (Document 4); his Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Petition

2

(Document 10) and his Plaintiff's Response to Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Document 59). Plaintiff also incorporates by reference herein the Memorandum Opinion and Order issued in the United States District Court for the Southern District of Texas, Houston Division, case number 4:18-CV-4330, styled *Edwards v. McDermott International*, signed 4/13/21 by the Honorable George C. Hanks, Jr., United States District Judge, denying defendant McDermott International's Motion to Dismiss and allowing discovery to proceed in that case.

The defendants filed their Notice of Removal in the instant action (Document 1) on July 17, 2020. Plaintiff was not served with said Notice until July 19, 2020.

Plaintiff filed his Motion to Remand the adversary proceeding back to Montgomery County, Texas, District Court on July 23, 2020. (Document 4).

On July 25, 2020, the defendants filed and served their Motion to Dismiss Plaintiff's Original Petition (Document 5).

On April 8, 2021, plaintiff filed and served his Plaintiff's First Amended Petition (Document 50).

On May 3, 2021, the defendants filed and served their Motion to Dismiss Plaintiff's First Amended Petition (Document 51).

On 06/29/2021, plaintiff filed his Plaintiff's Third Amended Petition (Document 57).

On 07/12/21, defendant Sussberg filed and served his Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions

(Document 59) and his Notice of Appearance, Request for Service of Papers (Document 58).

On 07/12/21, defendants Dickson, Spence and Lamb filed and served their Defendants David Dickson, Stuart Spence, and Scott Lamb's Motion to Dismiss Plaintiff's Third Amended Petition (Document 60).  ("Defendants' Motion to Dismiss").

Plaintiff's Motion to Remand must be heard before the Defendants' Motion to Dismiss because:

1)  Plaintiff's Motion to Remand challenges this Court's jurisdiction to hear this adversary proceeding.  This challenge must be addressed before the Court hears the Defendants' Motion to Dismiss.  The Court cannot lawfully hear the Defendants' Motion to Dismiss if it does not have jurisdiction over this adversary proceeding.  The Supreme Court has stated that jurisdiction must be considered at the outset of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (majority opinion) (quoting *United States v. Troescher*, 99 F.3d 933, 934 n. 1 (9th Cir.1996)).

In *Steel, Supra*, the U.S. Supreme Court stated:

"this Court has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit. For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an ultra vires act."

2)   The Defendants' Motion to Dismiss relies on a federal law argument (including Rule 12(b)(6) and the Rule9(b) enhanced pleading requirement for fraud) even before this Court has determined if it must, or will, remand this adversary case to state court to decide state law-only causes of action.

4

## **This Court Does Not Have Jurisdiction To Hear The Defendants' Motion To Dismiss**

Under 28 U.S.C. §1478(a) "any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce [a] . . . regulatory or police power" may be removed "if the bankruptcy courts have jurisdiction over such claim or cause of action."

28 U.S.C. Section 1478(a) does not permit removal of this action due to lack of Jurisdiction.  Because removal is not permitted, this Court does not have jurisdiction to hear the Defendants' Motion to Dismiss.

McDermott International's Plan had been confirmed and the Effective Date of the Plan occurred on June 30, 2020.  Plaintiff received notice of these events.  On July 17, 2020, defendants Dickson, Spence and Lamb (hereinafter, 'defendants') filed their Notice of Removal in this Court.

The Fifth Circuit, in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987), adopted the "related to" jurisdictional test articulated by the Third Circuit, which enjoys broad support, that looks at "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In applying the test, the Fifth Circuit looked to see whether the proceeding was "sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334," which is to say that "plaintiff's claims must affect the estate, **not just the debtor** (emphasis added)." *Id.* at 93-94.

5

The Fifth Circuit further fleshed out what it means to "affect the estate" in

*Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291 (5th

Cir. 2019).  In that case, the Fifth Circuit classified injuries as "direct" or "derivative".

In *Meridian*, the Fifth Circuit stated:

"Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. Id. at 584. If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. Id.; see also 11 U.S.C. § 541(a)(1). In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. *Seven Seas*, 522 F.3d at 584.

As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate. Id. at 584 (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). But even when the conduct harms the debtor, the creditor may have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. *Seven Seas*, 522 F.3d at 585, 590; Educators Trust, 25 F.3d at 1284–85."

Established Fifth Circuit case law classifies fraud as a direct injury that is beyond

the jurisdiction of the Court.  See, for example, *In re Seven Seas Petroleum*, 522 F.3d

575, 584-85 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d at 1284 (citing

*S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d

1142 (5th Cir. 1987)); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir.

1994).

During the March 10, 2021, hearing in this action, the Court (Judge Jones) stated

on the record that fraud is a direct injury.

The mere fact that there may be common issues of fact between a civil proceeding

and a controversy involving the bankruptcy estate does not bring the matter within the

scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction.

See, for example, *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d

276 (1976). "[J]urisdiction over nonbankruptcy controversies with third parties who are

otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist."

*In re Haug,* 19 B.R. 223, 224-25 (Bankr.D.Ore.1982); See also *In re McConaghy,* 15

B.R. 480, 481 (Bankr.E.D.Va.1981). "Bankruptcy court lacks jurisdiction to decide

disputes between third parties in which the estate of the debtor has no interest."

**Plaintiff's Third Amended Petition has pleaded that his injuries from the**

**defendants' fraud were direct injuries and the defendants in their Motion to Dismiss**

**have not challenged this assertion.  The defendants have also not claimed in their**

**Motion to Dismiss that plaintiff's injuries were derivative or that the debtor was**

**harmed in any way by the fraudulent actions of the defendants against the plaintiff.**

**Mandatory Abstention Pursuant To 28 U.S.C. Section 1334(c)(2) Applies To This**
**Action**
Even if this Court had jurisdiction to hear this removed case, remand would be

mandatory under 28 U.S.C. Section 1334(c)(2).

The key distinction between mandatory abstention and equitable or discretionary

remand is that mandatory abstention applies "only to non-core proceedings--that is,

proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a

case under title 11.'" *In re Gober*, 100 F.3d at 1206 (comparing 28 U.S.C. §§ 157(b)(1) &

1334(c)(2)); *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10; *Ramirez*,

413 B.R. at 626-27. *Cf. Stern*, 131 S. Ct. at2618.

Section 1334(c)(2) provides for mandatory abstention when:

"[u]pon timely motion of a party in a proceeding based upon a State law claim or
State law cause of action, related to a case under title 11 but not arising under title
11 or arising in a case under title 11, with respect to which an action could not

7

have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

A court must abstain from hearing the state law claim at issue when all of the following factors are met:

(1) a motion has been timely filed requesting abstention;
(2) the cause of action is essentially one that is premised on state law;
(3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under title 11;
(4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b);
(5) an action has been commenced in state court; and
(6) the action could be adjudicated timely in state court.

*J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10 (citing to *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997); *In re Gober*, 100 F.3d at 1206; *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782-83 (E.D. Tex. 2001); *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001); *Chickaway v. Bank One Dayton, N. A.*, 261 B.R. 646, 649 (S.D. Miss. 2001); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1999)).

The determination of the status of a cause of action is rooted in the list of core proceedings in 28 U.S.C. § 157(b)(2). Although Section 157(b)(2) is non-exhaustive, that does not mean that every cause of action that can be categorized as a "core proceeding" under § 157(b)(2) should be included, given decisions such as *Marathon* and *Stern*. *Ramirez*, 413 B.R. at 627; *see also Stern*, 131 S. Ct. at 2618; *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

Plaintiff has satisfied the first factor given above in that he filed this pleading on July 23, 2020, four days after he was served the Defendants' Notice of Removal.

Plaintiff has satisfied the second, third and fifth factors given above in that the Montgomery County, Texas, District Court suit against the defendants is entirely premised on Texas state law and involves only claims of Common Law Fraud and does not involve federal law.

Plaintiff has satisfied the fourth factor given above because there is no federal subject matter jurisdiction over plaintiff's state law claims absent jurisdiction pursuant to Section 1334(b) and diversity of citizenship is lacking.

The sixth and final factor looks to whether "the action could be adjudicated timely in state court." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10. The standard for timely adjudication in state court does not place a burden upon the movant to show a "*more timely* adjudicat[ion] in state court, but only that the matter can be timely adjudicated…" *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13.  However, plaintiff addresses this 'burden'.

On information and belief, Montgomery County is 'open' and not subject to a shelter-in-place order.  The Montgomery County District Court Clerk's office is currently fully staffed and open to the public during the COVID-19 pandemic.  The Clerk's office dockets cases and events on a normal basis.  Court 284 (Judge Bays), where the defendants' case was removed from, is open and holding jury trials.
There is no indication that the Montgomery County Court or its staff is unable to efficiently and normally handle its case load during the pandemic.  Plaintiff is approved and is and has been able to electronically file documents in Montgomery County District Court.  The Montgomery County Court, including Court 284, hears cases on a full-time

basis in Montgomery County.  Montgomery County held its annual rodeo between April
9 and April 18, 2021.

On the other hand, on information and belief, Harris County is on lock-down
status.  Federal in-court appearances have been greatly reduced or deferred.  The federal
Clerk's office is operating with a skeleton staff.  The docketing of federal cases is being
done remotely.  Most court employees are working from home.  The 2021 Harris County
rodeo was cancelled due to Covid.  Plaintiff has been prohibited from electronically filing
documents in the McDermott bankruptcy case or this adversary proceeding by
bankruptcy court Judge David Jones.  Furthermore, the Southern District of Texas
Bankruptcy Court is SWAMPED with cases as Houston and Texas companies operating
in the oil patch and other industries continue to file for bankruptcy at an alarming rate.
The bankruptcy court judge overseeing this action, Judge Jones, is only hearing Houston
cases (including the instant action) on a part-time basis as he divides his time between
hearing separate cases in Houston, Corpus Christi and Laredo.

"[The] Covid-19 [pandemic] ....does not weigh in favor of retaining federal
jurisdiction".  Southern District of Texas Chief Judge Lee H. Rosenthal in *American
General Life Insurance Company v. Schahin II Finance Company (SPV) Limited*, Civil
Action No. H-19-4025, U.S. District Court, S.D. Texas, Houston Division (June 16,
2020).

The above illustrates that there is an exceedingly high likelihood that plaintiff's
state-law case against the defendants will be adjudicated much more quickly in
Montgomery County District Court than it would be in the Southern District of Texas
Bankruptcy Court.  This is amplified by the fact that state law causes of action against the

individual defendants were not raised during the pendency of the bankruptcy proceedings. If the bankruptcy court were to hear plaintiff's state law claims against the defendants, it would have to "start fresh" with a new case and would not have an advantage because it had previously heard the debtor's bankruptcy case.

Furthermore, since the defendants have rendered no evidence to indicate that the state court could *not* adjudicate the matter in a timely fashion, the Court must presume that the state court will timely adjudicate the matter, given the immense policy interest in comity. *In re Doctors Hosp.*, 351 B.R. at 846 n.29. "While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not necessary where the movant is contesting the removal of his own state action." *In Re Treyson Dev., Inc.,* No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *Abadie v. Poppin*, 154 B.R. 86, 90 (N.D. Cal. 1993)).

Given the above, plaintiff has satisfied the sixth factor that the action could be adjudicated timely (and more timely) in state court.

**Plaintiff's Montgomery County (State-Law) Claims Stand**

As noted above, on 6/7/21, the Court directed plaintiff to file a third amended petition containing the state law claims plaintiff proposed filing with the Montgomery County, Texas, (state) District Court. Plaintiff has done that. Plaintiff's fraud claim is a valid state law claim which is beyond the jurisdiction of the Bankruptcy Court because it is a direct claim, as seen above.

Texas Rules Civ. Proc. Rule 45(b) states that pleadings shall

"**consist of a statement in plain and concise language of the plaintiff's cause of action** or the defendant's grounds of defense. **That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole.**" (Emphasis added.)

Rule 45 also states that "All pleadings shall be construed so as to do substantial justice."

Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). Rule 47 of the Texas Rule of Civil Procedure provides a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved . . . ." Tex. R. Civ. P. 47. "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). The test of fair notice is whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant. *Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). **The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. Id.** (Emphasis added.)

As seen in Plaintiff's Third Amended Petition, the defendants made numerous false statements of fact to plaintiff in furtherance of their scheme. Some of the defendants' statements may be construed as actionable opinion. Plaintiff's Third Amended Petition alleges that the defendants made representations to plaintiff that they knew were

false. An opinion may support a fraud claim if the defendant knows the statement of opinion is false. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Allen v. Devon Entergy Holdings, L.L.C.*, 367 S.W.3d 355, 370 (Tex.App. - Houston [1st Dist.] 2012).

Plaintiff's Third Amended Petition alleges that the defendants made representations to plaintiff based on false statements of fact. An opinion may support a fraud claim if the opinion is based on or supported with false statements of fact. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995); *Trenholm*, supra; *Allen*, supra. If an opinion is intertwined with misstatements of fact, the opinion amounts to a false representation of fact. *Trenholm*, supra; *Allen*, supra.

An opinion about the happening of a future event may be actionable if the defendant (1) purports to have special knowledge of facts that will occur in the future, (2) has present knowledge that the statement is false, or (3) offers an opinion based on facts known to be false. *Trenholm*, supra, (element 1); *Nancarrow v. Whitmer*, 463 S.W.3d 243, 252 (Tex.App. - Waco 2015) (element 2); *Guevara v. Lackner*, 447 S.W.3d 566, 577 (Tex.App. - Corpus Christi 2014) (elements 2, 3). Plaintiff's Third Amended Petition is actionable against the defendants on all three elements.

A false promise of future performance is actionable as a false representation when the defendant had no intention of performing it. *Aquaplex, Inc. v. Rancho La Valencia, Inc.* 297 S.W.3d 768, 774 (Tex.2009).

Even though the defendants communicated with plaintiff through press releases, quarterly and annual reports and other documents, they are still liable to plaintiff for their fraudulent scheme. A plaintiff can be a member of a class of people who relied on the defendants' misrepresentations. Even if a defendant does not know the specific identity

of a plaintiff, the defendant can be held liable for fraud if the defendant had information that would have led a reasonable person to believe that the misrepresentation would reach the class of people (i.e. - the investing public) the plaintiff belongs to, and that the class would rely on the misrepresentation. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573 (Tex.2001).

Plaintiff's Third Amended Petition alleges the elements of joint enterprise in its allegation that the defendants participated in a "scheme". Vicarious liability can be imposed on a defendant under the theory of joint enterprise (e.g. - the defendants' "scheme"). *Blackburn v. Columbia Med. Ctr.* 58 S.W.3d 263, 272-73 (Tex.App. - Fort Worth 2001, pet. denied).

The concept of piercing the corporate veil does not apply to this action as it applies in holding an individual liable for a cause of action that otherwise could have been brought against only the corporation. *Dodd V. Savino*, 426 S.W.3d 275, 291 (Tex.App. - Houston [14th Dist.] 2014, no pet.). In an action to hold a corporate officer liable for her own tortious conduct, the corporate veil is not required to be pierced. *Alexander v. Kent,* 480 S.W.3d 676, 698 (Tex,App. - Fort Worth 2015, no pet.).

Texas Common Law Fraud (Fraudulent Misrepresentation) elements are:

1. The defendant made a representation to the plaintiff.

2. The representation was material.

3. The representation was false.

4. When the defendant made the representation, the defendant

      (1)  knew the representation was false, or

(2) made the representation recklessly, as a positive assertion, and without

knowledge of the truth.

5. The defendant made the representation with the intent that the plaintiff act on it.

6. The plaintiff relied on the representation.

7. The representation caused the plaintiff injury.

See, for example, *JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648,

653 (Tex.2018).

In their Motion to Dismiss, the defendants claim that there must be a duty to

disclose information before a claim for fraud is valid. They are incorrect. The

defendants are confusing fraud by nondisclosure with fraudulent misrepresentation

(commonly referred to as 'common law fraud'), which plaintiff sues the defendants for in

state court. The elements of fraudulent misrepresentation do not include a duty to

disclose (or the existence of a fiduciary duty). See above. *JPMorgan Chase Bank v.*

*Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex.2018).

Plaintiff's Third Amended Petition contains plain and concise statements stating

the elements of common law fraud that allow the defendants to ascertain the nature and

the basic issues of the controversy and the testimony probably relevant. **Nowhere in the**

**Defendants' Motion to Dismiss Plaintiff's Third Amended Petition do the**

**defendants claim that plaintiff's state-law claim for common law fraud is**

**insufficiently pleaded**. In fact, the defendants' Motion to Dismiss does not even address

plaintiff's state common law fraud (fraudulent misrepresentation) claim. Since the

defendants have not challenged plaintiff's state-law common law fraud claim, this claim

must stand. (Even if the Court could hear it. See below.)

## Federal Rules Of Civil Procedure Rules 12(b)(6) and 9(b)

As noted herein, plaintiff filed and served his Plaintiff's Third Amended Petition (Document 57) in response to the (Federal Bankruptcy) Court's instruction on June 7, 2021, to file a third amended petition containing the state law claims plaintiff proposed filing with the Montgomery County, Texas, (state) District Court.  The Court did not instruct plaintiff to include or plead federal claims (e.g. - complying with Fed. Rules Civ. Proc. Rules 12(b)(6) and 9(b)) in his Plaintiff's Third Amended Petition.

Disregarding the Court's instruction, the defendants argue in their Defendants' Motion to Dismiss that Plaintiff's Third Amended Petition should be dismissed because it fails to satisfy **federal** Rule 12(b)(6) and the heightened **federal** pleading standard of Rule 9(b) which are not required in Texas state-law claims.

As discussed herein, this Court does not have jurisdiction over this case and this case must be remanded to Montgomery County, Texas, District Court where it originated and where the Federal Rules of Civil Procedure do not apply.

## Exhibit 1

Exhibit 1 is a communication from Defendant Dixon that plaintiff was given by a McDermott employee between November 5 and November 7, 2019.  Exhibit 1 is attached hereto so that it may be added to the record in this case.

## Conclusion

By their silence, the defendants have conceded that plaintiff was directly harmed by the fraudulent actions of the defendants complained of in plaintiff's Third Amended Petition and that the debtor was not at all harmed by the actions of the defendants

complained of in plaintiff's Third Amended Petition.  The Court therefore has no choice

but to remand this case to Montgomery County, Texas, District Court where it originated.

Given that this case must be remanded to state court, the arguments of the

defendants concerning the sufficiency of plaintiff's common law fraud claim, although

infirm, cannot be reached by this Court.

WHEREFORE, Plaintiff respectfully moves this Court to deny in its entirety the

Defendants' Motion to Dismiss Plaintiff's Third Amended Petition and to remand this

action to Montgomery County, Texas, District Court.

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this ___26___ day of July, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.


/s/ Michael Van Deelen
Michael Van Deelen

18

000617

# EXHIBIT 1

000618

 

MESSAGE FROM
# DAVID DICKSON
PRESIDENT AND CHIEF EXECUTIVE OFFICER

November 4, 2019

## Q3 Financial and Operational Results

To all McDermott employees:

This morning we announced our Q3 2019 financial and operational results which reflected solid operational performance across the majority of our business. We added a number of new project awards to our record backlog, including the Ichthys Phase 2a Gas Field Development Project in Australia and a large LNG tank project on the U.S. Gulf Coast. The markets we work in remain strong, with a revenue pipeline of nearly $90 billion in opportunities, a near record level. The demand for McDermott's talents and capabilities, and our ability to deliver for our customers is a true testament to the hard work and dedication of all the talented employees across McDermott.

While we showed sound operating performance in most of our segments in the quarter, we reported a large net loss due largely to non-cash accounting charges. Basically, this means we took a charge that is not related to our operations and that does not impact our cash situation. Additionally, our capital structure continues to be pressured by certain legacy projects, which contributed to the loss. We continue to work through the legacy backlog, with most of the projects nearing completion by the mid-point of 2020. We also have implemented additional risk mitigation measures on all projects to pave the way for us to deliver consistent margin performance through the application of the One McDermott Way.

Taking a step back, it is very important to make the distinction between our capital structure and our day-to-day business. We have a very strong fundamental operating business. The majority of our business segments are performing well, and we are delivering for our customers. As importantly, we are winning new business. However, our balance sheet is challenged. We are working closely with our lenders to address those challenges in order to position the company for long-term success. The fact that our lenders were willing to provide us with a $1.7 billion financing agreement signals their confidence in our underlying business and our ability to achieve a long-term balance sheet solution.

*In short: we are working toward a capital structure that matches and supports the strength of our operating business.*

Even though our discussions with lenders are progressing, and we have implemented a number of actions to

Even though our discussions with lenders are progressing, and we have implemented a number of actions to evaluate strategic and capital structure alternatives, there is still more work to be done. We will continue to keep you informed as best we can on any significant developments.

As this process progresses, you will see continued media speculation about our business and issues related to our capital structure efforts. I know this can be concerning, but I ask you to stay focused on your day-to-day responsibilities – each of us doing the individual work that collectively makes McDermott such an exceptional company.

We have much to look forward to as we continue to see the benefits of the combination of McDermott and CB&I. Lummus Technology's recent award from Saudi Aramco and Total for the Amiral Complex is one of a growing number of revenue synergies that are a direct result from the combination. Our existing customer relationships continue to thrive as we are able to provide additional value, which in turn provides additional opportunities for our employees.

Thank you for your continued hard work. We remain confident the steps we are taking will position us for long-term success.

David

This information is confidential and should not be distributed outside of the company.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER REMANDING THIS CASE TO MONTGOMERY COUNTY, TEXAS, DISTRICT COURT AND DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION

The Court, having considered the Defendants' Motion to Dismiss Plaintiff's Third Amended Petition and Plaintiff's Motion to Remand this case to Montgomery County, Texas, District Court, as well as the evidence presented, finds that the Defendants' Motion to Dismiss be DENIED and the Plaintiff's Motion to Remand be GRANTED. The Court:

ORDERS that the Defendants' Motion to Dismiss Plaintiff's Third Amended Petition is denied.

ORDERS that the Plaintiff's Motion to Remand this case to Montgomery County, Texas, District Court is granted.

_____

JUDGE
UNITED STATES BANKRUPTCY COURT

000622

United States Courts
Southern District of Texas
FILED

JUL 26 2021

Nathan Ochsner, Clerk of Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re:                                              )
                                                    )
MCDERMOTT INTERNATIONAL, INC, *et al*               )    Chapter 11
                                                    )
Reorganized Debtor(s).                              )    Case No. 20-30336
                                                    )
                                                    )    (Jointly Administered)
_____                   )
                                                    )
MICHAEL VAN DEELEN                                  )
                                                    )
Plaintiff,                                          )    Adv. Proc. No. 20-3309
                                                    )
v.                                                  )
                                                    )
DAVID DICKSON,                                      )
and STUART SPENCE,                                  )
and SCOTT LAMB,                                     )
and 10 JOHN/JANE DOES                               )
                                                    )
Defendants.                                         )

**PLAINTIFF'S RESPONSE TO DEFENDANT JOSHUA SUSSBERG'S
MOTON TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION
AND FOR SANCTIONS (DOC. 59); NOTICE OF HEARING;
PROPOSED ORDER**

**This motion seeks an order that may adversely affect you. If you oppose the motion,
you should immediately contact the moving party to resolve the dispute. If you and
the moving party cannot agree, you must file a response and send a copy to the
moving party. You must file and serve your response within 21 days of the date this
was served on you. Your response must state why the motion should not be granted.
If you do not file a timely response, the relief may be granted without further notice
to you. If you oppose the motion and have not reached an agreement, you must
attend the hearing. Unless the parties agree otherwise, the court may consider
evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

1

COMES NOW Michael Van Deelen and for his Response to Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Doc. 59) states as follows:

**Summary**

By his silence, defendant Sussberg has conceded that plaintiff was directly harmed by Sussberg's tortuous (fraud and assault) actions against the plaintiff complained of in plaintiff's Third Amended Petition and that the debtor was not at all harmed by the Sussberg's actions complained of in plaintiff's Third Amended Petition. The Court therefore has no choice but to remand this case to Montgomery County, Texas, District Court where it originated.

Given that this case must be remanded to state court, the arguments of Sussberg concerning the sufficiency of plaintiff's common law fraud and assault claims, although infirm, cannot be reached by this Court.

Defendant Sussberg's Motion for Sanctions, once denied by the Court (document 719, Case Number 20-30336), is repetitive, retaliatory and without merit.

**Confusion Over Service of Sussberg**

On 06/07/2021, this Court directed plaintiff to file an amended petition listing only the state claims plaintiff was going to address in

2

Montgomery County, Texas, state court.  Plaintiff understood this instruction to mean that he was to prepare a Montgomery County, Texas, District Court petition and file this state petition with this Court.

Accordingly, plaintiff prepared a Montgomery County, Texas, District Court petition naming Sussberg as a defendant and filed this state petition with this Court (Doc. 57).  The federal court filing (Doc. 57) did not list Sussberg as a federal court defendant.  However, the attachment to the filing, the proposed Montgomery County, Texas, District court state filing listed Sussberg as a defendant in the state court action plaintiff was proposing to file in Montgomery County.  See Doc. 57.

Because plaintiff's intention was not to sue Sussberg in federal court, he did not serve Doc. 57 on Sussberg.

To "bring suit" within the applicable limitations period, a plaintiff must both file suit within that period and use due diligence to serve the defendant with process. See, e.g., *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009); *Proulx*, 235 S.W.3d at 215-16; *Sharp*, 500 S.W.3d at 119. Plaintiff neither intentionally filed suit in federal court against Sussberg or served him plaintiff's proposed amended state court petition (Doc. 57).

Subsequently to plaintiff filing his Doc. 57, he was contacted by Mr. David Beck who represented himself as Sussberg's attorney.  Plaintiff

explained to Mr. Beck that he was not filing suit against Sussberg in federal court and that plaintiff therefore did not want to serve Sussberg until after the scheduled August 9, 2021, federal court hearing on plaintiff's state court petition (Doc. 57). Mr. Beck, agreeing with plaintiff's plan, stated in a June 19, 2021, email: 'I am willing to agree that by receiving your filed pleading Mr. Sussberg is still not yet served.' Plaintiff subsequently emailed Beck and affirmed his plan to sue Sussberg in state, not federal, court. Exhibit A. The email exchange caused plaintiff to believe that he and Beck had an understanding that Sussberg would not be served the state complaint until the case wound up in state court. Plaintiff did not serve a copy of his pleading (Doc. 57) on Beck, Sussberg or anyone else.

On July 12, 2021, Beck filed his Notice of Appearance, Request for Service of Papers (sic) (Doc. 58). In Doc. 58, acknowledging that he had not been served plaintiff's complaint, Beck asked to be served a copy of plaintiff's complaint (Doc. 57). On the same day, July 12, 2021, even though he was aware that plaintiff's intention was to sue Sussberg in state, not federal, court and in violation of his (apparent) agreement with plaintiff to wait for service until the case wound up in state court, Beck filed Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Doc. 59) in this Court.

**It Is Premature To Hear Sussberg's Motion To Dismiss Plaintiff's Third Amended Petition (Document 59) Before Plaintiff's Motion To Remand (Document 4) Is Heard And Decided**

Plaintiff incorporates herein his Plaintiff's Motion to Remand (Document 4); his Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Petition (Document 10); his Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Petition (Doc. 51); and his Plaintiff's Response to the Motion of Defendants David Dickson, Stuart Pence, and Scott Lamb to Dismiss Plaintiff's Third Amended Petition. Plaintiff also incorporates by reference herein the Memorandum Opinion and Order issued in the United States District Court for the Southern District of Texas, Houston Division, case number 4:18-CV-4330, styled *Edwards v. McDermott International*, signed 4/13/21 by the Honorable George C. Hanks, Jr., United States District Judge, denying defendant McDermott International's Motion to Dismiss and allowing discovery to proceed in that case.

Defendants Dickson, Spence and Lamb filed their Notice of Removal in the instant action (Document 1) on July 17, 2020. Plaintiff was not served with said Notice until July 19, 2020. Plaintiff filed his Motion to Remand the adversary proceeding back to Montgomery County, Texas, District Court on July 23, 2020. (Document 4).

On July 25, 2020, defendants Dickson, Spence and Lamb filed and served their Motion to Dismiss Plaintiff's Original Petition (Document 5).

On April 8, 2021, plaintiff filed and served his Plaintiff's First Amended Petition (Document 50).

On May 3, 2021, defendants Dickson, Spence and Lamb filed and served their Motion to Dismiss Plaintiff's First Amended Petition (Document 51).

On 06/29/2021, plaintiff filed his Plaintiff's Third Amended Petition (Doc. 57).

On 07/12/21, defendant Sussberg filed and served his Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Doc. 59) and his Notice of Appearance, Request for Service of Papers (Doc. 58).

On 07/12/21, defendants Dickson, Spence and Lamb filed and served their Motion to Dismiss Plaintiff's Third Amended Petition (Doc. 60).

Plaintiff's Motion to Remand must be heard before Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition ("Sussberg's Motion to Dismiss") because:

1) Plaintiff's Motion to Remand challenges this Court's jurisdiction to hear this adversary proceeding. This challenge must be addressed before the

Court hears Sussberg's Motion to Dismiss. The Court cannot lawfully hear

Sussberg's Motion to Dismiss if it does not have jurisdiction over this

adversary proceeding. The Supreme Court has stated that jurisdiction must

be considered at the outset of a case. *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (majority

opinion) (quoting *United States v. Troescher*, 99 F.3d 933, 934 n. 1 (9th

Cir.1996)).

     In *Steel, Supra*, the U.S. Supreme Court stated:

"this Court has held that, without proper jurisdiction, a court cannot proceed
at all, but can only note the jurisdictional defect and dismiss the suit. See, *e.
g., Capron* v. *Van Noorden,* 2 Cranch 126; *Arizonans for Official English* v.
*Arizona,* 520 U. S. 43, 73. *Bell* v. *Hood, supra; National Railroad
Passenger Corp.* v. *National Assn. of Railroad Passengers,* 414 U. S. 453,
465, n. 13; *Norton* v. *Mathews,* 427 U. S. 524, 531; *Secretary of Navy* v.
*Avrech,* 418 U. S. 676, 678 *(per curiam); United States* v. *Augenblick,* 393
U. S. 348; *Philbrook* v. *Glodgett,* 421 U. S. 707, 721; and *Chandler* v.
*Judicial Council of Tenth Circuit,* 398 U. S. 74, 86-88, distinguished. For a
court to pronounce upon a law's meaning or constitutionality when it has no
jurisdiction to do so is, by very definition, an ultra vires act. Pp. 93-102."

     2)   Sussberg's Motion to Dismiss relies on a federal law argument

(including Rule 12(b)(6) and the Rule9(b) enhanced pleading requirement

for fraud) even before this Court has determined if it must, or will, remand

this adversary case to state court to decide state law-only causes of action.

**This Court Does Not Have Jurisdiction To Hear Sussberg's Motion To Dismiss**

Under 28 U.S.C. §1478(a) "any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce [a] . . . regulatory or police power" may be removed "if the bankruptcy courts have jurisdiction over such claim or cause of action."

28 U.S.C. Section 1478(a) does not permit removal of this action due to lack of Jurisdiction.  Because removal is not permitted, this Court does not have jurisdiction to hear the Defendants' Motion to Dismiss.

McDermott International's Plan had been confirmed and the Effective Date of the Plan occurred on June 30, 2020.  Plaintiff received notice of these events.  On July 17, 2020, defendants Dickson, Spence and Lamb (hereinafter, 'defendants') filed their Notice of Removal in this Court.

The Fifth Circuit, in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987), adopted the "related to" jurisdictional test articulated by the Third Circuit, which enjoys broad support, that looks at "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In applying the test, the Fifth Circuit looked to see whether the proceeding was "sufficiently related

8

to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334," which is to say that "plaintiff's claims must affect the estate, **not just the debtor** (emphasis added)." *Id.* at 93-94.

The Fifth Circuit further fleshed out what it means to "affect the estate" in *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291 (5th Cir. 2019). In that case, the Fifth Circuit classified injuries as "direct" or "derivative".

In *Meridian*, the Fifth Circuit stated:

"Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. Id. at 584. If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. Id.; see also 11 U.S.C. § 541(a)(1). In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. *Seven Seas*, 522 F.3d at 584.

As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate. Id. at 584 (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. *Seven Seas*, 522 F.3d at 585, 590; Educators Trust, 25 F.3d at 1284–85."

Established Fifth Circuit case law classifies fraud as a direct injury that is beyond the jurisdiction of the Court. See, for example, *In re Seven*

*Seas Petroleum*, 522 F.3d 575, 584-85 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d at 1284 (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987)); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994).

During the March 10, 2021, hearing in this action, the Court (Judge Jones) stated on the record that fraud is a direct injury.

Furthermore, assault is a willful, direct injury that is not covered by the Plan's Exculpation provision.

The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction. See, for example, *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). "[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug,* 19 B.R. 223, 224-25 (Bankr.D.Ore.1982); See also *In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981). "Bankruptcy court lacks jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest."

**Plaintiff's Third Amended Petition has pleaded that his injuries from Sussberg's fraud and assault were direct injuries and Sussberg in his Motion to Dismiss has not challenged this assertion. Sussberg has also not claimed in his Motion to Dismiss that plaintiff's injuries were derivative or that the debtor was harmed in any way by Sussberg's alleged tortuous actions (fraud and assault) against the plaintiff.**

## Mandatory Abstention Pursuant To 28 U.S.C. Section 1334(c)(2) Applies To This Action

Even if this Court had jurisdiction to hear this removed case, remand would be mandatory under 28 U.S.C. Section 1334(c)(2).

The key distinction between mandatory abstention and equitable or discretionary remand is that mandatory abstention applies "only to non-core proceedings--that is, proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a case under title 11.'" *In re Gober*, 100 F.3d at 1206 (comparing 28 U.S.C. §§ 157(b)(1) & 1334(c)(2)); *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10; *Ramirez*, 413 B.R. at 626-27. *Cf. Stern*, 131 S. Ct. at 2618.

Section 1334(c)(2) provides for mandatory abstention when:

"[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States

11

absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

A court must abstain from hearing the state law claim at issue when all of the following factors are met:

(1) a motion has been timely filed requesting abstention;
(2) the cause of action is essentially one that is premised on state law;
(3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under title 11;
(4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b);
(5) an action has been commenced in state court; and
(6) the action could be adjudicated timely in state court.

*J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10 (citing to *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997); *In re Gober*, 100 F.3d at 1206; *Broyles v. U.S.Gypsum Co.*, 266 B.R. 778, 782-83 (E.D. Tex. 2001); *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001); *Chickaway v. Bank One Dayton, N. A.*, 261 B.R. 646, 649 (S.D. Miss. 2001); *WRTCreditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1999)).

The determination of the status of a cause of action is rooted in the list of core proceedings in 28 U.S.C. § 157(b)(2). Although Section 157(b)(2) is non-exhaustive, that does not mean that every cause of action that can be categorized as a "core proceeding" under § 157(b)(2) should be included,

given decisions such as *Marathon* and *Stern*. *Ramirez*, 413 B.R. at 627; *see also Stern*, 131 S. Ct. at 2618; *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

Plaintiff has satisfied the first factor given above in that he filed this pleading on July 23, 2020, four days after he was served the Defendants' Notice of Removal.

Plaintiff has satisfied the second, third and fifth factors given above in that the Montgomery County, Texas, District Court suit against the defendants is entirely premised on Texas state law and involves only claims of Common Law Fraud and Assault and does not involve federal law.

Plaintiff has satisfied the fourth factor given above because there is no federal subject matter jurisdiction over plaintiff's state law claims absent jurisdiction pursuant to Section 1334(b) and diversity of citizenship is lacking.

The sixth and final factor looks to whether "the action could be adjudicated timely in state court." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10. The standard for timely adjudication in state court does not place a burden upon the movant to show a "*more timely* adjudicat[ion] in state court, but only that the matter can be timely adjudicated..." *J.T. Thorpe*

*Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13.  However, plaintiff addresses this 'burden'.

On information and belief, Montgomery County is 'open' and not subject to a shelter-in-place order.  The Montgomery County District Court Clerk's office is currently fully staffed and open to the public during the COVID-19 pandemic.  The Clerk's office dockets cases and events on a normal basis.  Court 284 (Judge Bays), where the defendants' case was removed from, is open and holding jury trials.  There is no indication that the Montgomery County Court or its staff is unable to efficiently and normally handle its case load during the pandemic.  Plaintiff is approved and is and has been able to electronically file documents in Montgomery County District Court.  The Montgomery County Court, including Court 284, hears cases on a full-time basis in Montgomery County.  Montgomery County held its annual rodeo on April 9 through April 18, 2021.

On the other hand, on information and belief, Harris County is on lock-down status.  Federal in-court appearances have been greatly reduced or deferred.  The federal Clerk's office is operating with a skeleton staff.  The docketing of federal cases is being done remotely.  Most court employees are working from home.  Plaintiff has been prohibited from electronically filing documents in the McDermott bankruptcy case or this

adversary proceeding by bankruptcy court Judge David Jones.  Furthermore, the Southern District of Texas Bankruptcy Court is SWAMPED with cases as Houston and Texas companies operating in the oil patch and other industries file for bankruptcy at an alarming rate.  The bankruptcy court judge overseeing this action, Judge Jones, is only hearing Houston cases (including the instant action) on a part-time basis as he divides his time between hearing separate cases in Houston, Corpus Christi and Laredo.  The 2021 Harris County Rodeo was cancelled due to COVID.

"[The] Covid-19 [pandemic] ....does not weigh in favor of retaining federal jurisdiction".  Southern District of Texas Chief Judge Lee H. Rosenthal in *American General Life Insurance Company v. Schahin II Finance Company (SPV) Limited*, Civil Action No. H-19-4025, U.S. District Court, S.D. Texas, Houston Division (June 16, 2020).

The above illustrates that there is an exceedingly high likelihood that plaintiff's state-law case against the defendants will be adjudicated much more quickly in Montgomery County District Court than it would be in the Southern District of Texas Bankruptcy Court.  This is amplified by the fact that state law causes of action against the individual defendants were not raised during the pendency of the bankruptcy proceedings.  If the bankruptcy court were to hear plaintiff's state law claims against the defendants, it

15

would have to "start fresh" with a new case and would not have an advantage because it had previously heard the debtor's bankruptcy case.

Furthermore, since the defendants have rendered no evidence to indicate that the state court could *not* adjudicate the matter in a timely fashion, the Court must presume that the state court will timely adjudicate the matter, given the immense policy interest in comity. *In re Doctors Hosp.*, 351 B.R. at 846 n.29. "While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not necessary where the movant is contesting the removal of his own state action." *In Re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *Abadie v. Poppin*, 154 B.R. 86, 90 (N.D. Cal. 1993)).

Given the above, plaintiff has satisfied the sixth factor that the action could be adjudicated timely (and more timely) in state court.

**Plaintiff's Common Law Fraud Claim**

Sussberg's argument against plaintiff's common law fraud claim fails. As seen in Plaintiff's Third Amended Petition and as discussed herein, plaintiff's fraud claim against Sussberg is a state claim.

Because plaintiff's common law fraud claim against Sussberg belongs in state court, Sussberg's Federal Rule 9(b) and 12(b)(6) heightened pleading argument fails.

On page 14 of his Motion, Sussberg states that "a failure to disclose information does not constitute fraud unless there is a duty to disclose the information". Sussberg is confusing fraud by nondisclosure with fraudulent misrepresentation, which plaintiff sues Sussberg for in state court. See below.

**Plaintiff's Assault Claims**

Having no legitimate argument to defeat plaintiff's assault claims, Sussberg reverts (see below) to demonizing plaintiff through false allegations (including plaintiff calling this Court a "Son of a b****") and false accusations of a history of filing frivolous lawsuits (even though plaintiff won an appeal before Judge Gorsuch in Sussberg's cited *Van Deelen v. Johnson* and even though plaintiff received a favorable settlement in Sussberg's cited *Van Deelen v. Alamogordo Public Schools*.)

Sussberg claims this Court can take judicial notice of plaintiff's past cases. If Sussberg wants judicial notice, he must provide the targeted cases to the Court and to plaintiff. He makes no effort to do this because he knows the Court will discover his fraudulent accusations if he does so. Instead,

Sussberg would prefer for this Court to waste its time digging through plaintiff's past cases on its own.

Sussberg also argues that plaintiff's allegations against Sussberg in his Third Amended Petition contain more information and amplify his prior affidavit concerning his interactions with Sussberg. Sussberg apparently does this in a futile attempt to prove that he did not actually assault plaintiff after the Plan Confirmation Hearing. However, plaintiff's declaration (Exhibit B, para. 13) states that plaintiff told a courthouse guard about his assault by Sussberg on his way out of the building after he had been assaulted by Sussberg. This was acknowledged by the Court in a subsequent ruling. The guard is expected to testify on plaintiff's behalf.

Because plaintiff's assault claims are state claims, as discussed herein and in Plaintiff's Third Amended Petition, any argument made by Sussberg relying on federal rules (i.e. - Rule 12(b)(6)) must fail.

## Plaintiff's Montgomery County (State-Law) Claims Stand

Texas Rules Civ. Proc. Rule 45(b) states that pleadings shall **"consist of a statement in plain and concise language of the plaintiff's cause of action** or the defendant's grounds of defense. **That an allegation be evidentiary or be of legal conclusion shall not be grounds for**

18

**objection when fair notice to the opponent is given by the allegations as a whole.**" (Emphasis added.)

Rule 45 also states that "All pleadings shall be construed so as to do substantial justice."

Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). Rule 47 of the Texas Rule of Civil Procedure provides a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved . . . ." Tex. R. Civ. P. 47. "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). The test of fair notice is whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant. *Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). **The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. Id.** (Emphasis added.)

19

As seen in Plaintiff's Third Amended Petition, the defendants made numerous false statements of fact to plaintiff in furtherance of their scheme. Some of the defendants' statements may be construed as actionable opinion. Plaintiff's Third Amended Petition alleges that the defendants made representations to plaintiff that they knew were false.  An opinion may support a fraud claim if the defendant knows the statement of opinion is false. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Allen v. Devon Entergy Holdings, L.L.C.*, 367 S.W.3d 355, 370 (Tex.App. - Houston [1st Dist.] 2012).

Plaintiff's third Amended Petition alleges that the defendants made representations to plaintiff based on false statements of fact.  An opinion may support a fraud claim if the  opinion is based on or supported with false statements of fact. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995); *Trenholm*, supra;  *Allen*, supra.  If an opinion is intertwined with misstatements of fact, the opinion amounts to a false representation of fact. *Trenholm*, supra;  *Allen*, supra.

An opinion about the happening of a future event may be actionable if the defendant (1) purports to have special knowledge of facts that will occur in the future, (2) has present knowledge that the statement is false, or (3) offers an opinion based on facts known to be false. *Trenholm*, supra,

20

(element 1); *Nancarrow v. Whitmer*, 463 S.W.3d 243, 252 (Tex.App. - Waco 2015) (element 2); *Guevara v. Lackner*, 447 S.W.3d 566, 577 (Tex.App. - Corpus Christi 2014) (elements 2, 3).  Plaintiff's Third Amended Petition is actionable against the defendants on all three elements.

A false promise of future performance is actionable as a false representation when the defendant had no intention of performing it. *Aquaplex, Inc. v. Rancho La Valencia, Inc*. 297 S.W.3d 768, 774 (Tex.2009).

Even though the defendants communicated with plaintiff through press releases, quarterly and annual reports and other documents, they are still liable to plaintiff for their fraudulent scheme.  A plaintiff can be a member of a class of people who relied on the defendants' misrepresentations.  Even if a defendant does not know the specific identity of a plaintiff, the defendant can be held liable for fraud if the defendant had information that would have led a reasonable person to believe that the misrepresentation would reach the class of people (i.e. - the investing public) the plaintiff belongs to, and that the class would rely on the misrepresentation.  *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins*., 51 S.W.3d 573 (Tex.2001).

A person may be vicariously liable for the fraudulent act of another if the person benefited from a fraudulent transaction and had knowledge of the fraud. *First State Bank v. Fatheree*, 847 S.W.2d 391, 396 (Tex.App. - Amarillo 1993, writ denied).

Plaintiff's Third Amended Petition alleges the elements of joint enterprise in its allegation that the defendants participated in a "scheme". Vicarious liability can be imposed on a defendant under the theory of joint enterprise (e.g. - the defendants' "scheme"). *Blackburn v. Columbia Med. Ctr.* 58 S.W.3d 263, 272-73 (Tex.App. - Fort Worth 2001, pet. denied).

The concept of piercing the corporate veil does not apply to this action as it applies in holding an individual liable for a cause of action that otherwise could have been brought against only the corporation. *Dodd V. Savino*, 426 S.W.3d 275, 291 (Tex.App. - Houston [14th Dist.] 2014, no pet.). In an action to hold a corporate officer liable for her own tortious conduct, the corporate veil is not required to be pierced. *Alexander v. Kent*, 480 S.W.3d 676, 698 (Tex,App. - Fort Worth 2015, no pet.).

Texas Common Law Fraud elements are:

1. The defendant made a representation to the plaintiff.

2. The representation was material.

3. The representation was false.

4. When the defendant made the representation, the defendant

   (1) knew the representation was false, or

   (2) made the representation recklessly, as a positive assertion, and
   without knowledge of the truth.

5. The defendant made the representation with the intent that the plaintiff
act on it.

6. The plaintiff relied on the representation.

7. The representation caused the plaintiff injury.

See, for example, *JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*, 546
S.W.3d 648, 653 (Tex.2018).

On page 14 of his Motion, Sussberg states that "a failure to disclose
information does not constitute fraud unless there is a duty to disclose the
information". He is incorrect. Sussberg is confusing fraud by nondisclosure
with fraudulent misrepresentation (commonly referred to as 'common law
fraud'), which plaintiff sues the defendants for in state court. The elements
of fraudulent misrepresentation do not include a duty to disclose (or the
existence of a fiduciary duty). See above. *JPMorgan Chase Bank v. Orca
Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex.2018).

Plaintiff's Third Amended Petition states the Texas State elements of
Assault and corresponding facts with particularity. The only argument that

Sussberg appears to give is that he disagrees with plaintiff's allegations.

Plaintiff's Third Amended Petition contains plain and concise statements stating the elements of common law fraud and assault that allow the defendants to ascertain the nature and the basic issues of the controversy and the testimony probably relevant. **Nowhere in Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition does Sussberg claim that plaintiff's *state-law* claims for common law fraud and assault are insufficiently pleaded. He does not even address fraudulent misrepresentation (common law fraud). Since Sussberg has not challenged plaintiff's state-law claims, the state-law claims must stand.**

## Federal Rules Of Civil Procedure Rules 12(b)(6) and 9(b)

As noted herein, plaintiff filed and served his Plaintiff's Third Amended Petition (Document 57) in response to the (Federal Bankruptcy) Court's instruction on 06/07/2021, to file an amended petition containing only state law claims. The Court did not instruct plaintiff to include or plead federal claims (e.g. - complying with Fed. Rules Civ. Proc. Rules 12(b)(6) and 9(b)) in his Plaintiff's Third Amended Petition.

Disregarding the Court's instruction, defendant Sussberg, without even being served, argues in his Motion to Dismiss and for Sanctions that Plaintiff's Third Amended Petition should be dismissed because it fails to

satisfy the heightened **federal** pleading standards of Rules 9(b) and 12 (b)(6) which are not required in Texas state-law claims.

As discussed herein, this Court does not have jurisdiction over this case and this case must be remanded to Montgomery County, Texas, District Court where it originated and where the Federal Rules of Civil Procedure do not apply.

## The Cancel Culture and Defndant Sussberg's Continued Demonization of Plaintiff

In a clear sign that his argument is weak and in the attempt to escape plaintiff's claims against him, defendant Sussberg continues his strategy of attempting to demonize the plaintiff in the eyes of this Court in the hope of garnering a favorable ruling "because plaintiff is a bad guy."

Defendant Sussberg provides no evidence of frivolous lawsuits filed by plaintiff because there have been none.

In his Motion, Sussberg repeats the falsehoods he has already directed at plaintiff during the pendency of the McDermott bankruptcy case (see Document 694, Case Number 20-30336). Of particular concern is Sussberg's false statement to this Court that plaintiff called the court a "son of a b****" during the Plan Confirmation Hearing and his false citation as to an audio clip where the alleged comment can be heard. Plaintiff intends to

introduce this audio clip during the hearing on Sussberg's Motion to Dismiss and for Sanctions.  There will not be any evidence on the audio clip that plaintiff directed any vulgarity towards this Court.

In seeking sanctions, Sussberg falsely claims plaintiff is a "vexatious litigant" but offers no proof that he is.  Vexatious litigants are covered in Chapter 11 of the Texas Civil Practice and Remedies Code:

Sec. 11.054.  CRITERIA FOR FINDING PLAINTIFF A VEXATIOUS LITIGANT.  A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

(1)  the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:

(A)  finally determined adversely to the plaintiff;

(B)  permitted to remain pending at least two years without having been brought to trial or hearing; or

(C)  determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure;

(2)  after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se, either:

(A)  the validity of the determination against the same defendant as to whom the litigation was finally determined; or

(B)  the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or

(3)  the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

Defendant Sussberg provides no evidence that plaintiff is a vexatious litigant, because there is none.  Defendant Sussberg well knows that any attempt to prove plaintiff is a vexatious litigant by the above standards will fail.  Furthermore, declaring a plaintiff a vexatious litigant in Texas pursuant to Chapter 11 of the Texas Civil Practice and Remedies Code requires a motion, a stay of proceedings and a hearing.  Sussberg has made no motion, sought no stay and set no hearing.

Sussberg cites *Van Deelen v. Johnson* 2006 WL 1764381 (D.Kan. June 27, 2006) and *Van Deelen v. Alamogordo Public Schools* 2008 WL 11417175, at *1-2 (D.N.M. Mar. 14, 2008) in the attempt to give false examples of frivolous lawsuits filed by plaintiff.  Neither of these cases were judged frivolous and neither contain citations to frivolous lawsuits.  In *Van Deelen v. Johnson*, plaintiff won an appeal before 10th Circuit District Judge Neil Gorsuch.  In fact, this case was cited during the Senate Confirmation Hearings as a favorable case supporting Judge Gorsuch's appointment to the U.S. Supreme Court.  Furthermore, Sussberg fails to tell this Court a relevant fact: plaintiff prevailed in the Alamogordo Public Schools case and received a favorable settlement.

Sussberg claims that plaintiff is not entitled to any special treatment because he is a pro se litigant and cites *Van Deelen v. Alamogordo Public*

*Schools*, 2008 WL 11417175, at *1-2 (D.N.M. Mar. 14, 2008). Sussberg is trying to create three classes of litigants: pro se's, experienced pro se's, and attorneys. This categorization is not New Mexico law and it is certainly not Fifth Circuit law.

**Sussberg's Motion for Sanctions**

Plaintiff incorporates by reference herein McDermott bankruptcy proceeding (Case Number 20-30336) document 694 ("Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel"), document 701 ("Party In Interest Michael Van Deelen's Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel") and document 719 (Order).

Sussberg's current Motion for Sanctions is a rehash (essentially a re-filing) of his prior motion for sanctions (document 694) that was denied by the Court (document 719).

In an attempt to harass and intimidate the plaintiff into dropping his case against him, Sussberg once again continuously repeats and makes

untrue and unsubstantiated allegations against the plaintiff in his Motion for Sanctions.

In his Motion, Sussberg shows the Court no proof that plaintiff has acted in bad faith, vexatiously, wantonly or for oppressive reasons.  He has shown the Court no proof that plaintiff has committed fraud upon the court or that he has delayed or disrupted the litigation.  He has shown the Court no proof that plaintiff is a vexatious litigant (while ignoring the standard of proof given in the Texas vexatious litigant statute).

Except for the falsely alleged profanity mentioned above, the other alleged improprieties claimed of by Sussberg are alleged to have taken place when Court was not in session, outside the courtroom and in violation of no Court order.  The Court had no jurisdiction over plaintiff under such circumstances.

The Court does not have jurisdiction over plaintiff's private actions unrelated to the judicial proceedings under 11 U.S.C. 105(a).  Section 105(a) authorizes the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code:

"The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)). Thus, courts may not use § 105 to create substantive rights unavailable under the Code. *See Taylor v. United States (In re Taylor)*, 263 B.R. 139 (N.D. Ala.

2001) (note: on appeal to 11th Cir.); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.)*, 262 B.R. 893, 899 (D. Del. 2001); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451 (Bankr. E.D. Ark. 1994); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

The Court may not issue a contempt of court order for behavior which does not directly defy the Court or **which does not violate a previous court order**.  (Note that Appendix A to the Local Rules of the Southern District of Texas deals with Courtroom Etiquette, not with behavior outside of the courtroom.)

The movants cite *Chambers v. NASCO*, 501 U.S. 32 (1991), in their argument that the Court can sanction plaintiff, but do not inform this Court that *Chambers* has been superseded.  There currently are no statutes, rules or procedures, either federal or local, which gives the Court the ability to sanction a party's behavior that does not directly defy the sanctioning court or is beyond the confines of a court order.  In *F.D.I.C. v. Maxxam, Inc.*, the district court in Texas sanctioned an attorney for misconduct that occurred in an administrative proceeding in Washington, D.C., a proceeding that was not overseen by the district court. 532 F.3d 566, 591 (5th Cir. 2008). Upon review, the Fifth Circuit held that the court's inherent power to sanction did not extend to the administrative hearing but rather only extended to

30

situations in which "a party engages in bad-faith conduct [that directly defies] the sanctioning court." *Id.* at 591 (internal quotation marks omitted). Later, in *Positive Software Solutions, Inc. v. New Century Mortgage Corporation*, the Fifth Circuit, relying on its *Maxxam* decision, held that misconduct during arbitration was beyond the reach of the district court's inherent power, stating that the misconduct "was neither before the district court nor in direct defiance of its order." 619 F.3d 458, 461 (5th Cir. 2010).

The movants also cite *In re Cochener*, 360 B.R. 542, 569 (Bankr., S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32 (1991)) and other cases to support their claim that this Court can sanction plaintiff. However, the cited cases involved actions inside the confines of the bankruptcy code or the violation of orders or procedures that the court had jurisdiction over and therefore do not apply to the instant case as seen above.

The Ninth Circuit has stated: "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1190 (9th Cir. 2003). The Fifth Circuit reached the same conclusion, relying on constitutional questions about the permissibility of punitive sanctions issued by non-Article III judges. *In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990).

31

Plaintiff has violated no order of the Court.

There is noting in plaintiff's behavior or in his Third Amended Petition that warrants sanctions.

## Conclusion

By his silence, defendant Sussberg has conceded that plaintiff was directly harmed by Sussberg's tortuous (fraud and assault) actions against the plaintiff complained of in plaintiff's Third Amended Petition and that the debtor was not at all harmed by Sussberg's actions complained of in plaintiff's Third Amended Petition.  The Court therefore has no choice but to remand this case to Montgomery County, Texas, District Court where it originated.

Given that this case must be remanded to state court, the arguments of Sussberg concerning the sufficiency of plaintiff's common law fraud and assault claims, although infirm, cannot be reached by this Court.

Defendant Sussberg's Motion for Sanctions, once denied by the Court (document 719, Case Number 20-30336), is repetitive, retaliatory and without merit.

WHEREFORE, Plaintiff respectfully moves this Court to deny in its entirety Defendant Sussberg's Motion to Dismiss Plaintiff's Third Amended

Petition and for Sanctions and to remand this action to Montgomery County, Texas, District Court.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 2-6 day of July, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

# EXHIBIT A

000656

 Gmail

Michael Van Deelen <michaelvandeelen@gmail.com>

## Representation of Joshua Sussberg

**David J. Beck** <DBECK@beckredden.com>                                   Sat, Jun 19, 2021 at 5:18 PM
To: Michael Van Deelen <michaelvandeelen@gmail.com>

I am willing to agree that by receiving your filed pleading Mr. Sussberg is still not yet served, or alternatively that my receipt of your pleading constitutes service, whichever you prefer.

David

Get Outlook for iOS

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Saturday, June 19, 2021 5:09:38 PM
[Quoted text hidden]


[Quoted text hidden]

000657

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

## Representation of Joshua Sussberg

**Michael Van Deelen** <michaelvandeelen@gmail.com>                    Mon, Jun 28, 2021 at 12:06 PM
To: "David J. Beck" <DBECK@beckredden.com>

Mr. Beck:

I am going to wait to serve Mr. Sussberg until after the August 9, 2021, hearing in federal case number 20-3309. I am not going to serve Mr. Sussberg in federal court since my claims against him are state claims. In the unlikely case that my claims against the other defendants (Dickson, Spence, Lamb) remain removed to federal court, I will file a separate claim against Mr. Sussberg in Texas state court.

Thank you for your patience.

Michael Van Deelen

Sent from my iPhone
[Quoted text hidden]

000658

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| ————————————— | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

# DECLARATION OF MICHAEL D. VAN DEELEN

I, Michael D. Van Deelen, hereby declare under penalty of perjury:

1. In the following, I refer to myself as "plaintiff" or "the plaintiff".

2. I am over 21 years of age, and I am fully competent to make this declaration. The facts stated herein are within my personal knowledge and are true and correct.

3. On February 27, 2020, plaintiff filed and served his Opposition and Objection to Confirmation of Debtor's Plan ('Plaintiff's motion') in the McDermott bankruptcy case

(case number 20-30336).  Plaintiff's motion, among other things, asked the bankruptcy court to deny McDermott's Plan and to refer the actions of McDermott employees and advisors, including the defendants herein, for investigation to the U.S. Attorney and the F.B.I. for the allegedly fraudulent statements they had made pursuant to McDermott's bankruptcy case (18 U.S.C. 158(d) and 18 U.S.C. Section 3057).

4.  Plaintiff's motion simultaneously enraged the defendants and frightened the defendants that plaintiff had asked for an investigation into their alleged illegal and fraudulent acts and testimony concerning McDermott's bankruptcy filing.  The defendants (Lamb, Dickson, Sussberg), pursuant to their scheme, instituted several actions to cancel the plaintiff and scare the plaintiff from continuing his course of action alleging improper, illegal, fraudulent behavior by the defendants.  Accordingly, pursuant to the scheme, the defendants (Lamb, Dickson, Sussberg) hatched a plan to harass, frighten and intimidate the plaintiff should he attend the March 12, 2020, Plan Confirmation hearing.

5.  On March 12, 2020, plaintiff did attend McDermott International's Chapter 11 bankruptcy Plan Confirmation Hearing in the U.S. District Court for the Southern District of Texas, Houston Division.  Plaintiff represented himself as an interested party (shareholder).  Defendant Sussberg was one of the attorneys representing McDermott International at the hearing.  Plaintiff was one of the first ones in the courtroom and he chose a seat near the front.  Defendant Sussberg came in and sat directly across from plaintiff, within arm's distance of the plaintiff.  Plaintiff thought this was odd because when defendant Sussberg came into the courtroom, there were still quite

a few seats available.  Nevertheless, defendant Sussberg chose a seat right next to plaintiff.

6.  Plaintiff was literally the only McDermott shareholder who attended the hearing to argue against the Plan confirmation, save for one attorney representing a few shareholders who barely spoke during the hearing.  The rest of the attendees, including defendant Sussberg, appeared to be in favor of the plan's confirmation.  Accordingly, the expectation from the large, standing room only, crowd who favored confirmation was that there would be no objections to the plan and the hearing would begin and conclude quickly.

7.  Unfortunately for these people, plaintiff insisted that McDermott provide testimony from a host of witnesses verifying the company's bankruptcy plan.  This caused the hearing to take much longer than usual as the witnesses were forced by plaintiff to provide live testimony one at a time.  The longer the hearing took, the more agitated defendant Sussberg became.  He began to glare at plaintiff and then started to make uncalled for, unprofessional remarks to plaintiff such as "*You are disgusting!*"

8.  Plaintiff was unnerved by defendant Sussberg's behavior.  Plaintiff did not know defendant Sussberg and had never seen or spoken to him prior to the hearing.  After the hearing, plaintiff politely asked defendant Sussberg his name.  Defendant Sussberg angrily replied, "*I don't have to give you my name!*" Defendant Susberg told plaintiff that, "*You are disgusting!*" and "*You are a fool!*" Defendant Sussberg is a young, muscular, man who appears to be in his 30's.  Plaintiff is a senior citizen who is in his 70's.  Defendant Sussberg's angry demeanor and comments frightened the plaintiff.

3

9.  After the hearing had ended and the Plan had been approved by the court, plaintiff was heading down a narrow hallway in the courthouse that led to the elevators. (The hearing had been held in a fifth floor courtroom.)  Defendant Sussberg was approximately 30 feet in front of the plaintiff and appeared to also be going to the elevators.  There was nobody between plaintiff and defendant Sussberg in the hallway. Defendant Sussberg looked behind him and saw plaintiff.  At that point, without cause, warning or explanation, defendant Sussberg turned around and intentionally and willfully charged directly at plaintiff at a high rate of speed.  Plaintiff was apprehensive and terrified and feared for his safety and his life as the muscular defendant Sussberg came barreling towards him.

10.  Defendant Sussberg's charge happened so fast that plaintiff had nowhere to go to get out of defendant Sussberg's way.  Defendant Sussberg ran right up to plaintiff and stopped just and inch or two from plaintiff.  Defendant Sussberg then again angrily told plaintiff, *"You are disgusting!"*  Defendant Sussberg then intentionally and willfully physically "chest-bumped" the plaintiff, causing pain to the plaintiff and injuring the plaintiff.

11.  Plaintiff was shocked and terrified.  Plaintiff began having chest pains and thought he might be having a heart attack.  Plaintiff tried moving to the right to get around defendant Sussberg, but defendant Sussberg moved his body in front of plaintiff to prevent plaintiff from getting past him.  Plaintiff then tried moving to the left to get around defendant Sussberg, but defendant Sussberg again cut off plaintiff's exit by moving his body in from of plaintiff.

12.  Defendant Sussberg's actions falsely imprisoned the plaintiff.

4

13.  Plaintiff then retreated back down the hallway where he had come from and defendant Sussberg continued on in the other direction toward the elevators. Plaintiff waited until he thought defendant Sussberg had left via the elevators. Plaintiff then exited the courthouse. On his way out, he asked one of the guards if there was video of the hallway plaintiff and Sussberg had been in. The guard answered 'no' and inquired as to why plaintiff asked the question. Plaintiff told the guard that he had just been assaulted by one of McDermott's attorneys.

14.  Plaintiff was very upset, frightened and scared and injured when he left the courthouse. Plaintiff's chest hurt as the result of defendant Sussberg chest-bumping him. Plaintiff's heart was racing. Plaintiff was terrified that he would encounter the muscular defendant Sussberg outside of the courthouse and be assaulted again by defendant Sussberg. Plaintiff was so upset that he could not even locate his car in the parking garage near the courthouse where he had parked.

15.  Plaintiff suffered personal indignity as the result of defendant Sussberg's actions against him as described herein.

16.  After plaintiff arrived home, he was so upset that he could not sleep well. Plaintiff had headaches when he recalled defendant Sussberg's actions toward him. Plaintiff's chest was bruised and hurt for almost a week as the result of being chest-bumped by defendant Sussberg. Plaintiff's appetite declined. Plaintiff was, and still is, terrified and has a racing heart when he has to go back to the courthouse to file documents in his case against the defendants discussed herein. (The federal court does not allow pro se filers to file electronically.) Plaintiff's headaches, insomnia, mental

anguish, loss of appetite and emotional distress over defendant Sussberg's assault

continue unabated to this day.

17.  Defendant Sussberg's actions towards the plaintiff as described herein were

done intentionally, knowingly and willfully and done with the prior knowledge that they

would injure, harm, threaten, cause personal indignity and cause mental anguish and

severe emotional distress to the plaintiff.

18.  Defendant Sussberg's actions towards the plaintiff as described herein were

done pursuant to the scheme.

19.  Plaintiff does not allege that the actions of defendant Sussberg as alleged

herein were done under the scope of his employment while representing McDermott

International in its bankruptcy case (case number 20-30336).  Plaintiff asserts no claim

against McDermott International or against defendant Sussberg's employer (Kirkland &

Ellis, LLP) for the tortuous actions against him by defendant Sussberg.

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the

foregoing is true and correct.

Executed in Harris County, Texas, on July 14, 2021.


Michael Van Deelen

Michael D. Van Deelen

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | Chapter 11 |
| | ) | |
| Reorganized Debtor(s). | ) | Case No. 20-30336 |
| | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING JOSHUA SUSSBERG'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION AND FOR SANCTIONS

The Court, having considered Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Document 59), as well as the evidence presented, finds that the Motions be DENIED.  The Court:

ORDERS that Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition (Document 59) is denied.

ORDERS that Joshua Sussberg's Motion for Sanctions (Document 59) is denied.

_____
JUDGE
UNITED STATES BANKRUPTCY COURT

United States Courts    000666
Southern District of Texas
F I L E D

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

JUL 2 6 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## **NOTICE OF HEARING**

Please take notice that the Court will conduct a hearing on the following matters on **August 9, 2021, at 11:00 a.m.**, before the Honorable David Jones, United States Bankruptcy Court, Southern District of Texas, Houston Division, via video and telephone conference only, as follows:

1. Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (Document 59).

Parties should consult the Court's protocol regarding video and telephonic appearances.

DATED: July _2-6_, 2021

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff (Pro Se)
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this __2-6__ day of July, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

United States Courts
Southern District of Texas
FILED

JUL 3 0 2021

Nathan Ochsner, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | Chapter 11 |
| | ) | |
| Reorganized Debtor(s). | ) | Case No. 20-30336 |
| | ) | |
| | ) | (Jointly Administered) |
| ──────────────────── | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S WITNESS AND EXHIBIT LISTS

Plaintiff Michael Van Deelen files his Witness and Exhibit Lists for the hearing to be held on **August 9, 2021, at 11:00 a.m.,** before the Honorable David Jones, United States Bankruptcy Court, Southern District of Texas, Houston Division, via video and telephone conference only, as follows:

1

## WITNESSES

| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION | |
|---|---|
| Main Case No: 20-30336 | Name of Debtor: McDermott International, Inc. |
| Adversary No: 20-03309 | Style of Adversary: Van Deelen  v. |
| | Dickson, Spence, Lamb, et al |
| Witnesses: | |
| 1.  Michael Van Deelen may testify as a fact witness. | Judge:<br>The Honorable David R. Jones |
| 3.  Any witness listed by any other party. | Courtroom Deputy:<br>Ms. Vriana Portillo |
| 4.  Any witness necessary to lay foundation for the admission of exhibits. | Hearing Date: August 9, 2021 |
| 5.  Rebuttal or impeachment witnesses as necessary. | Hearing Time: 11:00 A.M. |
| 6.  Matthew Cavenaugh may be called as a fact witness. | Party's Name:<br>Plaintiff Michael Van Deelen |
| 7.  David Beck may be called as a fact witness and to produce subpoenaed information. | Attorney's Name: N/A |
| 8.  Jamie Aycock may be called as a fact witness. | Attorney's Phone: N/A |
| | Nature of Proceeding: |
| | Motion Conference |
| | |

## EXHIBITS

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| | 1.  Any pleadings, reports, exhibits, transcripts, proposed orders, Court orders or other documents filed in the above-captioned case. | | | | |
| | 2.  Any exhibit required to support the items listed in #1 above. | | | | |
| | 3.  Any exhibit introduced by any other party. | | | | |
| | 4.  Rebuttal or impeachment exhibits as necessary. | | | | |
| | 5.  CD containing Beck Redden trespassing photos, audio clip referenced in Sussberg Motion to | | | | |

2

| | Dismiss and Matthew Cavenaugh fake 031220 audio clip.  (The CD will be served on the defendants via FedEx with Plaintiff's Witness and Exhibit Lists herein.) | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

Plaintiff reserves the right to amend or supplement his Witness and Exhibit Lists as necessary in advance of the hearing.

Houston, TX

July 28, 2021

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

3

# CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on the _30_ day of _July_, 2021, and by FedEx mail (including CD) on the _29_ day of _July_, 2021.

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
F I L E D

JUL 3 0 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| ———————————————— | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SUBPOENA

TO:

Matthew Cavenaugh
Jackson Walker LLP
1401 McKinney St.
Suite 1900
Houston, TX 77010
mcavenaugh@jw.com

Jamie Aycock
609 Main Street
Houston, TX 77002
jamie.aycock@kirkland.com

David Beck
Beck Redden LLP
1221 McKinney St.
Suite 4500
Houston, TX 77010
dbeck@beckredden
.com

PLEASE TAKE NOTICE, pursuant to Federal Rule of Civil Procedure 45, that Plaintiff Michael Van Deelen intends to serve a Subpoena, in the form attached hereto, on attorney David Beck, address above, as soon as service may be effectuated.

Dated: July 27, 2021

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff (Pro Se)
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 27th day of July, 2021, served a true and correct copy of the foregoing document on the defendants via email delivery.

/s/ Michael Van Deelen
Michael Van Deelen

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

Michael Van Deelen _____
_____
Plaintiff
v.
David Dickson, et al _____
_____
Defendant

)
)
)
)
)
)

Civil Action No.   Adv. Proc
NO. 20-3308

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   David J. Beck _____
(Name of person to whom this subpoena is directed)

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Any and all audio clips in your possession in which plaintiff calls a judge a "son of a bitch,"

| Place: hearing in above-captioned case | Date and Time: August 9, 2021   11:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   JUL 2 6 2021

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

OR

_____
Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

Michael Van Deelen, P.P. Se; 16215 Friar Circle, Spring, TX 77379;
832-562-0723;       **Notice to the person who issues or requests this subpoena** michaelvandeelen@gmail.com
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

     ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

     ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                _____
                              *Server's signature*

                _____
                              *Printed name and title*

                _____
                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

In Re:
McDermott International, Inc.   §
§
§
Michael Van Deelen             §
§
V.
David Dickson, et al

CASE NUMBER   20-3309

United States Courts
Southern District of Texas
F I L E D

JUL 3 0 2021

Nathan Ochsner, Clerk of Court

CD

DOCUMENT IS:

☑   LOOSE IN FILE

☐   IN VAULT SEALED

☑   IN BROWN EXPANDABLE FOLDER

INSTRUMENT # 67

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## DEFENDANT JOSHUA SUSSBERG'S MOTION TO TAKE JUDICIAL NOTICE

TO THE HONORABLE CHIEF JUDGE DAVID R. JONES:

Defendant Joshua Sussberg has filed a Motion to Dismiss Plaintiff's Third Amended

Petition ("Motion to Dismiss") and a Reply in Support of Motion to Dismiss Plaintiff's

Third Amended Petition ("Reply").  The Motion to Dismiss and Reply reference in support

certain pleadings, orders and opinions contained in this Court's and other courts' records.

Defendant submits that these court records are relevant and probative of issues addressed

in the Motion to Dismiss and Reply, including, but not limited to, the fact that at least one

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

federal court has ruled Van Deelen a vexatious litigant, another federal court has dismissed one of Van Deelen's lawsuits on the grounds that it was frivolous, the Eighth Circuit Court of Appeals has upheld a pre-filing injunction, as modified, against Van Deelen, and this Court has found Van Deelen has submitted certain filings neither in good faith nor for any legitimate purpose. The Court may consider documents in the public record and matters subject to judicial notice, including court records, in deciding Defendant's Motion to Dismiss pursuant to Federal Rule 12(b)(6). *Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003). Accordingly, Defendant respectfully requests for this Court to take judicial notice of the court records attached hereto as Exhibits A(1-9)-I.

This Court may take judicial notice of its own records in this proceeding and related proceedings, such as the McDermott bankruptcy proceeding. *See* Fed. R. Evid. 201; *In re Santos*, 616 B.R. 332, 341 n. 16 (N.D. Tex. 2020) (bankruptcy court may take judicial notice of "(a) prior court proceedings as a matter of public record; (b) its own records; (c) related proceedings and records in cases before that court; and (d) all documents filed with the court in the bankruptcy case" (citing Fifth Circuit authority)). The Court may also take judicial notice of official records from other courts. *Id.; see also Function Media, LLC v. Google, Inc*., 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013) ("It is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding, even if it was not available to the lower court."). It is well-settled that courts may take judicial notice of documents filed in other courts if relevant to establish "'the fact of such litigation and related filings.'" *Taylor v. Charter Med. Corp*., 162 F.3d 827, 830 (5th Cir. 1998) (citation omitted); *see* 1 Joseph M. McLaughlin, WEINSTEIN'S FED. EVID. § 201.12[3] (2d ed. 2011)

2

("The actions of other courts and documents filed in other courts' records may also be judicially noticed when relevant" including "[p]leadings filed in other courts") (citing authorities). That is the purpose of Defendant's request for judicial notice, and the court records attached as Exhibits A(1-9)-I are suitable for judicial notice.

When it is appropriate, judicial notice is "mandatory."  Fed. R. Evid. 201(d).  "A court *shall* take judicial notice if requested by a party and supplied with the necessary information."  *Id*. (emphasis added).  By this motion, Defendant supplies "the necessary information," which include the following records:

| Exhibit No. | Description |
|---|---|
| A | Case No. 20-30336; *In re McDermott International, Inc., et al.*; in the United States Bankruptcy Court for the Southern District of Texas, Houston Division<br>1. Dkt. 664, Excerpts from March 9, 2020 Hearing<br>2. Dkt. 666, Audio Recording of March 12, 2020 Hearing<br>3. Dkt. 694, Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited from Further Contact with the Debtors, Their Officers, or Their Counsel ("Emergency Motion")<br>4. Dkt. 694-1, Ex. A, Affidavit of Joshua A. Sussberg in Support of Debtors' Emergency Motion<br>5. Dkt. 694-2, Ex. B, Affidavit of Stuart Spence in Support of Debtors' Emergency Motion<br>6. Dkt. 701, Party In Interest Michael Van Deelen's Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He should Not Be Held in Contempt of Court and Prohibited from Further Contact with the Debtors, Their Officers, or Their Counsel; Proposed Order (Exhibits included)<br>7. Dkt. 719, Order Signed on March 23, 2020<br>8. Dkt. 723, Party In Interest Michael Van Deelen's Request for Hearing; Proposed Order<br>9. Dkt. 849, Order Signed on April 20, 2020 |
| B | Case No. 05-4039-SAC; *Van Deelen v. Marion Johnson, et al.*; in the United States District Court for the District of Kansas (Dkt. 162, Judgment in a Civil Case) |

| C | *Van Deelen v. Alamogordo Public Schools*, CV 07-171 MV/LCS, 2008 WL 11417175 (D.N.M. Mar. 14, 2008) |
|---|---|
| D | *Van Deelen v. Cain*, 628 Fed. Appx. 891 (5th Cir. 2015) |
| E | *Van Deelen v. City of Kansas City, Missouri*, No. 04-989-CV-W-GAF, 2006 WL 2077640 (W.D. Mo. July 24, 2006) |
| F | *Van Deelen v. City of Kansas City, Missouri*, 262 Fed. Appx. 723 (8th Cir. 2007) |
| G | *Van Deelen v. Johnson*, No. 05-4039-SAC, 2006 WL 1764381 (D. Kan. June 27, 2006) |
| H | *Van Deelen v. Truth or Consequences Board of Education*, No. CV-08-00290 JH/LAM, 2008 WL 11451397 (D.N.M. July 9, 2008) |
| I | Texas Supreme Court Thirty-Eighth Emergency Order Regarding the Covid-19 State of Disaster, Misc. Dkt. No. 21-9060 |

Copies of the court records at issue are attached as Exhibits A(1-9)-I. They are true and correct copies of the original documents from those cases.

## CONCLUSION

Defendant respectfully requests that the Court take judicial notice of the records attached as Exhibits A(1-9)-I and consider them in this case.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
     David J. Beck
     Texas Bar No. 00000070
     dbeck@beckredden.com
     Jacqueline M. Furlow
     Texas Bar No. 24087551
     jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT**
**JOSHUA A. SUSSBERG**

4

000682

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF notification system and via email and regular mail to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle, Spring, Texas 77379
michaelvandeelen@gmail.com

*/s/ Jacqueline M. Furlow*
Jacqueline M. Furlow

5

000683

# EXHIBIT A1

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF TEXAS

                                 .    Case No.  20-30336
IN RE:                           .    Chapter 11
                                 .
                                 .    (Jointly Administered)
McDERMOTT INTERNATIONAL, INC.,.
                                 .    515 Rusk Avenue
                                 .    Houston, TX  77002
              Debtor.            .
                                 .    Monday, March 9, 2020
. . . . . . . . . . . . . . .    .    9:01 a.m.
```

```
                         TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE DAVID R. JONES
                 UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

```
For McDermott                    Jackson Walker LLP
International, Inc.:              BY:  MATTHEW D. CAVENAUGH, ESQ.
                                      CIARA FOSTER, ESQ.
                                 1401 McKinney Street, Suite 1900
                                 Houston, TX 77010
                                 (713) 752-4200

                                 Kirkland & Ellis LLP
                                 BY:  ANNA G. ROTMAN, ESQ.
                                 601 Lexington Avenue
                                 New York, NY 10022
                                 (212) 446-4800

For the Ad Hoc Group of          Porter Hedges, LLP
Term Lenders:                    BY:  M. SHANE JOHNSON, ESQ.
                                 1000 Main Street, Suite 3600
                                 Houston, TX 77002-6336
                                 (713) 226-6648

Interested Party:                MICHAEL VAN DEELEN
                                 16215 Friar Circle
                                 Spring, TX 77379


TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:                  Vriana Portillo, ECR

Transcription Company:           Access Transcripts, LLC
                                 10110 Youngwood Lane
                                 Fishers, IN 46038
                                 (855) 873-2223
                                 www.accesstranscripts.com
```

                Proceedings recorded by electronic sound recording,
                   transcript produced by transcription service.

000685

2

TELEPHONIC APPEARANCES (Continued):


For Credit Agricole              Linklaters, LP
Corporate and Investment Bank    BY:  MARGOT B. SCHONHOLTZ, ESQ.
                                 1345 Ave of the Americas
                                 New York, NY 10105
                                 (212) 903-9000


For Illuminate Buyer, LLC:       Pillsbury Winthrop Shaw
                                   Pittman, LLP
                                 By:  HUGH MASSEY RAY, III, ESQ.
                                 909 Fannin, Suite 2000
                                 Houston, TX 77010-1028
                                 (713) 276-7600


For the Ad Hoc Group of          Davis Polk, et al.
Term Lenders:                    By:  NATASHA TSIOURIS, ESQ.
                                 450 Lexington Ave
                                 New York, NY 10017-3904
                                 (212) 450-4000


Also present:                    MICHAEL VAN DEELEN
                                 16215 Friar Circle
                                 Spring, TX 77379

1          THE COURT:  All right.  Then, having reviewed the

2    motion and response, I will find that I have jurisdiction over

3    the matter pursuant to 28 U.S.C. Section 1334.  I will find

4    that the matter constitutes a core proceeding under 28 U.S.C.

5    Section 157.  I'll further find that I have the requisite

6    constitutional authority, as guided by our United States

7    Supreme Court, to enter a final order with respect to the

8    motion.

9          I set the motion for an emergency hearing, as I have

10   historically done anytime that I have someone who is not

11   represented by counsel.  I do that to ensure that due process

12   rights are not inadvertently overlooked, and I also do it to

13   try and help people who want to have a voice in the process who

14   are perhaps misguided in what they do.

15         Having listened to the movant, I will find there's

16   simply no legitimate basis whatsoever for the requested relief.

17   All of this will be wrapped into the debtor's burden of proof

18   at confirmation to satisfy the requirements of 1129.  I will

19   find that the motion was not filed in good faith.  And I'll

20   deny the motion.

21         Anything else we need to accomplish today?

22         All right.  Thank you, all.  We'll be adjourned.

23         THE CLERK:  All rise.

24     (Proceedings concluded at 9:39 a.m.)

25                     * * * * *

1    **C E R T I F I C A T I O N**

2

3         I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter, and to the best of my ability.

7

8

9

10  

11  ALICIA JARRETT, AAERT NO. 428     DATE:  March 11, 2020

12  ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

000688

# EXHIBIT A2

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 189 of 453
Case 20-30336   Document 666   Filed in TXSB on 03/12/20   Page 1 of 1

Page 1 of 1

000689

## UNITED STATES BANKRUPTCY COURT

## Southern District of Texas

PDF FILE WITH AUDIO FILE ATTACHMENT

2020-30336

McDermott International, Inc. and Whessoe Piping Systems Limited

In ref to Confirmation and doc nos. 15, 110, 512, 428, 639, 549, and 441.
Hearing held March 12, 2020.

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2020-30336 |
| Case Title : | McDermott International, Inc. and Whessoe Piping Systems Limited |
| Audio Date\Time: | 3/12/2020 9:02:25 AM |
| Audio File Name : | 4bk2020-30336_20200312-090225.mp3 |
| Audio File Size : | 105979 KB |
| Audio Run Time : | [03:40:47] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file,
click the Attachments tab or the Paper Clip icon.  Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

This digital recording is a copy of a court proceeding and is provided as
a convenience to the public.  In accordance with 28 U.S.C. § 753 (b)
"[n]o transcripts of the proceedings of the court shall be considered as
official except those made from the records certified by the reporter or
other individual designated to produce the record."

000690

# EXHIBIT A3

000691

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | )    **Chapter 11** |
| | ) |
| **MCDERMOTT INTERNATIONAL, INC.,** *et al.*,[1] | )    **Case No. 20-30336 (DRJ)** |
| | ) |
| Debtors. | )    **(Jointly Administered)** |
| | )    **(Emergency Relief Requested)** |

**EMERGENCY MOTION FOR MICHAEL VAN DEELEN**
**TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE**
**HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER**
**CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL**

---

> **Emergency relief has been requested. A hearing will be conducted on this matter on __TBD__ at __TBD__ in Courtroom 400, 4th Floor, 515 Rusk, Houston, TX 77002. If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Relief is requested not later than March 20, 2020.**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.      Michael Van Deelen has been engaging in harassing and abusive behavior

towards a former officer of the Debtors and towards counsel for the Debtors. From showing up at

Stuart Spence's home and rattling Mr. Spence's wife, to vulgar remarks both inside and outside

the courtroom on March 12, 2020, Mr. Van Deelen's behavior is disgusting and should not be

tolerated. Mr. Van Deelen is upset about the equity holders' treatment in the Debtors' plan of

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

reorganization. That does not, however excuse his vulgar and threatening behavior towards individuals doing their jobs who are complying with the law, or their families. The Debtors ask this Court to order Mr. Van Deelen to appear and show cause why he should not be held in contempt and be prohibited from further direct contact with the Debtors, their current or former officers, directors, and employees, and their counsel or other professionals and their families, and any other measures that this Court sees fit to impose to ensure a civil and professional proceeding.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of an order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and the Court's inherent authority as set forth in *Chambers v. NASCO*, 501 U.S. 32 (1991).

5.     On January 21, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases (the "Cases") is set forth in the *Declaration of David Dickson, President and Chief Executive Officer of McDermott International, Inc., in Support of the Chapter 11 Petitions* (the "Dickson Declaration") and the *Declaration of John R. Castellano, Chief Transformation Officer of McDermott International, Inc., in Support of the Debtors' First*

2

*Day Motions* (the "Castellano Declaration," together with the Dickson Declaration, the "First Day Declarations"), filed on January 22, 2020, and incorporated by reference herein.

### Background

6.　　Mr. Van Deelen is a self-described party-in-interest who filed numerous pleadings in these Cases including:

- Letter/Motion to Intervene and Access to Filing System [Docket No. 253]

- Motion for Appointment of Trustee or Examiner and the Earliest Possible Hearing Date [Docket No. 436]

- Motion to Appoint Trustee [Docket No. 441]

- Objection to Confirmation of Plan [Docket No. 510]

- Exhibit and Witness List [Docket No. 511]

- Notice of Expert Report [Docket No. 527]

- Expedited Motion for an Order Continuing the March 12, 2020 Plan Hearing [Docket No. 557]

7.　　On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing"). During and after that hearing, Mr. Van Deelen made certain threatening and vulgar remarks to Joshua Sussberg ("Mr. Sussberg"), counsel for the Debtors. The undersigned apologizes to the Court in advance for the nature of the language which follows. During the hearing, Mr. Van Deelen can be heard on the audio recording calling the Court a "son of a bitch." (AUDIO CLIP, March 12, 2020 Hearing, 3:19:29-3:21:20).[2] After conclusion of the March 12th Hearing, Mr. Van Deelen waited for Mr. Sussberg outside of the restroom and

---

[2]　This audio clip is an excerpt the Audio File attached to Docket No. 557 and available with a transcription of the interaction as well as the audio at the following link: https://youtu.be/XkyjeEEAklI.

called him a "pasty white fuck" and said "I'll have my way with your wife." Attached as **Exhibit A** is the affidavit of Joshua A. Sussberg, who witnessed and heard the out-of-court statements by Mr. Van Deelen (the "Sussberg Affidavit").

8.     Ordinarily, counsel would simply turn the other cheek to such remarks. However, Mr. Van Deelen also appeared unannounced at the home of Stuart Spence ("Mr. Spence"), former Chief Financial Officer of McDermott International, Inc. Mr. Spence was on a conference call at the time and Mr. Spence's wife answered the door and was rattled by her interaction with Mr. Van Deelen. Mr. Spence's affidavit describing this encounter is attached hereto as **Exhibit B** (the "Spence Affidavit"). Below is a photograph from Mr. Spence's doorbell camera.



*See* Exhibit 1 to the Spence Affidavit. Appearing on Mr. Spence's doorstep is harassing and borders on stalking.

9.     In addition to these in-person interactions, Mr. Van Deelen has also sent an email to Mr. Sussberg asking him to confirm their seating positions during the March 12th Hearing:

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Date:** March 13, 2020 at 4:36:33 PM EDT
**To:** "Sussberg, Josh" <jsussberg@kirkland.com>
**Subject:** [EXT] March 12, 2020, Plan Confirmation Hearing for Debtor McDermott
**International (case number 20-30336)**

Mr. Sussberg:

I was at the above hearing and represented myself as a Party In Interest who opposed the plan confirmation. You sat across the gap between the two conference tables at approximately arms length from me. If you deny this, please forward said denial to me at your earliest convenience, but no later than 5:00 C.S.T. on Wednesday, March 18, 2020.

I recognize you from your picture on the Kirkland & Ellis website which is where I obtained your email address.

Regards,

Michael Van Deelen

*See* Exhibit 1 to the Sussberg Affidavit. While facially a fairly innocuous inquiry, given Mr. Van Deelen's pleadings and behavior in these Cases, the email takes on a different and unsettling color.

10. Mr. Van Deelen has a history of sanctionable behavior. In 2006, Mr. Van Deelen filed suit against the City of Kansas City, Missouri to determine the constitutionality of an employment-related residency policy. *Michal Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 (W.D. Mo. 2006). The District Court upheld a prior sanctions order against Mr. Van Deelen finding that "Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout the trial Van Deelen repeatedly interrupted and argued with the Judge, counsel for the City and numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van

Deelen fabricated evidence to support his claims. *Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 at *1 (W.D. Mo. 2006).

11.     This behavior is not new or different for Mr. Van Deelen. Mr. Van Deelen's behavior is intended to threaten, harass and intimidate these individuals and their families. His participation in this case should be limited to the protection of his interest as an alleged former shareholder of the Debtors.

## Argument

12.     Section 105(a) of the Bankruptcy Code permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

13.     While Mr. Van Deelen's offensive conduct has been in-person rather than within a pleading, the Court still has the power to sanction and regulate such conduct. "[A] federal court's inherent power to sanction bad faith conduct serves the dual purpose of covering the gaps where there are no applicable rules and also covering situation where 'neither the statute nor the Rules are up to the task.'" *In re Cochener*, 360 B.R. 542, 569 (Bankr. S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32, 50 (1991)).

14.     The Fifth Circuit has affirmed the bankruptcy court's power to issue sanctions under section 105 of the Bankruptcy Code, *see e.g. Placid Ref. Co. v. Terrebonne Fuel & Lube*, 108 F.3d 609 (5th Cir. 21997); and *Mooney v. Green Tree Serv., Inc.*, 340 B.R. 351 (Bankr. E.D. Tex. 2006).

15.     The Debtors understand Mr. Van Deelen's displeasure with the fact that the equity holders will not receive a distribution in this case. The Debtors also believe that all parties to a case, even those out of the money, deserve to be treated with dignity and are entitled to due process

under the law. Mr. Van Deelen has been treated with respect and was afforded that process. Regardless, Mr. Van Deelen's conduct, at absolute minimum, rises to the level of bad faith. His conduct threatens violence against parties in the case and their families and is sanctionable under the Court's inherent power under section 105 of the Bankruptcy Code and pursuant to the Supreme Court's holding in *Chambers*.

### Prayer for Relief

16.     The Debtors ask this Court to order Mr. Van Deelen to appear and show cause why he should not be held in contempt of court and prohibited from further contact with the debtors, their current or former officers, directors, and employees, their counsel or other professionals and their families.

17.     The Debtors ask the Court to prohibit Mr. Van Deelen from contacting the Debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication and ask that this Court limit Mr. Van Deelen's contact to any such party to filings on the docket in these Cases.

### Emergency Consideration

18.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion. Mr. Van Deelen has threatened physical violence against family members of counsel in these cases. Mr. Van Deelen's conduct is continuing and unlikely to cease absent Court intervention.

### Notice

19.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the United States Attorney's Office for the Southern District of Texas; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

WHEREFORE, the Debtors respectfully request that the Court enter the an order for Mr.

Van Deelen to appear and show cause why he should not be held in contempt of court and

prohibited or enjoined from contacting the Debtors, their current and former officers, directors,

and employees, and their counsel and other professionals except for through pleading on this

docket and for any other relief to which the Debtors are justly entitled.

Houston, Texas
March 17, 2020

/s/ Matthew Cavenaugh

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Christopher T. Greco, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Anthony R. Grossi (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 601 Lexington Avenue |
| Houston, Texas 77010 | New York, New York 10022 |

JACKSON WALKER L.L.P.
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Anthony R. Grossi (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                christopher.greco@kirkland.com
                anthony.grossi@kirkland.com

-and-

James H.M. Sprayregen, P.C.
John R. Luze (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

000699

## Certificate of Service

I certify that on March 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

000700

# EXHIBIT A4

# Exhibit A

**Sussberg Affidavit**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) Case No. 20-30336 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## AFFIDAVIT OF JOSHUA A. SUSSBERG
## IN SUPPORT OF DEBTORS' EMERGENCY MOTION
## FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE
## SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM
## FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

I, Joshua A. Sussberg, hereby declare under penalty of perjury:

1.      I am over the age of 18 and competent to testify.  I am the president of Joshua A. Sussberg, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").  I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York.  There are no disciplinary proceedings pending against me.

2.      I submit this Affidavit (the "Affidavit") in support of the Debtors' *Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact with the Debtors, their Officers, or their*

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott.  The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

*Counsel* (the "Motion").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.     I am authorized to submit this Affidavit, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

**Interactions with Mr. Van Deelen**

4.     On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization (the "March 12th Hearing").  During and after the March 12th Hearing, Michael Van Deelen made certain false, threatening, and vulgar remarks to me.

5.     Mr. Van Deelen made false and misleading statements about me, Kirkland, and the Debtors on the record during the March 12th Hearing.  During his closing argument, Mr. Van Deelen suggested that the Debtors' chapter 11 plan of reorganization could contain a provision allowing either the Debtors or Kirkland to "come out to [his] house and shoot [him]."  Mr. Van Deelen also falsely stated on the record that I threatened him.  Mr. Van Deelen also referred to the Court as a "son of a bitch."  These statements can be heard on the Court's audio recording of the March 12th Hearing.

6.     After the conclusion of the March 12th Hearing, Mr. Van Deelen waited outside of the restroom to confront me.  Mr. Van Deelen first asked for my name.  Mr. Van Deelen did not indicate why he was attempting to personally identify me.  I responded to Mr. Van Deelen that it "didn't matter" what my name was.  Mr. Van Deelen then called me a "pasty white fuck" and said "I'll have my way with your wife."

7.     On March 12, 2020, Mr. Van Deelen also sent me an email asking me to confirm our seating positions during the March 12th Hearing.  A copy of this email is attached to this

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

2

Affidavit as **Exhibit 1**.  I believe this email was a further attempt by Mr. Van Deelen to personally identify me.

8.      In light of the statements on the record at the March 12th Hearing and herein, I believe Mr. Van Deelen's behavior is intended to threaten, harass, and intimidate me, the Debtors' officers, and our families.  Accordingly, I support the relief sought in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 17, 2020

*/s/ Joshua A. Sussberg*
Joshua A. Sussberg
as President of Joshua A. Sussberg, P.C., as
Partner of Kirkland & Ellis LLP; and as
Partner of Kirkland & Ellis International LLP

3

000705

**<u>Exhibit 1</u>**

**Van Deelen Email**

Begin forwarded message:

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Date:** March 13, 2020 at 4:36:33 PM EDT
**To:** "Sussberg, Josh" <jsussberg@kirkland.com>
**Subject: [EXT] March 12, 2020, Plan Confirmation Hearing for Debtor McDermott International (case number 20-30336)**

Mr. Sussberg:

I was at the above hearing and represented myself as a Party In Interest who opposed the plan confirmation. You sat across the gap between the two conference tables at approximately arms length from me. If you deny this, please forward said denial to me at your earliest convenience, but no later than 5:00 C.S.T. on Wednesday, March 18, 2020.

I recognize you from your picture on the Kirkland & Ellis website which is where I obtained your email address.

Regards,

Michael Van Deelen

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

000707

# EXHIBIT A5

000708

## Exhibit B

**Spence Affidavit**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | ) Case No. 20-30336 (DRJ) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## AFFIDAVIT OF STUART SPENCE
## IN SUPPORT OF DEBTORS' EMERGENCY MOTION
## FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE
## SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM
## FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

I, Stuart Spence, hereby declare under penalty of perjury:

1. I am over the age of 18 and competent to testify. I am the former Executive Vice President and Chief Financial Officer of McDermott International, Inc.

2. I submit this Affidavit (the "Affidavit") in support of the Debtors' *Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact with the Debtors, their Officers, or their Counsel* (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. I am authorized to submit this affidavit, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

**Interactions with Mr. Van Deelen**

4.      At approximately 10:57 a.m. on February 27, 2020, Michael Van Deelen arrived at my private residence and knocked on the front door to my home.  Mr. Van Deelen's appearance was unannounced and I had never spoken to him or contacted him prior to February 27, 2020.  A photograph captured from my doorbell camera is attached hereto as Exhibit 1.

5.      Because I was on a conference call at the time, my wife answered the door.  Mr. Van Deelen spoke with my wife, purporting to do so to confirm he had my correct address for purposes of sending a subpoena.  Upon realizing the nature of Mr. Van Deelen's presence at our home, my wife became visibly shaken.

6.      Despite this interaction, I voluntarily testified at the hearing in the Debtors' chapter 11 cases on March 12, 2020.  In light of the statements on the record at that hearing and herein, I believe Mr. Van Deelen's behavior is intended to threaten, harass, and intimidate me. Accordingly, I support the relief sought in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


 Dated: March 17, 2020                                   */s/ Stuart Spence*
                                                        Stuart Spence

000711

**<u>Exhibit 1</u>**

**Doorbell Camera Photograph**

000712



000713

# EXHIBIT A6

000714

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
**F I L E D**

**MAR 18 2020**

David J. Bradley, Clerk of Court

In re:

MCDERMOTT INTERNATIONAL, INC, *et al*

Debtor(s).

)
)
)
)
)
)
)
)
)

Case No. 20-30336

Chapter 11

## PARTY IN INTEREST MICHAEL VAN DEELEN'S RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL; PROPOSED ORDER

COMES NOW, Michael D. Van Deelen, a Party In Interest in the instant action and for his Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel states as follows:

1. Van Deelen did not call the Court a 'son of a bitch' as the movants claim in paragraph 7 of their emergency motion and in paragraph 5 of Exhibit A (Sussberg Affidavit). Van Deelen respectfully asks this Court to listen to that section of the audio in which movants claim Van Deelen calls the Court a 'son of a bitch' (3:19:29 - 3:21:20). Van Deelen was sitting just a few feet from the Court during the hearing. If Van Deelen would have called the Court a 'son of a bitch', the Court would certainly have heard him do so.

1

# The Law

2. Except for the falsely alleged profanity mentioned above, the other alleged improprieties claimed of by the movants are alleged to have taken place when Court was not in session, outside the courtroom and in violation of no Court order. The Court had no jurisdiction over Van Deelen under such circumstances.

3. The Court does not have jurisdiction of Van Deelen's private actions unrelated to the judicial proceedings under 11 U.S.C. 105(a). Section 105(a) authorizes the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code:

> "The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)). Thus, courts may not use § 105 to create substantive rights unavailable under the Code. *See Taylor v. United States (In re Taylor)*, 263 B.R. 139 (N.D. Ala. 2001) (note: on appeal to 11th Cir.); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.)*, 262 B.R. 893, 899 (D. Del. 2001); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451 (Bankr. E.D. Ark. 1994); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

4. The Court may not issue a contempt of court order for behavior which does not directly defy the Court or **which does not violate a previous court order**. (Note that Appendix A to the Local Rules of the Southern District of Texas deals with Courtroom Etiquette, not with behavior outside of the courtroom.)

5. The movants cite *Chambers v. NASCO*, 501 U.S. 32 (1991), in their argument that the Court can sanction Van Deelen, but do not inform this Court that *Chambers* has been superceded. There currently are no statutes, rules or procedures, either federal or local, which gives the Court the ability to sanction a party's behavior that does not

directly defy the sanctioning court or is beyond the confines of a court order. In *F.D.I.C. v. Maxxam, Inc.*, the district court in Texas sanctioned an attorney for misconduct that occurred in an administrative proceeding in Washington, D.C., a proceeding that was not overseen by the district court. 532 F.3d 566, 591 (5th Cir. 2008). Upon review, the Fifth Circuit held that the court's inherent power to sanction did not extend to the administrative hearing but rather only extended to situations in which "a party engages in bad-faith conduct [that directly defies] the sanctioning court." *Id.* at 591 (internal quotation marks omitted). Later, in *Positive Software Solutions, Inc. v. New Century Mortgage Corporation*, the Fifth Circuit, relying on its *Maxxam* decision, held that misconduct during arbitration was beyond the reach of the district court's inherent power, stating that the misconduct "was neither before the district court nor in direct defiance of its order." 619 F.3d 458, 461 (5th Cir. 2010).

6. The movants also cite *In re Cochener*, 360 B.R. 542, 569 (Bankr., S.D. Tex. 2007) (quoting *Chambers v. NASCO*, 501 U.S. 32 (1991)), *Placid Ref. Co. v. Terrebonne Fuel & Lube*, 108 F.3d 609 (5th Cir. 21997 (sic)) and *Mooney v. Green Tree Serv. Inc.* 340 B.R. 351 (Bankr. E.D. Tex. 2006) to support their claim that this Court can sanction Van Deelen. However, each of these cases involved actions inside the confines of the bankruptcy code or the violation of orders or procedures that the court had jurisdiction over and therefore do not apply to the instant case as seen above.

## The Allegations

### Mrs. Spence

7. Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing.  Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence.  Mr. Spence accepted service on 2/19/20.  Exhibit 1.

8. In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair.  Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

9. Van Deelen believed that Mr. Spence was in his early 50's and bald. Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address.  Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person be served.  Mr. Spence did not answer his phone or return the calls.

10. To avoid having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell.  A middle-aged lady answered the bell.  Van Deelen politely asked if Mr. Stuart Spence was home.  The lady said 'no'.  Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served.  Van Deelen then politely asked the lady if Mr. Stuart Spence lived there. She said 'yes'.  Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott.  She replied 'yes'.  At that point, Van Deelen apologized for having bothered the lady and left.

11. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so. Mrs. Spence has not presented an affidavit on behalf of the movants' claims that alleges any wrongdoing by Van Deelen.

12. It was within Van Deelen's civil rights to speak to Mrs. Spence. The Court had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

13. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

**Mr. Sussberg**

14. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

15. Through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this

exchange because the record will show that the Court told Mr. Sussberg and Mr. Van Deelen to 'hold it down' or words to that effect.

16. After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom. Like many at the end of the long hearing, Van Deelen needed to use the restroom. As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom. Due to the unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him. Mr. Van Deelen said to Mr. Sussberg: 'May I have your name, sir?" Mr. Sussberg angrily refused to give Van Deelen his name. Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!" He also told Van Deelen other things including: "You are a fool!" Mr. Sussberg is a young, stocky, man. Van Deelen is a 70 year-old senior citizen. Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety. Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators. All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen. Mr. Sussberg then began calling Van Deelen names again. Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen. Van Deelen was terrified by Mr. Sussberg's actions.  Mr. Sussberg eventually left and again went down the hallway towards the elevators.

17. Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left. Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left. Van Deelen was

extremely frightened and upset. So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before. Van Deelen had to ask a garage employee for assistance in finding his car.

18. At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck' or say 'I will have my way with your wife'. That Van Deelen would say those things is incredibly insulting and beyond belief.

19. Mr. Sussberg's comments to Van Deelen, of which he fails to inform the Court, violate Rule 14 of the Court's Rules of Etiquette:

*Avoid disparaging remarks and acrimony towards anyone, especially adverse parties and counsel, and discourage ill-will between the litigants. Counsel must abstain from unnecessary references to opposing counsel, especially peculiarities.*

20. The Court will note that, even though there were many persons who had attended the hearing within earshot from Sussberg and Van Deelen, Sussberg does not mention their names or produce affidavits from them substantiating his (false) account of his interaction with Van Deelen.

21. Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

22.  If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

23.  Please see Exhibit 2, Van Deelen Affidavit.

**Other**

24.  Paragraph 10 of the movants' Emergency Motion states that Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri,* 2006 WL 2077640 (W.D. Mo. 2006).  This was a non-bankruptcy case.  What the movants fail to tell this Court is that a significant amount of the sanctions were overturned on appeal.  Van Deelen has never fabricated evidence and  he never will.  On the other hand, the movants have fabricated evidence to support their Emergency Motion, including when they claim that Van Deelen called the Court a 'son of a bitch' during the Plan Confirmation Hearing.  Exhibit 2, Van Deelen Affidavit.

25.  Paragraph 18 of the movants' Emergency Motion claims that "Mr. Van Deelen has threatened physical violence against family members of counsel in these cases."  This statement is unsupported by any facts other than the false allegation that Van Deelen allegedly said that he was going to 'have his way' with Mr. Sussberg's wife.  The paragraph 18 statement states 'violence against family *members* (plural) *of counsel* (plural) *in these cases'* (plural).  What family members?  What counsel?  What cases?  The egregious manufacturing of false evidence by the movants in their Emergency Motion is beyond the pale.  Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with.  Exhibit 2, Van Deelen Affidavit.

8

26. What is going on here? It is no secret that Van Deelen plans to file suit against McDermott employees in Texas state court for their malfeasance relating to McDermott's bankruptcy and the events leading up thereto. Other shareholders have indicated they may also file suit. Van Deelen believes that the movants' Emergency Motion is an attempt to prevent Van Deelen from filing suit by having this Court enjoin him from doing so.

## Summary

27. The movants apparently seek sanctions against Van Deelen for the following reasons:

A. Van Deelen allegedly called the Court a 'son of a bitch' during the Plan Confirmation hearing held on 3/12/20. This false allegation can be easily refuted by listening to the 3/12/20 audio clip from the Plan Confirmation hearing (time stamp 3:19:29 - 3:21:20).

B. Van Deelen filed numerous documents in the instant action, which was his Constitutional right.

C. Van Deelen was sanctioned by a Missouri District Court in 2006. Not only was a significant portion of the sanction overturned on appeal, but a single resolved non-bankruptcy case from 14 years ago has no bearing on the instant action,

D. After being unable to contact Mr. Spence by phone, Van Deelen went to Mr. Spence's believed residence, was told by his wife that Mr. Spence was not home, and then respectfully spoke to Mr. Spence's wife for the purpose of dismissing Mr. Spence from the subpoena he had been served if he was not the correct person to have been served.

E.  After Mr. Sussberg refused to give Van Deelen his name when Van Deelen asked him for it during the 3/12/20 Plan Confirmation Hearing, Van Deelen sent Mr. Sussberg a respectful, non-threatening, email seeking to confirm if Mr. Sussberg was the person seated across from him during the 3/12/20 Plan Confirmation Hearing.

F.  The movants allege, without any facts or proof, that "Mr. Van Deelen has threatened physical violence against family members (plural) of counsel (plural) in these cases (plural)."

G.  Mr. Sussberg has falsely alleged that Van Deelen called him a 'pasty white fuck' and said 'I will have my way with your wife' after the 3/12/20 Plan Confirmation Hearing had been adjourned.  Even though many people were milling around after the hearing, Mr. Sussberg does not produce one affidavit from a single witness (other than himself) discussing Van Deelen's alleged bad behavior.  Not only are his allegations patently false, but also Mr. Sussberg conveniently failed to tell the Court that he had violated the Court's rules of etiquette when told Van Deelen "You are disgusting!" during the 3/12/20 Plan Confirmation Hearing and after it had been adjourned; that he had told Van Deelen "You are a fool!" after the 3/12/20 Plan Confirmation Hearing had been adjourned; that he had angrily and physically charged Mr. Van Deelen, stopping just inches from Van Deelen's person after the 3/12/20 Plan Confirmation Hearing had been adjourned; and that he had refused to give Van Deelen his name when Van Deelen politely asked for it after the 3/12/20 Plan Confirmation Hearing had been adjourned.

28.  Van Deelen has attempted to contact the movants to resolve their Emergency Motion without the need for a hearing.  The movants have not returned the message left with the movants' assistant.  Exhibit 2, Van Deelen Affidavit.

WHEREFORE, for the reasons discussed herein, Van Deelen respectfully requests that this Court deny in its entirety the movants' Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited from Further Contact With the Debtors, Their Officers, or Their Counsel.

Houston, Texas

March 18, 2020

Respectfully submitted,

Michael Van Deelen
Party In Interest
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document, including Proposed Order, to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this 18th day of March, 2020.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

000725

# EXHIBIT 1

# SPENCE PROOF OF SERVICE

12

AO 88B (Rev appear and testify at a Hearing or Trial in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE

### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: ___STUART SPENCE___

on *(date)* __Feb. 18, 2020__ .

■ I served the subpoena by delivering a copy to the named person as follows: ___STUART SPENCE___

_____ on *(date)* __Wed., Feb. 19, 2020__ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ __71.00__ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __95.00__ .

I declare under penalty of perjury that this information is true and correct.

Date: __February 19, 2020__

_____
*Server's signature*

__LISA G. MOBERG, PSC#12076__
*Printed name and title*

__4806 W. Walnut St.__
__Pearland, Texas 77581__
*Server's address*

Additional information concerning attempted service, etc.:

**1) Successful Attempt: Feb 19, 2020 @ 8:23 p.m. CST at HOME:** ███████████, ███████████
**received by STUART SPENCE, Age: 65; Ethnicity: Caucasian; Gender: Male; Weight: 220; Height: 6'1"; Hair: White
I personally and successfully served STUART SPENCE, who willingly accepted service without incident at the listed
address.**

13

Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

| Southern | District of | Texas, Houston Division |
|---|---|---|

In re McDermott International, Inc., et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No. ___20-30336___

Chapter ___11___

Adv. Proc. No. _____

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Stuart Spence
_____
*(Name of person to whom the subpoena is directed)*

■ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case (or adversary proceeding). When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE | COURTROOM | 400 |
|---|---|---|
| U.S. Bankruptcy Court 515 Rusk St., Houston, TX | DATE AND TIME 03/12/20 | 9:00 A.M. |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___02/18/20___

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Michael Van Deelen (party) _____ , who issues or requests this subpoena, are:

6014 Capella Park Drive, Spring, TX; michaelvandeelen@gmail.com; 832-562-0723

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

14

000728

EXHIBIT 2

VAN DEELEN AFFIDAVIT

15

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

In re:                                              )
                                                    )
                                                    )      Case No. 20-30336
MCDERMOTT INTERNATIONAL, INC, *et al*               )
                                                    )      Chapter 11
            Debtor(s).                              )
                                                    )
                                                    )

## AFFIDAVIT OF MICHAEL VAN DEELEN IN SUPPORT OF HIS RESPONSE TO EMERGENCY MOTION FOR MICHAEL VAN DEELEN TO APPEAR AND SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT AND PROHIBITED FROM FURTHER CONTACT WITH THE DEBTORS, THEIR OFFICERS, OR THEIR COUNSEL

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

BEFORE ME, the undersigned authority, personally appeared Michael Van Deelen, who, being by me duly sworn and deposed, stated the following:

"My name is Michael Van Deelen, I am over 21 years of age, of sound mind, capable of making this Affidavit, and have personal knowledge of the facts stated herein. In the following, I refer to myself as 'Van Deelen':

1. Van Deelen did not call the Court a 'son of a bitch' during the 3/12/20 Plan Confirmation Hearing in the instant action or at any other time. Van Deelen was sitting just a

16

few feet from the Court during the hearing. If Van Deelen would have called the Court a 'son of a bitch', he believes the Court would certainly have heard him do so.

2. Van Deelen subpoenaed Mr. Stuart Spence to testify during the 3/12/20 Plan Confirmation Hearing in the instant action. Van Deelen hired Ms. Lisa Moberg, a process server, to serve Mr. Spence. Mr. Spence accepted service on 2/19/20.

3. In reviewing the Proof of Service, Van Deelen noticed that the description of Mr. Spence given by Ms. Moberg stated that he was 65 years old with white hair. Van Deelen called Ms. Moberg who confirmed the description of Mr. Spence.

4. Van Deelen believed that Mr. Spence was in his early 50's and bald. Accordingly, Van Deelen thought that maybe the wrong person had been served, especially since the address of service was not the address given in public records as Mr. Spence's recent address. Van Deelen and Ms. Moberg tried several times to call Mr. Spence to ask if he was the right person to be served. Mr. Spence did not answer his phone or return the calls.

5. To rectify having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell. A middle-aged lady answered the bell. Van Deelen politely asked if Mr. Stuart Spence was home. The lady said 'no'. Van Deelen then **apologetically and very politely** told the lady that he had had a summons issued to Mr. Spence at that address and that Van Deelen was afraid the wrong person may have been served. Van Deelen then politely asked the lady if Mr. Stuart Spence lived there. She said 'yes'. Van Deelen then politely asked the lady if Mr. Spence had worked at McDermott. She replied 'yes'. At that point, Van Deelen apologized for having bothered the lady and left.

2

17

6. At no time during the encounter with the lady was Van Deelen disrespectful. Van Deelen never raised his voice. The lady never refused to answer Van Deelen's questions. If the lady would have asked Van Deelen to leave, he would have immediately done so.

7. The Court in the instant action had not previously directed Van Deelen to stay away from Mr. or Mrs. Spence. In fact, the Court declined to hear Van Deelen's explanation of what had occurred with Mrs. Spence when Van Deelen proffered testimony concerning their interaction during the 3/12/20 Plan Confirmation Hearing.

8. If Mr. Spence would have answered his phone or returned Ms. Moberg's or Van Deelen's calls, Van Deelen would not have had to go to his residence to see if he was the right person to have been served.

9. During the 3/12/20 hearing, a person now known as Mr. Sussberg sat directly across the isle between the two conference tables from Van Deelen.

10. At the 3/12/20 hearing, through Van Deelen's objection, the Debtor witnesses were made to testify in person instead of having their written statements adopted into the record. This was time consuming. As the witnesses testified and time proceeded, Van Deelen noticed Mr. Sussberg becoming more and more agitated. Finally, Mr. Sussberg, without any cue from Van Deelen, said to Van Deelen and all who could hear: "You are disgusting!" and other insults. Van Deelen looked at him and told him to be quiet. The Court heard this exchange because the record will show that the Court told Mr. Sussberg and Van Deelen to 'hold it down' or words to that effect.

11. After the hearing, Van Deelen did not follow Mr. Sussberg anywhere, including the restroom. Like many at the end of the long hearing, Van Deelen needed to use the restroom. As Van Deelen was entering the restroom, Mr. Sussberg was leaving the restroom. Due to the

18

unprofessional behavior exhibited by Mr. Sussberg towards Van Deelen during the hearing as detailed above, Van Deelen wanted to determine Mr. Sussberg's name so he could make a formal complaint against him. Van Deelen said to Mr. Sussberg: 'May I have your name, sir?" Mr. Sussberg angrily refused to give Van Deelen his name. Instead, Mr. Sussberg again told Van Deelen: "You are disgusting!" He also told Van Deelen other things including: "You are a fool!" Mr. Sussberg is a young, stocky, man. Van Deelen is a 70 year-old senior citizen. Mr. Sussberg's words, tenor and posture caused Van Deelen to be afraid for his safety. Van Deelen began to have heart palpitations and he remained near the restroom while Sussberg left and went down the hallway towards the elevators. All of a sudden, Sussberg came rushing back down the hallway and towards the restroom area where Van Deelen was and angrily charged Van Deelen. Mr. Sussberg then began calling Van Deelen names again. Mr. Sussberg stood only inches away from Van Deelen, shouting at Van Deelen. Van Deelen was terrified by Mr. Sussberg's actions. Mr. Sussberg eventually left and again went down the hallway towards the elevators.

12. Van Deelen, terribly frightened, remained in the restroom area for a period of time until he hoped Mr. Sussberg had left. Eventually Van Deelen looked down the hall toward the elevators and saw that Mr. Sussberg had in fact left. Van Deelen was extremely frightened and upset. So upset, in fact, that he could not locate his vehicle in the parking garage near the courthouse that he had used many times before. Van Deelen had to ask a garage employee for assistance in finding his car.

13. At no time did Van Deelen call Mr. Sussberg a 'pasty white fuck' or say 'I will have my way with your wife'. That Van Deelen would say those things is incredibly insulting and beyond belief.

19

14. Still trying to determine Mr. Sussberg's identity, Van Deelen found Mr. Sussberg's photo on the Kirkland and Ellis website. Van Deelen then sent Mr. Sussberg an email stating that Van Deelen had identified him from the Kirkland and Ellis website. In an abundance of caution, even though Van Deelen recognized him from his photo, Van Deelen wanted to give Mr. Sussberg the opportunity to deny that he was the one sitting across from Van Deelen during the 3/12/20 hearing. (It was the Kirkland and Ellis employee sitting across from Van Deelen who told Van Deelen and others: "You [Van Deelen] are disgusting!") The email is respectful and contains no threatening language.

15. If Mr. Sussberg would have given Van Deelen his name when Van Deelen politely asked for it after the hearing, Van Deelen would not have had to email Mr. Sussberg.

16. Van Deelen was sanctioned by the District Court in *Michael Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640 (W.D. Mo. 2006). This was a non-bankruptcy case. The sanctions were reduced significantly on appeal. Van Deelen has never fabricated evidence and he never will.

17. Van Deelen has never threatened violence against family members of counsel or other persons in any case he has been involved with.

18. Van Deelen has attempted to contact the movants to resolve their Emergency Motion (Document 694) without the need for a hearing. The movants have not returned the message left with the movants' assistant.

5

20

Further Affiant sayeth not."

_Michael Van Deelen_
Michael Van Deelen
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME ON THE 18th day of March, 2020.

Notary Public, State of Texas

William Phongdara
(Print or Type Name)

My Commission Expires: 04/24/2022

WILLIAM PHONGDARA
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 04/24/22
NOTARY ID 13154754-8

21

000735

# EXHIBIT A7



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
03/23/2020

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-30336** |
| **MCDERMOTT INTERNATIONAL, INC.,** *et* | § | **CHAPTER 11** |
| *al.*, | § | **(Jointly Administered)** |
| | § | |
| Debtors. | § | **DAVID R. JONES** |

<u>**ORDER**</u>
**(Docket No. 694)**

The Court has reviewed the Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not be Held in Contempt and Prohibited from Further Contact with the Debtors, their Officers, or their Counsel [Docket No. 694]. The Court has also reviewed Mr. Van Deelen's response to the motion [Docket No. 701]. Since the filing of the motion, the Court is aware that Mr. Van Deelen came back to the courthouse to file a complaint against Debtors' counsel on the basis of an alleged threat made at or after the confirmation hearing in this case[1]. In addition, the Court has reviewed Mr. Van Deelen's conduct in other hearings before the Court in this case.

The focus of the emergency motion surrounds the recent confirmation hearing held in this case on March 12, 2020. During the hearing, Mr. Van Deelen is alleged to have made certain disparaging remarks about the Court as well as threats toward Debtors' counsel. Mr. Van Deelen denies that he made any disparaging remarks toward the Court and asserts that any threats toward counsel were made outside the courtroom and therefore outside the Court's jurisdiction. Mr. Van Deelen further asserts that he made no such threats.

In the movants' motion, it is alleged that Mr. Van Deelen called the Court a "son of a bitch." Mr. Van Deelen denies that he made any such remark and that he was "sitting just a few feet from the Court during the hearing . . . [and] [i]f Van Deelen would have called the Court a "son of a bitch", the Court would certainly have heard him do so." Mr. Van Deelen's denial is set forth in his sworn affidavit attached to his response [Docket No. 701]. Unfortunately for Mr. Van Deelen, the Court's staff did hear Mr. Van Deelen's statement and immediately reported it to chambers. Moreover, although Mr. Van Deelen was facing away from the microphones located on counsel table, Mr. Van Deelen's statement is audible on the original audio with headphones. While the Court was willing to overlook the insult, it cannot overlook a false statement.

The motion goes on to allege that Mr. Van Deelen made vulgar and threatening comments to Mr. Sussberg and his family. Mr. Van Deelen denies under oath that any such comments were made. Given that Mr. Van Deelen has demonstrated the propensity to make

---

[1] When the courthouse security officer offered to take the complaint, Mr. Van Deelen declined to make an official report and left the building.

1 / 2

false statements under oath, the Court has grave concerns about Mr. Van Deelen's affidavit and gives it little weight under the circumstances. Moreover, given Mr. Deelen's prior conduct before the Court and reference to "shooting" during the confirmation hearing, the Court has concerns about Mr. Van Deelen's mental stability. The Court concludes that Mr. Van Deelen poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position.

Mr. Van Deelen goes to great length to assert that the Court cannot sanction him for his conduct outside the courtroom and that no court order has been entered that he violated. Mr. Van Deelen is correct in that statement. However, the Court has the authority and the duty to protect those parties that appear before it. Further, the Court has a duty to ensure that the federal courthouse is a place of safety and order for all persons who enter. Accordingly, it is

**ORDERED THAT**:

1.     Michael D. Van Deelen is prohibited from contacting the Court and its staff by any means. Any communication to the Court or its staff must be made in writing and filed with the Clerk of the Court.

2.     Michael D. Van Deelen is prohibited from contacting Joshua Sussberg or any member of his family in any manner. Should Mr. Sussberg find it necessary to seek the assistance of law enforcement officials to protect his family and enforce this order, the Court requests that upon presentation of a copy of this order and a determination that a violation of this paragraph has occurred, such law enforcement officials should detain Mr. Van Deelen and transfer him to this Court for further proceedings.

3.     A copy of this Order shall be delivered to the United States Marshal for further investigation of Mr. Van Deelen's conduct. Further, Mr. Van Deelen may not enter the federal courthouse except with the escort of a court security officer.

4.     A copy of this Order shall be delivered to the United States Attorney for investigation of Mr. Van Deelen's conduct in this case.

5.     The request for sanctions is denied.

6.     Should Mr. Van Deelen wish to seek relief from this order or request a hearing, he may do so by pleading filed within fourteen days.

7.     This order is effective upon entry.

**SIGNED: March 23, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

000738

# EXHIBIT A8

United States Courts
Southern District of Texas
F I L E D

MAR 24 2020

David J. Bradley, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

In re:                                           )
                                                 )
                                                 )        Case No. 20-30336
MCDERMOTT INTERNATIONAL, INC, *et al*            )
                                                 )        Chapter 11
                    Debtor(s).                   )
                                                 )
                                                 )

## PARTY IN INTEREST MICHAEL VAN DEELEN'S REQUEST FOR HEARING; PROPOSED ORDER

       In its Order (Docket 719) entered on 3/23/20, the court notified Party In Interest Michael Van Deelen that he could request a hearing within 14 days of the entry of the Order. Plaintiff accordingly requests the earliest possible hearing date and time consistent with the court's Order.

       Van Deelen will seek, among other things, clarification of the following during the hearing:

       A. The exact section of the audio made during the 3/12/20 Plan Confirmation Hearing in which the court claims Van Deelen called him a son-of-a-bitch. Plaintiff further requests that the court play said portion of the audio during the hearing.

       B. Clarification on whether or not the court is ordering that Van Deelen is prohibited from filing a civil lawsuit for assault and possibly other causes of action against Joshua Sussberg in Harris County District Court.

000740

C.  Clarification on whether or not the court is ordering that Van Deelen is prohibited from filing a federal civil rights lawsuit against David R. Jones.

D.  Clarification on the exact dates, times, places and circumstances in which Van Deelen has been disrespectful to court personnel.

E.  Clarification on the qualifications and training the court has in diagnosing mental health issues.

F.  Clarification on whether or not the court has ever heard Van Deelen say he was going to shoot someone.  If the court claims it has ever heard Van Deelen say he was going to shoot someone, provide clarification on the exact dates, times, places and circumstances under which the court heard Van Deelen say those words.

Houston, Texas

March 23, 2020

Respectfully submitted,

*Michael Van Deelen*

Michael Van Deelen
Party In Interest
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on this 23rd day of March, 2020.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

000742

# EXHIBIT A9



ENTERED
04/20/2020

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-30336 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*, | § | CHAPTER 11 |
| | § | (Jointly Administered) |
| Debtors. | § | DAVID R. JONES |
| | § | |

### ORDER
### (Docket No. 723)

In its order entered March 23, 2020 concerning Michael D. Van Deelen, the Court provided in paragraph 6 of the order that if Mr. Van Deelen wished to seek relief from the March 23, 2020 order or request a hearing, he could do so by filing a pleading within 14 days of the order's entry date (Docket No. 719). The intent of the paragraph was to ensure that no ambiguity existed in terms of the Court's directives to Mr. Van Deelen and that a proper balance was achieved between public safety and court access.

On March 24, 2020, Mr. Van Deelen filed a pleading requesting a hearing (Docket No. 723). In his pleading, Mr. Van Deelen identifies six topics for which he seeks "clarification." No other relief is sought. The pleading does nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose. The request for hearing is denied.

SIGNED: April 20, 2020.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

1 / 1

000744

# EXHIBIT B

Case 5:05-cv-04039-SAC   Document 162   Filed 11/10/08   Page 1 of 2
Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 245 of 453

000745

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL D. VAN DEELEN,

       Plaintiff,

vs.                           Civil Case No. 05-4039-SAC

MARION JOHNSON, STEVEN MILES,
DALE FLORY, KENNETH FANGOHR,
KEN McGOVERN, and THE BOARD OF
COUNTY COMMISSIONERS OF
DOUGLAS COUNTY, KANSAS,

       Defendants.

## JUDGMENT IN A CIVIL CASE

     This action came on for decision by the court.  The issues have been considered and a decision has been rendered.

     IT IS ORDERED AND ADJUDGED that in accordance with the Memoranda and Orders filed and entered on certain claims and issues, the plaintiff, Michael D. Van Deelen, shall take nothing and that these claims be dismissed on the merits.

     This action came on for trial by jury.  The issues have been tried and the jury has rendered its verdict.

     IT IS FURTHER ORDERED AND ADJUDGED that the plaintiff recover nothing and that the action be dismissed on the merits.

     IT IS FURTHER ORDERED AND ADJUDGED that the defendants, Marion Johnson, Steven Miles, Dale Flory, Kenneth Fangohr, Ken McGovern, and the Board of County Commissioners of Douglas County, Kansas, recover costs from the plaintiff, Michael D. Van Deelen.

Case 5:05-cv-04039-SAC   Document 162   Filed 11/10/08   Page 2 of 2
Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 246 of 453

000746

Dated: November 10, 2008            TIMOTHY M. O'BRIEN, CLERK

                                    By    s/ Brenda M. Wessel
                                          Deputy

000747

# EXHIBIT C

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 248 of 453
Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)
000748

2008 WL 11417175
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Michael D. VAN DEELEN, Plaintiff,

v.

ALAMOGORDO PUBLIC SCHOOLS
(a.k.a. Alamogordo School District),
Phillip Knight, Joe Jaramillo, Judy Jones,
Melissa Lomax, Michelle Dilworth,
Adrian Guerrero, Clarissa Johnson,
Tony Korwin, Lora Peachey, Bill Buhler,
J.R. Guinn, Ned Kline, Holly Bird, Carly
Stevens, Robert Pacheco, Mike May,
Sue Medina, Joseph Halbig, Rhonda
Cross, Allan Rickman, State of New
Mexico Public Education Department,
and 10 John/Jane Does, Defendants.

CV 07-171 MV/LCS
|
Signed 03/12/2008
|
Filed 03/14/2008

**Attorneys and Law Firms**

Michael D. Van Deelen, pro se.

Narvaez Law Firm, P.A., H. Nicole Werkmeister, Bryan C. Garcia, Attorneys for Alamogordo School Defendants.

Brennan & Sullivan, P.A., James P. Sullivan, Christina L.G. Brennan, Attorneys for Defendants Pacheco and May.

Montgomery & Andrews, P.A., Stephen S. Hamilton, Attorneys for Defendant PED.

## MEMORANDUM OPINION AND ORDER

MARTHA VAZQUEZ, UNITED STATES DISTRICT JUDGE

**\*1** THIS MATTER COMES BEFORE THE COURT on: (i) the Alamogordo Public School Defendants' Motion

to Dismiss Plaintiff's Constitutional Claims based on the Defense of Qualified Immunity, Doc. 42, filed July 13, 2007; (ii) the same Defendants' Motion to Dismiss Plaintiff's State Law Claims, Doc. 51, filed August 13, 2007; (iii) Defendants Robert Pacheco's and Mike May's Motion to Dismiss Plaintiff's Constitutional Claims Based on the Defense of Qualified Immunity, Doc. 56, filed August 20, 2007; (iv) Defendants Pacheco's and May's Motion to Dismiss Plaintiff's State Law Claims, Doc. 55, filed August 20, 2007; (v) Defendant Pacheco's Motion for Summary Judgment on Plaintiff's Count V on the Basis of the Defense of Qualified Immunity, Doc. 59, filed August 28, 2007; and (vi) Defendant New Mexico Public Education Department's ("PED") Motion to Dismiss, Doc. 76, filed Oct. 26, 2007. Having carefully reviewed the parties' briefs, the record, and the relevant law, the Court concludes that the Defendants' requests for dismissal should be granted in part and denied in part, that the Motion for Summary Judgment should be denied as moot, and that Defendants PED, Lomax, Guerro, Buhler, Bird, Stevens, May, Medina, Halbig, Cross, and Rickman should be dismissed as Defendants.

## APPLICABLE LEGAL STANDARDS

**I. Motions to dismiss.** The Defendants' motions to dismiss are brought pursuant to Fed. R. Civ. P. 12(b), thus they bear the burden of showing that, viewing the well-pleaded factual allegations in Plaintiff Michael Van Deelen's complaint as true and in the light most favorable to him, he has not alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S. Ct. 1955, 1974 (2007); *MacArthur v. San Juan County*, 497 F.3d 1057, 1064-65 (10th Cir. 2007) (discussing new rule 12(b)(6) standard). In applying this standard, the Court "need not accept [a party's] conclusory allegations as true." *S. Disposal, Inc. v. Tx. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). Nor may pleading deficiencies be overcome by mere "arguments that extend beyond the allegations contained in the complaint." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997). In resolving a motion to dismiss, the Court may consider attachments to the plaintiff's complaint and may take judicial notice of applicable ordinances or statutes. *See Pace v. Swerdlow*, —— F.3d ——, 2008 WL 570805, \*5 (10th Cir. Mar. 4, 2008).

**II. Pro se litigation.** Van Deelen alleges twenty violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983 in his amended complaint, including First-

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 249 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000749

Amendment retaliation and violation of his rights to equal protection and procedural and substantive due process. He also alleges twelve state-law claims in his 65-page amended complaint. Because he proceeds pro se, Van Deelen asserts that his filings are "entitled to a solicitous construction." Doc. 54 at 3-4. While a pro se litigant's pleadings and filings are usually given a liberal interpretation and the pro se litigant is sometimes accorded an opportunity to amend his complaint to correct factual deficiencies, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), Van Deelen is not the "run-of-the-mill" pro se litigant[1]. A quick review of the electronic databases from federal courts within and without the Tenth Circuit indicates that Van Deelen has a long history of engaging in extensive litigation against judges, attorneys, police and security officers, school districts, and governmental boards, commissions, employees and employers, and of making very similar claims to the ones in the case at bar. The Courts have carefully schooled him in how to properly state claims, in standards of review, and in how to follow the rules of procedure, and Van Deelen has had extensive experience in arguing legal issues related to § 1983 actions, including First-Amendment retaliation claims, due-process violations, and qualified immunity defenses since at least 1993. *See, e.g., Van Deelen v. Eudora Amateur Baseball Ass'n*, No. 93-2319 1993 WL 390376 (D. Kan. Sept. 23, 1993) (dismissing § 1983 claims against unincorporated volunteer association that suspended Van Deelen from coaching a little-league team because he "had a history of using profanity and of behaving irrationally while coaching," requiring his removal from the playing field by a city police officer, and noting that Van Deelen had also filed a state-court case with different claims and additional defendants arising from the same events); *Van Deelen v. City of Eudora*, No. 96-4040, 1996 WL 707016 (D. Kan. Nov. 5, 1996) (explaining, in § 1983 action alleging malicious prosecution, violation of right to be free from humiliation, intimidation, and harassment, and violation of right to privacy against police officers arising from events surrounding Van Deelen's 1993 criminal charges, that conclusory allegations do not provide a basis for relief, allowing Van Deelen to amend his complaint, and imposing Rule 11 sanctions because Van Deelen alleged claims that he had already released as part of a settlement agreement with one of the defendants); *Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223 (D. Kan. June 29, 1999) (granting summary judgment in § 1983 action in favor of prosecuting/investigating attorney who charged Van Deelen with assault after victim identified Van Deelen as his aggressor, and carefully explaining the requirement that Van Deelen allege all relevant facts in his complaints in a non-conclusory

manner); *Van Deelen v. Ramirez*, No. 00-4067, 2001 WL 789275 (D. Kan. May 1, 2001) (dismissing complaint brought under § 1983 for First-Amendment retaliation against board of county commissioners and its attorney after attorney instructed Van Deelen that, because of Van Deelen's "contentious phone conversations," the attorney and his staff would only communicate with Van Deelen in writing, and noting that Van Deelen was characterized as a "professional litigant"); *Van Deelen v. McAnany*, No. 03-1408 (D. Kan. Jan. 27, 2004) (dismissing § 1983 action for retaliation and violation of right of equal access to the courts, due process, and equal protection rights against state-court judge in Johnson County, Kansas who was presiding over five state-court actions in which Van Deelen was the plaintiff); *Van Deelen v. Shawnee Mission Unified Sch. Dist.*, 316 F. Supp. 2d 1052 (D. Kan. 2004) (dismissing case for First Amendment retaliation brought against school district and principals for allegedly defaming Van Deelen and coloring him "in a false light"—by barring Van Deelen from school property because of his conduct of using inappropriate language and obscene hand gestures towards teachers, students, and the principal of another school at a wrestling match, and by publishing a letter stating that Van Deelen violated warnings from school security officers, made threats, used profanity during meetings, had a bad record of behavior, personally attacked others, was "the most out-of-control parent [the principal] had witnessed in 31 years of education" and was so threatening to the principal that the principal physically feared Van Deelen—in retaliation for Van Deelen's threats to file suits and for filing a separate state-court suit against the same defendants for "negligence, defamation, invasion of privacy, intentional infliction of emotional distress, assault, criminal and terroristic threats and extreme and outrageous conduct" and setting out pleading requirements and qualified immunity defense standards); *Van Deelen v. City of Kan. City, Mo.*, No. 05-2028, 2006 WL 1301000 (D. Kan. May 9, 2006) (noting that Van Deelen asserted, *inter alia*, due process, equal protection, and First-Amendment retaliation claims and fraud and negligence claims against city employer and city attorney and contended that city security guards detained Van Deelen, intimidated him, and barred him from entering city public buildings unless accompanied by a security guard because he had previously filed two state-court suits against the city and its employees); *Van Deelen v. Johnson*, No. 05-4039, 2006 WL 1764381 (D. Kan. June 27, 2006) (noting that Van Deelen is "a pro se frequent filer;" that he alleged 18 separate federal and state-law claims, including claims for First-Amendment retaliation, violation of rights to free speech, equal protection, and due-process,

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 250 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000750

and conspiracy against board of commissioners, county appraisers, sheriffs, and deputies, and granting summary judgment in favor of defendants on federal claims and dismissing state-law claims), *aff'd in part & rev'd in part*, 497 F.3d 1151 (10th Cir. 2007); *Van Deelen v. Fairchild*, No. 05-3468, 2006 WL 2507599 (10th Cir. Aug. 31, 2006) (affirming dismissal of lawsuit against six state-court judges —who were presiding over several state-court suits brought by Van Deelen in Douglas County, Kansas—and a judicial assistant for retaliation in violation of his First-Amendment rights and for negligent supervision and defamation after one judge informed Van Deelen that, because of Van Deelen's oral threat to sue the judge and his administrative assistant, all communication should be in writing); *Van Deelen v. City of Kan. City, Mo.*, Nos. 06-1896, 06-3058, 2007 WL 3101816 (8th Cir. Oct. 19, 2007) (affirming Missouri district court's conclusion that Van Deelen had filed suit alleging constitutional violations with regard to the termination of his city employment "maliciously to vex and annoy the City" and that he should be sanctioned in the amount of $6000 and that filing restrictions should be imposed against him). The suits Van Deelen has prosecuted have been hotly contested and have required extensive briefing in motions to dismiss and for summary judgment, and he also has experience in litigating his suits at trial.

**\*2** Indeed, after disposing of several motions for summary judgment that Van Deelen briefed and observing Van Deelen litigate his case during a week-long trial, a federal district-court judge stated:

Although proceeding pro se, Van Deelen demonstrated his knowledge of the Federal Rules of Civil Procedure and Evidence and the Rules of this Court. However, Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout the trial Van Deelen repeatedly interrupted and argued with the Judge, counsel for the City and numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van Deelen fabricated evidence to support his claims.

*Van Deelen v. City of Kan. City, Mo.*, No. 04-989, 2006 WL 2077640, \*1 (W. D. Mo. July 24, 2006). The Court notes that the Tenth Circuit gave Van Deelen's filings made in 2005-2006 a "solicitous construction." *See Van Deelen v. Johnson*, 497 F.3d at 1153 n.1. Thus, while the Court remains

mindful that it may need to be solicitous in areas in which Van Deelen has had no previous experience or received no instruction from the federal courts, Van Deelen has already amended his complaint once and the Court sees no reason to continue to give Van Deelen repeated opportunities to amend pleadings in the same way that it would give an inexperienced, uneducated, or disadvantaged pro se litigant.[2] *See Hall*, 935 F.2d at 1110 (stating that the rule that courts should be less stringent in interpreting pro se complaints "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements"). The Court will use an approach consistent with Fed. R. Civ. P. 8(f), which provides that "[a]ll pleadings shall be so construed as to do substantial justice." *See Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) (" 'Liberal construction' of pro se pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure.").

**\*3 IV. Qualified immunity.** The doctrine of qualified immunity is "designed to protect public officials from spending inordinate time and money defending erroneous suits at trial." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). When a public official raises qualified immunity as an affirmative defense, "the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchill*, 484 F.3d 1244, 1250 (10th Cir. 2007).

Thus, the qualified immunity analysis begins with the court asking "whether the plaintiff's allegations, if true, establish a constitutional violation." *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) (internal quotation marks omitted). Accordingly, the Court initially must accept as true Van Deelen's assertions made in his amended complaint. *See Van Deelen*, 497 F.3d at 1159.

To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment right to petition, we have indicated three elements must be present. The plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c)

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 251 of 453

000751

the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.* at 1155-56. "In order to state a claim against a government entity under Section 1983, however, a plaintiff must demonstrate the existence of a policy or custom precipitating the plaintiff's injury." *Casey v. W. Las Vegas Indep. Sch. Dist.,* 473 F.3d 1323, 1334 n.12 (10th Cir. 2007).

When, as here, some of Van Deelen's First-Amendment retaliation claims involve speech related to his public employment as a teacher, the Court must apply a five-step analysis.

First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact.

....

.... [S]peech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do.

**\*4** An employee's official job description is not dispositive, however, because speech may be made pursuant to his official duties even if it deals with activities that the employee is not expressly required to perform. The ultimate question is whether the employee speaks as a citizen or instead as a government employee-an individual acting in his or her professional capacity. Consequently, if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.

At the same time, not all speech that occurs at work is made pursuant to an employee's official duties. Nor is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties. Instead, we must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship. *Brammer-Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1202-04 (10th Cir. 2007) (internal quotation marks, brackets, and citations omitted).

In *Brammer-Hoelter*, the Tenth Circuit agreed with the Fifth Circuit's approach when resolving whether the actions of a school employee that criticized his superiors were taken in the course of his official duties.

In *Williams [v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 693 (5th Cir. 2007)* ] (per curiam) ], an athletic director wrote memoranda to an office manager and principal alleging financial improprieties regarding certain athletic accounts. The school district conceded that the athletic director was not required to write letters to the principal concerning athletic accounts. After noting that the speech in the memoranda focused on the athletic director's daily operations, the Fifth Circuit stated:

Simply because Williams wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job. He needed account information so that he could properly execute his duties as Athletic Director, namely, taking the students to tournaments and paying their entry fees. The memoranda were not written from Williams's perspective as a "father" and "taxpayer."

*Id.* at 1203 n.5.

**V. Due Process.** "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest" or of an interest in life or liberty. *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 & n.2 (10th Cir. 2000). "Property" in the context of the Due Process clause, is a "legitimate claim of entitlement to some benefit"

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 252 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000752

based on a statute or state law, as opposed to unilateral expectation of a benefit. *See id.* at 1210 (internal quotation marks omitted). "Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182, 1189 (10th Cir. 2006) (internal quotation marks omitted)

"[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks omitted). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Rather, the plaintiff must show "a high level of outrageousness." *Id.* The conduct required to meet this standard depends on the circumstances. "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Lewis*, 523 U.S. at 853 (internal quotation marks omitted).

**\*5** *Clark v. Edmunds*, ––– F.3d ––––, ––––, 2008 WL 185615, \*2 (10th Cir. 2008).

**VI. Equal protection.** "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). Although not a member of a protected class, a plaintiff may bring an equal protection claim as a "class of one" by proving he was "singled out for persecution due to some animosity, meaning that the actions of [the defendant] were a spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state activity" and that he was "treated differently than those similarly situated." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (internal quotation marks omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (internal quotation marks omitted).

## RELEVANT FACTS

The Court accepts the following allegations in Van Deelen's amended complaint as true for the purposes of its analysis on the motion to dismiss. Van Deelen, who previously had no education, training, or experience as a teacher, was provisionally hired in late September 2006 to teach one class at Alamogordo High School ("AHS"). *See* Am. Compl. (Doc. 37) at 4, 25-26. He moved from Kansas to take the teaching position. *See id.* Between the time he started teaching that class on September 27 and October 17, 2006, Van Deelen reported four times to his supervisors and school security officers that students were assaulting each other either in his class or in the hallways, reported twice that he was assaulted and battered by his students, reported "numerous times" that his students and their parents were threatening him with bodily harm, and reported "numerous times" that his students were grossly insubordinate to him and threw food at him, were harassing each other, were behaving improperly, and were cheating on examinations. *See id.* at 8-9. AHS officials reportedly took no official action on Van Deelen's complaints.

On October 9, a student ("J.B.") became angry when Van Deelen gave him a note to take home about J.B.'s bad behavior. *See id.* at 10. J.B. threatened to "kick [Van Deelen's] ass," told Van Deelen that he might get hurt if he continued teaching, and told Van Deelen that J.B. would get his mom ("Mrs. B") to "take care" of Van Deelen. *Id.* AHS officials refused Van Deelen's plea to immediately post a security guard in Van Deelen's classroom. The next day, J.B. accused Van Deelen of being a "racist", which Van Deelen separately reported to school officials as harassment. *See id.* at 11. When J.B's sister, who also was in Van Deelen's class, told other students that Van Deelen was an "idiot," Van Deelen also reported her behavior as "harassment." *Id.* A few days later, Van Deelen reported to officials that J.B. harassed him at an off-campus gas station by calling him an "idiot and a fool." *Id.* On October 17, Mrs. B came to Van Deelen's classroom, demanded to talk to him in front of all the students, and refused to leave. *See id.* After Van Deelen called school security, Mrs. B approached Van Deelen and "bumped" him with her body. *Id.* at 12. After school security removed Mrs. B and her two children from Van Deelen's classroom, Van Deelen asked Defendant Dilworth, a school security guard, to call police so that Van Deelen could file a police report. *See id.* Dilworth did so, and Defendant May, an Alamogordo police officer assigned as a school safety officer, arrived and took the report. *See id.* Defendant May filed a police report that Van Deelen

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 253 of 453

000753

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

contends contained some false information. *See id.* at 13. Dilworth refused to stay in Van Deelen's classroom to provide protection. *See id.* at 12.

 **\*6**  In early October 2006, Defendants Bird and Stevens, two teachers whose classrooms were near Van Deelen's, began to file written and oral complaints with Defendant Jones (the Human Resources Director for the Alamogordo Public Schools ("APS") ) expressing their opinions that Van Deelen "presented a danger" and "security risk" to students and to them; that he was "mentally disturbed," "intimidating," "extremely unstable," and "irrational;" that he yelled at his students' parents and at them; and that he told students they would "never amount to anything." *Id.* at 27. In mid October, Mrs. S., another parent with a student in Van Deelen's class who also was an AHS employee, filed a complaint letter against Van Deelen arising from her interactions with him. *See id.* at 15. Defendants Lomax and Jones called Van Deelen to their offices after the October 17 incident with Mrs. B and her children was over and informed him that he was being indefinitely suspended with pay from teaching. *See id.* at 13.

The next day, October 18, Van Deelen filed a civil lawsuit in state court against Mrs. B and her two children for assault, battery, defamation, slander, invasion of privacy, conspiracy, and intentional infliction of emotional distress. *See id.* at 14. On December 19, while he was still suspended from teaching, Van Deelen announced his candidacy for a vacant Alamogordo school-board seat. *See id.* at 17. On January 15, 2007, Van Deelen filed a notice of claim with Defendant Knight, APS' superintendent, requesting $50,000 for negligence for AHS' alleged failure to protect him from "violence in his classroom." *Id.* at 14.

On January 16, Jones gave Van Deelen a memorandum reprimanding Van Deelen for improper behavior in dealing with students and parents and warning him that further infractions could result in his immediate termination. *See id.* at 15. But she also informed Van Deelen that he could resume teaching his class at AHS. *See id.* at 18.

On January 17, AHS held a public forum at the high school on the issue of "block scheduling[3]," which Knight and AHS's principal, Defendant Jaramillo, attended. *Id.* at 17. Van Deelen also attended the forum and "was the only teacher who spoke out against block scheduling." *Id.* Van Deelen's children had already graduated from high schools located in other states and lived in other cities. *See id.*, Ex. B. Defendant Buhler, another AHS teacher, berated Van Deelen at the public

forum for speaking out against the District, and later allegedly slandered Van Deelen and "colored him in a false light" by telling other teachers that Van Deelen was a "troublemaker" and "outsider," and that he "was not a good teacher" and should not be employed by AHS. Am. Compl. at 20. Buhler also made fun of a hat Van Deelen wore one day and caused other teachers to shun Van Deelen. *See id.*

On the morning of January 18, Defendant Pacheco, a police officer who also is a school-resource officer at AHS, told Van Deelen that he needed to see him. *See id.* at 17. Pacheco allegedly said that he and principal Jaramillo were concerned that Van Deelen had committed unspecified crimes on school property; that they were conducting an investigation; and that Van Deelen would be arrested and could lose his job "if the investigation found that [Van Deelen] had committed any crimes while on school property." *Id.* Pacheco allegedly told Van Deelen that he "needed to keep [his] mouth shut and stop talking about the problems at the High School." *Id.*

During his campaign for the school-board seat, Van Deelen distributed flyers to 2100 homes in his district. *Id.* at 18. In them, he contended that violence at AHS was "rampant" and he accused AHS officials of not following District policy regarding the reporting of student violence. *See id.*, Ex. B. He also accused the District of not reporting violence to the PED, which he characterized as a "crime." *Id.* If elected, Van Deelen promised to ensure that District rules were followed; to investigate the underreporting of student violence and vandalism; and to vote against block scheduling. *See id.* Van Deelen also created a similar flyer that he desired to send to all of the teachers in the District using the District's e-mail system. *See* Am. Compl. at 18. Besides containing the same information as the first flyer, this campaign flyer also accused the District of using one-year teacher contracts to keep its teachers "in line;" complained that the District did not rehire teachers who sent too many students to the office for disciplinary reasons or who complained about problems; and opined that allowing teachers to have multi-year contracts would allow them to follow the District's policy on reporting violence without fear of retaliation. *Id.*, Ex. C.

 **\*7**  Although the District has a written policy prohibiting the distribution of political literature through the schools, because the District gave teachers literature advocating the passage of a 2-mil bond levy to be used for public schools, Van Deelen contended that he had the right to e-mail his campaign flyer to all teachers using the school's e-mail system and the teachers' employee e-mail addresses. *See* Am. Compl. at

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 254 of 453

000754

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

18. Although Defendants Knight and Peachey allegedly told Van Deelen he could use the system to distribute his flyer, Defendants Knight, Peachey, Korwin, and John/Jane Does allegedly blocked all e-mails from Van Deelen so that he could not e-mail the campaign flyer through the public-school e-mail system before February 6, the date of the school-board election. *See id.* at 19. Van Deelen did, however, actively champion his views at a public school-board election forum, through the physical distribution of his 2100 flyers, at a Rotary Club luncheon, and on a radio talk show. *See id.* at 18.

On February 7, Jaramillo gave Van Deelen an unsatisfactory performance review and said he did not want to employ Van Deelen as a teacher. *See id.* at 20-21. On February 15, Defendant Guinn evaluated Van Deelen and gave him a satisfactory rating on all measured criteria. *See id.* at 21. Van Deelen filed his federal complaint in this case on February 20, 2007. Defendant Dilworth subsequently warned AHS employees that Van Deelen had not sued but that Van Deelen was going to sue them, causing them to shun Van Deelen. *See id.* at 30.

On March 2, Jaramillo told Van Deelen that he was being held to a higher standard than other "Pre-Level 1 Internship," temporarily-licensed teachers and took over the evaluation process from Guinn. *See id.* at 22, 26. On March 8, Jaramillo evaluated Van Deelen and gave him an unsatisfactory rating on all measured criteria, told him that receiving unsatisfactory ratings could result in termination, and told him he would be evaluating Van Deelen again the next day. Jaramillo refused to tell Van Deelen how he could improve. *Id.* at 22-23.

On March 9, Van Deelen reported to AHS officials that one of his students made a "bomb threat" and then left class without permission. *Id.* at 28. A security guard came to the classroom to investigate. *See id.* at 29. But school officials "suppressed an investigation" and refused to make a police report on the incident. *Id.* at 28. Van Deelen made a police report about the alleged incident to Pacheco, but Pacheco allegedly falsified information in his police report so that the student would not be prosecuted and did not forward the report to the Attorney General's office until May 10. *See id.* at 29-30.

Jaramillo's March 9 and March 22 evaluations gave Van Deelen unsatisfactory ratings in most categories, and Jaramillo informed Van Deelen that he would not recommend his re-employment. *Id.* at 23-24. Jaramillo told Guinn that he thought Van Deelen had a low IQ. On March 26, Guinn refused to conduct an investigation after Van Deelen

discovered that screws had been placed behind his vehicle's tires in the school parking lot. On April 12, Jaramillo changed the March 22 evaluation to make it more negative than it had been and asked Van Deelen to sign it. *Id.* at 25. On April 13, Defendants Jones and Johnson again suspended Van Deelen from his teaching duties, with pay. *See id.* at 28. Johnson refused to give Van Deelen the reasons for his suspension. *See id.* Van Deelen was not rehired for the next school year.

## ANALYSIS

### I. Constitutional claims against the Alamogordo School Defendants.

**a. Counts I-III.** Van Deelen asserts First-Amendment retaliation claims in Counts I through XI of his amended complaint. *See* Doc. 37, ¶¶ 93-122. The first three counts are against the same defendants, which are the School Board and its members, Jaramillo, Johnson, Knight, Jones, Guinn, Kline, Dilworth, and Pacheco. All allege retaliation for having filed this federal lawsuit, which Van Deelen contends violated his rights to free speech, to petition the courts, and to equal access to the courts. *See id.* ¶¶ 93, 96, 99. The Defendants seek dismissal of the first three counts solely on their contention that "the speech alleged in Plaintiff's Complaint is not a matter of 'public concern' that is afforded protection by the First Amendment." Doc. 42 at 6.

**\*8** Clearly, filing a lawsuit to seek redress for alleged grievances is a constitutionally-protected activity, regardless whether the suit is related to a matter of public concern. *See Van Deelen*, 497 F.3d at 1153. Thus, Van Deelen has shown that he "was engaged in constitutionally protected activity" when he filed the federal complaint, *id.* at 1155 and the Defendants have not shown entitlement to dismissal of these claims.

**b. Counts IV, V, and IX.** Count IV asserts that Defendants Board of Education, Knight, Johnson, Jones, Stevens, Bird, and Jaramillo unlawfully retaliated against Van Deelen for exercising his constitutional right to make "reports of discipline problems at the high school." Doc. 37 at ¶ 102. Count V alleges that the Board, Jaramillo, Jones, Johnson and Pacheco retaliated against him for exercising his constitutional right to "speak[ ] out against block scheduling at the public forum." *Id.* at ¶ 105. Count IX alleges that Defendant Buhler, a co-teacher, similarly retaliated against Van Deelen for exercising his right to speak out against block scheduling and problems in the District. *See id.* at ¶ 117.

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 255 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000755

Citing *Garcetti v. Ceballos*, 126 S. Ct. 1591 (2006), and *Casey*, 473 F.3d 1323, the Defendants contend that none of this speech is constitutionally protected because Van Deelen made the speech as part of his duties as a teacher. The Court agrees.

In his complaint, Van Deelen contends that District policies and handbooks required him, as a teacher and District employee, to report disciplinary problems and violent behavior. *See* Doc. 37 at ¶¶ 16-17. As a matter of law, this speech is related to his duties as a teacher and is not, therefore, constitutionally protected. *See Casey*, 473 F.3d at 1330. Count IV must be dismissed.

The issue of speaking out against block scheduling at a public forum that took place at the high school with District officials and board members is a closer question. Van Deelen contends that he spoke as a private citizen and that it was not part of his job description to speak out at public forums. *See* Doc. 43 at ¶¶ 19, 53. But "[a]n employee's official job description is not dispositive," *Brammer-Hoelter*, 492 F.3d at 1203, and "[t]he ultimate question is whether the employee speaks as a citizen or ... in his or her professional capacity." *Id.* (internal quotation marks omitted).

Van Deelen's complaint states that he "was the only teacher who spoke out against block scheduling," Doc. 37 at 17, showing that he identified himself at the forum in his professional capacity as a teacher and that he thought that his opinion was important and should be heard because of that fact. The attachments to Van Deelen's complaint establish that he has no children affected by block scheduling at AHS, and Van Deelen's complaint about block scheduling was that students were being more violent in classrooms instead of in the hallways, which affected his personal teaching situation. Block scheduling is purely an internal educational matter and affected Van Deelen solely as a teacher, thus he could not have been speaking out as a concerned "father or taxpayer." *Brammer-Hoelter*, 492 F.3d at 1204 n.5 (internal quotation marks omitted). Taking "a practical view of all the facts and circumstances surrounding the speech and the employment relationship," *see id.* at 1204, as alleged in the amended complaint and its attachments, and noting that persuading the District to change the practice of block scheduling would serve to facilitate Van Deelen's performance of his teaching duties, in his opinion, the Court concludes that Van Deelen's speech at the school forum was made from the perspective of, and pursuant to, his professional capacity as a teacher, and

that it, therefore, was not constitutionally protected. Counts V and IX must be dismissed.

**\*9** Even if Van Deelen's speech at the high-school forum were protected, Count IX would still have to be dismissed. Count IX is against Defendant Buhler, a co-teacher. Claims brought under § 1983 require state action. There are no allegations that Buhler had any supervisory authority over Van Deelen and the complaint states that Buhler "berate[d]" Van Deelen for his opinions on block scheduling before the forum even concluded. *See* Doc. 37 at ¶ 59. Thus, Van Deelen cannot establish that Buhler's actions constituted "a detrimental employment decision" for the state-action requirement under § 1983. *See Brammer-Hoelter*, 492 F.3d at 1202. Further, as a matter of law, expressing personal opinions that differ from a co-teacher's, characterizing the co-teacher as a "trouble-maker" and an "outsider" to other teachers, and expressing a personal opinion to other teachers that the co-teacher is "not a good teacher" who should not be employed or elected as a school-board member would not cause the co-teacher "to suffer an injury that would chill a person of ordinary firmness from continuing to engage" in speaking out against a school district. *See Van Deelen*, 495 F.3d at 1155. Buhler's treatment of Van Deelen clearly had no effect on Van Deelen continuing to speak out and publish negative comments and political advertisements against block scheduling and the District or running for the school-board position.

**c. Counts VI, VII, and VIII.** All three of these counts are against the Board, Knight, and Jones for unlawful retaliation after Van Deelen submitted his Notice of Claim against the Board for $50,000 for negligence on January 15, 2007. Defendants' sole basis for dismissal is their legal contention that the Notice of Claim "is not a matter of public concern for First Amendment purposes." Doc. 45 at 5. The Court concludes that, like filing a lawsuit, filing a Notice of Claim to seek redress for alleged tort violations is a constitutionally-protected activity, regardless whether the claim touches a matter of public concern. *Cf. Van Deelen*, 497 F.3d at 1153. Thus, Van Deelen has shown that he "was engaged in constitutionally protected activity" when he filed the Notice of Claim, *cf. id.* at 1155, and the Defendants have not shown entitlement to dismissal of these counts.

**d. Counts X, XI, and XII.** These three counts are against Defendants Board, Knight, Peachey, Jones, Korwin, and Does. *See* Doc. 37, ¶¶ 120-128. Counts X and XI allege denial of free speech and retaliation in violation of Van Deelen's

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 256 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000756

right to run for a School Board election and to use the District's e-mail system, *see id.* at ¶¶ 120, 123, and Count XII alleges denial of equal protection in using the e-mail system, *see* ¶ 126. All three counts relate to the incident in which Van Deelen tried to e-mail his political campaign flyer to teachers using the District's e-mail and teachers' professional e-mail addresses, but was blocked from doing so. Van Deelen also asserts that, in retaliation for running for election, Korwin ordered District employees not to communicate with Van Deelen and Jones and Johnson retaliated by wrongfully suspending and terminating him from his employment. *See id.* at ¶ 120.

Defendants' motion to dismiss counts X and XI is based solely on its premise that Van Deelen's campaign speech was not protected because it concerned matters associated with his job as a teacher. *See* Doc. 42 at 7; Doc. 45 at 5. Citing *Casey*, 473 F.3d 1323, they argue that, even when an employee speaks on matters related to school issues outside of the employment context, school-related speech is unprotected —that "the critical inquiry is the nature of the speech." Doc. 45 at 5. The Court disagrees.

In *Casey*, the Tenth Circuit held that a school employee's speech was unprotected when she spoke *as a school-district employee* by relating concerns about the school to the school board, her supervisors, and her subordinates "pursuant to her official duties" with the school district. *Id.* at 1329. The Court made clear that similar speech would be protected if she had been acting as an "ordinary citizen speaking on his or her own time," *see id.* at 1331, and held that the same speech that was unprotected when made to her supervisors was protected when she made it to the attorney general, *see id.* at 1333-34 (noting that, "[i]t has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action"). The Defendants have not carried their burden to demonstrate that Van Deelen's right to run for a political office or to speak as a school-board candidate to teachers about school matters as part of his political campaign was unprotected speech such that Counts X and XI should be dismissed.

 **\*10**  Regarding Count XII, Defendants contend that Van Deelen has failed to show he was "singled out for persecution" and "treated differently than those similarly situated" because he has stated no facts alleging that anyone else was permitted to e-mail school employees with

personal political campaign literature. *See Mimics, Inc.,* 394 F.3d at 849. Van Deelen contends that anyone may use the public-school's e-mail system to e-mail teachers, so he has shown that he was denied equal protection. The Court disagrees. Van Deelen's complaint establishes that the District's written policy prohibits individuals from distributing political literature through the schools. *See* Doc. 37 at ¶ 54 (alleging that the District policy provides, "Political literature shall not be distributed through the schools to staff members ..."). Van Deelen has not alleged that the District allowed any other political candidate to distribute campaign flyers via the school's e-mail. And even though the District may have given its teachers some literature advocating the passage of a 2 mil levy for the District's benefit, Van Deelen is not "similarly situated" to the District and thus cannot be said to have been "singled out", thus he cannot show an equal protection violation as a matter of law. Van Deelen has previously been instructed that " 'allegations [that] are merely conclusory ... do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims.' *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995)". *Van Deelen v. Ramirez* 2001 WL 789275, \*7 (D. Kan. 2001). Count XII shall be dismissed.

**e. Counts XV and XVI**. Count XV alleges that Defendants School Board, Knight, Johnson, Stevens, Bird, and Jones violated his right to procedural due process by not providing access to his personnel file[4], by creating and placing false and fraudulent documents in that file, and by omitting "exculpatory" documents prepared by Van Deelen from that file. *See* Doc. 37 at ¶ 135. Count XVI alleges that Defendants School Board, Johnson, Jones and Jaramillo violated his due-process rights by *suspending* him from his employment without cause, hearing, or explanation. *See id.* at ¶ 138. It is undisputed that, although Van Deelen was suspended from his teaching duties, the District did not terminate his employment contract or stop paying him until the end of the school year when it decided not to re-employ him for the following year and that it told him that he was being terminated "on the basis of poor performance reviews." *See* Doc 37 at ¶¶ 48, 77; Doc. 43 at 47.

The Defendants contend that Van Deelen did not have a protected property interest in his personnel file nor any right to possess documents from it or to have documents placed in it and that it is undisputed that Van Deelen received notice and an opportunity to object before his contract was not renewed.

Case 4:21-cv-03369  Document 10-1  Filed on 11/19/21 in TXSD  Page 257 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000757

In response, Van Deelen points to no state law giving him a property right in his personnel file or giving him a right not to be suspended from teaching. Instead, Van Deelen argues that he had a liberty interest in his employment that the Defendants breached by not affording him a hearing before suspending him because of the negative comments from other teachers in his personnel file. The Court disagrees. The cases Van Deelen cites are easily distinguishable.

New Mexico law provides:

A. A local school board or governing authority of a state agency may terminate an employee with fewer than three years of consecutive service for any reason it deems sufficient. Upon request of the employee, the superintendent or administrator shall provide written reasons for the decision to terminate. The reasons shall be provided within ten working days of the request. The reasons shall not be publicly disclosed by the superintendent, administrator, local school board or governing authority. The reasons shall not provide a basis for contesting the decision under the School Personnel Act.

B. Before terminating a non-certified school employee, the local school board or governing authority shall serve the employee with a written notice of termination.

N.M. Stat. Ann. § 22-10A-24. Here, there is no claim that any Defendant publicized anything to persons outside the District and, under state law, Van Deelen was only entitled to receive notice and the reasons before his one-year teaching contract was not renewed. Van Deelen points to nothing that gave him the right to a hearing before or after being suspended, with pay, from his teaching duties and the Due Process Clause does not confer such a right. Count XVI must be dismissed.

**\*11  f. Count XIX.** Count XIX alleges denial of substantive-due-process rights by the PED, the Board, Knight, Jaramillo, Jones, Lomax, Dilworth, Guerrero, Johnson, Peachey, Guinn, Medina, and Halbig by "knowingly plac[ing Van Deelen] in an unsafe, hostile teaching environment in which the defendants knew that [Van Deelen] would be harmed and then intentionally fail[ing] to follow District policy after [Van Deelen] was threatened and assaulted by students and [Mrs. B]." Doc. 37 at ¶ 147. The Court notes that, while Van Deelen claimed in his Notice of Claim that AHS officials had acted only negligently in failing to protect him from Mrs. B, *see* Doc. 37 at ¶ 42, he asserts in this Count that their actions in failing to protect him from Mrs. B's "bump" and his students' oral threats was intentional and knowing. Perhaps this is because the federal courts have already fully instructed

Van Deelen that, to state a substantive-due-process claim, he must allege and establish that the "Defendants' actions were so outrageous as to shock the conscious" and that he would have to show that those actions were " 'truly irrational,' 'that is something more than ... arbitrary, capricious, or in violation of state law.' " *Van Deelen v. City of Kansas City, Mo.*, 411 F. Supp. 2d 1105, 1125 (W.D. Mo. 2006) (granting summary judgment in favor of governmental defendants on Van Deelen's substantive-due-process claim). The United States Supreme Court has

made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-1161, 47 L.Ed. 2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in *Daniels v. Williams*, 474 U.S., at 332, 106 S.Ct., at 665, we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

*County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998) (citation omitted). Van Deelen has alleged no facts indicating that any Defendant associated with the public schools intended to injure him in some way or cause him to be injured by not using extremely limited school resources to post a permanent security guard in Van Deelen's classroom. Regarding actions involving Van Deelen before Mrs. B bumped Van Deelen with her body, Van Deelen had complained only of J.B. and his sister calling him an idiot, a fool, and a racist; threatening to have Mrs. B "take care of him;" and of J.B. threatening once to "kick his ass" after receiving a behavior slip. *See* Am. Compl. at ¶¶ 24, 29-34. Mrs. B did not come to Van Deelen's class until over a week after the last complaint. Further, Van Deelen alleges

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 258 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000758

that Mrs. B did not have permission to be on campus and violated district policy by coming to his room. *See id.* at 34. As a matter of law, Van Deelen has not alleged facts regarding the Defendants' conduct demonstrating a degree of outrageousness or magnitude of potential or actual harm that could rise to a "conscience-shocking level." Count XIX shall be dismissed.

**g. Count XX.** Count XX alleges conspiracy by all of the Defendants "to commit the tortuous acts ... as detailed" in the complaint in retaliation for Van Deelen exercising his "rights of petition, equal access to the courts and freedom of speech." Am. Compl. at ¶ 150. The Defendants contend that Van Deelen's conspiracy claim fails because he did not allege a constitutional deprivation. *See* Doc 42 at 14. As discussed in sections "a.," "c.," and "d.," *supra*, Van Deelen did allege a constitutional deprivation and the Defendants have not demonstrated entitlement to dismissal of this claim on this basis.

**\*12** But, as the Kansas District Court explained to Van Deelen in 2006,

> [t]he fundamental elements of a § 1983 conspiracy claim are an agreement between the parties and concerted action in furtherance of that agreement. *See Reed v. Dunham*, 893 F.2d 285, 287 (10th Cir. 1990). To state a valid claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "Mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

*Van Deelen v. Johnson*, No. 05-4039, 2006 WL 1764381, *11 (D. Kan. June 27, 2006) (granting summary judgment in favor of defendants on conspiracy claims because Van Deelen "failed to allege specific facts showing an agreement and concerted action amongst the defendants"), *aff'd in relevant part & rev'd in part*, 497 F.3d 1151 (10th Cir. 2007). Defendants allege that Van Deelen has failed to allege specific facts showing an agreement and concerted action amongst the defendants and that his conspiracy claim must therefore be dismissed on this basis.

As mentioned above, the only constitutional claims that remain against any of the School Defendants are Counts I-III, VI-VIII, and X-XI which allege retaliation for having filed a lawsuit, for having filed a notice of claim, and for

having run as a school board candidate and which also allege denial of Van Deelen's allegedly constitutional right to send e-mails to teachers using the District's e-mail system. Van Deelen has named only Defendants Board, Jaramillo, Johnson, Knight, Jones, Guinn, Kline, Dilworth, Pacheco, Peachey, and Korwin in these counts. Van Deelen contends that his allegations that Jaramillo acted under the direction and supervision of Knight, Johnson and Jones; that Jones eavesdropped on a meeting between Jaramillo and Van Deelen; that Bird and Stevens were supervised by Jones and Knight when they made their allegedly false complaints and Jones refused to meet with Van Deelen so that he could rebut the complaints; and that Jaramillo and Jones each omitted from Van Deelen's personnel file Van Deelen's e-mails to them sufficiently provide circumstantial evidence of a conspiracy to elude dismissal of the conspiracy count. *See* Doc. 43 at 55-57. He also contends, without pointing to any supporting facts in his amended complaint, that the Board members knew and consented to the other Defendants' actions. *See id.* at 57. The Defendants do not reply to Van Deelen's argument.

The Court notes that all constitutional claims against Bird and Stevens have been dismissed and their allegedly bad acts occurred long before Van Deelen filed his notice of claim and lawsuit or ran for public office. Van Deelen alleges facts showing only that Knight and Johnson supervised the other employees and only that the Board members knew about actions taken against Van Deelen. But those allegations do not allege concerted conduct. Neither the fact that Jones, the District's personnel director, "eavesdropped" on Jaramillo's meeting with Van Deelen nor the fact that both Jaramillo and Jones failed to place e-mails that Van Deelen sent to them in Van Deelen's personnel file raises a plausible implication that Jaramillo and Jones illegally conspired to violate Van Deelen's constitutional rights. *Cf. Van Deelen v. Johnson*, 2006 WL 1764381 at *11 (holding that asking a law-enforcement officer to "sit in on [Van Deelen's] tax-appeal hearing" does not allege facts showing a conspiracy to violate Van Deelen's constitutional rights); *Bell Atl. Corp.*, 127 S. Ct. at 1962 (stating that, because the defendants' parallel business conduct could be consistent either with an illegal conspiracy or with legal business strategies, because the plaintiffs fail to identify facts plausibly suggesting, rather than merely raising the possibility of, an illegal agreement, the conspiracy claim should be dismissed). The Court concludes that the conspiracy count against the School Defendants must be dismissed.

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 259 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000759

**\*13  h. Claims against the individual school board members.** Although not raised by the Defendants as part of their motion to dismiss, as part of its inherent power to manage its docket and dismiss claims when it is "patently obvious" that the plaintiff could not prevail on the facts alleged and allowing an opportunity to amend his complaint would be futile, *see McKinney v. Okla. Dep't of Human Serv.*, 925 F.2d 363, 365 (1991), the Court concludes that the School Board members acting in their official and individual capacities should be dismissed as Defendants. Van Deelen has before been instructed that "[c]laims against individual defendants in their official capacities are redundant" and subject to dismissal where Van Deelen has also sued the entity itself. *Van Deelen v. Johnson*, 2006 WL 1764381 at \*14 n.12. Van Deelen has sued the School Board. He alleges absolutely no facts in his amended complaint showing that any school board member did anything while acting in an individual, as opposed to in a corporate or official, capacity and the Court will not give Van Deelen yet another opportunity to amend his complaint.

**II. State-law claims against the Alamogordo School Defendants.**

**a. State Count I.** Van Deelen allege that Defendants Jaramillo, Knight, Jones, Lomax and the School Board entered into an oral contract with him[5] on September 20, 2006, in which he "became employed as a teacher" who would continue to be employed by the District for a minimum of three years under certain conditions. Am. Compl. at ¶ 8. Van Deelen also alleges that the Defendants orally contracted with him to make New Mexico's and the District's written laws, policies, and procedures part of his contract. *See id.* And he alleges that the Defendants orally contracted with him to provide certain conditions of employment at AHS, including training him, providing security, and monitoring and controlling discipline problems. *See id.* Van Deelen alleges that these Defendants breached his oral contract by "wrongfully suspend[ing] and terminat[ing him]." *Id.* at ¶ 156.

Defendants contend that oral promises about conditions of future public-school employment do not constitute an enforceable contract under N.M. Stat. Ann. § 22-10A-21, which governs all public school teachers' contracts in New Mexico. And Van Deelen himself asserts that the Defendants were not authorized by law to "enter into" such a "contract." *See* Am. Compl. at ¶ 206. Section 22-10A-21 provides, in relevant part,

A. All employment contracts between local school boards and certified school personnel ... shall be in writing on forms approved by the state board. These forms shall contain and specify the term of service, the salary to be paid, the method of payment, the causes for termination of the contract and other provisions required by the regulations of the state board.

B. All employment contracts between local school boards and certified school personnel ... shall be for a period of one school year except:

(1) contracts for less than one school year are permitted to fill personnel vacancies which occur during the school year....

....

E. Except as provided in Section 22-10-12 NMSA 1978, a person employed by contract pursuant to this section has no legitimate objective expectancy of reemployment, and no contract entered into pursuant to this section shall be construed as an implied promise of continued employment pursuant to a subsequent contract.

"At the end of the school year, if a nontenured teacher is notified of a school board's intent not to reemploy for the coming year, that teacher historically has little legal recourse." *Giangreco v. Murlless*, 943 P.2d 532, 533 (N.M. Ct. App. 1997). The Court concludes that Van Deelen's claim for breach of an oral contract for teaching employment must be dismissed because neither oral public teaching contracts nor oral promises about terms or conditions of public-school employment, are cognizable under New Mexico law.

**\*14  b. State Counts II-XII.** State-law counts II-XII allege various state-law tort claims against Defendants Jaramillo, Knight, Jones, Lomax, the School Board, Buhler, Bird, Stevens, Dilworth, and Johnson. The claims include fraudulent misrepresentation and inducement to accept the teaching position at AHS, *see* Am. Compl. at ¶ 159; negligence and gross negligence in failing "to provide a safe and secure teaching environment at AHS," and in failing to follow and enforce state and District laws, policies, procedures, guidelines and regulations, *id.* at ¶ 166; slander and invasion of privacy by "coloring plaintiff in a false light in the public eye," *id.* at ¶¶ 174, 179, 184, 189; libel, *see id.* at ¶ 179; intentional infliction of emotional distress, *see id.* at ¶ 194; negligent infliction of emotional distress, *see id.* at ¶ 199; negligent supervision and training, *see id.* at

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 260 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000760

¶ 202; negligence in entering into an unauthorized teaching contract, *see id.* at ¶ 206; and wrongful termination, *see id.* at ¶ 209. Defendants contend that all of these state-law claims are barred by the New Mexico Tort Claims Act because immunity for the claims has not been waived and because the Act is "the exclusive remedy against a government entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." N.M. Stat. Ann. § 41-4-17(A); *see Daddow v. Carlsbad Mun. Sch. Dist.*, 898 P.2d 1235, 1241 (N.M. 1995) (noting that a local school board is a "local public body" under section 41-4-3(C) of the New Mexico Tort Claims Act).

In response, Van Deelen contends that (i) the Defendants did not raise immunity under the Tort Claims Act as an affirmative defense; (ii) they have not established that the individual School Defendants were acting within the scope of their authority such that the Tort Claims Act applies[6]; (iii) his claims for gross negligence and negligent supervision are not encompassed by the Act; and (iv) the Court should strike the motion to dismiss the state-law claims because it is the Defendants' second motion to dismiss. The Court disagrees.

First, the Defendants did raise immunity under the Act as an affirmative defense. *See* Doc. 38 at 47. Second, even though Van Deelen asserts that he is suing all individual school defendants in both their individual and official capacities, as discussed below, Van Deelen's allegations in his amended complaint conclusively establish, as a matter of law, that all alleged state-law violations occurred within the defendants' scope of their employment duties as defined in the Act and as interpreted by case law. The Act provides that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability for any tort except as waived by the Act. *See* N.M. Stat. Ann. § 41-4-4; *Bober v. N. M. State Fair*, 808 P.2d 614, 622 (N.M. 1991) (stating that the "legislature granted governmental entities and employees immunity from tort liability except as such immunity is waived by Sections 41-4-5 through 41-4-12"). The Act defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. § 41-4-3(G) (1978). This definition creates "a unique standard," that differs from the common-law concept of "scope of employment" in that

it includes even criminal and intentional tortious acts the employee commits while acting as a public employee. *Risk Mgmt. Div. v. McBrayer*, 14 P.3d 43, 47-48 (N.M. Ct. App. 2000). Van Deelen's complaint establishes that every act he complains of occurred within the scope of the Defendants' duties as public employees, as defined by the Act.

Third, the Act provides no waiver of immunity for negligent supervision. *See Pemberton v. Cordova*, 734 P.2d 254, 256 (N.M. Ct. App. 1987) (holding that, because the Act does not specifically allow an injured student to sue a school district on the theory of negligent supervision, sovereign immunity has not been waived under the Act and the claim against the district had to be dismissed); *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1263 (N.M. 2006) (favorably citing *Pemberton* and noting that "a complaint alleging nothing more than negligent supervision is not actionable, because the TCA does not specify a tort waiver for negligent supervision").

**\*15** While the Act does waive immunity for negligence in maintaining a public building, and such negligence may include failing to provide a safe environment for the general public, the "TCA does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public." *Upton*, 141 P.3d at 1262. Here, Van Deelen's amended complaint asserts negligence or gross negligence by the District and its employees failing to remove who **he** considered to be "dangerous students" from his classroom and failing to post a security guard in his classroom after J.B. threatened to "kick his ass" and to have his mother "take care of" him. This type of alleged negligence is a "discrete administrative decision affecting only" Van Deelen, and it therefore does not fall under the waiver of immunity found in the Act. *See id.*

Finally, nothing in the Rules prohibits the filing of a second motion to dismiss that deals with separate counts in a complaint. The Court concludes that all of Van Deelen's state-law tort claims against the school defendants must be dismissed.

### III. Motion to dismiss constitutional claims against Defendants Pacheco and May.

Defendants Pacheco and May, who are employees of the Alamogordo Department of Public Safety, separately move to dismiss Van Deelen's claims against them.

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 261 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000761

**a. Counts I–III.** Pacheco moves to dismiss these counts solely on the same basis as the School Defendants—that Van Deelen's right to file a lawsuit is not constitutionally protected because the suit did not touch on a matter of public concern[7]. *See* Doc. 56 at 4. For the reasons stated in the Court's discussion regarding Counts I-III, *supra*, Pacheco's motion on this basis must be denied. Pacheco's argument in his reply brief that the Tenth Circuit's holding in *Van Deelen v. Johnson*, which was issued in August 2007, set "a new standard for First Amendment retaliation claims," and that the law on the matter was not "clearly established" before that time, *see* Doc. 68 at 2, is belied by the Tenth Circuit's opinion itself. The Court noted that, since 1875, the Supreme Court has held that "[t]he very idea of a government, republican in form, implies a right on the part of its citizens ... to petition for a redress of grievances," *Van Deelen*, 497 F.3d at 1155 (internal quotation marks omitted), and that the public-concern test applies only to free-speech claims (as opposed to right-to-petition claims) by government employees, *id.* at 1156.

**b. Counts XIII, XIV, XVII and XVIII.** Count XIII alleges that Defendant May denied Van Deelen his right to equal protection when he allegedly falsified a police report May prepared regarding Van Deelen's altercation with J.B. and Mrs. B and when he filed the report under a name other than Van Deelen's name and closed it instead of forwarding it to the Alamogordo District Attorney. *See* Am. Compl. at ¶ 129. Van Deelen alleges in Count XVII that these same acts violated Van Deelen's procedural-due-process rights. *Id.* at ¶ 141.

Counts XIV and XVIII contend that Pacheco similarly violated the same rights when he allegedly falsified information in a March, 2007, police report regarding Van Deelen's allegation that a student made a bomb threat and when he failed to timely forward the report to the Attorney General's office. *See id.* at ¶¶ 132, 144. Officers Pacheco and May contend that Van Deelen has not stated facts to support a violation of either his right to equal protection or to procedural due process because (i) he does not belong to a protected class; (ii) he offered no similarly-situated persons to establish a different treatment against him as an individual; and (iii) he has no constitutionally protected right to the proper processing of police reports.

**\*16** Van Deelen does not dispute that he does not belong to a protected class, but contends that he need not identify a similarly situated group of persons in order to invoke the Equal Protection Clause because he suffered discrimination

as a "class of one," citing *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1148-49 (10th Cir. 2001). But *Bartell* does not support Van Deelen's contention. *Bartell* holds that "plaintiffs need not allege they were part of a suspect class or implicate a fundamental right to state a claim under the Equal Protection Clause." *Id.* at 1149. *Bartell* specifically noted that, "[a]s with any equal protection claim, [the plaintiff] must also demonstrate that he was treated differently than another who is similarly situated." *Id.* (internal quotation marks omitted). Because he has alleged no facts indicating that he was treated differently than similarly-situated individuals, Counts XIII and XIV must be dismissed.

Van Deelen argues that he has a property interest in the Defendants making legitimate police reports and in timely filing those reports and that the interest arises from an implied contract with the Defendants when they took his report. He also contends that his property interest arises from N.M. Stat. Ann. § 29-1-1. Section 29-1-1 provides:

> It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken, and it is also declared his duty to cooperate with and assist the attorney general, district attorney or other prosecutor, if any, in all reasonable ways. Such cooperation shall include the prompt reporting of all arrests for liquor law violations at licensed liquor establishments to the department of alcoholic beverage control. Failure to perform his duty in any material way shall subject such officer to removal from office and payment of all costs of prosecution.

The plain language of section 29-1-1 requires an officer only to investigate allegations of criminal violations and to file a criminal complaint or information only if the circumstances would appear to a "reasonably prudent person" that such a complaint should be filed. It clearly does not give private citizens a property interest in the police report. The case Van Deelen cites is not on point and is irrelevant to the issue at bar. Van Deelen cites no authority for his bald contention that giving information to a police officer results in a "contract" giving rise to a property interest in the report the officer makes. Because Van Deelen did not have a protectible property or liberty interest in the police reports that Pacheco and May prepared, his procedural-due-process claims must be dismissed.

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 262 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000762

**c. Count V.** Pacheco separately moves for summary judgment on the basis of qualified immunity on Count V, which alleges that the Board, Jaramillo, Jones, Johnson and Pacheco retaliated against Van Deelen for exercising his constitutional right to "speak[ ] out against block scheduling at the public forum." Am. Compl. at ¶ 105. For purposes of his motion, Pacheco assumes that Van Deelen engaged in protected speech at the public forum. *See* Doc. 59 at 4. Because the Court has concluded that Van Deelen's speech at the forum was not constitutionally protected and that Count V should be dismissed, it must also be dismissed against Pacheco. Therefore, the motion for summary judgment will be denied as moot.

**d. Count XX.** Like the school defendants, Pacheco and May contend that Count XX, the conspiracy claim, must be dismissed against them because Van Deelen has alleged no specific facts showing an agreement and concerted action amongst them and the other Defendants. As mentioned, *supra*, the only remaining constitutional claims that involve Pacheco are the claims alleging retaliation for filing the lawsuit in February, and there are no remaining constitutional claims against May. Van Deelen's amended complaint is devoid of any specific facts showing agreement or concerted action between any of the Defendants and Pacheco regarding Pacheco's investigation and report of the alleged bomb threat. As noted, *supra*, "[a] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich*, 159 F.3d at 533. Count XX must be dismissed as to Pacheco and May.

#### IV. Motion to dismiss state-law claims against Pacheco and May.

**\*17** Pacheco and May seek dismissal, on the basis of immunity under the New Mexico Tort Claims Act, of Van Deelen's state-law claims alleging negligence and intentional or negligent infliction of emotional distress (State Law Counts III, VIII, and IX). Van Deelen did not name the specific defendants against whom he brings those claims. And neither Pacheco nor May are named defendants in any of Van Deelen's state-law counts. But state-law Count III alleges negligence and gross negligence for failure "to fully investigate any reported assaults, batteries, harassments, threats, or other improper behavior directed by AHS students against plaintiff and to make all incident reports required by state law." Am. Compl. at ¶ 166. The Court liberally construes this count to allege tortious conduct by Pacheco and May.

Pacheco and May contend that there are no waivers of immunity for any of the three torts under the Act. *See* N.M. Stat. Ann. § 41-4-12 ("The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.").

Similar to his response to the School Defendants' motion to dismiss the state-law claims, Van Deelen contends that (i) the Defendants have not proved they were acting within the scope of their duties, and whether they were acting within the scope of their duties is a jury question; (ii) gross negligence is not covered by the Act; and (iii) the motion should be stricken because it is a second motion to dismiss.

The Court concludes that Van Deelen's allegations in his amended complaint, accepted as true, establish as a matter of law that both Pacheco and May were acting within the scope of their duties as police officers when they investigated Van Deelen's complaints and filed their reports, whether or not they performed those duties negligently or wrongly. Van Deelen's complaint alleges no facts to support claims against the officers for negligent or intentional infliction of emotional distress. The officers' immunity for negligent acts has not been waived under section 41-4-12. *See Bober*, 808 P.2d at 624 ("no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section"). All state-law claims against them must be dismissed.

#### V. Motion to Dismiss Claim against the PED.

Van Deelen alleged that the PED "unlawfully established and promulgates a policy in which said defendant knowingly and intentionally fails to take action against New Mexico schools and school districts, including Alamogordo High School and the Alamogordo School District, that have demonstrated severe discipline problems." Am. Compl. at ¶ 91. He contends that the PED failed to take action on known violence at AHS and that it "is aware that its inaction causes [AHS] teachers, including the plaintiff to be assaulted, battered and threatened by students ..." In Count XIX, Van Deelen contends that the

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 263 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000763

PED violated his substantive due process right to be free from threats and violence. *See id.* at ¶ 147.

The PED contends that it is entitled to Eleventh Amendment immunity on this claim. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. PED also contends that, insofar as it may be considered as a defendant in other state-law claims in which Van Deelen has sued "all defendants," it is also entitled to immunity under the New Mexico Tort Claims Act.

**\*18** The Tort Claims Act defines "state" or "state agency" as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." § 41-4-3(H). The PED is a cabinet-level state agency subject to the direction of the governor, and any judgment against it would be paid for from state funds. *See* N.M. Const. art. XII §§ 2, 4, 6; N.M. Stat. Ann. §§ 41-4-4B, -20, -20A, -23; *Ellenberg v. N. M. Military Inst.*, 478 F.3d 1262, 1270 (10th Cir. 2007) ("NMPED is the 'sole educational agency of the state for the administration or for the supervision of the administration of any state plan established or funds received by the state by virtue of any federal statute relating to aid for education' for the state's general public school system. N.M. Stat. § 22-9-2."). As an arm of the state, the PED is, therefore, entitled to Eleventh Amendment immunity from suit in federal court whether a claim is for legal or equitable or declaratory relief, and the Court will dismiss Counts XIX and XX and claims for declaratory, injunctive, and mandamus relief against it. *See* *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 70 (1989); *Papasan v. Allain*, 478 U.S. 265, 276 (1986).

The Court further concludes that, insofar as Van Deelen may have alleged any state-law tort claims against the PED, those are also barred by Eleventh Amendment immunity. *See* *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 121 (1984). All claims against the PED shall be dismissed, and the PED shall be dismissed as a defendant in this case.

Finally, the Court takes judicial notice that it has been Van Deelen's practice in other federal cases to file motions for reconsideration after receiving rulings that are not in his favor.

As Judge Belot stated in one of Van Deelen's Kansas cases, "a motion for reconsideration is neither invited nor encouraged. Any such motion shall not exceed 3 double-spaced pages." *Van Deelen v. McAnany*, No. 03-1408, Doc. 11 (D. Kan. Jan. 27, 2004). The response to any motion for reconsideration shall not exceed 3 double-spaced pages, and no reply shall be filed.

**IT IS ORDERED** that the Alamogordo Public School Defendants' Motion to Dismiss [Doc. 42] is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that the School Defendants' second Motion to Dismiss [Doc. 51] is GRANTED;

**IT IS FURTHER ORDERED** that Defendants Pacheco's and May's Motion to Dismiss [Doc. 56] is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that Defendants Pacheco's and May's second Motion to Dismiss [Doc. 55] is GRANTED;

**IT IS FURTHER ORDERED** that Defendant Pacheco's Motion for Summary Judgment [Doc. 59] is DENIED as moot;

**IT IS FURTHER ORDERED** that Defendant PED's Motion to Dismiss [Doc. 76] is GRANTED;

**IT IS FURTHER ORDERED** that all enumerated federal and state-law Counts are dismissed except for federal Counts I-III, VI-VIII, and X-XI;

**IT IS FURTHER ORDERED** that Defendants PED, Lomax, Guerrero, Buhler, Bird, Stevens, May, Medina, Halbig, Cross, and Rickman are DISMISSED as Defendants and that the caption of the case shall be amended accordingly;

**IT IS FURTHER ORDERED** that, if Van Deelen files a motion for reconsideration, it shall be limited to three, double-spaced pages; the response shall be limited to three, double-spaced pages, and no reply shall be filed.

### All Citations

Not Reported in Fed. Supp., 2008 WL 11417175

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 264 of 453

Van Deelen v. Alamogordo Public Schools, Not Reported in Fed. Supp. (2008)

000764

Footnotes

1    Van Deelen "is a member of MENSA, the international high-IQ society." Am. Compl., Ex. B. He has filed a 65-page
     amended complaint and a 60-page response brief as well as lengthy affidavits and amended affidavits, redundant exhibits,
     and other responses and surreplies.

2    Although the Tenth Circuit applies the standard of reviewing pro se filings liberally and giving the pro se litigant
     opportunities to cure deficiencies in most pro se cases, the Court notes that the rule was developed in pro se prisoner
     litigation, where legal and educational disadvantages are obvious. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972),
     *Hall*, 954 F.2d at 1106. And the Supreme Court has "never suggested procedural rules in ordinary civil litigation should
     be interpreted so as to excuse mistakes by those who proceed without counsel," *McNeil v. United States*, 508 U.S.
     106, 113 (1993), and has held that a pro se litigant "must conduct enough investigation to draft pleadings that meet
     the requirements of the federal rules," *Burnett v. Grattan*, 468 U.S. 42, 50 (1984). Accordingly, the Tenth Circuit "has
     repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Nielsen v. Price*,
     17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted).

3    "Block scheduling" consists of scheduling fewer classes in one day—for example, 4 classes/day instead of 6—but
     students spend more time in each class. Students spend an equivalent number of hours/week/class as they would on a
     regular schedule, but spend less time changing classes and being in hallways.

4    Van Deelen states that he was allowed to see his personnel file after he filed his federal lawsuit and before the Board
     decided not to renew his teaching contract. *See* Doc. 37 at ¶ 75.

5    Van Deelen does not state who he talked to on September 2006 or who specifically allegedly made oral promises to him.

6    Van Deelen also erroneously argues, without citing applicable authority, that New Mexico state-law standards for motions
     to dismiss apply to his state-law claims, as opposed to the federal standards applicable to motions to dismiss in federal
     lawsuits.

7    The Court will not address the alternate basis for dismissal that Pacheco raised only in his reply brief.

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S.
                                                               Government Works.

000765

# EXHIBIT D

628 Fed.Appx. 891
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals,
Fifth Circuit.

Michael D. VAN DEELEN,
Plaintiff–Appellant

v.

James CAIN; Curt Drouillard; L.S.
Spencer; Patricia Crittendon; Susan
Murphy; Jeremy Lewis; Ronnie Anderson;
Steven Smith; Rick Mann; Paul Lanham;
William Pilkington; Georgan Reitmeier;
Stephen Szymczak; Klein Independent
School District; Ellen Spalding; 10 John/
Jane Does, Defendants–Appellees.

No. 15–20197
|
Summary Calendar.
|
Oct. 22, 2015.

**Synopsis**
**Background:** Teacher commenced action against school
district, school administrators, school board, and outside
lawyer for school district, alleging retaliation in violation of
First Amendment, negligence, and intentional infliction of
emotional distress. The United States District Court for the
Southern District of Texas dismissed the complaint for failure
to state a claim. Teacher appealed.

**Holdings:** The Court of Appeals held that:

teacher's reports of ongoing and unaddressed student
misbehavior, and of school administration's lack of assistance,
to campus police officers against wishes of school
administration were work grievances concerned with his own

employment status, which was not matter of public concern
necessary to ground First Amendment retaliation claim;

termination of teacher for making those reports did not rise
to level required to shock the conscience, as required for
substantive due process liability;

school board members were entitled to professional
immunity;

teacher's election in original complaint to proceed against
school district rather than school administrators was
irrevocable; and

district court did not abuse its discretion in teacher's denying
fourth leave to amend in his oppositions to motions to dismiss.

Affirmed.

**Attorneys and Law Firms**

**\*893** Michael D. Van Deelen, Spring, TX, pro se.

Paul A. Lamp, Charles Cory Rush, Rogers, Morris & Grover,
L.L.P., Houston, TX, for Defendants–Appellees.

Appeal from the United States District Court for the Southern
District of Texas, USDC No. 4:14–CV–923.

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

**Opinion**

PER CURIAM: [*]

A public school teacher who pushed a student and held
him against a locker subsequently had his teaching contract
terminated. He then filed this *pro se* federal lawsuit seeking
reinstatement, $1 million in compensatory damages, and
punitive damages. He claims that he acted in self-defense and
was set up to fail by school administrators, the school board,
and an outside lawyer for the school district. For the reasons
that follow, we affirm the district court's decision to dismiss
his claims on the pleadings and refuse a third amendment of
the complaint.

I.

The following facts are drawn from plaintiff's second amended complaint. Michael Van Deelen was employed as a geometry teacher at Klein Forest High School in the Houston area. The students at Klein Forest, particularly those in Van Deelen's classes, were insubordinate, unruly, and verbally abusive. On several occasions, Van Deelen booted students from his class and told the school administration that he did not want them to return. His requests were not followed.

When he received no relief from administration, Van Deelen turned to the Klein Independent School District Police Department. He twice filed reports about his students with the police. In those reports, he noted the school administration's failure to deal with the students as requested. Administrators reprimanded him for these police reports, threatening that he would face termination if he involved the police again.

Van Deelen claims that the administration's repeated refusal to deal with the discipline problem in his classroom led to a "powder keg" environment, where students realized that they could abuse him with no repercussions. The powder keg exploded on February 12, 2007. According to Van Deelen, a student threatened to "stick him" and physically charged him. Van Deelen defended himself, pushing the student out of his classroom and across the **\*894** hallway. He then held the student against a bank of lockers until help arrived. He claims that Defendant Jeremy Lewis, an assistant principal who was aware of the disciplinary problems in Van Deelen's classes, was watching the encounter over video surveillance. He accuses Lewis and an associate principal, Defendant Susan Murphy, of doctoring the video to make it look like Van Deelen was the aggressor.

Van Deelen was put on administrative leave following the February 12th incident. The school board subsequently voted to terminate his contract at the end of the school year. The policy invoked by the school board indicates that Van Deelen's employment was "probationary." *See* Board Policy DFAB, *available at* http://pol.tasb.org/Policy/Download/595?filename=DFAB (LEGAL).pdf ("Probationary Contracts: Termination at End of Year").[1]

Van Deelen filed this lawsuit after multiple grievances and complaints with the school district proved unfruitful. The named defendants include Klein ISD; eight administrators at Klein Forest High School and Klein ISD (the Administrator Defendants); seven school board members (the School Board Defendants); and an outside lawyer who represented the district in connection with Van Deelen's termination. He attributes the following wrongful conduct to various defendants: ignoring his complaints of disruptive student behavior to create the "powder keg" in his classroom; watching on video monitors in order to catch the inevitable explosion; doctoring the video evidence to make Van Deelen look like the aggressor rather than the victim; destroying a tape recording of a meeting that vindicated his side of the story; seeking and obtaining the termination of his teaching contract; causing a false "assault by contact" criminal citation to issue against him; sending a false letter to the Texas Education Agency about his "improper contact with a student"; and threatening him with arrest if he did not return unspecified school records to the district. On the basis of such conduct, Van Deelen brings a First Amendment retaliation claim; a Fourteenth Amendment substantive due process claim; conspiracy claims under state and federal law; an intentional infliction of emotional distress claim; a negligence claim; and a whistleblowing claim under Texas state law.

## II.

The district court dismissed Van Deelen's complaint for failure to state a claim. We review its decision *de novo*. Like the district court, we will accept Van Deelen's factual allegations at face value, but we will disregard legal conclusions, unwarranted inferences, and conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### A. First Amendment Retaliation

 In order to determine if Van Deelen had adequately stated a First Amendment retaliation claim, the district court divided his speech into two categories: reports of student misbehavior and employment grievances. It dismissed claims premised on the former because Van Deelen reported student misbehavior in his capacity as a teacher and in furtherance of **\*895** his work responsibilities, such that he was not engaging in citizen speech protected by the First Amendment. It dismissed claims premised on the latter because the work grievances concerned Van Deelen's own employment status, which is not a matter of public concern necessary to ground a First Amendment retaliation claim.

Van Deelen's arguments in this appeal concern only his reports of student misbehavior. On that issue, Van Deelen

contends that the district court erred in concluding that his reports fell within the scope of his official duties. His argument gets the law mostly right. He correctly points out that categorization of speech as either official or unofficial hinges on the circumstances of the employee's particular position and the details of the particular speech. Factors to be considered in the analysis include the scope of the employee's job responsibilities as indicated in policies or job descriptions created by the employer, *see Hurst v. Lee Cnty., 764 F.3d 480, 485 (5th Cir.2014)* (consulting sheriff's department's "media relations policy" in determining whether corrections officer spoke to reporter as an employee of the department); any statutory authority which assigns particular job responsibilities to the employee, *see Gibson v. Kilpatrick, 773 F.3d 661 (5th Cir.2014)* (explaining that statutory job definition "can be instructive"); whether speech was "directed within the employee's chain of command," *see Davis v. McKinney, 518 F.3d 304, 315 (5th Cir.2008)*; as well as evidence that the employee did or did not engage in certain activity as a result of his or her job, regardless of formal responsibility or authority, *see Garcetti v. Ceballos, 547 U.S. 410, 424–25, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)* (rejecting that "employers can restrict employees' rights by creating excessively broad job descriptions" because "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform" and "[t]he proper inquiry is a practical one"). What Van Deelen misses, however, is that common sense plays a role in the inquiry as well. Where context provides one and only one answer, the absence of documentary or statutory support does not require a court to ignore the obvious or accept the incredible. This is true even at the early stage of *Rule 12(b)(6). See Iqbal, 556 U.S. at 679, 129 S.Ct. 1937* ("Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotation marks, brackets, and citations omitted)).

Van Deelen alleges that he reported student misbehavior at least five separate times. On each occasion, Van Deelen was teaching class when one or more students acted out. His "reports" did not all take the same form. We begin with the easiest cases.

On at least four occasions, Van Deelen reported the students to Lewis, one of Klein Forest's assistant principals. In these reports, Van Deelen requested that the students be removed from his classroom. From the context and allegations alone, it is apparent that this speech was made in furtherance of Van Deelen's teaching obligations. His complaint concerned disruptive behavior in the classroom. He requested relief limited to the classroom environment. And his speech was directed to a member of the school's administration. *See Weintraub v. Bd. of Educ., 593 F.3d 196, 200 (2d Cir.2010)* ("Weintraub's speech challenging the **\*896** school administration's decision to not discipline a student in his class was a 'means to fulfill,' and 'undertaken in the course of performing,' his primary employment responsibility of teaching." (citations omitted)).

Although we require no additional information to slot this speech along the employee-citizen continuum, our conclusion is bolstered by Sections 37.002 and 37.003 of the Texas Education Code—cited throughout Van Deelen's complaint—which formally recognizes the authority of a teacher to report misbehaving students to school administration and to express an opinion as to whether such students should be allowed back in the classroom.

Van Deelen's allegations are not limited to this up-the-chain reporting, however. He also filed at least two reports with the Klein ISD police department. In both reports, he complained not only about the particular student who had acted out, but also about how Lewis "repeatedly sent misbehaving and disruptive students back to class even though [Van Deelen] had requested that they not be allowed to return."

Van Deelen's briefing emphasizes these police reports, as if to argue that his decision to take his complaints to the police was enough to remove the speech from the ambit of his professional responsibilities and require consideration of whether the speech touched a matter of public concern. But given these particular factual allegations, such a conclusion would be misguided. The police in question were campus police, and the relief Van Deelen sought from this new audience is indistinguishable from the relief he sought from Lewis. As before, he hoped that the police would take action that would allow him to control *his* classroom environment. Nor is the speech protected because Van Deelen included a complaint that Lewis inadequately handled Van Deelen's prior requests for student discipline. Recitation that the problem has been ongoing and unaddressed does not change the character or import of the speech. *See Williams v. Dallas Indep. Sch.*

*Dist.,* 480 F.3d 689, 690, 694 (5th Cir.2007) (per curiam) (holding that athletic director's memorandum to principal explaining how months-long improper administration of athletic funds impaired his ability to perform job-related tasks "was made in the course of performing [the plaintiff's] employment").

Van Deelen protests that it is inconsistent to find that activity which allegedly got him fired was activity required for his job.[2] But such an outcome is neither uncommon nor illogical. An employee can discharge a work responsibility inadequately; he can also be fired by caprice and mistake. The First Amendment is not automatically implicated in either scenario. *See Garcetti,* 547 U.S. at 420, 126 S.Ct. 1951 ("[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.' ") (quoting *Connick v. Myers,* 461 U.S. 138, 154, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *Blackburn v. City of Marshall,* 42 F.3d 925, 933 (5th Cir.1995) ("[T]he Court in *Connick* recognized that a public employer enjoys wide latitude in the administration of its own affairs and underscored a reluctance to convert every workplace grievance into a constitutional claim.").

For these reasons, the district court did not err in dismissing Van Deelen's First Amendment retaliation claims.

**\*897** B. Fourteenth Amendment Due Process

Perhaps in recognition of the flaws in his First Amendment retaliation claims, Van Deelen leads his briefing with his Fourteenth Amendment claims. But he then attempts to import First Amendment principles into those claims. When a specific constitutional provision controls, it is improper to analyze a claim as substantive due process. *See Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Given our conclusion that Van Deelen cannot succeed on his First Amendment retaliation claim, he must articulate some basis other than speech interests for liability under the Fourteenth Amendment.

The only other basis alleged is that Defendants' actions amounted to "abusive, irrational or malicious abuse of government power that shocks the conscience." As described above, Van Deelen alleges a series of fantastic actions undertaken by various defendants. He asserts that these actions were undertaken as part of a concerted effort to fire him or pressure him into quitting.[3]

The district court dismissed Van Deelen's due process claims because the conduct alleged was not "so brutal, egregious, outrageous, or violative of the decencies of civilized conduct as to rise to the level required to shock the conscience." This statement of the standard for substantive due process claims comes from our decision in *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,* 675 F.3d 849, 867–68 (5th Cir.2012). And we agree with the district court that Van Deelen's allegations, which acknowledge that he assaulted one of his students though he tries to justify that, do not reach this high bar. *See id.* at 868 (explaining that even bad faith violations of state law do not suffice to establish a substantive due process violation).

C. State Law Claims

In addition to his federal constitutional claims, Van Deelen brings four state law claims against various defendants: conspiracy,[4] intentional infliction of emotional distress (IIED), negligence, and whistleblowing. Van Deelen's conspiracy and whistleblowing claims are not viable under Texas law. We affirm the district court's dismissal of those claims, for the reasons given in its order. Intervening case law requires that we address the IIED and negligence claims against the Administrator and Board Member Defendants in more depth.[5]

The district court dismissed the negligence and IIED claims against the Administrators and Board Member Defendants, pursuant to the election of remedies provision of the Texas Tort Claims Act (TTCA). The election of remedies scheme **\*898** provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. and Rem.Code § 101.106(a). It also permits the governmental unit to move for "immediate[ ]" dismissal of its employees when the lawsuit names both the governmental unit and individual employees. *Id.* § 101.106(e).

Necessary to the district court's dismissal of the TTCA claims was its conclusion that the Administrator and Board Member

Defendants are "employees of Klein ISD" under the Act. Defendants note on appeal that our intervening decision in *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400 (5th Cir.2015), may have implications for the School Board Defendants. We begin with the impact of *Gil Ramirez.*

### 1. The School Board Defendants

Gil Ramirez dealt with the applicability of the TTCA's definition of "employee" to school board members. We acknowledged that the Act's definition, on its face, did not extend to school board members, because they are neither in the district's "paid service" nor subject to the district's "right to control." 786 F.3d at 416 (citing Tex. Civ. Prac. & Rem.Code § 101.001(2)). We then addressed the argument that the Act should be construed as consistent with definitions of "employee" found in other, context-specific Texas statutes. The argument stemmed from a 2011 Texas Supreme Court case, which held that a medical resident who was neither paid by nor controlled by the governmental entity could nonetheless be an employee for purposes of the TTCA pursuant to a Texas Health and Safety Code provision designating "medical residents as employees 'for purposes of determining liability.' " *Id.* (quoting *Franka v. Velasquez,* 332 S.W.3d 367, 374 (Tex.2011)). Relying on this reasoning, the school board defendant in *Gil Ramirez* invoked provisions of the Texas Education Code including school board members in the umbrella of "employees" entitled to professional immunity. *See id.* (citing Tex. Educ.Code §§ 22.051, 22.0511).

We rejected the defendant's argument in *Gil Ramirez* because the specific actions that he allegedly engaged in would not fall within the bounds of the Education Code provisions:

> But even if some "employees" under these Education Code provisions might fall within the scope of *Franka,* Marshall does not. The same Education Code provision limits personal liability "for any act *that is incident to or within the scope of the duties* of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee [.]" Tex. Educ.Code § 22.0511 (emphasis added). Marshall is not alleged to have been acting "within the scope" of his duties. To the contrary, bribery and peddling influence are not within the scope of a trustee's duty.

786 F.3d at 416–17. The allegations in this case present a different situation. Van Deelen complains that the School Board Defendants refused to hear two employee grievances and voted on his termination without allowing him to make an oral presentation. We note that the grievances were filed under an inapplicable board policy,[6] and board policy gave Van Deelen no **\*899** right to speak on his own behalf before or after his probationary contract was terminated.[7] It is clear that the School Board Defendants, exercising their "judgment" and "discretion" in deciding whether to entertain Van Deelen's grievances or permit him to address the board about the proposed termination of his probationary employment, were acting as "employees" of the school district pursuant to Sections 22.051(5) and 22.0511(a) of the Texas Education Code.

This does not resolve the applicability of the TTCA's definition of employee to the School Board Defendants, however. *Franka* provides some basis for concluding that the Texas Supreme Court would import the context-specific definition of employee found in Section 22.051 of the Texas Education Code to the generic definition found in Section 101.001(2) of the TTCA. But even if Texas law does not allow for such importation, Section 22.0511 of the Education Code itself provides that the School Board Defendants are entitled to professional immunity on Van Deelen's state law claims. *See* Tex. Educ.Code § 22.0511(a) ("A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students."). Because this alternate grounds for dismissal is apparent on the face of the complaint, we find that the district court did not err in dismissing the negligence and IIED claims against the School Board Defendants.

### 2. The Administrator Defendants

There is no question that the Administrator Defendants are "employees" of Klein ISD under the TTCA. The district court held that the state law tort claims against them had to be dismissed because Van Deelen's original complaint also named Klein ISD as a defendant, and Section 101.106 of the Texas Civil Practice and Remedies Code makes this an "irrevocable election" to proceed against the district rather than the individual employees.

Van Deelen protests the unfairness of this result. He characterizes his inclusion of Klein ISD in the negligence claim in his original and first amended complaints as a

"pleading mistake." The record indicates otherwise. The negligence claim in these complaints explicitly attributed six separate legal duties to "Klein ISD." Van Deelen also asserts that Defendants permitted him to "correct" the mistake by not opposing his second amended complaint. Again, he misstates the record. Defendants opposed amendment of the state law tort claims as futile due to the Act's election of remedies. They also filed simultaneously **\*900** a motion to dismiss which invoked the election of remedies. The district court allowed Van Deelen to amend his complaint without ruling on Defendants' motion to dismiss.

Finally, Van Deelen claims that his amended pleading, which dropped the district from the negligence claim, superseded all previous versions of his complaint. In other words, he asserts that the amendment mooted Defendants' attempt to enforce the TTCA election-of-remedies provision. But no amended pleading can moot his initial election, which must be and was made "at the outset" of the litigation. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 657 (Tex.2008) (Section 101.106 "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery").

III.

Van Deelen requested leave to amend in his oppositions to Defendants' motions to dismiss. The requests consisted of a single paragraph. He did not explain what new factual allegations he could offer that would address the deficiencies in his complaint. As noted by appellees, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought —does not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 387 (5th Cir.2003) (internal quotation and citation omitted). The district court entertained the motion, however, and denied leave on the basis of futility and undue prejudice to the Defendants, who collectively had moved for dismissal in five separate motions to dismiss (three had been mooted by prior amendments). In denying Van Deelen a fourth opportunity to plead, the district court did not abuse its discretion.

IV.

For these reasons, the judgment below is AFFIRMED.

**All Citations**

628 Fed.Appx. 891, 327 Ed. Law Rep. 49

Footnotes

\*       Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1       Although we do not venture outside the complaint when reviewing an order dismissing claims under Rule 12(b)(6), we can take notice of the subject matter and contents of the specific board policies cited by Van Deelen. *See* Fed.R.Evid. 201 (permitting courts "at any stage of the proceeding" to "judicially notice a fact that is not subject to reasonable dispute").

2       Van Deelen's argument—like his complaint—assumes that he was fired for his speech, rather than for his physical run-in with a student. We suspect that the Defendants would tell a different story. But they opted to move for dismissal of Van Deelen's claims rather than answer the complaint, which was their right.

3       Van Deelen also suggests that Defendants engaged in this conduct so that he would suffer bodily harm at the hands of his unruly students. He refers to this theory as the "state-created danger" theory and faults the district court for not addressing it. There are any number of flaws in his argument, not least of which is that he never actually suffered any bodily harm. In any event, we can and do rely upon the point that we have never recognized the viability of the "state-created danger" theory, *see* Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 864 (5th Cir.2012), and Van Deelen's allegations do not prompt us to do so now.

4       Van Deelen also asserted a federal conspiracy claim. With no "actual deprivation of constitutional rights," his federal conspiracy claim is unsupportable. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.1994).

5       Van Deelen does not appeal the district court's dismissal of the IIED claim against the district's outside counsel on the ground that the alleged conduct was not outrageous.

6    Van Deelen's grievances were filed pursuant to Board Policy DIA and complained of "retaliation" for his reports of student misbehavior and for grieving his suspension. But Board Policy DIA prohibits a very specific form of retaliation: that which follows a claim about "discrimination or harassment" on the basis of certain protected characteristics (such as race), or after supporting such a claim. *See* Board Policy DIA, *available at* http://pol.tasb.org/Policy/Download/595?filename=DIA(LOCAL).pdf ("Employee Welfare: Freedom from Discrimination, Harassment, and Retaliation").

7    Board Policy DFAB provides that the board may terminate a probationary contract at the end of its stated term if it "serve[s] the best interests of the District." It entitles the affected teacher to notice only after the fact: "The Board shall give the employee notice of its decision to terminate the employment not later than the tenth day before the last day of instruction required under the contract." It does not provide any right to pretermination hearing, and it explicitly denies the employee any right to appeal.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

000773

# EXHIBIT E

2006 WL 2077640
Only the Westlaw citation is currently available.
United States District Court,
W.D. Missouri,
Western Division.

Michael D. VAN DEELEN, Plaintiff.

v.

CITY OF KANSAS CITY,
MISSOURI, et. al., Defendants.

No. 04-989-CV-W-GAF.
|
July 24, 2006.

**Attorneys and Law Firms**

Michael D. Van Deelen, Eudora, KS, pro se.

Lana Kay Torczon, Charlotte Ferns Reed, City Attorney's
Office, Kansas City, MO, for Defendants.

### ORDER

GARY A. FENNER, District Judge.

 *1  Presently pending before the Court is the imposition
of sanctions, sua sponte, against the Plaintiff, Michael D.
Van Deelen ("Van Deelen"). On March 2, 2006, Van Deelen
was ordered to show cause as to why he should not be
sanctioned for his egregious conduct throughout the course of
this litigation. (Doc. # 134). On March 8, 2006, Van Deelen
filed a response to the Court's order to show cause. (Doc. #
136). Having thoroughly reviewed the transcript in this case,
the Court finds that pursuant to the Court's inherent authority,
sanctions are warranted against Van Deelen to deter him from
future abuses of the judicial process.

### I. Facts

The above-captioned case was tried from February 21,
2006 through February 28, 2006 before the Honorable
Gary A. Fenner, United States District Court Judge. The
question before the Court was whether the City of Kansas
City's residency policy was unconstitutionally vague and
ambiguous. On March 2, 2006, this Court found that Van
Deelen, who appeared before the Court pro se, had failed

to prove his claim. (Doc. # 134). The Court found that the
City's residency policy was "clear and unambiguous" and was
"consistently applied" throughout Van Deelen's employment
with the City. *Id.* The Court further found that the Defendants
were shielded from liability under the doctrine of official
immunity because their conduct did not violate "clearly
established constitutional rights of which a reasonable person
would have known." *Id.*

Although proceeding pro se, Van Deelen demonstrated
his knowledge of the Federal Rules of Civil Procedure
and Evidence and the Rules of this Court. However, Van
Deelen failed to comply with general rules governing proper
courtroom decorum and respect for the Court and the judicial
proceedings which he had initiated. Throughout the trial Van
Deelen repeatedly interrupted and argued with the Judge,
counsel for the City and numerous witnesses. Van Deelen
presented a voluminous amount of cumulative and irrelevant
evidence wasting valuable judicial resources. His flippant
and disrespectful remarks impeded the efficient resolution
of his constitutional claims. Additionally, and perhaps most
offensive, Van Deelen fabricated evidence to support his
claims.

Van Deelen began by calling Linda Wales, a former employee
in the City's Information Technology Department ("ITD"),
to testify. (Trial Tr. 9:8-9). Van Deelen proceed to argue
with Ms. Wales about the definition of "domicile." (Trial Tr.
23:21-25:4). After Ms. Wales told Van Deelen that it "doesn't
take a genius to figure out" the definition of "domicile," Van
Deelen stated that they "don't need to be arguing" and he
was "not trying to be argumentative" by repeatedly asking her
to define "domicile." *Id.* Van Deelen again argued with Ms.
Wales about the use of the word "move" in a document given
to Van Deelen when he was hired informing him that he had
to "move" within the City limits within the next nine months.
(Trial Tr. 28:16-30:20).

 *2  Van Deelen then called Mary Miller, a current ITD
employee, to the stand and questioned her about the critical
nature of his job. (Trial Tr. 57:4-5). When Torczon challenged
the relevancy of evidence that Van Deelen had a "critical
job," the Court told Van Deelen that no one was disputing
his assertion that he had an "important job" and that he didn't
need to present any further evidence on this point. (Trial Tr.
79:23-81:25). Van Deelen proceeded to argue with the Court
asserting that he was not trying to establish the importance
of his position, but rather that Ms. Miller had waived the
residency policy with respect to him. *Id.* The Court reminded

Van Deelen that Ms. Miller had not testified that she had waived the residency policy with respect to him and reminded him that no one disputed that he had an important job. *Id.* Van Deelen responded, "I understand that, Judge. I didn't realize we were going to argue. It's just a simple document and that's fine." *Id.* The Court sustained the relevancy objection and Van Deelen concluded his examination of Ms. Miller. *Id.*

John Thigpen, the City's Human Resources Director during Van Deelen's employment, was then called to testify. (Trial Tr. 84:11-12). Counsel for the City interrupted Van Deelen's examination of Mr. Thigpen to request an exhibit number and told him to "speed it up." (Trial Tr. 93:3-11). Van Deelen asked the Court to instruct Torczon to address him through the Court rather than "helping [him] with [his] case." *Id.* The Court instructed Van Deelen to "present [his] case." *Id.* Counsel for the City again attempted to assist Van Deelen in his examination of Mr. Thigpen by informing him of the location of an exhibit he was searching for. (Trial Tr. 94:2-10). When Van Deelen complained to the Court, the Court responded, "It seems to me that's the document you are looking for." *Id.* To which Van Deelen retorted, "[s]he did not help me." *Id.*

Van Deelen proceeded to question Mr. Thigpen about City Ordinance § 2-972. Counsel for the City offered that the City was willing to stipulate that City Ordinance § 2-972 had been codified. (Trial Tr. 140:22-143:1). The following exchange ensued:

Torczon: We will stipulate to that.

Van Deelen: Would you please address the court.

The Court: Mr. Van Deelen, I have been patient with you and I am going to try to be patient but you are doing a lot of things you really don't need to do that aren't really moving your case forward ... If she is willing to stipulate to a particular document I would ask you do that so we don't use more time than is necessary.

Van Deelen: The problem is, Judge, you know I am not a lawyer and I would rather take pains taking time to get it right.

The Court: If I need to I will give you a time limit and I will tell you how much time you have to complete something. If you want to waste your time in the process of doing that I will let you do it, but if you want to know what I believe is important to be heard and what I think may

be determinative, in this case you better listen to what I have to say.

**\*3** Van Deelen: I am more than happy to do that.

The Court: Apparently not. You move ahead. And we will see what it goes.

Van Deelen: I am not trying to make the court upset but at the same time to me this is highly relevant because the problem is-

The Court: It may be highly relevant to you. If I say it's not relevant, then you are not going to be able to admit it. Now if you believe I am wrong you have the right to appeal and you have the right to ask my determination of what is relevant and what is not relevant in your case be reviewed by someone else.

Van Deelen: I hope we don't get that far, Judge. Are you saying you don't think it's relevant?

The Court: I am saying if she is willing to stipulate to it, accept her stipulation and move on.

Van Deelen: What was the stipulation.

Torczon: This is codified as an ordinance.

Van Deelen: I am not talking about that. I am talking about the fact I was terminated for violating 981023. That ordinance does not contain the language.

The Court: I understand that. I totally understand that.

Van Deelen: Should we move on. Okay, sorry, Judge. I am not trying to make you mad. The last person I want to make mad is you in this courtroom today. I guess since they have agreed to stipulate to its existence I move to admit Plaintiff's 8.

Torczon: No objection.

The Court: Received.

(Trial Tr. 140:22-143:1). Exchanges like this illustrate Van Deelen's refusal to cooperate with the good faith efforts of opposing counsel and the Court to expedite the proceedings. In an effort to further prolong the proceedings and waste judicial resources, Van Deelen offered vast amounts of cumulative and irrelevant evidence. *(See* Trial Tr. 151:9-11, 152:14-20, 154:1-3; 156:2-158:11). The Court, frustrated with the pace of the proceedings, warned Van Deelen prior to taking a recess:

You know, Mr. Van Deelen, I don't have four days to sit here for you to flounder around trying to present your case and I am telling you what I want to hear. If you don't want to give it to me then you don't want to give it to me. But I am telling you what is important in my thought process in deciding your case.

(Trial Tr. 158:12-18).

When the Court reconvened, the Judge attempted to determine under which version of the residency policy Van Deelen was terminated. The City amended its residency policy following Van Deelen's termination, but prior to his appeal of his termination to the Human Resources Board.[1] In hearing the party's arguments on this issue, the Court observed: "I guess to some extent it would be a pretty hollow victory if you were to prevail and had a ordinance no longer in effect under the issue of damages." (Trial Tr. 161:2-4). To which Van Deelen responded, "I will take it." (Trial Tr. 161:5).

Following this discussion with the Court, Van Deelen resumed questioning Mr. Thigpen. Rather than eliciting facts to support his arguments, Van Deelen would offer speculative arguments in support of his position as this exchange illustrates:

> **\*4** Van Deelen: How would an employee know in, how would, does the human resources department ensure that all employees across the city are treated equally as far as the residency requirement if there is no documentation and if you are doing things like leaving it up to them to decide, if they even know there is a GIS department, to call them and see where they live. What kind of mechanism does the human resources have in place to make sure everybody is treated equally?

> Thigpen: I don't understand the question. People are treated equally because the residency applies to all employees.

> Van Deelen: People are treated equally when the ordinance is applied equally.

> The Court: Mr. Van Deelen, I know you don't like to be interrupted. Unfortunately, you are in a situation [where] my opinions about this are going to be determinative and you can't just speculate that people were treated disparately. You can't just speculate there was disparate treatment because you want to argue people didn't understand what being a resident of Kansas City was. That's not sufficient to establish your burden here.

> Van Deelen: I am asking him how the human resources Department guaranteed they were being treated equally.

> The Court: He has already said as far as he is concerned the term residence was clearly understood by the employees of the city. Nobody ever had a problem with it. Nobody ever questioned him about it. I don't have to go out and conduct some survey or interview everybody and make certain that they do know and they do understand that and they are in compliance. Now if there is some evidence of some wide-spread problem or some confusion among employees and they don't take steps to correct that, that's a different story but you want to just speculate nobody knew what residence meant and Mr. Thigpen says that wasn't the case.

> Van Deelen: He's guessing, sir.

> The Court: He's speaking from what his experience was. Now you have the opportunity to prove what he says is wrong which you are not going to prove through him because he's telling you what his testimony is. You can argue with him for a long time if you want but you have already been arguing with him for a good part of the day and I haven't seen his position change.

(Trial Tr. 175:25-177:19).

Throughout the trial Van Deelen was uncooperative with the Court and opposing counsel with respect to calling witnesses. At the end of the first day of trial, Van Deelen refused to cooperate with Counsel for the City to ensure the appearance of Margaret Evans:

> Torczon: Margaret Evans was under subpoena and we just want to know if she needs to come back.

> The Court: Are you going to need Margaret Evans tomorrow, Mr. Van Deelen?

> Van Deelen: She has agreed to call me tonight. Absent the fact I have her number she has my number. If we can't get in touch she needs to be back.

> Torczon: She has not agreed to call through me. If he needs her it appears to me—

> **\*5** Van Deelen: I am trying to answer you but I am constantly interrupted. I spoke to Mrs. Evans before she left.

The Court: Don't keep doing that. Don't put her down. Just answer my questions, okay. Answer my questions. Don't keep denigrating opposing counsel or counsel for the City, not opposing counsel but counsel for the City.

Van Deelen: I am not attempting to do that she interrupted.

The Court: You are and I am telling you don't denigrate Ms. Torczon in the responses you make.

Van Deelen: I am saying I appreciate not being interrupted.

The Court: Do you want to argue. It's late in the day and if you want to get in an argument we will do that. Otherwise you accept what I tell you and you move on. You got it. That's what I want you to do. You understand that?

Van Deelen: I understand it.

The Court: All right, you accept what I tell you and you move on. Now what is the situation with Mrs. Evans.

Van Deelen: Do we have any rules about interrupting. I just want to know if there is. I don't want to interrupt her and I don't want to interrupt you.

The Court: Yes, there is a rule[:] do not interrupt me. What is the situation with Mrs. Evans?

Van Deelen: The situation is I spoke to her and she has agreed to call me tonight.

The Court: Apparently Ms. Torczon has spoken with her and she's not inclined to call Mr. Van Deelen.

Ms. Reed: Earlier in the case before Ms. Evans was dismissed I had represented her. So I have been the city's contact person with Margaret Evans in getting her in response to the subpoena. I had several conversations with her Friday and today.

The Court: Do we have to take half an hour.

Ms. Reed: She doesn't want to call Mr. Van Deelen.

The Court: She doesn't want-.

Ms. Reed: That is right.

The Court: She doesn't want to call you. Do you need her here tomorrow or not?

Van Deelen: Yes.

The Court: Tomorrow morning, tomorrow afternoon, what?

Van Deelen: Judge I guess I would like to respond to something that is not the truth that has been told you. And if you don't want me to, fine.

The Court: I don't want you to.

Van Deelen: I need her here. I would need here [sic]. I don't know how long it is going to take. I am through with Mr. Thigpen. He's the longest witness I have.

The Court: So we say ten thirty tomorrow morning.

Van Deelen: No, I would say tomorrow afternoon because if she would call I would save that trouble if she would call.

The Court: I am not going to make her call you. They say she doesn't want to.

Van Deelen: She can call Ms. Torczon. In the absent [sic] of making it easier on herself show up tomorrow afternoon.

The Court: Have her here at one o'clock tomorrow. All right. Thank you. You are excused.

(Trial Tr. 205:11-208:7). This exchange not only illustrates Van Deelen's unwillingness to cooperate with Counsel for the City and the Court, but also his lack of candor. Van Deelen repeatedly argued with the Judge over the most mundane issues insisting that the trial be conducted pursuant to his own personal preferences rather than the Court's orders.

**\*6** Van Deelen appeared for the second day of trial with a renewed interest in arguing with the Judge over the appearance of his witnesses prompting the following exchange:

The Court: Thank you. You can all be seated. Ms. Torczon, are you ready for your cross-examination?

Van Deelen: I have one matter. I had subpoenaed Brian Loopey and he came yesterday morning and I told him to return this morning. He is not here. I have to take necessary steps-

The Court: Do you know if he is coming?

Torczon: He called me twice last night and after discussions about Margaret Evans I told him I would call him this afternoon.

Van Deelen: He's my witness and I asked him to be here this morning to be used as a witness.

The Court: He will be here if we have to wait for him we will wait for him but don't you have other witnesses you can proceed with, Mr. Van Deelen.

Van Deelen: I guess, Your Honor. The problem I have is that he's under my subpoena.

The Court: All right, do not argue with me about this. I made a decision. Do not argue with me.

Van Deelen: I am not arguing.

The Court: You are. Do not argue with me. I am not here to babysit with you. I am not here for you to nit-pick over every little detail. You will proceed in the fashion that I tell you to proceed. All right, if you have a problem you address it to me. I will decide it. Now what is the next issue?

Van Deelen: I move to have Ms. Torczon cited for contempt of court for tampering with my witness.

The Court: Your motion is denied.
(Trial Tr. 210:1-211:5). Mr. Thigpen then took the stand for his cross-examination. (Trial Tr. 211:4-7).

Following Mr. Thigpen's cross-examination, Van Deelen called Gail Roper, the Chief Information Officer/Director of ITD during Van Deelen's employment, as his next witness. (Trial Tr. 227:20). Van Deelen continued to argue with the Judge throughout his examination of Ms. Roper. (Trial Tr. 235:17-236:14; 237:17-23; 335:8-336:22). Van Deelen unduly delayed the proceedings by misplacing exhibits and then arguing with Counsel for the City about the location of the exhibits (Trial Tr. 238:12-239:18), focusing on irrelevant evidence and details (Trial Tr. 235:17-236:14; 335:8-336:22), and offering cumulative evidence (Trial Tr. 241:11-24). Additionally, Van Deelen argued with Ms. Roper (Trial Tr. 276:2-3) and misstated and misconstrued her testimony in an effort to prove his case (Trial Tr. 244:3-245:23, 257:23-258:21).

Van Deelen questioned Ms. Roper about an inter-departmental memo he purportedly signed waiving the City's

residency requirement with respect to Van Deelen. (Trial Tr. 252:14-257:9). Ms. Roper testified that her signature had been transposed to a document that she did not write. (Trial Tr. 253:10-12). Ms. Roper testified that she knows she did not write the memo because she generally does not write memos to staff members, she usually signs documents using her middle initial, the format of the memo is inconsistent with the format used in her office, and she generally uses the salutation "regards" rather than "sincerely." (Trial Tr. 254:15-255:10).

**\*7** This memo was allegedly sent to Gary O'Bannon and Mary Miller. Mr. O'Bannon testified that he had not seen the memo prior to the filing of this lawsuit. (Trial Tr. 868:16-24). Ms. Miller also testified that she had not seen the memo prior to the present litigation. (Trial Tr. 870:1-871:5).

Van Deelen also questioned Ms. Roper about a letter which he authored and allegedly sent to her following his termination. (Trial Tr. 257:10-262:1). Ms. Roper testified that she did not remember receiving the letter. (Trial Tr. 257:23-260:4). The letter purportedly verifies the alleged waiver of the residency requirement with respect to Van Deelen. (Trial Tr. 261:15-20).

By the conclusion of the trial, the Court was convinced that Van Deelen had fabricated the memo Ms. Roper allegedly drafted waiving Van Deelen's compliance with the City's residency policy. The Court was also persuaded that the letter that Van Deelen drafted and allegedly sent to Ms. Roper had never been received by Ms. Roper. Accordingly, the Court concluded that the alleged waiver of the City's residency policy with respect to Van Deelen had been fabricated by Van Deelen.

Following Van Deelen's examination of Ms. Roper, Margaret Evans, a member of the Human Resources Board which reviewed Van Deelen's termination, was called to testify. (Trial Tr. 322:10). The Court repeatedly tried to get Van Deelen to focus on the constitutional question before it rather than presenting evidence to establish that he was wrongfully terminated. This is best illustrated by two exchanges. The first occurred when Van Deelen was questioning Ms. Evans on re-direct about the ordinance that was presented to the Human Resources Board (021200) which was different from the ordinance which the parties agreed Van Deelen was fired for violating (981023):

The Court: Mr. Van Deelen, you agreed yesterday that you were challenging 981023.

Van Deelen: Yes, I did.

The Court: So what relevance does this have?

Van Deelen: The relevance is the defendants terminated me for violating one ordinance, they weren't even aware of it.

The Court: You are not challenging, this is not a wrongful termination hearing here. You are challenging the constitutionality of 981023. That was discussed yesterday. You agreed to that. That's what we are talking about.

Van Deelen: Your Honor, I think we have a difference of things and that's why I want to bring you a case or two as we go but I am challenging the policy not the order [sic] ordinance.

The Court: Just because they got it wrong doesn't mean it's unconstitutional.

Van Deelen: There is a difference and I will make plenty of argument as we proceed, difference of finding a policy unconstitutional.

The Court: I understand the ordinance the HR Board had before them at the time they terminated you was 021200. I understand that.

Van Deelen: Okay. But the only thing I was trying to do now, Mrs. Torczon introduced testimony that appeared I was agreeing to check and see if that ordinance was the proper one and that is not in fact the testimony that was given. If she will stipulate that I would be happy to sit down.

**\*8** The Court: I don't think she will stipulate.

Torczon: She re-read the testimony so it's in the record what was said.

Van Deelen: Do you stipulate to the fact I did not say-

Torczon: No.
(Trial Tr. 335:18-21).

Despite the Court's warning regarding the introduction of irrelevant evidence, Van Deelen called Brian Loopey to the stand and began questioning him about the surveillance he performed on Van Deelen. Again, the Court instructed Van Deelen to refrain from proceeding to elicit irrelevant testimony:

The Court: Once again if they got it wrong that's a different question. I mean if you did not live in Kansas and you in fact lived in Missouri as your permanent residence and Kansas City made a mistake in terminating you that's your wrongful termination proceeding. We are here talking about the constitutionality of this ordinance and how it was applied to you. Now what they did in the course of their investigation, they concluded you were a resident of Kansas. And so that's what we are dealing with here. I do not have before me whether that question or that decision was made rightly or wrongly. That's not before me.

Van Deelen: I understand, Judge. What I am trying to show simply they have a list, they have a checklist of things to check.

The Court: It sounds like you are getting into the detail of everything this man did in the course of investigating you. If you want to talk about the policies and you want to continue your effort to show that the policies were unable to be interpreted and applied inconsistently [sic] in relation to you, you can do that but we are not here to reconsider whether you were wrongfully terminated. And you know what, I am not going to tell you, I am just going to start telling you to move on. You better understand, okay.

Van Deelen: I do understand. I don't think you understand what I am trying to do and I am trying to do exactly what you just said.

The Court: I understand what you are trying to do.

Van Deelen: A checklist they have-let me continue.

The Court: Move on.
(Trial Tr. 342:18-344:1).

At the conclusion of Mr. Loopey's direct testimony, Counsel for the City indicated that she did not have any questions for Mr. Loopey and the Court proceeded to excuse Mr. Loopey. (Trial Tr. 349:14-23). Van Deelen contested the Court's excusal of Mr. Loopey:

Van Deelen: I reserve the right to recall him as rebuttal.

The Court: You didn't get anything out of him just now. You tell me what you want to recall him for.

Van Deelen: I want to recall as rebuttal.

The Court: For what purpose?

Van Deelen: I won't know.

The Court: You are excused, Mr. Loopey. You are free to go and you will not be recalled.

Van Deelen: I can't recall him?

The Court: That's what I said. You won't tell me why you want to recall him.

Van Deelen: I want to recall him to rebut testimony.

The Court: I said no.

**\*9** Van Deelen: Okay, as long as it's on the record.

The Court: As long as you understand what no means.

Van Deelen: I certainly do.

The Court: Good.
(Trial Tr. 349:24-350:19).

Van Deelen proceeded to call Beth Lacey as a witness. (Trial Tr. 350:22-23). During his examination of Ms. Lacey, Van Deelen continued to focus on irrelevant matters and offered cumulative evidence. (Trial Tr. 357:25-359:9; 366:25-367:2; 378:9-23). When the Court was attempting to discern the relevance of certain testimony, Van Deelen interrupted the Judge and indicated that he would not comply with the Judge's rulings:

The Court: ... What are you trying to establish here, about the ordinance? That's a question or no question.

Van Deelen: I am trying to establish what the terms were that she applied to the residency policy while I was employed.

The Court: She said her-

Van Deelen: Judge, if you would let me continue. I have deposition testimony.

The Court: You know what, I have been letting you continue for two days and you are making very little progress, Mr. Van Deelen.

Van Deelen: Well, sorry.
(Trial Tr. 358:22-359:9). Van Deelen proceeded to argue with the Judge about the law governing his constitutional claim and

the relevancy of the evidence he was offering in support of his claim. (Trial Tr. 360:13-361).

Although each witness Van Deelen had called had testified that residence means where a person lives (Trial Tr. 360:19-23), Van Deelen attempted to misconstrue the testimony of these witnesses to convince the Court that no one understood the meaning of "residence" in the City's residency policy. (Trial Tr. 360:13-361:22). The following exchange between Van Deelen and the Judge ensued:

Van Deelen: I am just trying to show every person in the world, Judge, applied terminology to what the residence-

The Court: I bet you probably are trying to tell me how every person in the world interprets it.

Van Deelen: I just have a few more witnesses. I am not sure if I am going to ask anybody else this question but to me it's highly relevant.

The Court: I hope not because you have already asked it of too many people and you have gotten the same answer every time.

Van Deelen: Let me ask, is that something you don't think is relevant?

The Court: I don't think that the fact that people had an understanding of the legal terminology of residence is any indication that it was vague. I believe that the evidence to this point shows that there was a consistent definition of residence accepted by the city employees and HR and ITD and that they applied that definition in a consistent fashion. And definition of residence was where a person lives and there were a variety of things they looked at in making those determinations. But those people in ITD did not make that ultimate determination and it was up to the HR Board to determine if a person was in compliance or not. And if there was a general understanding of what residence meant, then it's not inconsistently applied.

**\*10** Van Deelen: It is certainly inconsistently applied.

The Court: You argue it is. The difficulty with you, Mr. Van Deelen, is you do not accept reason or reality. And you want to argue everything to the extreme. And that is not going to accomplish what you are seeking to accomplish in this action. And it is to some extent not productive for me to discuss these things with you because you do

not accept them. And so we will proceed and you can go ahead and put your case on and continue with whatever cause it is that you are taking up in the course of this case.

Van Deelen: Part of the problem, I was not given a chance to do an opening statement and I was quite prepared to.

The Court: Okay, I am done talking to you. Go on asking the witness your questions.

Van Deelen: Thank you.

I might as well just quit because my whole thing I am going to show that there is not one person, Kansas City employee, planet earth that had any idea what these words were that were being applied to their residency.

The Court: You are trying to establish that and they all say it means where a person lives and their understanding where a person lives where their home-

Van Deelen: Nobody ever told anybody that.

Judge, I am not trying to make you mad. I am sorry. I already have, but I don't think I need to show that I was treated differently. I need to show-

The Court: That's up to you. We are not here arguing your case right now. If you want to continue your evidence, proceed.

Van Deelen: Thank you, Judge.
(Trial Tr. 360:23-364:7).

After Van Deelen wasted the Court's time by fishing around for relevant evidence from Ms. Lacey (Trial Tr. 368:8-369:16) and offering to quit entirely (Trial Tr. 370:3-14), a recess was taken and Roy Greenway was subsequently called to testify (Trial Tr. 395:19). Van Deelen proceeded to solicit irrelevant testimony from Mr. Greenway (Trial Tr. 421:13-19; 428:4-5; 428:12-17; 431:21-432:8) and misconstrue his testimony (Trial Tr. 433:13-19). At the conclusion of this portion of Mr. Greenway's testimony, Van Deelen asserted his intention to call Wayne Cauthen, City Manager for the City of Kansas City, as a witness. (Trial Tr. 449:8-458:7).

Aware of Mr. Cauthen's schedule and numerous civic responsibilities, the Court asked Van Deelen what evidence he excepted to elicit from Mr. Cauthen. *Id.* Van Deelen was unable to provide the Court with a coherent response, and the Court threatened Van Deelen with sanctions in the event Mr. Cauthen appeared and Van Deelen failed to elicit any relevant

testimony from him. *Id.* An aggravated exchange ensued between the Court and Van Deelen during which Van Deelen argued with the Court, accused the Court of violating his "constitutional right to call a witness," accused the Judge of "screaming" at him and becoming "red in the face," and made an oral motion for recusal. *Id.* During this exchange, Van Deelen baldly and absurdly asserted that Mr. Cauthen would admit that the City's residency policy was unconstitutional. *Id.* Van Deelen then withdrew, but subsequently reasserted, his intention to call Mr. Cauthen, recognizing that he would be subject to sanctions if he continued to waste the time of the Court and the witnesses. *Id.*

**\*11** When the Court reconvened the following morning for the third day of trial, the Judge denied Van Deelen's written motion to recuse stating that the allegations contained therein were false. (Trial Tr. 460:1-5). The Court notified Van Deelen that his examination of Mr. Cauthen would be limited to thirty minutes and if Van Deelen had used this time productively and additional time was necessary, the Court would consider granting Van Deelen additional time to question Mr. Cauthen. (Trial Tr. 461:7-12). The Court also limited Van Deelen's direct examination of all additional witnesses to one hour and no more time for redirect examination than was taken on cross examination because Van Deelen had consistently asked repetitive questions of many of the witnesses in an effort to establish facts that were already in evidence. (Trial Tr. 461:13-20). Not surprisingly, Van Deelen argued with the Judge about this time limitation asserting that the Judge had "changed the rules." (Trial Tr. 461:24-462:22).

Van Deelen then called Mr. Cauthen to the stand to question him about the residency policy in effect at the time of Van Deelen's termination. Mr. Cauthen testified that he did not become City Manager until after Van Deelen was terminated and his administrative review of Van Deelen's termination was conducted by one of his staff members. (Trial Tr. 463:12-465:7). Mr. Cauthen further testified that he was not involved in interpreting and applying the City's residency policy as he had delegated this duty to the City's Human Resources Manager. (Trial Tr. 466:16-25). Mr. Cauthen asserted that he was not familiar with the City's residency policy during Van Deelen's employment with the City as Mr. Cauthen was not employed by the City at that time. (Trial Tr. 467:18-468:10). Mr. Cauthen stated that he didn't know what ordinance Van Deelen was terminated for violating. (Trial Tr. 468:19-25). Ultimately, Van Deelen failed to elicit any probative testimony from Mr. Cauthen.

Following the third day of trial, Van Deelen filed a civil complaint against Judge Fenner alleging various violations of his constitutional rights. *See Van Deelen v. Fenner,* Case No. 4:06-CV-162-HFS. The next day, Van Deelen dismissed his claims against Judge Fenner. *Id.*

In the remaining days of the trial Van Deelen continued to mischaracterize the testimony of witnesses (Trial Tr. 516:10-18; 517:1-11; 629:16-630:6; 632:18-22), disrespect witnesses (Trial Tr. 656:4-15), and call witnesses by the wrong name (Trial Tr. 474:25-475:6; 475:25-476:2; 479:10-17). Van Deelen was unprepared to call scheduled witnesses (Trial Tr. 482:15-483:4) and was unprepared to testify himself (Trial Tr. 791:8-20). Van Deelen continued to offer irrelevant and cumulative evidence (Trial Tr. 507:9-15; 561:1-4; 591:15-24; 592:23-593:3; 730:5-18, 731:11-25, 743:5-8), reject the authority of the Court (Trial Tr. 630:18-631:5) and argue with opposing counsel (Trial Tr. 478:4-9; 515:6-9; 634:17-23; 715:5-13). Although Van Deelen had fewer opportunities to argue with the Court as the Judge came to recognize the futility in instructing Van Deelen on the law and the evidence necessary to prove his claims, Van Deelen managed to be uncooperative when given the opportunity. (Trial Tr. 615:9-617:6; 711:16-713:16; 733:9-19).

**\*12** Unfortunately, the transcript does not reflect the amount of time that was wasted while Van Deelen searched for exhibits or formulated his next question. On the final day of trial, the following exchange occurred wherein the Court censured Van Deelen for wasting its time:

> The Court: Mr. Van Deelen, if you are not ready to proceed, I am going to excuse Mr. Greenway.

> Van Deelen: I beg your indulgence, these exhibits constantly get shuffled.

> The Court: I sit and wait constantly for you to find your exhibits.

> Van Deelen: And the defense as well, Judge. Here is the exhibit.

> The Court: You have to have a response to everything, don't you, sir?

> Van Deelen: I can't hear you.

> The Court: You have to have a condescending response to everything.

> Van Deelen: Judge I would like to make another oral motion you recuse yourself. You are obviously bias[ed] against me in this case? [sic]

> The Court: Your motion is denied.

> Van Deelen: I will re-file. I am sorry I intimidate you. It's working both ways, believe me.

> The Court: All right, if you are not ready to proceed-

> Van Deelen: Mr. Greenway, would you please find a thumbnail sketch ...

(Trial Tr. 789:4-25).

Following closing arguments, Van Deelen asked the Court for permission to make a statement unrelated to his case. (Trial Tr. 889:18-24). Van Deelen, recognizing that his conduct throughout the trial could be characterized as disrespectful and harassing, gave the following statement:

> I just wanted to state, Judge, that during these proceedings you and I have been butting *heads* and I want to let you know none of that was meant to be disrespectful of the court. I wanted you to know that, Judge, nothing was meant to be done other than to protect my rights pursuant to this litigation. Thank you.

(Trial Tr. 889:25-890:5). Regardless of this statement to the contrary at the close of his case, the Court finds that the facts detailed above reveal that Van Deelen frequently made unnecessary, irrelevant, argumentative and condescending comments thereby demonstrating a complete lack of respect and decorum towards the Court, Counsel for the City and his own witnesses. Van Deelen exhibited a proclivity to abuse the legal process by his conduct throughout this litigation and sanctions are warranted to deter future abuses of the judicial process.

## II. Sanction

The Court finds that its inherent authority, recognized by the Supreme Court in Chambers v, *NASCO, Inc.,* 501 U.S. 32 (1991), empowers it to impose sanctions on Van Deelen to deter him from future abuses of the judicial process. The Court finds that Van Deelen filed this lawsuit in bad faith, with the intention of harassing the City and its employees. Van Deelen's fabrication of evidence together with his disrespectful and argumentative conduct throughout the course of the trial impeded the efficient resolution of his

constitutional claims. Any of such conduct, standing alone, is sufficient to warrant sanctions.

**\*13**  To prevent Van Deelen from engaging in such conduct in the future, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action. Imposition of these sanctions is supported by Supreme Court precedent and the law of the Eighth Circuit, as set forth below.

### III. Legal Authority and Analysis

#### A. Inherent Authority of the Court to Impose Sanctions for Conduct Which Abuses the Judicial Process

It is well-settled in the Eighth Circuit that a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power." *See Bass v. General Motors Corp.,* 150 F.3d 842, 851 (8th Cir.1998); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 280 (8th Cir.1995); *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 267 (8th Cir.1993). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Chambers,* 501 U.S. at 43 *quoting Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-31 (1962). "Because of the potency of inherent powers, '[a] court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction.' " *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir.2005) *quoting Harlan v. Lewis,* 982 F.2d 1255, 1262 (8th Cir.1993) *citing Chambers,* 501 U.S. at 44-45. "Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.' " *Harlan,* 982 F.2d at 1259 *quoting Chambers,* 501 U.S. at 43-45. "[W]hereas each of the other mechanisms [outlined in the Federal Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent

power must continue to exist to fill in the interstices." *Chambers,* 501 U.S. at 46.

#### B. Imposition of Monetary Sanctions in the form of Attorney's Fees Pursuant to the Court's Inherent Authority

In *Chambers,* the controlling authority on the imposition of sanctions pursuant to the inherent powers of the Court, the Supreme Court found that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Chambers,* 501 U.S. at 45-46 *quoting Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 (1975). "If a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party ... as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'[2]" *See Chambers,* 501 U.S. at 46 (internal citations omitted). The Supreme Court concluded:

**\*14**  The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'

*Chambers,* 501 U.S. at 46 *quoting Hutto v. Finney,* 437 U.S. 678, 689, n. 14 (1978).

In *Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.1993), the Eighth Circuit affirmed a district court's[3] application of its inherent powers to impose a $5,000 monetary sanction against an attorney who engaged in two unauthorized ex parte communications with nonparty treating physicians. The Eighth Circuit recognized that "the Supreme Court has found inherent power to include the ability to ... assess attorneys' fees, and impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.' " *Harlan,* 982 F.2d at 1259 *citing Chambers,* 501 U.S. at 43-45. The Eighth Circuit rejected the attorney's argument that an explicit finding of bad faith is required prior to the imposition of any monetary sanction. *Harlan,* 982 F.2d at 1260. The Eighth Circuit distinguished the imposition of monetary sanctions from the assessment of attorney's fees noting that the Supreme Court stated in *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1979) "that a finding of bad faith 'would have to

precede any sanction under the court's inherent powers' " but that this statement was limited to the assessment of attorney's fees. *Harlan,* 982 F.2d at 1260. In *Harlan,* the Eighth Circuit apparently limited the bad faith requirement to the assessment of attorney's fees as a sanction imposed pursuant to the court's inherent authority.[4] *Id.*

In *Nielson v. Trans World Airlines, Inc.,* 95 F.3d 701, 702 (8th Cir.1996), the Eighth Circuit affirmed a district court's[5] assessment of attorney's fees against four plaintiffs as a sanction imposed pursuant to the court's inherent power. The district court found that "the plaintiffs pursued this lawsuit in bad faith and for no purpose other than to harass and badger TWA." *Nielson,* 95 F.3d at 702. The Eighth Circuit found that a district court has the authority to assess attorney fees under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Nielson,* 95 F.3d *quoting Dillon,* 986 F.2d at 266. The Eighth Circuit further found that the district court did not abuse its discretion "in assessing $20,000 in attorney fees against plaintiffs, after finding they acted in bad faith and for an improper purpose." *Nielson,* 95 F.3d at 702.

This Court has the inherent authority, according to the Supreme Court's holding in *Chambers,* to assess attorney's fees against Van Deelen in the present case. There is ample evidence in the transcript revealing Van Deelen's bad faith in filing and pursuing his constitutional claims against the City and its employees. As detailed above, Van Deelen abused the judicial process by fabricating evidence to create a genuine issue of material fact for trial. He wasted the time and efforts of numerous City employees, including the City Manager, by calling them to testify and then soliciting irrelevant and cumulative evidence from them. Furthermore, Van Deelen's propensity for arguing with the Court and counsel for the City impeded the expeditious resolution of his claims. Accordingly, the City is entitled to be compensated for a portion of the expenses it incurred as result of Van Deelen's obstinacy. As the transcript reveals Van Deelen's vexatious, wanton and oppressive conduct throughout the course of the trial, the Court will impose monetary sanctions against him in the form of attorney's fees pursuant to the Court's inherent power to police itself.

**C. Enjoining Future Pro Se Litigation Against the City and its Employees Pursuant to the Court's Inherent Authority**

**\*15** It is well-settled that this Court has the discretion to craft and impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process." *Chambers,* 501 U.S. at 43-45. As identified above, courts have imposed a wide range of sanctions to discourage conduct which impedes the orderly and expeditious disposition of cases. As Van Deelen has demonstrated a desire to harass the City and its employees by filing frivolous lawsuits supported by fabricated evidence, the Court finds that its inherent authority to impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process," includes enjoining Van Deelen from filing future pro se litigation against the City and its employees.

With respect to limiting "vexatious, frivolous or oppressive litigation" by enjoining a litigant from filing future lawsuits, one legal treatise has noted:

> Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process, regardless of whether the threatened litigation is legal or equitable in character, or whether the vexatious litigation results from the prosecution of many suits by the same individual, or from many suits by different individuals. The courts may take creative actions to discourage hyperactive litigators so long as some access to courts is allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis.

42 Am.Jur.2d *Injunctions* § 191 (2005).

The Eighth Circuit Court of Appeals has held that "[o]ne may not be enjoined from protecting and enforcing his rights by lawful means, unless his acts to that effect are done or threatened unnecessarily, not really for the purpose of protecting his rights, but maliciously to vex, annoy, and injure another." *Kryptok Co. v. Stead Lens Co.,* 190 F. 767, 767, 771 (8th Cir.1911). Nearly 80 years later, the Eighth Circuit found that litigants who have abused the judicial system may be enjoined from filing future litigation. In *In re Tyler,* 839 F.2d 1290, 1292 (8th Cir.1988), the Eighth Circuit recognized that there is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." "Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims." *Tyler,* 839 F.2d at 1292.[6] Excessive litigation imposes unnecessary burdens on, and the

useless consumption of, court resources thereby increasing the public dissatisfaction and frustration with the courts. *Id.* Furthermore, "abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims." *Id.* According to the Eighth Circuit, "[d]efendants have a right to be free from harassing, abusive and meritless litigation" and the "federal courts have a clear obligation to exercise their authority to protect litigants from such behavior." *Id.* (internal citations omitted). The Eighth Circuit concluded that: "The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits." *Id.* citing *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir.1981). The Eighth Circuit in *Tyler* proceeded to affirm the district court's[7] sua sponte determination that the plaintiff should be limited to filing one new lawsuit per month pursuant to certain conditions precedent as a sanction for the litigant's repeated abuse of the judicial process. *Tyler,* 839 F.2d at 1291.

**\*16** The Court finds that Van Deelen has filed this lawsuit against the City and its employees not for the purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City. This is best demonstrated by Van Deelen's remark that he would "take" a "hollow victory." *(See* Trial Tr. 161:2-6). Based on this comment it is apparent that Van Deelen was not seeking to change the City's residency policy or even to recover damages, but simply to obtain a verdict against the City. To prevent further harassment of the City and its employees by the filing of harassing, abusive and meritless litigation, the Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The litigation of Van Deelen's claims consumed a great deal of judicial resources as the Court considered cross-motions for summary judgment and presided over six days of trial. The trial was particularly time-consuming as the parties grossly underestimated the amount of time the trial would take, requiring the Court to re-schedule other criminal and civil matters in order to hear evidence in this case. Preventing Van Deelen from filing future pro se lawsuits against the City is necessary to preserve limited judicial resources for the processing of good faith claims.

In *L.G. Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972), the Eighth Circuit affirmed a limitation on future litigation similar to the limitation this Court imposes on Van Deelen. The plaintiff in *Ruderer* had been discharged by his employer for making false, irresponsible and malicious charges against fellow employees. *Ruderer,* 462 F.2d at 898. Following a formal hearing and administrative review of the hearing transcript, the plaintiff's termination was affirmed. *Id.* The plaintiff filed a pro se lawsuit against his former employer, the United States Army Aviation Material Command, to recover damages for the allegedly tortious and criminal acts of certain military personnel and administrators. *Id.* Additionally, the plaintiff filed twenty-one actions against his fellow employees who he alleges defamed him and conspired against him to effect his discharge. *Id.* The district court[8] dismissed the plaintiff's action against his employer and most of the actions against the plaintiff's fellow employees. *Id.* Additionally, the district court issued an injunction which barred the plaintiff from bringing further suits in the United States District Court for the Eastern District of Missouri on the plaintiff's claim that he was wrongfully discharged. *Id.* The Eighth Circuit affirmed the district court's order enjoining the plaintiff from filing lawsuits related to his allegedly wrongful termination and provided the following reasoning in support of its decision:

> In our view, appellant's affinity for litigation, standing alone, would not prove a sufficient reason for issuing such an injunction. We believe, however, that the district court acted properly in this case. The district court found that appellant filed the present suit in bad faith and in furtherance of a personal vendetta against the United States. The district court also found that appellant had been afforded a full opportunity to present his claims and that further suits on these claims would uselessly consume the court's time. We have thoroughly reviewed the record, and we agree with these findings. Given these findings, the district court acted properly in issuing the injunction.
> **\*17** *Ruderer,* 462 F.2d at 899.

In the present case, Van Deelen filed this lawsuit asserting claims arising out of his allegedly wrongful discharge against the City, its Human Resources Board and twelve City employees and agents. Like the district court in *Ruderer,* this Court finds that the pro se plaintiff in the present case, Van Deelen, filed this action in bad faith and in furtherance of a personal vendetta against the City and its employees and agents. As Van Deelen's claims proceeded to the dispositive motion and trial stage, this Court finds that Van Deelen has

had a full and fair opportunity to present his claims against the City and its employees and that further suits would uselessly consume the Court's time. Accordingly, this Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The Eighth Circuit has repeatedly affirmed district court orders enjoining the filing of future litigation as a sanction for abuse of the judicial process. *See Sassower v. Carlson, 930 F.2d 583 (8th Cir.1991); Peck v. Hoff, 660 F.2d 371(8th Cir.1981);* and *Green v. White,* 616 F.2d 1054 (8th Cir.1980). More recently, in *Jackson v. Armontrout,* 26 F.3d 126 (Table) (8th Cir.1994) (unpublished), the Eighth Circuit affirmed a district court order dismissing the plaintiff's lawsuit and limiting future in forma pauperis filings. The plaintiff in *Jackson* was an inmate who had filed twelve in forma pauperis lawsuits. *Id.* The court held that filing "multitudes of frivolous suits" is not a prerequisite to the imposition of limits on a plaintiff's right to proceed in forma pauperis. *Id.* Rather, a litigant's "regular refusal to obey the court's rules and orders disrupts the legal system, increases the burden on limited court resources, and justifies limiting his ability to proceed in forma pauperis." *Id.*

Similarly, this Order enjoining Van Deelen from filing future pro se lawsuits against the City and its employees or proceeding pro se in those currently pending, is not premised on the number of lawsuits Van Deelen has filed against the City and its employees nor is it based upon Van Deelen's history of filing pro se lawsuits.[9] Rather, the sanction is imposed in response to Van Deelen's fabrication of evidence coupled with his abuse of the judicial process herein and his disrespectful and argumentative conduct throughout the course of the trial. Accordingly, to deter Van Deelen from litigation which is not aimed at protecting his own rights but rather aimed at maliciously vexing and annoying the City and its employees, the Court hereby enjoins Van Deelen from filing future pro se litigation against the City and its employees. Furthermore, on all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen must secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

**D. Monetary Sanctions pursuant to Rule 11**

**\*18** Additionally, the Court finds that it has the authority to impose monetary sanctions on Van Deelen pursuant to Fed.R.Civ.P. 11 ("Rule 11"). Rule 11 requires that by making a representation to the Court in the form of a "pleading, written motion, or other paper," an unrepresented party is certifying that such representation "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b)(1). Rule 11 further provides that "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Feb. R. Civ. P. 11(b)(3). The imposition of Rule 11 sanctions rests squarely within the sound discretion of the district court. *MHC Investment Co. v. Racom Corp .,* 323 F.3d 620, 624 (8th Cir.2003).

Van Deelen contends that sanctions are not appropriate pursuant to Rule 11 because the infractions identified by the Court in its show cause order do not come within the ambit of Rule 11 because Rule 11 only reaches filed, signed papers.[10] The Court rejects Van Deelen's argument as inconsistent with the spirit of Rule 11. The documents which this Court finds Van Deelen fabricated, i.e., the memo containing the purported waiver of the City's residency policy allegedly signed by Gail Roper and the letter which Van Deelen authored and allegedly sent to Gail Roper following his termination, were not individually signed by Van Deelen and filed with the Court. However, these documents were attached as exhibits to Van Deelen's cross-motion for summary judgment which he signed and submitted to the Court. These exhibits were relied upon by the Court in its finding that genuine issues of material fact precluded summary judgment on the question of whether the City's residency policy was unconstitutionally vague and ambiguous. Accordingly, the Court finds that it also has the authority to impose monetary sanctions for Van Deelen's fabrication of evidence pursuant to Rule 11. The following Eighth Circuit cases demonstrate the propriety of the imposition of sanctions pursuant to Rule 11 for the fabrication of evidence.

In *Pope v. Federal Express Corp.,* 974 F.2d 982 (8th Cir.1992), the Eighth Circuit considered a monetary sanction imposed by the United States District Court for the Western District of Missouri, Judge Dean Whipple, presiding. Judge Whipple imposed Rule 11 sanctions on the plaintiff and her attorney for fabricating evidence. *Pope,* 974 F.2d at 983. Expert testimony and demonstrative evidence revealed that the plaintiff had added a handwritten note

000787

with sexual overtones to a computer generated report by using a cut and paste composite of other documents. *Id.* The plaintiff's attorney had knowingly produced this manufactured document in support of her client's Title VII sexual harassment case and continued to refer to and rely on it in subsequent pleadings. *Id.* The district court imposed Rule 11 sanctions against both the plaintiff and her attorney finding that the attorney's reliance on a demonstrably false document violated Rule 11's requirement that a signer make a reasonable inquiry into the validity of pleadings. *Id.* at 983-84. Consequently, Judge Whipple dismissed the plaintiff's Title VII action with prejudice and imposed attorney's fees of $30,000 jointly and severally upon the plaintiff and her attorney. *Id.* at 984. The district court also held the plaintiff liable for an additional $8,882.50 of legal fees, $5,000 of which constituted the cost of having a handwriting expert examine the fabricated document. *Id.*

**\*19** On appeal, the Eighth Circuit began its analysis by finding that the fact specific determination of whether a document was manufactured was for the Court in connection with the potential imposition of Rule 11 sanctions. *Id.* The Eighth Circuit proceeded to find that the district court had the inherent authority to dismiss the lawsuit as a remedy for fabricating evidence. *Id.* Although the Eighth Circuit found that the district court did not abuse its discretion in awarding monetary sanctions against the plaintiff and her attorney, it remanded to the district court for reconsideration of the amount of monetary sanctions in light of recent developments in the underlying case law upon which the district court relied. *Id.*

In determining the amount of monetary sanctions, Judge Whipple had relied upon *White v. General Motors Corp., Inc.,* 699 F.Supp. 1485 (D.Kan.1988) in which a Kansas district court had imposed an attorney's fee award of $172,382.19 against the plaintiff and plaintiff's counsel pursuant to Rule 11. *Pope,* 974 F.2d at 984. Judge Whipple noted that White had been remanded to the Kansas district court by the Tenth Circuit Court of Appeals when he issued his order imposing sanctions in *Pope;* however, no ruling had been reached on remand. *Id.* Following Judge Whipple's order and prior to Pope's appeal to the Eighth Circuit, the Kansas district court issued a ruling in White. On remand, the Kansas district court revised its initial award downwards to $50,000, and imposed liability for this award solely upon the plaintiff's attorney. *Id* . at 984-85.

The Eighth Circuit directed Judge Whipple to reconsider the amount of monetary sanctions imposed in light of the remand decision in White. *Id.* at 985. The Eighth Circuit further instructed Judge Whipple to consider "whether such a substantial monetary penalty constitutes the least severe sanction that will adequately deter the undesirable conduct." *Id.* citing *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3rd Cir.1988).

On remand, Judge Whipple noted that the $50,000 sanction imposed against the plaintiff's attorney in White had been imposed with the Kansas district court's knowledge of the $30,000 sanction in *Pope. Pope v. Federal Express Corporation,* 49 F.3d 1327, 1328 (8th Cir.1995). Judge Whipple further "found that [the plaintiff's attorney] has earned and has the capacity to earn a substantial income by practicing law." *Id.* The district court concluded that the purposes of Rule 11 and the plaintiff's attorney's conduct warranted a $25,000 sanction against the attorney, individually. *Id.* The court further determined that the plaintiff had the ability to pay $8,882.50 in costs and fees and retained that individual sanction against her. *Id.*

On appeal, the Eighth Circuit affirmed this modification of the monetary sanction assessed against the plaintiff and her attorney. *Id.* The Eighth Circuit further identified the following factors in determining the appropriate sanction: (1) the wrongdoer's history, experience and ability; (2) the severity of the violation; (3) the degree to which malice or bad faith contributed to the violation; and (4) other factors. *Id.* citing *White v. General Motors Corp.,* 908 F.2d 675, 685 (10th Cir.1990), *cert. denied,* 498 U.S. 1069 (1991). The Eighth Circuit ultimately concluded that the district court did not abuse its discretion in assessing a $25,000 sanction against the plaintiff's attorney and a $8,882.50 sanction against the plaintiff. *Pope,* 49 F.3d at 1328.

**\*20** The Court finds that this $ 6,000 monetary sanction imposed against Van Deelen is the least severe sanction that will adequately deter Van Deelen's undesirable conduct. This monetary sanction pales in comparison to the $50,000 sanction imposed in White and is consistent with the $8,882.50 sanction imposed against the plaintiff in *Pope* for substantially similar conduct. Although Van Deelen represents to the Court that he is currently unemployed, Van Deelen has the capacity, given his education and prior job experience[11], to earn an income sufficient to satisfy this monetary sanction. The Court believes that such a sanction may encourage Van Deelen to return to the workplace, rather

than focusing his time and attention on filing lawsuits in bad faith with the intention of harassing the City and its employees.

Van Deelen has a history of filing pro se lawsuits and appears to be well versed in the basic tenets of the Federal Rules of Civil Procedure. His experience filing lawsuits in and appearing before the United States District Court, coupled with common sense, should have made Van Deelen aware that fabricating evidence to support his claims constitutes a grievous offense. As previously noted above, the Court finds that Van Deelen filed this lawsuit and presented the corresponding fabricated evidence in bad faith with the intention of harassing the City and its employees. Accordingly, the Court finds that it also has the authority, pursuant to Rule 11, to impose monetary sanctions against Van Deelen as a remedy for his fabrication of evidence.

## CONCLUSION

Throughout the course of this lawsuit, both prior to and during trial, Van Deelen exhibited a familiarity with the Federal Rules of Civil Procedure and Evidence, this Court's Rules of Trial and a knowledge of pertinent case law. In spite of the fact that Van Deelen showed an understanding of the law and the process far beyond a typical pro se litigant, he elected to use his knowledge of the system to be abusive and disruptive to the Court, witnesses at trial and opposing counsel. The record

and transcript of this proceeding is insufficient to convey the delay caused by Van Deelen, and his condescending, argumentative and contemptuous attitude towards witnesses, opposing counsel and the Court. It is apparent to the Court that while Van Deelen sought to prevail, his main objective herein was to harass and punish, by means of this litigation, those he felt had anything to do with his termination. Van Deelen's actions herein constituted an egregious abuse of process.

Accordingly, to deter future abuses of the judicial process, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

**\*21  IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2077640

---

Footnotes

1    The City's residency policy was codified in City Ordinance § 2-972. The prior version of the ordinance was referred to as 981023 throughout the trial. The amended version of the ordinance was referred to as 021200.

2    The Supreme Court noted that "the bad-faith exception [to the American Rule prohibiting fee-shifting] resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper is 'not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.' " *Chambers,* 501 U.S. at 46, fn 10. Later in this Order, the Court will discuss how the monetary sanctions imposed against Van Deelen could alternatively be imposed pursuant to Fed.R.Civ.P. 11.

3    United States District Court for the Eastern District of Arkansas, Judge Henry Woods presiding.

4    The Court further held that the "bad faith" requirement cannot be construed to extend "to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power." *Harlan,* 982 F.2d at 1260.

5    United States District Court for the Western District of Missouri, Judge Dean Whipple presiding.

6    The Court relies primarily upon its inherent authority, as recognized in *Chambers,* in enjoining Van Deelen from filing future pro se lawsuits against the City and its employees as a sanction for his abuse of the judicial system. *Tyler* was decided before *Chambers.* Therefore, the Eighth Circuit in deciding *Tyler* did not rely upon the inherent authority of the district courts as outlined in *Chambers.* However, in *Tyler* the Eighth Circuit recognized the authority of a district court "to control and manage matters pending before it" and the mandate of Fed.R.Civ.P. 1 in affirming the district court's order enjoining Tyler from filing future litigation.

000789

7   United States District Court for the District of Nebraska, C. Arlen Beam, Chief Judge, presiding.

8   United States District Court for the Eastern District of Missouri, Judge William H. Webster presiding.

9   Van Deelen has a history of filing pro se litigation. *Van Deelen, et al., v. Martin,* Case No. 2:97-CV-2358-GTV-GLR (D.Kan.) (dismissed without prejudice); *Van Deelen v. Arnold-Burger et* al ., Case No. 6:03-CV-1322-MLB-DWB (D.Kan.) (dismissed pursuant to Fed.R.Civ.P. 41(a)(1); *Van Deelen v. McAnany,* 6:03-CV-1408-MLB-KMH (D.Kan.) (dismissed pursuant to Fed.R.Civ.P. 12(b)(1); *Van Deelen v. Shawnee Mission Un., et al.,* Case No. 2:03-CV-2018-CM (D .Kan.) (dismissed pursuant to Fed.R.Civ.P. 12(b)(6)); *Van Deelen v. Fairchild, et al.,* Case No. 2:05-CV2017-KHV-DJW (D.Kan.) (dismissed pursuant to Fed.R.Civ.P. 12(b)(1)); *Van Deelen v. City of Kansas City, Missouri, et al.,* Case No. 2:05-CV-2028-KHV-JPO (D.Kan.); *Van Deelen v. Johnson,* et al., Case No. 2:05-CV-2052-CM-DJW (D.Kan.) (dismissed pursuant to Fed.R.Civ.P. 41(a)(1)); *Van Deelen v. Johnson, et al.,* Case No. 5:05-CV-4039-SAC (D.Kan.); *Van Deelen v. Fenner,* Case No. 4:06-CV-162-HFS (W.D.Mo.) (dismissed pursuant to Fed.R.Civ.P. 41(a)(1)); *Van Deelen v. City of Kansas City, Missouri, et al.,* Case No. 04-CV-206594 (Jackson Co., Missouri).

10   Van Deelen makes no argument about the imposition of sanctions pursuant to the Court's inherent authority which was clearly identified as a basis for sanctions in the Court's show cause order. *(See* Doc. # 134).

11   At trial, Van Deelen testified that he graduated from Stanford with a B.A. in economics and from Massachusetts Institute of Technology with a M.S. in management and that he had significant employment experience in the information technology field. (Trial Tr. 842:12-844:17).

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

000790

# EXHIBIT F

262 Fed.Appx. 723
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Eighth Circuit Rules 28A, 32.1A. (Find
CTA8 Rule 28A and Find CTA8 Rule 32.1A)
United States Court of Appeals,
Eighth Circuit.

Michael D. VAN DEELEN, Appellant,

v.

CITY OF KANSAS CITY, MISSOURI;
Wayne Cauthen; John Franklin; John
Thigpen; Gail Roper; Richard Razniak,
Beth Lacey; Rick Brisbin; Roy Greenway;
Patrick Reisenbichler; City of Kansas
City, Missouri Human Resources
Board; Joseph Moreland; Margaret
Evans; Lawrence Franklin; John Doe,
(1–10); Jane Doe, (1–10), Appellees.

Nos. 06–1896, 06–3058.
|
Submitted: Oct. 5, 2007.
|
Filed: Oct. 19, 2007.

**Synopsis**
**Background:** Former city employee filed § 1983 action
alleging that his termination violated his constitutional rights.
The United States District Court for the Western District of
Missouri, 411 F.Supp.2d 1105, entered summary judgment in
defendants' favor, and imposed sanctions, 2006 WL 2077640.
Employee appealed.

**Holding:** The Court of Appeals held that filing restrictions
imposed as sanction applied only to actions filed in federal
district courts within same circuit.

Affirmed in part, and affirmed as modified in part.

**\*723** Appeals from the United States District Court for the
Western District of Missouri.

**Attorneys and Law Firms**

Michael D. Van Deelen, Eudora, KS, pro se.

Lana Kay Torczon, Charlotte Ferns Reed, City Attorney's
Office, Kansas City, MO, for Appellees.

Before WOLLMAN, COLLOTON, and BENTON, Circuit
Judges.

[UNPUBLISHED]

PER CURIAM.

**\*\*1** In these consolidated appeals, Michael Van Deelen
appeals the district court's[1] adverse judgment in his action
brought under 42 U.S.C. § 1983 for alleged constitutional
violations with regard to the termination of his employment
with the City of Kansas City, Missouri, for violation of its
residency requirement. Following careful review, we affirm
the district court's grant of judgment for defendants on all
of Van Deelen's claims based on the court's well-reasoned
opinions. See 8th Cir. R. 47B.

Van Deelen also appeals the district court's order imposing
sanctions for his conduct during trial of the matter. We affirm,
but we modify the sanctions order. We find that the district
court did not abuse its discretion in imposing the monetary
sanction of $6,000. See Bass v. Gen. Motors Corp., 150
F.3d 842, 851 (8th Cir.1998) (standard of review of court's
sanctions under inherent authority); MHC Investment Co. v.
Racom Corp., 323 F.3d 620, 624 (8th Cir.2003) (standard of
review for sanctions under Fed.R.Civ.P. 11). After finding that
Van Deelen had filed the lawsuit maliciously to vex and annoy
the City, the court also enjoined Van Deelen **\*724** from filing
any future pro se litigation against the City, or its agents and
employees, and ordered him to obtain counsel within 30 days
in any pending litigation against the City or its agents and
employees arising out of his termination or any related matter,
or to dismiss the matter. While we agree with the district court
that some filing restrictions were appropriate, see Ruderer v.
United States, 462 F.2d 897, 899 (8th Cir.1972) (per curiam),
we modify the injunction to apply only to actions filed in
federal district courts within this circuit. See Sieverding v.
Colorado Bar Ass'n, 469 F.3d 1340, 1344–45 (10th Cir.2006)

(district court erred in placing filing restrictions on federal district courts outside Tenth Circuit, state courts, and courts of appeals).

**All Citations**

262 Fed.Appx. 723, 2007 WL 3101816

Footnotes

1       The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

000793

# EXHIBIT G

2006 WL 1764381

2006 WL 1764381
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.

Michael D. VAN DEELEN, Plaintiff,

v.

Marion JOHNSON, Steven Miles, Dale
Flory, Kenneth Fangohr, Ken McGovern,
and The Board of County Commissioners
of Douglas, Kansas, Defendants.

No. 05–4039–SAC.
|
June 27, 2006.

**Attorneys and Law Firms**

Michael D Van Deelen, Eudora, KS, pro se.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, LLP,
Overland Park, KS, for Defendants.

MEMORANDUM AND ORDER

SAM A. CROW, Senior Judge.

**\*1** This civil rights case comes before the court on cross
motions for summary judgment. Plaintiff, a pro se frequent
filer, alleges that his constitutional and other rights were
violated during and immediately following his tax appeal
hearing. Based upon this one incident, plaintiff advances
18 separate federal and state law theories against the
following: The Board of County Commissioners of Douglas
County; Marion Johnson, the Douglas County Appraiser;
Ken McGovern, the Douglas County Sheriff; Dale Flory
and Kenneth Fangohr, Douglas County Sheriff's Deputies;
and Steve Miles, a Douglas County Appraisal Manager.
Defendants' version of events is markedly different from
plaintiff's.

**Summary Judgment Standard**

An important function of summary judgment is to eliminate
factually unsupported claims. See Celotex Corp. v. Catrett,
477 U.S. 317, 322–24 (1986). Summary judgment is
appropriate if there are no genuine issues of material fact
and the movant is entitled to judgment as a matter of law.

Id. at 323. The court considers the 'factual record and
reasonable inferences therefrom in the light most favorable
to the party opposing summary judgment.' " Rohrbaugh v.
Celotex Corp., 53 F.3d 1181, 1182–83 (quoting Blue Circle
Cement, Inc. v. Bd. of County Comm'rs., 27 F.3d 1499, 1503
(10th Cir.1994)); see also Fed.R.Civ.P. 56(c). "Summary
judgment is appropriate if the non-moving party cannot
adduce probative evidence on an element of its claim upon
which it bears the burden of proof." Rohrbaugh, 53 F.3d at
1183. "A disputed fact is 'material' if it might affect the
outcome of the suit under the governing law, and the dispute is
'genuine' if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Allen v. Muskogee,
119 F.3d 837, 839 (10th Cir.1997).

Once the movant demonstrates no genuine issue of material
fact, the nonmovant is given "wide berth to prove a factual
controversy exists." Jeffries v. Kansas, Dep't of Soc. &
Rehab. Servs., 147 F.3d 1220, 1228 (10th Cir.1998) (quotation
omitted). Unsupported conclusory allegations, however, do
not create an issue of fact. Salehpoor v. Shahinpoor, 358 F.3d
782, 789 (10th Cir.2004). "In a response to a motion for
summary judgment, a party cannot rely on ignorance of facts,
on speculation, or on suspicion, and may not escape summary
judgment in the mere hope that something will turn up at
trial." Conaway v. Smith, 3 853 F.2d 789, 794 (10th Cir.1988).
Essentially, the inquiry is "whether the evidence presents a
sufficient disagreement to require submission to the jury or
whether it is so one-sided that one party must prevail as a
matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, at
251–52 (1986).

A pro se litigant's pleadings are construed liberally and judged
against a less stringent standard than pleadings drawn by
attorneys. Hall v. Bellmon, 935 F.2d 1106, 1110 (1991).
However, "it is not the proper function of the district court to
assume the role of advocate for the pro se litigant." Whitney v.
State of New Mexico, 113 F.3d 1170, 1173–74 (10th Cir.1997).
The court is not to "construct arguments or theories for the
plaintiff in the absence of any discussion of those issues."
Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th
Cir.1991).

**Facts**

**\*2** The following facts are undisputed for purposes of these
motions. Plaintiff's residence is in Eudora, Douglas County,
Kansas, has suffered from repeated flooding problems since
he purchased it in 1991. After 1993, when plaintiff's residence
was inundated by seven feet of water, plaintiff sued defendant

2006 WL 1764381

Douglas County and the City of Eudora in an attempt to gain a nuisance abatement for an undersized culvert near plaintiff's residence which was contributing to the flooding problems. Thereafter, the County and City replaced the culvert with a bridge, paid plaintiff a sum for his damages, and plaintiff dismissed the suit.

Plaintiff alleges that each year since 2000, Douglas County began to unfairly increase his property valuation. Plaintiff has appealed his property valuations every year since, and as part of the appeals process has had appeal hearings before either defendant Johnson or defendant Miles.

On July 24, 2002, Miles represented the Douglas County Appraiser's Office in a Small Claims hearing conducted by a hearing officer appointed by the State Board of Tax Appeals concerning plaintiff's appeal of his property valuation. During that meeting, Miles believed the meeting was getting out of control because plaintiff was making personal attacks against him that were accusatory and derogatory. Accordingly, the hearing officer terminated the meeting.

Following that meeting, plaintiff requested additional information from Miles and another meeting was arranged for July 30, 2002. Miles told Johnson of his concern about the upcoming meeting, given his perception of plaintiff's conduct at the prior meeting. Johnson contacted the Douglas County Sheriff's Department and requested that a deputy be available near the appraisal office. After the July 30th meeting between Miles and Van Deelen began, Johnson believed that the meeting was getting loud and informed Deputy Fangohr that he was going to interrupt the meeting. Plaintiff was asked to leave the meeting and did so.

Prior to March 30, 2005, plaintiff unsuccessfully appealed prior property valuations made by the Douglas County Appraiser's Office approximately eight times. Each time plaintiff appealed, he was permitted to provide testimony concerning his belief as to why the appraiser's valuation was wrong, and was able to testify at these hearings and state his opinion that Miles was not telling the truth.

On February 3, 2005, plaintiff sued defendants Douglas County, Miles and Johnson in the U.S. District Court for the District of Kansas, No. 05–2052–CM, alleging constitutional violations related to the alleged improper valuations of his property. Plaintiff's allegations included that the method used to calculate his 2003 property valuation was illegal and that

Miles had committed perjury in testifying before the Board of Tax Appeals about the condition of plaintiff's property.

On March 1, 2005, defendants reduced the valuation of plaintiff's property by approximately $5,000.00 and plaintiff dismissed his suit. Defendants contend the reduction was a result of additional information provided by plaintiff, but plaintiff contends it was a result of his lawsuit. (Dk. 63, D's p. 6 of 26).

**\*3** On March 30, 2005, plaintiff met with Miles in the Appraiser's Office located in the Old Douglas County Courthouse for another tax appeal hearing. Johnson had requested that a Douglas County Sheriff's Deputy sit in on the tax appeal hearing. Defendants contend this was to make certain that the meeting did not get out of control, but plaintiff asserts it was because he had recently sued defendants Johnson, Miles and Douglas County. Fangohr and Flory, Douglas County Sheriff's Deputies who were trained in the department's policies and procedures, were routinely assigned to provide security at the Old Douglas County Courthouse. Sheriff McGovern was unaware of any conduct by either Fangohr or Flory that would have made them unfit to perform their security role. Defendants know of no other instance in which sheriff's or police officers were present during informal or formal tax hearings in Douglas County.

Plaintiff alleges and defendants dispute that when plaintiff was escorted to Miles' cubicle for the hearing, Miles stated, "Today you get payback for suing us." Miles' small cubicle contains a desk and two chairs. Miles sat at the desk, plaintiff sat in one chair and defendant Flory, upon entering, sat in the other chair approximately a foot-and-a-half away. Plaintiff alleges and defendants deny that Flory then scooted his chair over next to plaintiff's chair, causing Flory's leg to bump plaintiff's leg and Flory's arm to bump plaintiff's arm. Plaintiff admits he did not ask Flory to move away, but contends he gave Flory a funny look and Flory scowled at him.

Plaintiff then asked Miles why the Deputy was in the meeting and Miles told plaintiff that it was because of plaintiff's past actions .[1] Miles did not shout at plaintiff, but plaintiff felt that Miles was "brow beating" him by staring and scowling during the hearing. Plaintiff was scared of Flory because he was armed and was afraid Flory was going to use his weapon or shoot him, but plaintiff did not get up and leave. After an exchange of words, Miles declared the meeting to be over. Plaintiff contends and defendants dispute that Flory

then stood up next to plaintiff, bumped him, and told him he had to leave.

When outside the room where the hearing occurred, plaintiff contends and defendants deny that Flory poked plaintiff's chest once with his finger and said:

> Don't come back. Johnson and Miles are mad because you sued them. They told me to do whatever necessary to put a scare into you. If you show up for another tax appeal hearing, I might have to shoot you.

Dk. 66. p. 4, para. 12. Plaintiff claims this act caused him physical injury, but admits he had no bruise and did not see a doctor or go to a hospital for the pain. Plaintiff claims to have suffered shame and humiliation as a result of these events, but admits he has sought no psychological or medical care. Plaintiff claims he is afraid to attend any more tax appeal hearings because he is concerned that someone is going to shoot him or initiate a physical confrontation with him, but admits he has entered the same courthouse after March 30, 3005 to renew his car tags.

## Petition

**\*4** The court first addresses plaintiff's claim that defendants violated his right to petition the government for redress of grievances, namely, his right to pursue future tax valuation appeals. Dk. 61, p. 9.[2] This is apparently based upon the alleged threat made by Deputy Flory, which plaintiff claims deterred him from returning to the courthouse for subsequent tax appeal hearings. Plaintiff admits he returned to the courthouse for other business, however.

The First Amendment's petition clause protects a citizen's right of access to governmental mechanisms for the redress of grievances, including the right of access to courts for that purpose. *Livingstone v. North Belle Vernon Borough,* 91 F.3d 515, 45 Fed.R.Evid. Serv. (LCP) 349 (3d Cir.1996), *cert. denied,* 117 S.Ct. 131 (U.S.1997). This right includes the right to petition an administrative agency to take official action in the exercise of its powers. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers,* 542 F.2d 1076, 1082 (9th Cir.1976).

> The first amendment guarantees every citizen's right "to petition the Government for a redress of grievances." U.S. Const. amend I. The Supreme Court has stated that this right is "cut from the same cloth as the other guarantees of [the first amendment], and is an assurance of a particular freedom of expression." *McDonald v. Smith,* 472 U.S. 479,

482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985). As an assurance of a particular freedom of expression, the right to petition the government is similar to the right to free speech. Accordingly, courts "analyze an alleged violation of the petition clause in the same manner as any other alleged violation of the right to engage in free speech." *Phares v. Gustafsson,* 856 F.2d 1003, 1009 (7th Cir.1988); *see Belk v. Town of Minocqua,* 858 F.2d 1258, 1262 & n. 5 (7th Cir.1988); *Day v. South Park Indep. School Dist.,* 768 F.2d 696, 701 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). Therefore, in deciding whether a public employer has wrongfully deprived an employee of his right to petition the government, our inquiry must begin with whether the petition touched upon a matter of public concern by looking at the content, form, and context of the petition. *See Belk,* 858 F.2d at 1262; *Phares,* 856 F.2d at 1009.

*Gray v. Lacke,* 885 F.2d 399, 412 (7th Cir.1989).

In the Tenth Circuit, for a public employee to have a viable section 1983 claim under the petition clause, the petition for redress must involve a matter of public concern. *Martin v. City of Del City,* 179 F.3d 882, 889 (10th Cir.1999).

There is no question that access to the courts is a constitutionally protected right. Yet, under the law of this circuit, simply claiming a denial of access to the courts is not, in and of itself, a constitutionally protected activity. Rather, the Petition Clause requires that one's petition must comment upon matters of public concern. *Martin v. City of Del City,* 179 F.3d 882, 887 (10th Cir.1999); *see generally Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

**\*5** *Van Deelen v. Shawnee Mission Unified School Dist. # 512,* 316 F.Supp.2d 1052, 1058 (D.Kan.2004). *See Schalk v. Gallemore,* 906 F.2d 491, 494, 497–98 (10th Cir.1990); *Pricer v. New Mexico,* 10 Fed. Appx. 733, 2001 WL 505246, (10th Cir. May 14, 2001).

The same rule has been applied to petitions by plaintiffs who are not public employees.

> ... even outside the public employment context, the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern. Moreover, the filing of a lawsuit to vindicate private rights is not a matter of public concern.

*Van Deelen,* 316 F.Supp.2d at 1059. *See McCook v. Spriner School District,* 44 Fed. Appx. 896, 904 (10th Cir.2002) (unpublished) (noting some activities of nonpublic employee

plaintiffs, "were not protected by the First Amendment, for example, filing a lawsuit to vindicate private rights (not a matter of public concern)"), citing *Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 720–21 (6th Cir.1989), *vacated on other grounds,* 497 U.S. 1001 (1990); *Howse v. Atkinson,* 2005 WL 1076527, *6 (D.Kan.2005) (holding that although plaintiff was not a public employee, the analysis is the same, thus plaintiff must satisfy the public concern requirement); *Delkhah v. Moore,* 2006 WL 1320255 (D.Kan. May 15, 2006) (same).

The court thus examines whether the tax appeals which plaintiff was allegedly deterred from filing are matters of public or private concern.

> "Generally, speech involves a matter of public concern when it is 'of interest to the community, whether for social, political, or other reasons,' rather than a matter of a mere personal interest to the speaker." *Id.* at 1089 (citing *Horstkoetter,* 159 F.3d at 1271). "In analyzing whether speech constitutes a matter of public concern, [the court] may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Lighton v. Univ. of Utah,* 209 F.3d 1213, 1224 (10th Cir.2000).
>
> *Howse,* 2005 WL 1076527, *7 (D.Kan.2005).

Here, assuming that Deputy Flory made the threat as alleged, no matter of public concern is implicated. Any tax appeal which plaintiff has not filed but would have filed absent the alleged threat could challenge solely the amount of tax to be assessed on his private property and would seek redress for his private grievances rather than touch upon a matter of public concern. Tax appeal hearings are limited forums for the determination of the valuation of residential property,[3] and are not the proper forum for larger grievances which disclose corruption, impropriety, or other malfeasance on the part of Douglas County government officials in their methods of assessment or otherwise. In other words, plaintiff's tax appeal would not cause a cause or claim that there is a bigger pattern of official misconduct. Rather, the substance of those claims would be aimed solely at advancing plaintiff's financial interest and achieving only redress for plaintiff's private grievances. Because plaintiff fails to show a genuine issue of material fact regarding the public concern element, summary judgment is warranted on his Petition Clause claim. *See Van Deelen,* 316 F.Supp.2d 1052, 1059–60 (finding plaintiff's lawsuits alleging due process violations, assault,

criminal and terroristic threats, invasion of privacy, extreme and outrageous conduct by school personnel, and a civil rights claim under § 1983, "merely seek redress for plaintiff's private rights.")

**Free speech**

 **\*6** Plaintiff fails to specify the nature of his free speech claim, alleging only that defendants unlawfully violated plaintiff's right of freedom of speech. Dk. 61, p. 7. Plaintiff's failure to allege which speech is in question and to show that such speech is protected speech warrants summary judgment. Nonetheless, in an abundance of caution, the court considers both the speech during the March 30th hearing, and the speech from which plaintiff was allegedly deterred by Deputy Flory's threat.

A review of the record fails to support plaintiff's claim that his speech was unconstitutionally restricted during the March 30th hearing. Plaintiff spoke at some length about his property, its flooding in the past, the likelihood of its flooding in the future, a study regarding flooding, and his opinion of the value of his property. Such matters constitute the majority of the speech during the hearing in question.

The remainder of plaintiff's speech during the March 30th hearing consisted of fighting words, not protected by the First Amendment, evidencing that plaintiff apparently did not feel constrained from expressing his opinions at the time. "It is clear that 'fighting words'—those that provoke immediate violence—are not protected by the First Amendment." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 927 (1982); *Cannon v. City and County of Denver,* 998 F.2d 867, 872 (10th Cir.1993). The Tenth Circuit defines "fighting words" as "epithets (1) directed at the person of the hearer, (2) inherently likely to cause a violent reaction, and (3) playing no role in the expression of ideas." *Cannon,* 998 F.2d at 873. *Burns v. Board of County Com'rs of Jackson County,* 330 F.3d 1275 (10th Cir.2003). Under the circumstances present in this case, plaintiff's calling a uniformed law enforcement officer executing his duties a "Nazi" is an epithet directed at the officer which played no role in the expression of ideas, and was likely to cause a violent reaction. These and the other insults flung by plaintiff constitute fighting words unworthy of the protection of the First Amendment.

To the extent plaintiff may claim that Deputy Flory's threat chilled his right to engage in future speech, the only future speech purportedly chilled is that which would have been included in plaintiff's subsequent tax appeal pleadings or

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 4

hearings. As noted above, such an appeal would necessarily have challenged only the amount of tax assessed on plaintiff's private residence.

This claim is, under the facts of this case, analytically indistinct from plaintiff's right to petition, and fails for the reason that such speech is not of general interest to the public. *See* Burns, 330 F.3d at 1286 (in determining whether the speech touches on a matter of public concern, it is not sufficient that the topic of the speech be of general interest to the public; in addition, what is actually said must meet the public concern threshold).

**Free assembly/association**

 **\*7** Plaintiff next contends that defendants violated his right of assembly by denying him access to the Douglas County courthouse for the purposes of pursuing tax appeals and other purposes, and violated his right of association by denying him access to employees of the Douglas County courthouse. Dk. 61, p. 7.

The First Amendment prohibits government decision makers from "abridging the freedom of speech, ... or the right of the people peaceably to assemble." U.S. Const. amend. I. *See* Citizens Against Rent Control v. City of Berkeley, 454 U.S. 290, 295 (1981) (emphasizing "the importance of freedom of association in guaranteeing the right of people to make their voices heard on public issues"). The Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities. Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987). The right of expressive association stems from the First Amendment, guarding those activities protected by that amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion. Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984).

These claims, which merely restate plaintiff's complaint about being deterred from filing another tax appeal in person, are subject to the same analysis as are plaintiff's claims brought pursuant to the petition clause and free speech clauses. McCormick v. City of Lawrence, Kansas, 253 F.Supp.2d 1156, 1168 (D.Kan.2003) (finding "no separate test exists for "pure association" claims," citing Quinn v. Village of Elk Grove Bd. of Fire and Police Com'rs, 2002 WL 31875464, at \*4 (N.D.Ill.2002); *See e.g., Grace United Methodist Church v. City of Cheyenne,* —— F.3d ——, (10th Cir. June 20, 2006) (analyzing association claim with free speech claim. "The right of access to the courts is but one aspect of

the right of petition." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741(1983). Because plaintiff fails to raise a material question of fact that his right to assemble or to associate for the purpose of engaging in protected speech was violated, summary judgment on this claim is warranted.

**Equal Protection**

Plaintiff's equal protection challenge is based upon the fact that Deputy Flory was present during his March 30, 2005, tax appeal hearing but no law enforcement officer was present during tax appeal hearings of other Douglas County taxpayers.

The equal protection clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir.1998). The equal protection clause's prohibition of differential treatment applies only where individuals are similarly situated. *See* Eisenstadt v. Baird, 405 U.S. 438, 446–47 (1971).

 **\*8** Plaintiff's allegations do not implicate either a suspect class or a fundamental right. Therefore, defendants' treatment of plaintiff need only be rationally related to a legitimate government purpose to pass muster under the equal protection clause. *Grace United Methodist Church,* —— F.3d ——, (10th Cir. June 20, 2006); *citing* Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1213 (10th Cir.2002).

"The Equal Protection Clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges 'an element of intentional or purposeful discrimination' so as to invoke the clause to protect an individual victim." Smith v. E. N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at \*7 (10th Cir.1995) (quoting Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d at 859).

Plaintiff's allegations may or may not fall under the rubric of a "class-of-one"[4] equal protection claim, explicitly recognized in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) and subsequent Tenth Circuit cases. *See, e.g.,* Grubbs v. Bailes, 445 F.3d 1275 (10th Cir.2006); Jennings v. City of

*Stillwater,* 383 F.3d 1199, 1210, 1215 (10th Cir.2004). "As with any equal protection claim, [the plaintiff in a "class of one" case] must also demonstrate that he was treated differently than another who is similarly situated." (quotation omitted)). *Bartell v. Aurora Pub. Sch.,* 263 F.3d 1143, 1149 (10th Cir.2001). This burden is heavy.

... for selective and reverse-selective enforcement claims, the plaintiff must "provide compelling evidence of other similarly situated persons who were in fact treated differently," because "the multiplicity of relevant (nondiscriminatory) variables" involved in law enforcement decisions "are not readily susceptible to the kind of analysis the courts are competent to undertake" in assessing equal protection claims. *Jennings,* 383 F.3d at 1214–15 (quotation omitted).

*Grubbs,* 445 F.3d at 1282. "Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Jennings v. City of Stillwater,* 383 F.3d 1199, 1214 (10th Cir.2004). "The requirement that a plaintiff show that similarly situated persons were treated differently "is especially important in class-of-one cases." *Jennings,* 383 F.3d at 1213." *Jicarilla Apache Nation,* 440 F.3d at 1212. Courts deciding summary judgment motions in such cases "have insisted that plaintiffs demonstrate similarity in all material respects." *Id.*

... the degree of similarity an equal protection plaintiff needs to show will vary inversely with the size of the relevant class. If a plaintiff belongs to a large class, a systematic difference in treatment probably is not caused by individualized differences or statistical aberrations. But when the class consists of one person or entity, it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable. Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.

**\*9** *Id.,* 440 F.3d at 1213.

Here, because of defendants' prior dealings with plaintiff in tax appeal hearings, defendants had reason to believe prior to the March 30th hearing that plaintiff might make personal attacks and become rude, insulting or disruptive during the March 30th tax appeal hearing. Prior to that date, plaintiff had appealed approximately eight times from other property valuations made by the Douglas County Appraiser's Office. The record reveals specific examples of the parties'

history. During their July 24, 2002 meeting, Miles believed the meeting was getting out of control because plaintiff was making personal attacks against him that were accusatory and derogatory, and the meeting was therefore terminated. During their July 30th, 2002 meeting, a nearby law enforcement officer believed that the meeting was getting loud, interrupted the meeting, and asked plaintiff to leave, thus terminating the meeting.

Plaintiff thus had a track record with the Douglas County Appraiser's Office on which defendants based their perception of plaintiff in such proceedings. Defendants' belief[5] that plaintiff was inclined to engage in ad hominem attacks and to become disruptive establishes a relevant difference between plaintiff and other taxpayers that reasonably might account for defendants' different treatment of plaintiff on March 30th.

Defendants' judgment that the presence of a law enforcement officer might assist in deterring plaintiff from such attacks or in keeping the peace during plaintiff's tax appeal hearing was rationally based upon their perception of plaintiff's behavior. The court's review of the transcript of the recorded March 30th tax hearing produces a firm conviction that defendants' perception of plaintiff's potential demeanor was, in fact, well founded. *See* Dk. 63, Miles affidavit, Exh. B (showing that during the hearing, plaintiff interrupted the hearing officer, redirected the conversation, asked the hearing officer questions, and stated, among other abrasive words: "I'm going to file a federal civil rights lawsuit against you for attempted intimidation for having a Nazi ah, Douglas County Sheriff's Department officer here ..."; "You guys are dumber than a box of rocks"; "Kiss my ass and I'll see you in court.")

In short, plaintiff fails to identify any taxpayer known by defendants to have previously engaged in problematic conduct of comparable seriousness, and was thus situated similarly to plaintiff, who received different treatment. Additionally, defendants had an objectively reasonable basis for their treatment of plaintiff, rationally related to a legitimate government interest of maintaining order and security at the courthouse. Accordingly, plaintiff fails to show that defendants' acts were irrational and wholly arbitrary, and fails to raise a material question of fact regarding his equal protection claim.[6]

**Invasion of privacy**

Plaintiff next contends that defendants invaded his privacy in violation of § 1983 "by requiring him to disclose confidential

tax information in the presence of Defendant Flory during the March 30, 2005 tax appeal hearing." Dk. 61, p. 9.

**\*10** The court recognizes that an informational privacy right does exist in certain circumstances. Informational privacy "protects the individual from governmental inquiry into matters in which it does not have a legitimate and proper interest." *Aid for Women v. Foulston,* 441 F.3d 1101, 1116 (10th Cir.2006).

> There exists a constitutional right to privacy in certain forms of personal information possessed by the state if "an individual has a legitimate expectation that it will remain confidential while in the state's possession." (Citations omitted).

*Gallo Loecks ex rel. T.L. v. Reynolds,* 34 Fed. Appx. 644, 648, 2002 WL 539111, \*4 (10th Cir.2002).

No reasonable expectation of privacy exists, however, in matters included in a public record or stated in an open hearing.

> It is well established under the law dealing with actions for invasion of privacy that no reasonable expectation of privacy attaches to those matters that are a matter of public record. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 [95 S.Ct. 1029, 43 L.Ed.2d 328] (1975) ... It is equally well established that what transpires in open court is a matter of public record. *Nixon v. Warner Communications,* 435 U.S. 589, 597 [98 S.Ct. 1306, 1311, 55 L.Ed.2d 570] (1978). *Rodgers v. Hyatt,* 697 F.2d 899, 902 (10th Cir.1983). Additionally, a person who causes the matter in question to become public knowledge cannot bring a cause of action for damages flowing from that disclosure. *Id,* at 903.

Plaintiff has failed to specify what confidential tax information he believes he was compelled to disclosed during the hearing. This alone merits summary judgment against him on this claim. But in an abundance of caution, the court has reviewed the transcript of the hearing and finds therein no tax information in which a legitimate expectation of confidentiality existed[7] which plaintiff publically disclosed, whether under compulsion or not. Summary judgment on this claim is thus appropriate.

### Due process claims
Plaintiff also brings substantive and procedural due process claims. Where a litigant challenges governmental action under the Due Process Clause and under another, more

specific constitutional provision, the claim is properly analyzed under the more specific provision. *United States v. Hernandez,* 333 F.3d 1168, 1174 (10th Cir.2003) (analyzing a claim under the more specific Sixth Amendment right to counsel, rather than the more generalized notion of Fifth Amendment due process). *See, e.g., Bateman v. City of West Bountiful,* 89 F.3d 704, 709 (10th Cir.1996) (analyzing a claim under the Takings Clause rather than the Due Process or Equal Protection Clauses); *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (analyzing a claim of excessive force by the police under the Fourth Amendment rather than under "the more generalized notion of 'substantive due process' "). This is precisely what plaintiff has done in this case by bringing claims under the due process clause as well as under the petition clause, the free speech clause, and the equal protection clause. Accordingly, the court declines to address plaintiff's due process claims because it has analyzed his claims under the more specific petition and free speech clauses, among others.

**\*11** Alternatively, plaintiff cannot prevail on such claims in the event the court would chose to reach them. Summary judgment is warranted on plaintiff's substantive due process claim because the facts alleged by plaintiff do not tend to demonstrate a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking...." *Valdez v. New Mexico,* 109 Fed. Appx. 257, 261, 2004 WL 1949130, \*3 (10th Cir.2004) (citation omitted). Similarly, summary judgment is warranted on plaintiff's procedural due process claim because plaintiff fails to raise a material question of fact that defendant's wrongful acts deprived him of any protected liberty or property interest and for the independent reason that defendant shows the court plaintiff has received all the process he was due.

### Conspiracy
Plaintiff next contends that defendants Miles, Johnson, Fangohr and Flory conspired to: 1) assault and batter him; and 2) deny him due process, equal protection, freedom of speech, freedom of association and freedom of assembly.

The fundamental elements of a § 1983 conspiracy claim are an agreement between the parties and concerted action in furtherance of that agreement. *See Reed v. Dunham,* 893 F.2d 285, 287 (10th Cir .1990). To state a valid claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir.1998). "Mere conclusory allegations with no supporting factual

averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983).

Plaintiff's allegation of a conspiracy amongst Douglas County government officials to assault and batter him is not actionable under § 1983. Assault and battery is a state law claim. "Section 1983 does not ... provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980)." *Jones v. City and County of Denver, Colo.,* 854 F.2d 1206, 1209 (10th Cir.1988).

Plaintiff's claim of a conspiracy to deprive him of due process, equal protection, freedom of speech, freedom of association or freedom of assembly does allege violations of federal law done under color of state law. But beyond that, the court must speculate as to the nature of defendant's claim. Because plaintiff has failed to allege specific facts showing an agreement and concerted action amongst the defendants, summary judgment is warranted on this claim.

Alternatively, the agreements reflected in the record provide an insufficient basis for trial. Although plaintiff fails to specify the nature of the agreement at issue, the court's review of the record reveals two that may be alleged. The first agreement reflected in the record is that certain defendants agreed to have a law enforcement officer sit in, and did have a law enforcement officer sit in, on plaintiff's March 30th tax appeal hearing because of their perception of plaintiff's past behavior. Neither that act, nor that agreement violated any of plaintiff's constitutional rights.

 **\*12** The only other evidence of agreement in the present case is plaintiff's affidavit that Deputy Flory said that Johnson and Miles said to do whatever was necessary to scare plaintiff. Specifically, plaintiff alleges Deputy Flory said:

> Don't come back. Johnson and Miles are mad because you sued them. They told me to do whatever necessary to put a scare into you. If you show up for another tax appeal hearing, I might have to shoot you.

Dk. 66. p. 4, para. 12.

This allegation fails to carry plaintiff's burden of alleging the facts necessary to support his claim of conspiracy as it is inadmissible hearsay,[8] is conclusory and is thus doubly

deficient. Plaintiff has failed to raise a material question of fact of an agreement and concerted action by defendants Miles, Johnson, Fangohr and Flory to deprive him of his civil rights or any of them.

## Retaliation

Plaintiff claims that defendants retaliated against him for his exercise of free assembly, association, speech, due process, equal protection and equal access to the courts.

"It has long been clearly established that the First Amendment bars retaliation for protected speech and association. *See Crawford–El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)." *Mimics, Inc. v. Village of Angel Fire,* 394 F.3d 836, 848 (10th Cir.2005). The Tenth Circuit has recently clarified the legal standard to be applied when, as here, allegations of retaliatory conduct are directed at a defendant who is not the plaintiff's employer and with whom defendant has no contractual relationship. In such cases, a plaintiff is required to prove the following elements:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Id.*

*Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000).[9] The first of these elements is addressed below.

## Constitutionally protected activity

The court's analysis above concludes that a reasonable factfinder could not find for the plaintiff on the first element —that he was engaged in constitutionally protected activity— as to the issues addressed above. Nonetheless, plaintiff may additionally contend[10] that his protected conduct is having previously filed a lawsuit against defendants Johnson, Miles and Douglas County in case No. 05–2052–CM.

The court thus examines whether plaintiff's 2005 lawsuit against those defendants was protected conduct.

> "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

In determining whether the speech touches on a matter of public concern, we look to whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684. It is not sufficient that the topic of the speech be of general interest to the public; "in addition, what is actually said must meet the public concern threshold." *Schalk,* 906 F.2d at 495. Moreover, under our precedent, the speech must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government." *Lee v. Nicholl,* 197 F.3d 1291, 1295 (10th Cir.1999) (quotation omitted).

*Burns,* 330 F.3d at 1286.

**\*13** Plaintiff's 2005 lawsuit included a claim that Douglas County government officials used an illegal method of property valuation,[11] and that defendant Miles committed perjury in his testimony during plaintiff's tax appeal hearings. But the specific language used in plaintiff's complaint challenges solely the method used to value his personal property and statements made by Miles during plaintiff's tax appeal hearings. The challenged valuation method is not alleged to have been used in conducting anyone else's property assessment. An improper method of assessing plaintiff's property, and his alone, could not, in this court's judgment, "be fairly considered as relating to any matter of political, social, or other concern to the community" or "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government." *Lee,* 197 F.3d at 1295. Similarly, the allegedly perjurious statements made by defendant Miles during plaintiff's tax appeal hearings are that plaintiff's property contains a shed, a lower-level garage, and a functional fireplace, etc., matters of private and not public concern.

Because plaintiff's 2005 lawsuit merely sought to redress personal grievances and did not comment upon matters of public concern, his filing of that lawsuit was not protected conduct. *See Van Deelen,* 316 F.Supp.2d at 1059; *McCook v. Spriner School District,* 44 Fed. Appx. 896, 904 (10th Cir.2002) (unpublished) (noting some activities of non-public employee plaintiffs, "were not protected by the First Amendment, for example, filing a lawsuit to vindicate private rights (not a matter of public concern)"), *citing Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 720–21 (6th Cir.1989), *vacated on other grounds,* 497 U.S. 1001 (1990); *Howse v. Atkinson,* 2005 WL 1076527, \*6 (D.Kan.2005) (holding that although plaintiff was not a public employee, the

analysis is the same, thus plaintiff must satisfy the public concern requirement); *Delkhah v. Moore,* 2006 WL 1320255 (D.Kan. May 15, 2006) (same). The court therefore finds it unnecessary to address the remaining two elements of this claim.

**Policy**

Plaintiff additionally contends that the Douglas County Commissioners have established a policy in which defendants "harass, intimidate, shadow, assault, batter and threaten the plaintiff in order to frustrate and chill plaintiff in the pursuit of his civil rights ..." Dk. 61, p. 8.

Where a court determines that the individual defendants committed no constitutional violation, municipal liability may not be imposed. *Butler v. City of Prairie Vill.,* 172 F.3d 736, 747 (10th Cir.1999). Thus summary judgment is warranted on this claim. But even assuming that the court errs in finding no violation of plaintiff's constitutional rights by the individual defendants, this claim fails for the reasons set forth below.

In order to state a claim against the county, the plaintiff must show that the allegedly unconstitutional actions resulted from a policy or custom adopted or maintained with deliberate indifference to his constitutional rights. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690, 690 n. 55 (1978). Under this standard, plaintiff must identify a "policy" or "custom" that caused his injury. *Board of County Com'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997).

**\*14** He must also show that the policy or custom was the "moving force" behind the injury alleged and he must demonstrate "the requisite degree of culpability and ... a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, 1318 (10th Cir.1998) *Martinez v. Montrose Sherif's Dept.,* 12 Fed. Appx. 837, 838, 2001 WL 640397, \*1 (10th Cir.2001).

Plaintiff has not identified a policy adopted by a duly constituted legislative body of Douglas County. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986). Nor has plaintiff identified a custom that "is so widespread as to have the force of law" in connection with the claims alleged in the pretrial order. *Brown,* 520 U.S. at 404. Instead, plaintiff appears to believe that because events of March

30th occurred, they must have been pursuant to a custom or policy. But a plaintiff cannot prove that a county adheres to a particular custom or policy based solely on his perceptions extrapolated from a single, isolated incident. *Jarrett v. Schubert,* 1998 WL 471992, *8 (D.Kan.1998).

On the record before this court, even assuming that Deputy Flory's acts constituted a violation of plaintiff's constitutional rights, there is nothing to indicate that any "policy or custom" of Douglas County deprived plaintiff of any constitutional right. Plaintiff's affidavit contends that Deputy Flory said that Johnson and Miles told him to do whatever necessary to scare plaintiff. This alleged agreement is not actionable because neither Johnson nor Miles could be considered a final policymaker for the establishment of county law enforcement policy. No evidence shows any actions by the County Commissioners, and *Monell* expressly precludes suits premised on the theory of *respondeat superior. See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691(1978). Accordingly, summary judgment is warranted on plaintiff's claim under 42 U.S.C. § 1983 against the Douglas County Commissioners.[12]

**Qualified immunity**

The court need not determine whether the law was clearly established with respect to each of the claims against the defendants sued in their individual capacities, because the lack of a constitutional violation makes it unnecessary to further address qualified immunity. *Jicarilla Apache Nation,* 440 F.3d at 1214. *See Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir.2003) (absent constitutional violation,

plaintiff cannot overcome qualified immunity defense). At the very least, the law was not clearly established that plaintiff's conduct was constitutionally protected on those claims which include a public concern element, thus entitling the individual defendants to qualified immunity on claims including plaintiff's petition, free speech, association, assembly, conspiracy and retaliation claims.

**State Law Claims**

 **\*15** The preceding analysis disposes of plaintiff's claims arising under federal law, extinguishing the bases for federal subject matter jurisdiction. Accordingly, this court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26 (1966). The court therefore dismisses without prejudice plaintiff's state law claims.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dk.65) is denied, that defendant's motion for summary judgment (Dk.62) is granted on plaintiff's federal claims, and that plaintiff's state law claims are dismissed without prejudice.

IT IS FURTHER ORDERED that defendant's motion to amend exhibit list for trial (Dk.70) is denied as moot.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1764381

Footnotes

1   Few allegations are made about statements made during the hearing, which are preserved on audio and have been transcribed. Dk. 63, Exh. B.

2   Plaintiff does not claim to have been deterred from filing any claims in the Douglas County courthouse other than tax appeals, and has not been deterred from filing claims in other forums based upon matters other than tax appeals, as the current lawsuit evidences.

3   *See* KSA § 79–1606(d), 1609, 1611.

4   In the typical class-of-one case, "a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1209 (10th Cir.2006).

5   *Cf, Brown v. Evans,* 85 Fed. Appx. 135, *142, 2004 WL 27735, *7 (10th Cir.2004)* (finding where a plaintiff in a discrimination case seeks to meet his burden of showing that he and other employees were similarly situated, it is not the plaintiff's perception of the facts, but the employer's which controls.)

6   This same analysis controls and the same result is reached to the extent plaintiff may claim that he was denied equal protection by the alleged unfair valuation of his property. *See Jicarilla Apache Nation,* 440 F.3d at 1210 (finding summary judgment appropriate on class of one equal protection claim if it finds either a rational basis for the treatment or a material

2006 WL 1764381

difference between the properties). Plaintiff has made no attempt in this record to show his property was similarly situated to that of other taxpayers whose property was treated differently.

7     The court notes that plaintiff's tax records maintained by the Douglas County appraiser which were discussed during plaintiff's tax appeal are available to the public on-line. *See* http://www.douglas-county.com.

8     This out of court statement is double hearsay, inadmissible unless each part of the combined statements conforms with an exception to the hearsay rule. Fed.R.Evid. 805.

9     These elements are analogous to those required in Title VII retaliation cases based upon circumstantial evidence, but the Tenth Circuit has not directed that another standard be used where direct evidence supports a claim that the state actors retaliated against a citizen for his exercise of constitutional rights. It would appear that direct evidence of retaliation would meet the third element but would not obviate the necessity of meeting the first two elements.

10     The language of the pretrial order regarding this claim is vague and ambiguous. *See* Dk. 61, p. 6,7, para. 1.

11     Specifically, it stated, "The defendants used an illegal, unconstitutional method to calculate the 2003 valuation for plaintiff's property. The method used by the defendants was last year's value adjusted for time. *See* Exhibit A." *Van Deelen v.. Johnson, et al,* No. 05–2052–CM, Dk. 1, p. 3, para. 10.

12     Claims against individual defendants in their official capacities are redundant and subject to summary judgment because plaintiff has also sued the County itself.

---

**End of Document** <span style="float:right">© 2021 Thomson Reuters. No claim to original U.S. Government Works.</span>

000805

# EXHIBIT H

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 306 of 453

Van Deelen v. Truth or Consequences Board of Education, Not Reported in Fed. Supp....

000806

2008 WL 11451397
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Michael D. VAN DEELEN, Plaintiff,

v.

TRUTH OR CONSEQUENCES BOARD OF EDUCATION, Jim Nesbitt, Brenda Doil Frank Albetta, Joseph Diliberto, Matthew Holt, Kyle Carey, Cheyenne Grijalva, Ellen Waltz, Louis Schwab, Cathy Vickers, Paul Tooley, Lydia Bamonte, Bruce Berlin, Robert Gross, and 10 John/Jane Does, Defendants.

No. CV-08-00290 JH/LAM
|
Filed 07/09/2008

**Attorneys and Law Firms**

Michael D. Van Deelen, pro se.

Briggs F. Cheney, Sheehan Sheehan & Stelzner, Kevin M. Brown, Albuquerque, NM, Gianna M. Mendoza, James P. Sullivan, Brennan & Sullivan, P.A., Santa Fe, NM, for Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR DEFAULT JUDGMENT, SETTING ASIDE CLERK'S ENTRIES OF DEFAULT, AND DISMISSING COMPLAINT AGAINST CAREY, GRIJALVA AND Waltz**

JUDITH C. HERRERA, UNITED STATES DISTRICT JUDGE

*\*1* **THIS MATTER** comes before the Court on Plaintiff Michael D. Van Deelen's Motion for Entry of Default Against Defendant Carey, filed April 10, 2008 [Doc. 6]; on his Motion for Entry of Default against Defendant Grijalva, filed April 10, 2008 [Doc. 10]; on his Motion for Entry of Default against Defendant Waltz, filed April 18, 2008 [Doc. 15]; on Cheyenne Grijalva's Motion to Set Aside Clerk's Entry of Default, filed May 1, 2008 [Doc. 22]; on Ellen Waltz's

Motion to Overturn Entry of Default, filed May 7, 2008 [Doc. 27] and her Modified Motion to Overturn Entry of Default, filed May 23, 2008 [Doc. 31]; on Van Deelen's Motion to Strike Waltz's Modified Motion to Set Aside Default, filed May 27, 2008 [Doc. 32]; and under the Court's inherent power to dismiss *sua sponte* frivolous or malicious lawsuits under Fed. R. Civ. P. 12(b)(6), *see Mallard v. United States Dist. Court*, 490 U.S. 296, 307-08 (1989) (stating that "[28 U.S.C.] Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"); *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss *sua sponte* when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.") (internal quotation marks omitted). The Court will deny Van Deelen's motions, will grant Grijalva's and Waltz's motions, will set aside the Clerk's entries of default, and will dismiss Van Deelen's complaint against Carey, Grijalva, and Waltz because it is patently obvious that he cannot prevail on the facts alleged against them and allowing Van Deelen an opportunity to amend his complaint would be futile.

**APPLICABLE STANDARDS**

"[D]efault judgments are not favored by courts." *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988). Under Fed. R. Civ. P. 55(b)(1), if a plaintiff's claim is for a "sum certain" and the plaintiff otherwise complies with the rule, the Clerk of the Court must enter a judgment in favor of the plaintiff and against a "defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Under Fed. R. Civ. P. 55(b)(2),

[i]n all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

Case 4:21-cv-03369 Document 10-1 Filed on 11/19/21 in TXSD Page 307 of 453

Van Deelen v. Truth or Consequences Board of Education, Not Reported in Fed. Supp....

000807

**\*2** (A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." "[I]t is well established that the good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garbeer & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n. 6 (10th Cir. 1997) (holding that a court should determine whether it has jurisdiction before entering default judgment). "A trial court is vested with broad discretion in deciding a default judgment question." *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987) (affirming the denial of a motion for default judgment because the plaintiff was not prejudiced by the defendant's delay in answering the complaint, the delay was not due to bad faith, and the case was one with fact issues that should be tried on the merits).

Van Deelen seeks to recover $1.00 each from Defendants Kyle Carey, Cheyenne Grijalva, and Ellen Waltz, who are all private citizens, on his claims for conspiracy and denial of due-process rights, which he brings under 42 U.S.C. § 1983. *See* Complaint at ¶¶ 4, 59, 61, 68, 70. While a complaint does not require "detailed factual allegations," a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks and bracket omitted). A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.* at 1974. In resolving whether dismissal is appropriate for failure to state a claim, the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal quotation marks omitted).

"[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atl. Corp.*

*v. Twombly*, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S.Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin." *Id.*

**\*3** *Robbins*, 519 F.3d at 1248. Complaints in § 1983 actions

must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.

....

[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Id.* at 1249 (internal quotation marks and citations omitted).

Van Deelen v. Truth or Consequences Board of Education, Not Reported in Fed. Supp....

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 308 of 453

000808

While a pro se litigant's pleadings and filings are usually given a liberal interpretation and the pro se litigant is sometimes accorded an opportunity to amend his complaint to correct factual deficiencies, *see Hall*, 935 F.2d at 1110, as Chief Judge Martha Vazquez has recently noted, "Van Deelen is not the 'run-of-the-mill' pro se litigant." *Van Deelen v. Alamorgordo Pub. Schs.*, No. 07cv171 MV/LCS, March 14, 2008 Order at 3-7 (Doc. 81) (detailing the numerous pro se complaints that Van Deelen has filed and litigated under § 1983 against school districts, governmental agencies, and individuals over the past 15 years and demonstrating that Van Deelen has received clear instructions from various courts regarding how to state a cognizable claim under § 1983 and that he has a thorough knowledge of the federal rules of civil procedure). Nevertheless, "[t]he broad reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

[T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Id.* (citations omitted).

## RELEVANT FACTS

Van Deelen taught briefly at the Middle School in Truth or Consequences, New Mexico ("TorC") in the fall of 2007; he was terminated in November 2007. *See* Complaint (Doc. 1) at ¶ 14. Grijalva and Carey were middle-school students in October-December 2007, when the incidents giving rise to this lawsuit against them occurred, and both of them are, therefore, presumably minors. *See id.* at ¶¶ 14, 29. Waltz, who now lives in Colorado, is the grandmother and guardian of another TorC middle-school student, Jason Grimmer. *See id.* at ¶¶ 14, 32. Van Deelen states that the TorC middle-

school principal, Brenda Doil, became angry with him in early October 2007 because she learned that he had sued the Alamogordo Public Schools and its employees for allegedly violating his constitutional rights while he was employed there as a teacher and because he went to the police and reported that one of his middle-school students had made a bomb threat, causing the police to conduct an investigation at the school. *See id.* at ¶¶ 7, 12, 13. Van Deelen was terminated from his teaching position at the Middle School because, between October and November 2007, Grijalva accused him of calling her "a dirty little Mexican," Grimmer complained that Van Deelen grabbed him by the throat on the school playground, and Doil and Defendant Robert Gross (another middle-school employee), accused Van Deelen of verbally abusing and menacing Grimmer's grandparents, the Waltzes. *See id.* at ¶ 14.

**\*4** Van Deelen requested and received a discharge hearing under N.M.S.A. § 22-10A-27. *See id.* at ¶ 16. Carey, Grijalva and Ellen Waltz were subpoenaed to testify at the hearing. Grijalva testified that Van Deelen called him a "dirty little Mexican." *Id.* at ¶ 31. Van Deelen contends that Grijalva conspired with Defendants Matthew Holt (the attorney representing the Board of Education at the hearing) and Doil to give false testimony at the hearing in retaliation for Van Deelen having filed suit against the Alamogordo Public Schools and for having reported the bomb threat to police. *See id.*

Waltz testified that Van Deelen "verbally abused and menaced [Waltz] and her husband during a meeting held at the middle school to discuss Jason's conduct." *Id.* at ¶ 33. Van Deelen alleges that this, too was false testimony that was "maliciously provided in conspiracy with defendants Holt and Doil in retaliation for plaintiff's having filed suit against the Alamogordo Board of Education ... [and] for ... having reported the student bomb threat to the police." *Id.*

Van Deelen also subpoenaed Carey, who apparently had nothing to do with Van Deelen's discharge, to testify at the hearing. He contends that he had interviewed Carey before the hearing and that Carey told him that "Doil had a history of swearing at students, of telling students that she was 'pissed off' at them and of telling defendant Carey that he 'had no rights' while he was a student at ... [the] Middle School." *Id.* at ¶ 29. When Carey testified at the discharge hearing that he had not made those statements to Van Deelen, Van Deelen stopped questioning him. *See id.* Van Deelen contends that "Holt and Doil tampered with Carey's testimony and entered

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 309 of 453

Van Deelen v. Truth or Consequences Board of Education, Not Reported in Fed. Supp....

000809

into a conspiracy with him to provide false testimony at plaintiff's hearing in order to prevent plaintiff from receiving due process, in retaliation for plaintiff's having filed suit against the Alamogordo Board of Education ... [and] for ... having reported the student bomb threat to the police." *Id.* at ¶ 30.

Van Deelen's process server left a copy of the summons and complaint with Carey's mother and Grijalva's step-father. *See* Docs. 3, 4.

## ANALYSIS

### I. Entries of default against the minor Defendants must be set aside.

Van Deelen wrongfully requested that the Clerk enter default and enter an order of default judgment against Grijalva and Carey. *See* Docs. 5, 9. These two parties were minors and Rule 55(b)(1) expressly provides that the Clerk may not enter a default judgment against a minor. Although Van Deelen took great pains to read the Rule's use notes and filed affidavits stating that neither Grijalva nor Carey was an active member of the military and that the amount he was requested from each defendant was for a sum certain, *see* Rule 55(b)(1), he conveniently withheld the critical information that both parties are minors. *See* Docs. 5-12. Fortunately, despite Van Deelen's request that the Clerk enter an order of default judgment, the Clerk filed only an entry of partial default against Grijalva and Carey under rule 55(a). *See* Doc. 13. The Court concludes that Van Deelen's failure to inform the Clerk or the Court that Carey and Grijalva are minors and his false statements that he is entitled as a matter of right to a default judgment against them, together with the fact that his complaint, on its face, does not state a plausible claim against them (as discussed below), supplies the good cause to set aside the entries of default. The Court notes that this is not the first time that Van Deelen has sought default judgment against a defendant without properly complying with the requirements of Rule 55. *Van Deelen v. Ramirez*, No. 00-4067 SAC, 2001 WL 789275 at *8 (D. Kan. May 1, 2001).

**\*5**  Grijalva's attorney filed an answer on April 30, 2008 and moved to set aside the Clerk's entry of default on May 1. *See* Docs. 21, 22. Carey still has not filed an answer, nor has anyone appeared on his behalf. The Court should not grant a motion for default judgment against a minor unless the minor is "represented by a general guardian, conservator, or other

like fiduciary who has appeared." No such guardian for either Defendant has appeared in this case. The Court will set aside the entries of default against these minors and will deny the motions for default judgment.

### II. Waltz has shown good cause to set aside the entry of default against her.

The Clerk filed an entry of default against Waltz on April 21, 2008. *See* Doc. 19. That same day, Waltz filed her answer to Van Deelen's complaint. *See* Doc. 20. Waltz filed a motion to set aside the entry of default on May 7, 2008, *see* Doc. 27, and she filed a "modified motion" to set aside the entry of default on May 23, 2008. *See* Doc. 31. In both motions, Waltz stated that she was unable to file an answer within twenty days due to "financial circumstances." Docs. 27, 31. In the "modified motion," which was apparently filed in response to Van Deelen's contentions that she had failed to explain why her financial circumstances provided good cause to prevent Waltz from timely responding to the complaint, *see* Doc. 24, Waltz explained that her computer had broken down and she had been financially unable to quickly have it repaired; that she had already been unfairly forced to respond to other frivolous lawsuits Van Deelen filed against her that were based only on her testimony at the discharge hearing, that she lived in Colorado, and that she could not afford to hire an attorney, *see* Doc. 31 at 1-2. In his motion to strike, Van Deelen urges the Court to strike Waltz's filing, contending that she should not be able to "continuously file multiple motions" in an attempt to obtain a favorable ruling. Doc. 32 at 1. He has also responded to the merits of her motion. *See id.*

The Court will construe Waltz's pro se filing of the modified motion as a reply to Van Deelen's response to her original motion, and will construe Van Deelen's motion to strike also as a permissive surreply. The Court will not strike Waltz's filing. The Court concludes that Waltz has shown sufficient good cause for her failure to file a timely answer and concludes that the entry of default should be set aside. Waltz's failure to timely file her answer was not made in bad faith, she has implied a meritorious defense, and Van Deelen is not unfairly prejudiced by setting aside the entry of default. As explained below, Waltz's contention that Van Deelen's lawsuit against her is frivolous is well-taken, and Van Deelen is not entitled to a default judgment against her.

### III. Van Deelen has not stated a plausible claim for relief against these witnesses.

Case 4:21-cv-03369   Document 10-1   Filed on 11/19/21 in TXSD   Page 310 of 453

Van Deelen v. Truth or Consequences Board of Education, Not Reported in Fed. Supp....

000810

In *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983), the Supreme Court held that "§ 1983 does not allow recovery of damages against a private party for testimony in judicial proceedings." The Court based its ruling in part on the fact that testimony in a trial "is not performed under 'color of law.' " *Id.* at 329-30. But the Court also noted that "[t]he immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law," *id.* at 330-31, even if "the witness knew the statements were false and made them with malice," *id.* at 332. The Court held that "§ 1983 did not abrogate the absolute immunity at common law." *Id.* at 334. The Tenth Circuit extended *Briscoe's* holding on absolute witness immunity to allegations of conspiracies to present false testimony in § 1983 cases. *See Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (holding that plaintiff's § 1983 civil suit against witnesses, which alleged conspiracy and false testimony, was barred by *Briscoe* and *Miller* ).

 **\*6** Van Deelen's claims against Carey, Grijalva, and Waltz all relate to their testimonies at the administrative discharge hearing, which technically is not a "judicial proceeding." But absolute witness-immunity doctrines also apply to administrative adjudications that are not related to criminal convictions. *See Butz v. Economou*, 438 U.S. 478, 512 (1978) (noting that some participants in the judicial process-including judges, advocates, and witnesses-require absolute immunity to perform their functions without harassment or intimidation and that witnesses in administrative hearings are also "subject to the rigors of cross-examination and the penalty of perjury," so the absolute immunities also apply with equal force to adjudications within federal agencies); *Lentsch v. Marshall*, 741 F.2d 301, 304-05 (10th Cir. 1984) (applying witness immunity to city civil-service-commission discharge hearing in case alleging wrongful discharge by public employee under § 1983 because the plaintiff was allowed to cross-examine the witness and the witness testified under oath, therefore, the "hearing ... possesses enough of the characteristics of the judicial process that witnesses in such hearings should be absolutely immune from suits for damages arising out of their testimony").

The Court takes judicial notice that Van Deelen's discharge hearing provided for representation by an attorney or another person, for discovery by deposition and documents, for the issuance of subpoenas and testimony under oath, for opportunity for cross-examination and presentation of witnesses and documents, and for an official record of the hearing. *See* N.M.S.A. § 22-10A-27. The Court concludes that Van Deelen's administrative discharge hearing possessed the characteristics of a judicial proceeding such that the witnesses who testified at the hearing are absolutely immune from suits for damages arising out of their testimony. The Court concludes that Van Deelen has not stated a plausible claim for relief against these Defendants and that he should not be allowed to amend his complaint because amendment would be futile. Not only is he not entitled to a default judgment, but his claims against these Defendants must be dismissed.

IT IS ORDERED that Van Deelen's Motions for Entry of Default [Docs. 6, 10, 15] are DENIED; that Grijalva's Motion to Set Aside Clerk's Entry of Default [Doc. 22] is GRANTED; that Waltz's Motion and Modified Motion to Overturn Entry of Default [Docs. 27, 31] are GRANTED; and that Van Deelen's Motion to Strike [Doc. 32] is DENIED; and

IT IS FURTHER ORDERED that the Clerk's Entries of Default [Docs. 13 & 19] are set aside; and

IT IS FURTHER ORDERED that Van Deelen's claims against Defendants Kyle Carey, Cheyenne Grijalva, and Ellen Waltz are DISMISSED with prejudice.

**All Citations**

Not Reported in Fed. Supp., 2008 WL 11451397

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

000811

# EXHIBIT I

# IN THE SUPREME COURT OF TEXAS

Misc. Docket No. 21-9060

### THIRTY-EIGHTH EMERGENCY ORDER REGARDING
### THE COVID-19 STATE OF DISASTER

**ORDERED** that:

1.    Governor Abbott has declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic. This Order is issued pursuant to Section 22.0035(b) of the Texas Government Code.

2.    The Thirty-Sixth Emergency Order (Misc. Dkt. No. 21-9026) is renewed as amended.

3.    Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

   a.    except as provided in paragraph 4, modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than August 1, 2021;

   b.    except as this Order provides otherwise, allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;

   c.    consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means;

   d.    conduct proceedings away from the court's usual location with reasonable

notice and access to the participants and the public;

     e.    require every participant in a proceeding to alert the court if the participant has, or knows of another participant who has: (i) COVID-19 or a fever, chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, sore throat, loss of taste or smell, congestion or runny nose, nausea or vomiting, or diarrhea; or (ii) recently been in close contact with a person who is confirmed to have COVID-19 or exhibiting the symptoms described above;

     f.    take any other reasonable action to avoid exposing court proceedings and participants to the threat of COVID-19.

4.    In any proceeding under Subtitle E, Title 5 of the Family Code, all deadlines and procedures must not be modified or suspended, unless permitted by statute, after August 1, 2021, except the dismissal date may be extended as follows:

     a.    for any such proceeding that, on the date of this Order, has a dismissal date that was previously modified under a prior Emergency Order Regarding the COVID-19 State of Disaster, the court may extend the dismissal date for a stated period ending no later than December 1, 2021;

     b.    for any such proceeding that, on the date of this Order, has been previously retained on the court's docket pursuant only to Section 263.401(b) or (b-1), the court may extend the dismissal date for a stated period ending no later than February 1, 2022;

     c.    for any such proceeding that, on the date of this Order, has not been previously retained on the court's docket pursuant to Section 263.401(b) or (b-1), the court may extend the initial dismissal date as calculated under Section 263.401(a) for a stated period ending no later than April 1, 2022; or

     d.    for any such proceeding that is filed on or after the date of this Order, the court may extend the initial dismissal date as calculated under Section 263.401(a) only as provided by Section 263.401(b) or (b-1).

5.    Courts should continue to use reasonable efforts to conduct proceedings remotely.

6.    Upon request and good cause shown by a court participant other than a juror—including but not limited to a party, an attorney, a witness, or a court reporter—a court must permit the participant to participate remotely in any proceeding, subject to constitutional limitations.

7.     A court of appeals may conduct in-person proceedings if the chief justice of the court of appeals adopts minimum standard health protocols for court participants and the public attending court proceedings that will be employed in the courtroom and in public areas of the court building.

8.     A district court, statutory or constitutional county court, statutory probate court, justice court, or municipal court may conduct in-person proceedings, including both jury and non-jury proceedings, if the local administrative district judge or presiding judge of a municipal court, as applicable, adopts, in consultation with the judges in the county or municipal court buildings:

     a.     minimum standard health protocols for court proceedings and the public attending court proceedings that will be employed in all courtrooms and throughout all public areas of the court buildings, including masking, social distancing, or both; and

     b.     an in-person proceeding schedule for all judges in the county or municipal court buildings, as applicable.

9.     A court may conduct an in-person jury proceeding if:

     a.     to assist with coordination of local resources and to manage capacity issues, the court has obtained prior approval, including a prior approved schedule, for the jury proceeding from the local administrative district judge or presiding judge of the municipal courts, as applicable;

     b.     the court has considered on the record any objection or motion related to proceeding with the jury proceeding at least seven days before the jury proceeding or as soon as practicable if the objection or motion is made or filed within seven days of the jury proceeding;

     c.     the court has established communication protocols to ensure that no court participants have tested positive for COVID-19 within the previous 10 days, have had symptoms of COVID-19 within the previous 10 days, or have had recent known exposure to COVID-19 within the previous 14 days;

     d.     the court has included with the jury summons information on the precautions that have been taken to protect the health and safety of prospective jurors and a COVID-19 questionnaire to be submitted in advance of the jury selection that elicits from prospective jurors information about their exposure or particular vulnerability to COVID-

Misc. Docket No. 21-9060          Page 3

19; and

     e.    the court has excused or rescheduled prospective jurors who provide information confirming their COVID-19 infection or exposure, or their particular vulnerability to COVID-19 and request to be excused or rescheduled.

10.    In criminal cases where confinement in jail or prison is a potential punishment, remote jury proceedings must not be conducted without appropriate waivers and consent obtained on the record from the defendant and prosecutor. In all other cases, remote jury proceedings must not be conducted unless the court has complied with paragraph 9(b).

11.    Except for non-binding proceedings, a court may not permit or require a petit juror to appear remotely unless the court ensures that all potential and selected petit jurors have access to technology to participate remotely.

12.    The Office of Court Administration should issue, and update from time to time, best practices to assist courts with safely and effectively conducting in-person and remote court proceedings under this Order.

13.    In determining a person's right to possession of and access to a child under a court-ordered possession schedule in a Suit Affecting the Parent-Child Relationship, the existing trial court order shall control in all instances. Possession of and access to a child shall not be affected by any shelter-in-place order or other order restricting movement issued by a governmental entity that arises from the pandemic. The original published school schedule shall also control, and possession and access shall not be affected by the school's closure that arises from the pandemic. Nothing herein prevents parties from altering a possession schedule by agreement if allowed by their court order(s), or courts from modifying their orders on an emergency basis or otherwise.

14.    An evidentiary panel in an attorney professional disciplinary or disability proceeding may—and must to avoid risk to panel members, parties, attorneys, and the public—without a participant's consent:

     a.    conduct the proceeding remotely, such as by teleconferencing, videoconferencing, or other means;

     b.    allow or require anyone involved in the proceeding—including but not limited to a party, attorney, witness, court reporter—to participate remotely, such as by teleconferencing, videoconferencing, or other means; and

      c.      consider as evidence sworn statements or sworn testimony given remotely, such as by teleconferencing, videoconferencing, or other means.

15.     This Order is effective immediately and expires August 1, 2021, except as otherwise stated herein, unless extended by the Chief Justice of the Supreme Court.

16.     The Clerk of the Supreme Court is directed to:

      a.      post a copy of this Order on www.txcourts.gov;

      b.      file a copy of this Order with the Secretary of State; and

      c.      send a copy of this Order to the Governor, the Attorney General, and each member of the Legislature.

17.     The State Bar of Texas is directed to take all reasonable steps to notify members of the Texas bar of this Order.

Dated: May 26, 2021

JUSTICE BOYD, JUSTICE DEVINE, and JUSTICE BLACKLOCK dissent.

_____
Nathan L. Hecht, Chief Justice

_____
Eva M. Guzman, Justice

_____
Debra H. Lehrmann, Justice

_____
Jeffrey S. Boyd, Justice

_____
John P. Devine, Justice

_____
James D. Blacklock, Justice

_____
J. Brett Busby, Justice

_____
Jane N. Bland, Justice

_____
Rebeca A. Huddle, Justice

Misc. Docket No. 21-9060                    Page 6

000818

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.* | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ——————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## ORDER

Pending before the Court is Defendant Joshua Sussberg's Motion to Take Judicial Notice ("Motion"). Having considered the Motion, applicable law and arguments of counsel, if any, the Court is of the opinion that the Motion should be GRANTED. The Court, therefore ORDERS that the Court will take judicial notice of Exhibits A(1-9), B, C, D, E, F, G, H and I and consider said Exhibits in this case.

SIGNED on _____, 2021 at Houston, Texas.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| _____ | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT JOSHUA SUSSBERG'S REPLY IN SUPPORT OF MOTION TO**
**DISMISS PLAINTIFF'S THIRD AMENDED PETITION AND FOR SANCTIONS**

TO THE HONORABLE CHIEF JUDGE DAVID R. JONES:

Defendant Joshua Sussberg files this Reply in Support of Motion to Dismiss
Plaintiff's Third Amended Petition and for Sanctions to address certain issues raised in
Plaintiff's Response to Defendant's Motion to Dismiss. First, it remains clear that, at
bottom, Plaintiff Michael Van Deelen's claims arise from his dissatisfaction with the
Court's Confirmation Order. The alleged "scheme" between Mr. Sussberg and others is

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the
Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor
McDermott International, Inc.'s principal place of business and the Debtors' service address in these
chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

based on alleged conduct related to McDermott's decision to file for bankruptcy and events at the Confirmation Hearing, prior to confirmation of the Plan, such that this Court has jurisdiction over this action. Second, there is diversity of citizenship between Van Deelen and Mr. Sussberg, so the Court would have jurisdiction over the lawsuit against Mr. Sussberg in any event. Third, in addition to being frivolous, Van Deelen's new claims against Mr. Sussberg evince Van Deelen's plain intent to harass Mr. Sussberg. Since filing his Third Amended Petition, Van Deelen has even threatened a lawsuit against Beck Redden for "trespass" based on serving a pleading by a process server. These kinds of frivolous claims with accompanying intimidation must stop.

## **ARGUMENT**

Van Deelen contends the Court should remand this case to the state district court in Montgomery County, Texas, "*where it originated.*" But no claims against Defendant Joshua Sussberg "originated" in Texas state court. Van Deelen's "Third Amended Petition" filed in this Court on June 18, 2021 was the *first time* Van Deelen ever asserted claims against Mr. Sussberg. Van Deelen filed these meritless claims against Mr. Sussberg only after receiving two separate opportunities from the Court, each after a hearing, to amend his complaint against the other named defendants in this suit in response to guidance from the Court as to why the claims were vulnerable to dismissal in light of the Court's Confirmation Order. Instead of focusing his pleading, Van Deelen added a whole *new* set of claims against a *new* defendant, Mr. Sussberg. Van Deelen now complains about the fact that Defendant filed a Motion to Dismiss his frivolous lawsuit, disingenuously

suggesting he expected Defendant to accept the incorporation of these new claims into Van Deelen's pending motion to remand.

And while Van Deelen has added new claims against Defendant Sussberg, Van Deelen's Amended Petition still arises from the same complaint as his original petition, namely, his dissatisfaction with the McDermott bankruptcy plan. Van Deelen now goes so far as to allege implausible claims that Mr. Sussberg acted as part of an alleged "scheme" to misrepresent McDermott's financial viability before it filed for Chapter 11, and to allegedly intimidate Van Deelen to discourage him from challenging the plan and defendants' alleged conduct in connection with McDermott's decision to file for bankruptcy. Van Deelen's claims directly relate to and arise from alleged pre-confirmation conduct and the bankruptcy. Defendant respectfully submits the Court can and should retain jurisdiction over this case and grant Defendant's Motion.

**A.  The Court has jurisdiction to grant Defendant's Motion to Dismiss.**

1. <u>Van Deelen's unilateral decision not to serve his lawsuit on Defendant is irrelevant to this Court's authority to adjudicate this case.</u>

In an apparent attempt to make an end run around removal procedure and smuggle his new lawsuit against Mr. Sussberg into his motion to remand to state court, Van Deelen added his claims against Mr. Sussberg to his pending federal complaint and purposefully declined to serve Mr. Sussberg with it.  Van Deelen decided, however, to file his new lawsuit against Mr. Sussberg in this Court, not in state court. He cannot deprive Defendant of the right to defend himself and respond to this federal lawsuit by declining to formally serve him.

Defendant's counsel did not, as Van Deelen suggests, agree to "wait for service" of a state lawsuit to file a motion to dismiss, nor does any such agreement appear on the face of the email Van Deelen cites. Further, the suggestion that Defendant "disregard[ed]" the Court's instruction by filing a motion to dismiss under the federal rules "without even being served" is nonsensical, given that Defendant was not a defendant as of the June 7, 2021 hearing, was not present at that hearing, and was not provided any "instruction" from the Court. Dkt. 63 at 24. In any event, that Van Deelen did not serve his lawsuit on Defendant is, of course, of no moment—a defendant may voluntarily appear without being served with process and submit to the jurisdiction of the court. *See City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 214 n. 15 (5th Cir. 2005). Defendant has done so here, filing his Motion to Dismiss and Original Answer in this Court based on his position that this Court has and should retain jurisdiction over this case to grant his Motion to Dismiss.

2. Van Deelen's claims center on his dissatisfaction with the McDermott bankruptcy plan and alleged pre-confirmation actions.

This Court has jurisdiction to decide his Motion to Dismiss pursuant to 28 U.S.C. §§ 1334(b)(4) and 157 because it is sufficiently "related to" the McDermott bankruptcy. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303-05 (5th Cir. 2002). Van Deelen's claims concern: (1) alleged pre-petition conduct concerning McDermott's decision to file for bankruptcy, of which he was already complaining at the time of the confirmation; and (2) alleged conduct during the plan confirmation hearing that Van Deelen alleges was intended to discourage him from challenging the plan and further pursuing the fraud allegations he had already raised to this Court in connection with the plan's confirmation. Due to Van

4

Deelen's misconduct at the confirmation hearing on March 12, 2020, the Court signed an order ("March 23 Order") prohibiting Van Deelen from directly contacting Mr. Sussberg or his family and referring the matter to the United States Marshal and United States Attorney for further investigation of Van Deelen's conduct. Dkt. 719.

In determining whether post-confirmation "related to" jurisdiction exists, courts first examine the Fifth Circuit's *Craig's Stores* factors, which are whether: (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2008) (citing *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)); *In re MSB Energy, Inc.*, 438 B.R. 571 (Bankr. S.D. Tex. 2010) (applying factors and finding that post-confirmation "related to" bankruptcy jurisdiction existed). "[T]he Fifth Circuit has emphasized that . . . all three factors [need] not weigh heavily in the bankruptcy court's favor" for there to be jurisdiction. *In re MSB Energy, Inc.*, 438 B.R. at 586; *In re Enron Corp. Sec.*, 535 F.3d at 335-36.

The first factor weighs in favor of jurisdiction because Van Deelen's alleged claims against Defendant arise entirely from pre-confirmation conduct concerning either actions Defendant allegedly took in connection with McDermott's decision to file for bankruptcy leading up to when its petition was filed, or at the confirmation hearing in an alleged effort to discourage Plaintiff from challenging the plan. *See, e.g.*, *In re Blast Energy Servs., Inc.*,

396 B.R. 676, 684 (Bankr. S.D. Tex. 2008) ("[A]lthough the dispute arose post-confirmation, the claims against Hallwood . . . arose pre-confirmation. Thus, the claims at issue primarily deal with pre-confirmation relations between the parties[.]"); *In re MSB Energy, Inc.*, 438 B.R. at 586 (holding that the first factor "weighs heavily in favor of bankruptcy court jurisdiction" because "the subject of the Adversary Proceeding" occurred before the confirmation date).

The second factor weighs in favor of jurisdiction because there were claims and antagonisms pending between the parties on the date of plan confirmation. On the date of the confirmation hearing, Van Deelen had already filed his objection to the plan and accused McDermott and its officers of acting in bad faith to enrich themselves at the expense of the shareholders (an alleged "scheme" in which Van Deelen now claims Mr. Sussberg was involved). And during the hearing, Van Deelen made vulgar and threatening remarks to Defendant and to the Court more broadly, necessitating the Court's March 23 Order granting emergency relief. *See, e.g., id.* at 586 (second factor "weigh[ed] heavily in favor" of bankruptcy court jurisdiction where plaintiffs had filed motion to lift stay and objected to the reorganization plan prior to the confirmation hearing).

The third factor is also satisfied because resolution of this action on the merits will turn, at least in part, on facts and law derived from the bankruptcy with respect to evaluating the alleged misconduct with respect to the decision to file for bankruptcy and alleged representations regarding the same, as well as Van Deelen's alleged harm relative to the reorganization plan and bases for it. *See id.* at 588 ("The Complaint represents a formal

lawsuit reflecting the pre-confirmation conflict between the parties, the resolution of which assuredly hinges on an evaluation of facts and law derived from the underlying Chapter 11 case."). Even if the third factor were to fail, however, the Court would still retain jurisdiction, pursuant to the analysis in *Enron*. *Id*. at 586 (citing *In re Enron Corp. Sec.*, 535 F.3d at 336).

   Defendant further notes that, although not an independent basis for subject matter jurisdiction (*see Newby v. Enron Corp.*, 302 F.3d 295, 300-01 (5th Cir. 2002)), this Court has jurisdiction and authority pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651(a) (the All Writs Act) to issue an injunction to the extent "necessary and appropriate to address vexatious conduct" by Van Deelen. *Alkasabi v. Rampart Acquisition Corp. L.L.C.,* 2011 WL 1232341, at *10 (S.D. Tex. Mar. 31, 2011); *see also Chevron Global Energy Inc. v. Bulls*, 2007 WL 9736125, at *2 (S.D. Tex. Dec. 5, 2007) (relitigation exception to Anti-Injunction Act permits federal courts to enjoin state court proceedings when necessary to "protect or effectuate its judgments" (internal citations omitted)). As shown in the Motion to Dismiss and further herein, Van Deelen has engaged in a pattern of vexatious, frivolous and harassing conduct over the course of these proceedings that this Court has statutory and inherent authority to curb with an appropriate order addressing the same. *See id*.

   The Court has jurisdiction to retain this case and decide the Motion to Dismiss. Van Deelen has not proven otherwise.

3.  <u>Van Deelen did not and cannot show mandatory abstention applies.</u>

Because he has requested mandatory abstention in his original motion to remand (though noting he did not move as to any claims against Mr. Sussberg because such claims had not yet been filed in any court, let alone in state court), Van Deelen bears the burden to show by a preponderance of the evidence that: (1) his action has no independent basis for federal jurisdiction, other than section 1334(b); (2) his action is a non-core proceeding, i.e., it is "related to" a case under title 11; (3) he commenced his action in state court; and (4) his action could be adjudicated timely in state court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007); *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003). As to Van Deelen's claims against Mr. Sussberg, Van Deelen has failed to show there is no independent basis for federal jurisdiction given that, <u>at</u> <u>least</u> <u>as</u> <u>to</u> <u>Mr.</u> <u>Sussberg</u>, <u>complete</u> <u>diversity</u> <u>would</u> <u>exist</u>, and he has failed to show he commenced an action in state court against Mr. Sussberg.

Nor has Van Deelen shown his action against Mr. Sussberg could be adjudicated timely in state court, which considers factors including "(a) the extent to which the suit has already been prosecuted in state court, (b) the expectation of when the state court trial will commence, and (c) evidence in contravention that the state court could adjudicate the case timely." *In re Hallwood Energy, L.P.*, 2009 WL 2601294, at *8 (Bankr. S.D. Tex. Aug. 24, 2009). Because Van Deelen filed his claims against Mr. Sussberg for the first time in this federal bankruptcy court and no lawsuit has been filed against Mr. Sussberg in state court, there is no evidence of prosecution in state court and no evidence of any trial setting in

state court. Van Deelen points to the Montgomery County district court where he filed his original lawsuit against the other named defendants based on his assumption that his new lawsuit against Mr. Sussberg would be remanded with his other claims to the Montgomery County court, but even if that were proper, which Defendant disputes, he still could not satisfy his burden because he did not prosecute his original action beyond filing his original petition, and no trial was set.

Accordingly, there is no evidence that a state court could adjudicate Van Deelen's lawsuit against Mr. Sussberg in a timelier fashion than this Court, nor would a state court have the context and background knowledge concerning this case and the parties that this Court has that would aid efficient adjudication. *See, e.g., In re Petroleum Prod. & Servs., Inc*., 561 B.R. 662, 666 (Bankr. S.D. Tex. 2016) (observing scheduling order and trial setting serves as evidence a "state court will be familiar with the case and prosecute it efficiently."). The Court also may take judicial notice of the ongoing delays and unpredictability in scheduling caused by Covid-19, as the state courts are still under orders to suspend or modify all deadlines and procedures as necessary to avoid risk to the courts and their participants. *See* Texas Supreme Court Thirty-Eighth Emergency Order Regarding the Covid-19 State of Disaster, Misc. Dkt. No. 21-9060, https://www.txcourts.gov/media/1452265/219060.pdf.

In the absence of any evidence that Van Deelen has prosecuted his action or obtained a trial setting in state court, the fourth prong of the mandatory abstention analysis weighs against abstention, and the Court should deny Van Deelen's request. *See In re Lorax Corp.*,

9

295 B.R. at 90 (party not entitled to mandatory abstention if it fails to prove any one of the statutory requirements); *In re Montalvo*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016) (the bankruptcy court refused to abstain because the fourth factor was not demonstrated).

4. <u>Defendant respectfully requests that the Court not exercise permissive abstention because it would not serve justice in this case.</u>

Van Deelen does not contend in his Response that the Court should exercise permissive abstention. Defendant nonetheless requests that the Court not do so here. Permissive abstention may be exercised when it "is in the interest of justice, comity with state courts, or respect for state law." 28 U.S.C. § 1334(c)(1). For the reasons stated herein and in Defendant's Motion to Dismiss, justice would be best served by dismissing Van Deelen's frivolous lawsuit against Defendant now. Van Deelen has exploited the judicial process, consumed the Court's valuable time and resources, and engaged in harassing behavior against litigants and counsel to retaliate against those who have opposed him in the bankruptcy proceeding, not to seek justice. Van Deelen has been afforded multiple opportunities to amend his complaint pursuant to the Court's guidance. He is not entitled to another. Nor would it serve justice to allow him to continue his dilatory and vexatious behavior in a state court proceeding. No special issues of state law or concerns for comity exist that outweigh this Court's authority to adjudicate this proceeding. Defendant respectfully requests that the Court retain this case to facilitate an expeditious and just result.

**B. Van Deelen's claims against Defendant fail to state a plausible claim for relief.**

    1. <u>Plaintiff does not dispute he failed to satisfy the federal pleading standard for fraud.</u>

Van Deelen does not dispute his Amended Petition fails to plead a claim for fraud satisfying the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). Rather, he contends the Rule 9(b) and 12(b)(6) standards do not apply because he is alleging a "state claim" that should proceed in state court, and that his pleading satisfies Rule 45 of the Texas Rules of Civil Procedure. Dkt. 63 at 16-17. Assuming this Court has jurisdiction to decide Defendant's Motion to Dismiss as Defendant contends it does, the applicable standard for evaluating the sufficiency of Van Deelen's pleading is the federal standard set forth in Rules 12(b)(6) and 9, regardless of whether the claim at issue is based on federal or state substantive law. *See, e.g., Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338-39 (5th Cir. 2008) ("Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b)"). Van Deelen cites no authority to the contrary. Instead, Van Deelen claims, incorrectly, that Defendant's Motion to Dismiss did not contend Plaintiff's "*state-law* claims for common law fraud and assault" (emphasis original) were insufficiently pleaded and did "not even address fraudulent misrepresentation (common law fraud)." Dkt. 63 at 24. That is precisely what Defendant did. For the reasons set forth in Defendant's Motion to Dismiss, the Amended Petition fails to plead a claim for common law fraud against Mr. Sussberg under Rules 12(b)(6) and 9.[2]

---

[2] Van Deelen contends on pages 17 and 23 of his Response that Defendant "is confusing fraud by nondisclosure with fraudulent misrepresentation," for which Van Deelen sues Defendant. Dkt. 63

2.  <u>Plaintiff does not state a claim for vicarious liability.</u>

Van Deelen makes vague reference to an alleged "scheme" throughout his Amended Petition, but he does not claim a cause of action for conspiracy, nor does he allege with any specificity any of the elements of a conspiracy claim. Even if Van Deelen maintained he was asserting a conspiracy claim, his Amended Petition fails to allege sufficient facts to state a claim for relief satisfying Rule 12(b)(6). Conspiracy requires pleading facts showing "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *In re Enron Corp. Securities, Derivative & ERISA Litig*., 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009) (internal citations omitted). Further, a conspiracy to defraud, specifically, requires showing such a conspiracy existed and the specific defendant agreed with one or more of the conspirators about the "illegal object of the conspiracy and intended to have it brought about." *Id*. (internal citations omitted). Van Deelen's Amended Petition merely asserts, in conclusory fashion, that the defendants engaged in a "scheme" to defraud through McDermott's public statements and disclosures. It does not allege, for example, facts to show Mr. Sussberg had any "meeting of the minds" or agreement with any other defendant. The Amended Petition fails to allege any facts satisfying the particular elements of a conspiracy claim, and "[m]ere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Liptak v. Banner,* 2002 WL

---

at 17, 23. Based on these assertions, it appears Van Deelen does not, in fact, assert any claim for fraud by nondisclosure, but, in any event, his Amended Petition does not allege facts supporting a claim for fraud by nondisclosure for the reasons stated in the Motion to Dismiss.

378454, at *2 (N.D. Tex. Mar. 7, 2002) (citing *Arsenaux v. Roberts,* 726 F.2d 1022, 1024

(5th Cir. 1982)).

Indeed, Van Deelen contends in his Response to Defendant's Motion to Dismiss

that he is alleging joint enterprise, without any mention of conspiracy, and yet his Amended

Petition nowhere mentions joint enterprise or any of the elements required for establishing

a joint enterprise. Dkt. 63 at 22. He does not even state the elements for joint enterprise in

his Response, which are:

> (1) an agreement, express or implied, among the members of the group; (2)
> a common purpose to be carried out by the group; (3) a community of
> pecuniary interest in that purpose, among the members, and (4) an equal right
> to a voice in the direction of the enterprise, which gives an equal right of
> control.

*Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). Instead, Van Deelen claims,

in conclusory fashion, that he is asserting joint enterprise with the purpose of assigning

vicarious liability to Mr. Sussberg. He cites no facts or law to support any application of a

vicarious liability theory in this case. Accordingly, any allegation of an alleged "scheme"

for that purpose fails under Rule 12(b)(6).

    3.   <u>Defendant's conduct during these proceedings and in prior lawsuits renders
his assault and false imprisonment allegations implausible on their face.</u>

Defendant has engaged in conduct over the course of these proceedings evidencing

his bad-faith intent in bringing this lawsuit against Mr. Sussberg and abuse of the judicial

process such that his allegations against Mr. Sussberg are not plausible. *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1974 (2007).[3] Examples described in Defendant's Motion to

Dismiss are summarized below:

- Van Deelen has made false statements to this Court. Specifically, Van Deelen has falsely stated multiple times and most recently in his Response[4] that he did not make the "son of a b****" comment during the March 12 Hearing despite the Court's express acknowledgment that such comment was made and heard by Court personnel at the time it was said. Bankr. Dkt. 719.

- The Court's March 23, 2020 Order regarding Debtors' Emergency Motion gave Van Deelen's affidavit denying vulgar and threatening remarks he made to Mr. Sussberg "little weight" given "that Mr. Van Deelen has demonstrated the propensity to make false statements under oath." *Id*. The Order also concluded that Van Deelen "poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position." *Id*.

- Van Deelen has misconstrued facts and law in his filings with this Court. As mentioned above, the Court observed Van Deelen's propensity to misconstrue the facts in his filings and even in a sworn statement in the Court's March 23, 2020 Order. Most recently, in his Response to the Motion to Dismiss, Van Deelen misconstrued his communications with the undersigned counsel as representing an "agreement with plaintiff to wait for service until the case wound up in state court" before filing a motion to dismiss, when no such agreement occurred or even appears on the face of the email he cites.[5] Van Deelen has also misstated the Eighth Circuit's

---

[3] Defendant also submitted with his Motion to Dismiss his declaration, along with the declarations of two other attorneys for the Debtors who were present and witnessed certain of Van Deelen's remarks. Defendant contends, first and foremost, that Van Deelen's Amended Petition fails to state a plausible claim for relief under the 12(b)(6) standard such that reference to the declarations should not be necessary, but Defendant nonetheless refers the Court to them to the extent the Court ultimately deems their consideration necessary to adjudicate the Motion.

[4] In his response, Van Deelen states: "There will not be any evidence on the audio clip that plaintiff directed any vulgarity towards this Court." The Court already stated in the March 23 Order that Judge Jones could hear the comment at issue on the audio recording. Bankr. Dkt. 719.

[5] Van Deelen also falsely accused the undersigned counsel and his law firm of "trespassing" (as mentioned in Van Deelen's exhibit list filed with the Court for the upcoming hearing scheduled for August 9) by requesting a courier to hand deliver a copy of Defendant's Original Answer, and has even threatened to file suit against the undersigned counsel. *See* Exhibit 1, Decl. of D. Beck; Exhibit 2, Email Confirming Delivery of Pleading; Exhibit 3, Email Correspondence between M. Van Deelen and D. Beck.

holding in *City of Kansas City* as overturning a "significant portion" of the sanctions awarded against him by the district court in that case, when in fact the Eighth Circuit upheld all monetary sanctions and upheld the injunction against future pro se lawsuits as modified to pertain to the Eighth Circuit.

- Van Deelen has changed his story. Neither Van Deelen's response to the Debtors' Emergency Motion, nor the affidavit to his response filed just six days after the March 12 Hearing asserted the allegations of physical contact, "false imprisonment" or harm Van Deelen now asserts in his Amended Petition. Dkt. 57 ¶¶ 88-89. Van Deelen's altered allegations evince an effort to plead into the elements of the claims Van Deelen wishes to manufacture and belie the plausibility of his complaint.

As referenced in the Motion to Dismiss, Van Deelen has an extensive history of filing similar lawsuits against similar defendants making similar claims. His allegations against Defendant in this case mirror language he has used in lawsuits he has filed in the past. *See* Dkt. 59 at 20-21 (citing Van Deelen v. *Alamogordo Pub. Sch.*, 2008 WL 11417175, at *5 (D.N.M. Mar. 14, 2008)). [6]

Courts have also specifically adjudicated certain of Plaintiff's lawsuits to be frivolous and malicious. Plaintiff claims there is no evidence he has filed any lawsuit adjudicated to be frivolous, or that he has ever been found to be a vexatious litigant, but

---

[6] Van Deelen claims he won his appeal to the Tenth Circuit in the *Van Deelen v. Johnson* case, when, in fact, the Tenth Circuit reversed summary judgment on his First Amendment petitioning claim but affirmed summary judgment against him on claims for conspiracy and due process, concluding they were "without merit," and remanded certain of his First Amendment claims for further review. Van Deelen elides the fact that he ultimately lost on the merits of his case at trial and was ordered to pay the defendants' costs incurred in defending the action. *See* Case No. 5:05-cv-04039-SAC, *Van Deelen v. Marion Johnson et al.*, in the United States District Court for the District of Kansas (Dkt. 162, Judgment in a Civil Case).[6] Van Deelen similarly claims he "prevailed" in the *Alamogordo* case, when in fact more than half of his twenty separate First and Fourteenth Amendment claims were dismissed pursuant to Rule 12(b)(6). *See Alamogordo*, 2008 WL 11417175.

both statements are incorrect. In *Van Deelen v. Truth or Consequences Board of Education*, the United States District Court for the District of New Mexico dismissed Van Deelen's lawsuit, *sua sponte*, "under the Court's inherent power to dismiss *sua sponte* frivolous or malicious lawsuits under Fed. R. Civ. P. 12(b)(6)." 2008 WL 11451397, at *1 (D.N.M. July 9, 2008). In that lawsuit, Van Deelen brought section 1983 claims against two minor students and another student's grandmother for alleged conspiracy and denial of due process in connection with their providing testimony at his administrative discharge hearing. The district court decided to dismiss Van Deelen's lawsuit with prejudice and without opportunity to amend because he did not and could not state a plausible claim for relief. *Id.* at *6.

And in *Van Deelen v. City of Kansas City, Missouri*, the district court exercised its "inherent authority to impose sanctions to deter litigants from engaging in 'conduct which abuses the judicial process'" to enjoin Van Deelen from filing future pro se litigation against the City of Kansas City and its employees because Van Deelen had "demonstrated a desire to harass the City and its employees by filing frivolous lawsuits supported by fabricated evidence." 2006 WL 2077640, at *15 (W.D. Mo. July 24, 2006), *aff'd as modified*, 262 Fed. Appx. 723 (8th Cir. 2007). The district court specifically found in that case that Van Deelen "filed [the] lawsuit against the City and its employees not for the

purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City." *Id.* at *16.[7]

In addition to the foregoing decisions, this Court, in overruling and denying Van Deelen's motion to sustain his objection to confirmation of the McDermott plan and order an investigation of McDermott and its management, found that Van Deelen's motion had not been filed in good faith. At the March 9, 2020 hearing, the Court stated: "I will find there's simply no legitimate basis whatsoever for the requested relief….I will find that the motion was not filed in good faith. And I'll deny the motion." Bankr. Dkt. 664 at 31:19. Further, after the Court granted Debtors' Emergency Motion for relief from further contact from Van Deelen, Van Deelen filed a request for hearing listing six points on which Van Deelen sought "clarification," including whether the court was ordering Van Deelen was "prohibited from filing a civil lawsuit for assault and possibly other causes of action against Joshua Sussberg." Bankr. Dkt. 723. In its order denying Van Deelen's request for a hearing, the Court observed that the request did "nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose." Bankr. Dkt. 849.

Therefore, in addition to Van Deelen's "long history of engaging in extensive litigation against judges, attorneys, police and security officers" (*Alamogordo*, 2008 WL 11417175, at *1-2), among others, making claims very similar to the ones at bar, which

---

[7] In addition, the Fifth Circuit affirmed the district court's dismissal on 12(b)(6) grounds of a lawsuit Van Deelen filed against a school district, administrators, board, and their outside lawyer for First Amendment retaliation, negligence and intentional infliction of emotional distress, and held the district court did not abuse its discretion in denying Van Deelen a fourth opportunity to amend his complaint. *See Van Deelen v. Cain*, 628 Fed. Appx. 891 (5th Cir. 2015).

17

Defendant contends casts doubt on the plausibility of Van Deelen's suit in its entirety, Van Deelen has also filed lawsuits specifically adjudicated to be frivolous and malicious, and this Court has ruled Van Deelen's motion in the bankruptcy proceeding was not filed in good faith.[8]

Van Deelen contends the Court cannot consider Van Deelen's prior lawsuits and the Court's own records without a formal motion to take judicial notice. Dkt. 63 at 17-18. To the contrary, the Court may, on its own, take judicial notice of these filings in the public record, cited in Defendant's Motion to Dismiss and this reply in support to the same. Fed. R. Evid. 201(c)(1); *see Buckley v. Cockrell*, 45 Fed. Appx. 320 (5th Cir. 2002) ("It is permissible for a court to take judicial notice of its own records or of those of inferior courts" (internal citations omitted)); *Bennett v. Chase Home Finance LLC*, 2010 WL 5342827, at *1 (S.D. Tex. 2010) (granting 12(b)(6) motion to dismiss based in part on court's records and acknowledging the court "may take judicial notice of its own court's records"). Nonetheless, in an abundance of caution, Defendant is filing contemporaneously herewith a formal Motion to Take Judicial Notice of the filings at issue, which are attached

---

[8] Van Deelen contends Defendant cited the *Johnson* and *Alamogordo* cases as "examples" of frivolous lawsuits he has filed. For the sake of clarity, Defendant intended to cite the *Johnson* case specifically for the district court's observation in that case that Van Deelen is a "frequent filer," and the *Alamogordo* case for its detailing of Van Deelen's extensive history of similar lawsuits Van Deelen has filed over the years, in support of Defendant's argument that the extensive number and strikingly similar types of lawsuits Defendant has filed over the years against similar kinds of defendants, including attorneys, judges, and government bodies, reflects a troubling pattern casting doubt on the plausibility of Defendant's claims, and Defendant's intentions in bringing them; not for a specific ruling. In any event, contrary to Van Deelen's assertion in his Response, he has, in fact, litigated lawsuits that were adjudicated to be frivolous, and he has been previously ruled by another federal court to be a vexatious litigant. *See* pp. 14-16, *supra*.

as exhibits to the motion. *See* Fed. R. Evid. 201(c)(2) (court must take judicial notice if requested and necessary information is supplied).

**C. Sanctions including dismissal of this lawsuit and a pre-filing injunction are warranted.**

    1. The Court should deem Van Deelen a vexatious litigant pursuant to the applicable federal standard for assessing sanctions.

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). Federal courts also "have the inherent power to sanction bad-faith conduct." *Suarez v. U.S. Bank, N.A.*, 2020 WL 1866877, at *2 (W.D. Tex. Apr. 14, 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). Defendant has respectfully requested the Court to exercise that power here through his Motion for Sanctions incorporated into his Motion to Dismiss and is requesting the Court to dismiss Van Deelen's lawsuit against Defendant and enter a pre-filing injunction to prevent Van Deelen from refiling his frivolous claims against Defendant.

In evaluating a request for sanctions of this kind, including a pre-filing injunction, the Court "should examine all relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Baum*, 513 F.3d at 189 (internal citations omitted). Under this standard, the finding of vexatiousness is subsumed

in the evaluation of sanctions. *See Allen v. Travis*, 2007 WL 1989592, at *3 (N.D. Tex. July 10, 2007) (citing cases in which courts construed "vexatious litigant" motions as motions for sanctions under the federal rules). The Texas analogue at Section 11.051 et seq. of the Texas Civil Practice and Remedies Code does not apply. *See id.* (declining to apply Tex. Civ. Prac. & Rem. Code 11.051-.057 in determining if sanctions were appropriate for vexatious conduct based on the principle that federal courts "do not automatically apply state statutes to claims filed in federal court," and no evaluation of whether the Texas vexatious litigant statute was substantive or procedural was necessary where jurisdiction was not based on diversity). Van Deelen cites no authority to the contrary. His reliance on the Texas vexatious litigant statute is misplaced, and his argument that Defendant must satisfy the elements under that statute to establish the propriety of sanctions is incorrect. The Court should apply the relevant federal standard in determining the propriety of sanctions against Van Deelen.

      2.  <u>Sanctions are appropriate.</u>

Defendant requests the imposition of sanctions pursuant to 11 U.S.C. § 105(a) and the Court's inherent authority under *Chambers* and its progeny (and further contends the Court also has authority pursuant to 28 U.S.C. § 1651(a) to impose sanctions). Van Deelen contends, without citing any authority, that the Court's inherent power to sanction conduct abusive of the judicial process as identified in the seminal *Chambers* case and its progeny has been "superseded" and that there are "no statutes, rules or procedures" authorizing the Court to sanction conduct "not directly defy[ing] the sanctioning court" or one of its orders.

Dkt. 63 at 30. Van Deelen is clearly wrong.[9] In the district court's order imposing a pre-filing injunction as sanctions against Van Deelen in the *City of Kansas City* case, the court relied in significant part on *Chambers* for its authority to sanction Van Deelen. *See City of Kansas City, Missouri*, 2006 WL 2077640, at \*13-14. The court also cited Eighth Circuit authority for the proposition that the court had discretion to "place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process," given that "[e]xcessive litigation imposes unnecessary burdens on, and the useless consumption of, court resources thereby increasing the public dissatisfaction and frustration with the courts," and, further, that "abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims." *Id*. at \*15. The same reasoning applies here.

First, imposing sanctions is generally warranted because the *Baum* factors are satisfied. The first factor is satisfied because, as illustrated in this Reply and in the Motion to Dismiss, Van Deelen has an extensive history of instigating highly contentious, long-lasting litigation. He has filed multiple lawsuits against attorneys (and others) who oppose his position. He has been deemed a vexatious litigant by another federal court and had pre-filing injunctive relief upheld against him by the Eighth Circuit.

---

[9] Van Deelen asserts other misplaced and irrelevant arguments in response to Defendant's request for sanctions, including that the Court lacks jurisdiction to sanction him for conduct occurring outside the courtroom, and that there is no basis to hold Van Deelen in contempt of court or sanction him for violating a court order because no such violation has occurred, which issues are not central to Defendant's request for sanctions.

The second factor is satisfied because Van Deelen's claims in this case against Defendant are not only frivolous, but also malicious. Van Deelen makes outrageous, unfounded allegations that can have no purpose other than to harass. They are merely an extension of his harassing behavior at the confirmation hearing. Van Deelen's claims are also duplicative—although he has shifted his focus to targeting individuals rather than McDermott, his claims are nothing more than a thinly-veiled attempt to relitigate his issues with the McDermott bankruptcy plan.

With respect to the third factor, Van Deelen has already imposed a significant burden on this Court and the defendants in this case with his filings, which have included four amended versions of his approximately fifty-page complaint, multiple motions to dismiss in response to his amendments, briefing in connection with the motion to remand, and two hearings on his motion to remand, with a third on August 9, not to mention the briefing, and lengthy evidentiary hearings in connection with his objections in the bankruptcy proceeding. Defendant has also filed a detailed Original Answer to Van Deelen's Amended Petition. Dkt. 61.

With respect to the fourth factor, sanctions other than dismissal and a pre-filing injunction will not suffice given Van Deelen's propensity for seeking to prolong litigation. Indeed, he expressly informed the undersigned counsel that if he did not succeed in getting his claims against Defendant remanded to state court, he would file a new state lawsuit against Defendant.[10]

---

[10] *See* Exhibit 3.

With respect to Defendant's request for a pre-filing injunction, specifically, such relief may issue if  (1) the litigant receives notice and a chance to be heard before the order is entered; (2) there is an adequate record of the cases or abusive activities undertaken by the litigant; (3) there is a substantive finding that the claims brought were frivolous or were brought with the intent to harass the parties; and (4) the scope of the injunction is narrowly prescribed to fit the abuse that the court seeks to prevent. *Alkasabi*, 2011 WL 1232341, at *9-10; *see also Bulls*, 2007 WL 9736125, at *2 (relitigation exception to Anti-Injunction Act permits federal courts to enjoin state court proceedings when necessary to "protect or effectuate its judgments" (internal citations omitted)).

As set forth above and in the Motion to Dismiss, Defendant contends (1) Van Deelen has received notice of Defendant's request and will have a chance to be heard regarding the requested relief; (2) there is ample support in the record of the vexatious, frivolous and abusive activities undertaken by Van Deelen; (3) Defendant requests for the Court to make a substantive finding that Van Deelen's claims against Defendant are frivolous and were brought with the intent to harass and contends that such finding is appropriately supported by the record; and (4) the scope of the injunction Defendant requests, which would enjoin Defendant from refiling his claims against Defendant in Texas federal or state court without seeking leave from this Court is tailored to the circumstances of concern.

Van Deelen has had a full opportunity to present his claims, with guidance from the Court, and yet has failed to state a claim for relief while simultaneously inserting frivolous and malicious claims for no apparent purpose other than to harass Defendant. Further suits

23

would needlessly consume this Court's and other courts' time and inappropriately and unjustly prejudice Defendant. Van Deelen's suit should be dismissed.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
     David J. Beck
     Texas Bar No. 00000070
     dbeck@beckredden.com
     Jacqueline M. Furlow
     Texas Bar No. 24087551
     jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT
JOSHUA A. SUSSBERG**

000843

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF notification system and via email and regular mail to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle, Spring, Texas 77379
michaelvandeelen@gmail.com

/s/ Jacqueline M. Furlow
Jacqueline M. Furlow

25

000844

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MCDERMOTT INTERNATIONAL, INC., *et al.* | ) | Case No. 20-30336 (DRJ) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| ——————————————— | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## DECLARATION OF DAVID J. BECK

I, David J. Beck, hereby declare under penalty of perjury:

1.    "My name is David J. Beck.  I am over 21 years of age, and I am fully competent to make this declaration.  I am a partner of the law firm Beck Redden, LLP and counsel of record for Defendant Joshua Sussberg in the above-captioned and styled cause. The facts stated herein are within my personal knowledge and are true and correct.

2.    Attached as Exhibit 2 to Defendant's Reply in Support of Motion to Dismiss and for Sanctions is a true and correct copy of email correspondence from Mach 5, a courier service, confirming delivery of a package containing Defendant's Original Answer to Michael Van Deelen's address identified in his pleadings in this case.

3.      Attached as Exhibit 3 to Defendant's Reply in Support of Motion to Dismiss and for Sanctions is a true and correct copy of email correspondence between myself and Michael Van Deelen.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct."

Executed in Houston, Texas, on August 6, 2021.

_____
David J. Beck

2

000847

# EXHIBIT 2

**From:** info@mach5couriers.com
**Date:** July 22, 2021 at 11:16:50 AM CDT
**To:** Michelle Bultman <mbultman@beckredden.com>
**Subject: Mach 5 Delivery Update -- Order: 655003**

*** This message came from outside Beck Redden LLP. ***

| Pickup Address | Deliver To Address |
|---|---|
| BECK REDDEN<br>1221 McKinney Street Suite 4500<br>Houston, TX 77010 | Michael Van Deelen<br>16215 Friar Circle, Spring, Tex<br>Spring, TX 77379 |
| Contact: MICHELLE BULTMAN | Contact: |
| Order placed by **MICHELLE BULTMAN** on **7/22/2021** | |
| Customer Reference: 1811.008 | |
| Proof of Delivery: **Package Left Front Door on 7/22/2021 at 11:15 AM** | |
| Instructions: Comments: Please deliver prior to 12:00 (noon). Thanks! DO NOT LEAVE PACKAGE At drop Michael Van Deelen 7139516253. If no answer call MICHELLE BULTMAN @ 713-951-6253 MWH | |
| Are you satisfied with our work on this order? Yes or No | |
| **We also provide Service of Process through easy-serve.** | |
| **Thank you for choosing Mach 5 Couriers** | |

1

000849

# EXHIBIT 3

000850

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Monday, July 26, 2021 2:14 PM
**To:** David J. Beck <DBECK@beckredden.com>
**Cc:** michaelvandeelen@gmail.com
**Subject:** Re: Representation of Joshua Sussberg

*** This message came from outside Beck Redden LLP. ***

has issued

Sent from my iPhone

On Jul 26, 2021, at 1:41 PM, Michael Van Deelen <michaelvandeelen@gmail.com> wrote:

Mr. Beck:

The court had issued a subpoena duces tecum with your name on it. Will you accept email service of the document from me?

Mike Van Deelen

Sent from my iPhone

On Jul 23, 2021, at 7:37 AM, Michael Van Deelen <michaelvandeelen@gmail.com> wrote:

It is embarrassing to watch you deny that you are aware of your trespassing onto my property yesterday.

You well know what you did.

I plan on introducing the photos at the August 9 hearing and in a lawsuit I am contemplating against you and Mr. Sussberg for your egregious 'in your face' behavior.

Sent from my iPhone

On Jul 22, 2021, at 8:03 PM, David J. Beck <DBECK@beckredden.com> wrote:

   Mr. Deelen, would you mind taking a photo of what you are referring to and emailing it to me?  Many thanks, David.

Get Outlook for iOS

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Thursday, July 22, 2021 6:57:26 PM
**To:** David J. Beck <DBECK@beckredden.com>
**Subject:** Re: Representation of Joshua Sussberg

*** This message came from outside Beck Redden LLP. ***

Then who put a package with your name on it on my porch?

Sent from my iPhone

On Jul 22, 2021, at 6:02 PM, David J. Beck <DBECK@beckredden.com> wrote:

   Mr. Deelen, of course not.

   David

Get Outlook for iOS

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Thursday, July 22, 2021 6:01 PM
**To:** David J. Beck
**Subject:** Re: Representation of Joshua Sussberg

*** This message came from outside Beck Redden LLP. ***

Mr. Beck:

Did you or one of your representatives come onto my property today?

Mike Van Deelen

Sent from my iPhone

On Jun 28, 2021, at 12:06 PM, Michael Van Deelen <michaelvandeelen@gmail.com> wrote:

Mr. Beck:

I am going to wait to serve Mr. Sussberg until after the August 9, 2021, hearing in federal case number 20-3309. I am not going to serve Mr. Sussberg in federal court since my claims against him are state claims. In the unlikely case that my claims against the other defendants (Dickson, Spence, Lamb) remain removed to federal court, I will file a separate claim against Mr. Sussberg in Texas state court.

Thank you for your patience.

Michael Van Deelen

Sent from my iPhone

On Jun 21, 2021, at 6:43 AM, Michael Van Deelen <michaelvandeelen@gmail.com> wrote:

I am considering amending the pleading to add additional defendants, so it may be a while before I serve you.

Sent from my iPhone

On Jun 19, 2021, at 5:18 PM, David J. Beck <DBECK@beckredden.com> wrote:

I am willing to agree that by receiving your filed pleading Mr. Sussberg is still not yet served, or alternatively that my receipt of your pleading constitutes service, whichever you prefer.

David

Get Outlook for iOS
_____
**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Saturday, June 19, 2021 5:09:38 PM
**To:** David J. Beck <DBECK@beckredden.com>
**Subject:** Re: Representation of Joshua Sussberg

*** This message came from outside Beck Redden LLP. ***

Will you assume he has been served after you receive the copy of the pleading?

On Sat, Jun 19, 2021 at 4:49 PM David J. Beck <DBECK@beckredden.com> wrote:
  Thank you, Mr. Van Deelen.  Would you send me a copy of your pleading?   David

Get Outlook for iOS

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Saturday, June 19, 2021 3:30:05 PM
**To:** David J. Beck <DBECK@beckredden.com>
**Subject:** Re: Representation of Joshua Sussberg

> | *** This message came from outside Beck Redden LLP. *** |
> That's right. He is not technically sued until he is served.

Sent from my iPhone

On Jun 19, 2021, at 3:25 PM, David J. Beck <DBECK@beckredden.com> wrote:

   Mr. Van Deelen, have you already filed your lawsuit against Mr. Sussberg and just not served it?   Many thanks, David.

**DAVID J. BECK, ESQ.**

Beck Redden LLP
1221 McKinney St., Suite 4500
Houston, TX 77010
Phone 713.951.6209
Fax    713.951.3720
dbeck@beckredden.com
www.beckredden.com


On Jun 19, 2021, at 9:49 AM, Michael Van Deelen <michaelvandeelen@gmail.com> wrote:


| *** This message came from outside Beck Redden LLP. *** |
Mr. Beck:

Do you mind if I wait to formally serve Mr. Sussberg until after the August 9, 2021, hearing in case number 20-3309?

Thank you,

Michael Van Deelen

On Fri, Jun 18, 2021 at 11:44 AM Michael Van Deelen <michaelvandeelen@gmail.com> wrote:
They filed it pretty quickly.

Sent from my iPhone

On Jun 18, 2021, at 10:58 AM, David J. Beck <DBECK@beckredden.com> wrote:

Mr. Van Deelen,

Following up on our prior communications, please be advised that I will be representing Mr. Sussberg in the lawsuit you indicated you intend to file.  Accordingly, I have been authorized to accept service of process on his behalf, provided, however, that such acceptance does not constitute a waiver of personal jurisdiction or any jurisdictional or other available defenses.

Thank you,

David

**DAVID J. BECK, ESQ.**
*Partner*

**Beck Redden LLP**
(713) 951-6209 ⏐ phone
(713) 951-3720 ⏐ fax

1221 McKinney Street ⏐ Suite 4500 ⏐ Houston, Texas 77010-2010

**website | bio | linkedin | vCard | map | dbeck@beckredden.com**

CONFIDENTIALITY NOTICE: Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this e-mail message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and immediately notify the sender by reply email or by calling 713.951.3700, so that our address record can be corrected. Thank you.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.* | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ——————————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

## <u>ORDER</u>

Pending before the Court is Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions ("Motion"). Having considered the Motion, response, reply, applicable law and arguments, the Court is of the opinion that the Motion should be GRANTED. The Court, therefore:

FINDS that Plaintiff Michael Van Deelen's claims brought against Defendant Joshua Sussberg are frivolous and brought with the intent to harass Defendant Sussberg;

FINDS that Plaintiff Michael Van Deelen has engaged in conduct over the course of these proceedings and in the related bankruptcy proceeding of McDermott International, Inc., Case No. 20-30336, that is vexatious, abusive of judicial process, and malicious;

FINDS that relief other than dismissal of Plaintiff's lawsuit against Defendant Sussberg and a pre-filing injunction in the form set forth below will not suffice to prevent Plaintiff from continuing to pursue vexatious and harassing litigation against Defendant Sussberg, and that the scope of the injunction ordered herein is narrowly prescribed to fit the abuse that this Court seeks to prevent;

ORDERS that all claims alleged against Defendant Sussberg in Plaintiff's Third Amended Petition are dismissed with prejudice;

ORDERS that Plaintiff is enjoined from filing suit against Defendant Sussberg in Texas federal or state court without first seeking leave to do so from this Court;

ORDERS that the Parties shall bear their respective attorneys' fees and costs of court; and

ORDERS the Clerk of the Court to take all necessary steps to close this Adversary Proceeding.

SIGNED on _____, 2021 at Houston, Texas.


_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[1] | § | Case No. 20-30336 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| MICHAEL VAN DEELEN | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 20-03309 |
| | § | |
| v. | § | |
| | § | |
| DAVID DICKSON, | § | |
| and STUART SPENCE, | § | |
| and SCOTT LAMB, and | § | |
| JOSHUA SUSSBERG, | § | |
| and 10 JOHN/JANE DOES | § | |
| | § | |
| Defendants. | § | |

## REPLY IN SUPPORT OF DEFENDANTS DAVID DICKSON, STUART SPENCE, AND SCOTT LAMB'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED PETITION

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

Defendants David Dickson, Stuart Spence, and Scott Lamb (collectively, "MDR Defendants") hereby file this Reply in Support of their Motion to Dismiss Plaintiff's Third Amended Petition, and in support thereof, would respectfully show the Court as follows:

## I.   PRELIMINARY STATEMENT

In his Response to MDR Defendants' Motion to Dismiss (the "Response"), Van Deelen does not even attempt to grapple with the MDR Defendants' argument that his common law fraud claim fails to satisfy the heightened pleading standard under Rule 9(b). Instead, Van Deelen adds a whole *new* set of claims against a *new* defendant, Mr. Sussberg, and argues that the Court lacks subject matter jurisdiction because his claims do not "relate to" McDermott's bankruptcy proceedings; that the Court should abstain from hearing the MDR Defendants' Motion to Dismiss; and that Rule 9(b) does not apply to state law claims. But Van Deelen's allegations, like all of his other iterations going back to his objection in the bankruptcy cases themselves, relate directly to his contention that the bankruptcy never should have been filed and somehow gives him a claim. Nor is there any basis for his argument that this Court should abstain from hearing the Motion, particularly given that his allegations now involve mischaracterizations about what happened in this Court and how this Court ruled.  Last, there is no question that Rule 9(b) applies to state law claims in federal court.  Given Van Deelen's failure to meet the pleading standard despite repeated opportunities to amend his complaint, the Court should dismiss Van Deelen's Third Amended Complaint *with prejudice*.

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

1.      Bankruptcy courts derive their subject matter jurisdiction from 28 U.S.C. §§ 1334 and 157. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303-05 (5th Cir. 2002). Together, and "[b]y way of district-court referral," these sections provide bankruptcy courts with the power to hear (1)

cases under title 11; (2) core proceedings "arising under" title 11; (3) core proceedings "arising in" a case under title 11; and (4) non-core proceedings "related to" a case under title 11. *See* 28 U.S.C. §§ 1334(b), 157(a)-(c)(1)

2.      The fourth category—"related to" proceedings—is the broadest, and encompasses any proceeding for which "the outcome . . . could *conceivably* have an effect . . . on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d at 304 (emphasis in original). Moreover, and because "the second, third, and fourth categories . . . operate conjunctively to define the scope of jurisdiction," bankruptcy courts often just need "to determine whether a matter is . . . 'related to' the bankruptcy." *Id.*

3.      Bankruptcy courts can even exercise jurisdiction over "related to" proceedings following confirmation.  In this regard, the Fifth Circuit has held that, following confirmation, and as far as non-core, "related to" proceedings are concerned, "bankruptcy jurisdiction[] ceases to exist" only if: (1) the claims primarily arise from post-confirmation relations between the parties; (2) no claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) no facts or law deriving from the bankruptcy are necessary to the claims. *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325, 335 (5th Cir. 2008) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). But "the Fifth Circuit has emphasized that  . . . all three factors [need] not weight heavily in the bankruptcy court's favor" for there to be jurisdiction. *In re MSB Energy, Inc.*, 438 B.R. 571, 586 (Bankr. S.D. Tex. 2010); *In re Enron Corp. Securities*, 535 F.3d at 335-36.

**B.      Mandatory Abstention**

4.      The party seeking mandatory abstention must show that: (1) the claim has no independent basis for federal jurisdiction, other than section 1334(b); (2) the claim is a non-core proceeding, *i.e.*, it is related or in a case under title 11; (3) an action has been commenced in state

court; and (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir.), *cert. denied*, 552 U.S. 1022, 128 S. Ct. 613 (2007).

5.      Specifically, the party seeking mandatory abstention must prove the existence of each element by a preponderance of the evidence. *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003). A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements. *Id*.; *see also In re Montalvo*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016) (the bankruptcy court refused to abstain because the fourth factor was not demonstrated).

## III.      <u>ARGUMENT</u>[2]

### A.    **The Court has subject matter jurisdiction under *Craig's Stores*.**

6.      In determining whether post-confirmation "related to" jurisdiction exists, courts first examine the *Craig's Stores* factors, which are whether: (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *In re Enron Corp. Securities*, 535 F.3d at 335; *In re MSB Energy, Inc.*, 438 B.R. at 571 (applying factors and finding that post-confirmation "related to" bankruptcy jurisdiction existed).

7.      In this case, Van Deelen's common law fraud claim arises from pre-confirmation relations between the parties. Indeed, Van Deelen bases this claim on actions that MDR Defendants allegedly took and misrepresentations MDR Defendants allegedly made in connection with and in the months leading up to McDermott's petition for relief under chapter 11. *See, e.g.*, Dkt. 57 ¶¶ 35, 39-40, 42-43, 45-46, 48, 51, 55, 58, 74, 99, 105, 108-112. The first *Craig's Stores*

---

[2]   MDR Defendants hereby incorporate by reference any arguments set forth in Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and/or any reply filed in support thereof to the extent such arguments are applicable to MDR Defendants.

factor therefore weighs in favor of the bankruptcy court's jurisdiction.  Similarly, Van Deelen's other claims concern alleged conduct during the plan confirmation hearing that Van Deelen alleges was intended to discourage him from challenging the plan and further pursuing the fraud allegations he had already raised to this Court in connection with the plan's confirmation.  As such, Van Deelen's claims clearly concern and arise from pre-confirmation relations between the parties. *See, e.g.*, *In re Blast Energy Servs., Inc.*, 396 B.R. 676, 684 (Bankr. S.D. Tex. 2008) ("[A]lthough the dispute arose post-confirmation, the claims against Hallwood . . . arose pre-confirmation. Thus, the claims at issue primarily deal with pre-confirmation relations between the parties[.]"); *In re MSB Energy, Inc.*, 438 B.R. at 586 (holding that the first factor "weighs heavily in favor of bankruptcy court jurisdiction" because "the subject of the Adversary Proceeding" occurred before the confirmation date).

8.      With regard to the second factor, there were clear "antagonisms" pending between the parties on the date of confirmation. At that time, Van Deelen had already filed a motion objecting to McDermott's plan of reorganization, and had accused the company and MDR Defendants of acting in bad faith "for the sole purpose of enriching McDermott's management and Board." (Bankr. Dkt. 510, Motion at 6-15.). Moreover, during the confirmation hearing itself, Van Deelen made certain threatening and vulgar remarks to counsel for the Debtors, such that the Debtors sought emergency relief from this Court to prohibit Van Deelen from further direct contact with the Debtors, their current or former officers, directors and employees, and their counsel. (Bankr. Dkt. 694 ¶¶ 7, 16.). This is more than enough to satisfy the second factor. *See, e.g.*, *In re MSB Energy, Inc.*, 438 B.R. at 586 (second factors "weighs heavily in favor" of bankruptcy court jurisdiction because the plaintiffs had filed a motion to lift the automatic stay and objected the reorganization plan prior to the confirmation hearing).

4

9.      At this point, and given that the first and second factors are satisfied here, the Court need not even consider the third factor to find that it has jurisdiction over this proceeding. *Id*. at 586-87 ("[P]ursuant to the analysis presented in *Enron*, the Court retains its jurisdiction even if the third factor fails.").

**B.      Mandatory Abstention is inappropriate because Van Deelen has not satisfied his burden of showing that this action could be adjudicated timely in state court, or that he commenced an action in state court against Mr. Sussberg.**

10.      Van Deelen did not satisfy his burden to show that his action could be adjudicated timely in state court, such that the Court should abstain here. Factors relevant to this prong include "(a) the extent to which the suit has already been prosecuted in state court, (b) the expectation of when the state court trial will commence, and (c) evidence in contravention that the state court could adjudicate the case timely." *In re Hallwood Energy, L.P.*, No. 09-31253-H4-11, 2009 WL 2601294, at *8 (Bankr. S.D. Tex. Aug. 24, 2009).

11.      In this case, Van Deelen has presented no evidence of prosecution, nor could he— Van Deelen has not prosecuted this action beyond filing his original petition in state court last year. While Van Deelen has repeatedly amended his complaint to *remove* claims against the MDR Defendants—from six claims to one—the basic underlying allegations remain the same in that Van Deelen takes issue with the bankruptcy filing and the plan that was confirmed.  At the same time, he *added* claims against Mr. Sussberg, a new party, based on alleged conduct that occurred during McDermott's bankruptcy proceedings. Indeed, Van Deelen never filed a lawsuit against Mr. Sussberg in state court or otherwise presented evidence of prosecution against Mr. Sussberg in state court. Nor has Van Deelen served or otherwise engaged in any discovery on any of his claims (new or old),  filed any motions or set such motions for hearing, or sought or obtained any orders from the state court. Given this lack of prosecution, and the Court's intimate familiarity with the bankruptcy proceedings on which Van Deelen has based his claims against the MDR

Defendants and Mr. Sussberg, mandatory abstention is inappropriate here.  *See, e.g.*, *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 846 n.29 (S.D. Tex. 2006) ("[T]he record reflects that during the 41 days that the suit was pending in [state] court, virtually nothing occurred. No hearings were held, no motions were filed, no discovery was conducted, and no orders were entered on the docket. Thus, unlike this Court, the Harris County District Court has no background at all about the nature of this lawsuit or the substantive issues to be adjudicated.").

12.    Another factor relevant to this analysis is whether the case was set for trial. Because Van Deelen does not—and cannot—show that his case against the MDR Defendants was set for trial prior to removal, the fourth prong of the mandatory abstention analysis weighs against abstention. . *See, e.g.*, *In re Montalvo*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016) (the bankruptcy court refused to abstain because the fourth factor was not demonstrated); *In re Petroleum Prod. & Servs., Inc.*, 561 B.R. 662, 666 (Bankr. S.D. Tex. 2016) (courts in this circuit view a docket-control order setting dates for trial as evidence "sufficient to show that the state court will be familiar with the case and prosecute it efficiently"); *see also In re Mugica*, 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007) (mandatory abstention was required when the plaintiffs demonstrated a history of prosecution in state court, including a trial setting).

13.    Finally, as it relates to Van Deelen's claims against Mr. Sussberg, the third prong also weighs against abstention. In connection with these claims, Van Deelen fails to show (because he cannot) that he commenced an action in state court against Mr. Sussberg. It would be inappropriate to remand the case as to Mr. Sussberg—a new defendant—against whom Van Deelen never filed claims in state court, and judicial economy dictates that it would be equally inappropriate to remand as to the MDR Defendants given the overlapping allegations against all of the Defendants.

14.     As such, in the absence of any evidence that Van Deelen has prosecuted his action, that trial is to commence on a given date, or that Van Deelen brought his case against Mr. Sussberg in state court, the third and fourth prongs of the mandatory abstention analysis weighs against abstention, and the Court should deny Van Deelen's request. *See In re Lorax Corp.*, 295 B.R. at 90 (party not entitled to mandatory abstention if it fails to prove any one of the statutory requirements)..

**C.     Van Deelen's common law fraud claim fails to satisfy the heightened pleading standards under Rule 9(b).**

15.     Finally, Van Deelen argues that because he did not plead federal claims, he was not required to satisfy the heightened pleading standards under Rule 9(b).  *See* Dkt. 62 at 16.  But whether Rule 9(b) applies to a given claim simply turns on the forum in which such claim is pending and the nature of the allegations supporting the claim.  Where, as here, a party is litigating his claims in federal court, and where the claims "alleg[e] fraud or mistake," the heightened pleading standards of Rule 9(b) apply.  *See* Fed. R. Civ. P. 9(b); *see also, e.g.*, *Shandong Yinguang Chemical Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (dismissing Texas common law fraud claim under Rule 9(b)).

16.     Van Deelen did not satisfy those standards here.  Indeed, as set forth in the MDR Defendants' Motion to Dismiss, Van Deelen fails to identify with sufficient particularity the "false representations" that MDR Defendants individually made to him, and he fails to plead any facts showing, with respect to MDR Defendants' alleged omissions, that the MDR Defendants had a duty to disclose the allegedly omitted information.  Van Deelen has accordingly failed to plead his claims with the requisite particularity, and the Court should dismiss his Third Amended Complaint with prejudice.

### IV.      <u>**CONCLUSION**</u>

Despite repeated opportunities to amend and ample guidance from the Court, Van Deelen has failed to plead a claim that can proceed against the MDR Defendants.  Given that Van Deelen's common law fraud claim arises from pre-confirmation relations between the parties, and that there were clear antagonisms pending between the parties on the date of confirmation, the Court has subject matter jurisdiction over this action. Mandatory abstention is inappropriate here because Van Deelen has not satisfied his burden of showing that his action could be adjudicated timely in state court and Van Deelen added a defendant who was never even sued in state court. Finally, because Van Deelen has failed to satisfy the heightened pleading standards applicable to his common law fraud claim under Rule 9(b), the Court should dismiss Van Deelen's Third Amended Complaint with prejudice.

Houston, Texas
Dated:  August 6, 2021

Respectfully submitted,

/s/ Matthew D. Cavenaugh

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Facsimile:   (713) 752-4221
Email:        mcavenaugh@jw.com
                   jwertz@jw.com
                   kpeguero@jw.com
                   vpolnick@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anna G. Rotman, P.C. (TX Bar No. 24046761)
Jamie Alan Aycock (TX Bar No. 24050241)
609 Main Street
Houston, TX 77002
Telephone:   (713) 836-3600
Facsimile:   (713) 836-3601
Email:        anna.rotman@kirkland.com
                   jamie.aycock@kirkland.com

-and-

John Christian (TX Bar No. 24109727)
1601 Elm Street
Dallas, TX 75201
Telephone:   (214) 972-1770
Facsimile:   (214) 972-1771
Email:        john.christian@kirkland.com

*Counsel to the MDR Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2021, I caused a true and correct copy of the foregoing document to be served via the Court's ECF notification system to the parties listed below at the email addresses listed.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
michaelvandeelen@gmail.com

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

# UNITED STATES BANKRUPTCY COURT

## Southern District of Texas

PDF FILE WITH AUDIO FILE ATTACHMENT

2020-03309

Van Deelen v. Dickson et al

---

| | |
|---|---|
| Case Type : | ap |
| Case Number : | 2020-03309 |
| Case Title : | Van Deelen v. Dickson et al |
| Audio Date\Time: | 8/9/2021 11:00:08 AM |
| Audio File Name : | 4ap2020-03309_20210809-110008.mp3 |
| Audio File Size : | 14351 KB |
| Audio Run Time : | [00:29:54] (hh:mm:ss) |

---

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon.  Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ——————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL**
**MOTION FOR SANCTIONS**

TO THE HONORABLE CHIEF JUDGE DAVID R. JONES:

Defendant Joshua Sussberg files this Supplemental Motion for Sanctions against

Plaintiff Michael Van Deelen pursuant to 11 U.S.C. § 105, 28 U.S.C. § 1651(a),  and this

Court's inherent power to manage its proceedings and the conduct of litigants before it to

re-urge the propriety of sanctions to stop Mr. Van Deelen from continuing to pursue

litigation against attorneys involved in the McDermott bankruptcy and in this adversary

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

1

proceeding. In particular, Defendant files this Supplemental Motion to bring to the Court's attention an email Mr. Van Deelen sent to the undersigned counsel immediately after the August 9 hearing on Plaintiff's Motion to Remand and the Defendants' Motions to Dismiss:

---

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Monday, August 9, 2021 12:21:56 PM
**To:** David J. Beck <DBECK@beckredden.com>
**Subject:** Re: Representation of Joshua Sussberg

**\*\*\* This message came from outside Beck Redden LLP. \*\*\***

Mr. Beck:

I was expecting the court to rule on my claim against Sussberg today. I was also expecting the court to deny your frivolous motions today. Since the court did not try to prevent me from filing suit against you, I am going to go ahead and file my planned trespassing suit against you, Sussberg and your "process server" in the next several days.

1. Will you accept email service on behalf of yourself?

2. Will you accept email service on behalf of Sussberg?

3. My process server will serve your "process server" directly.

Please respond to this email as soon as possible.  Time is of the essence.

Thank you,

Michael Van Deelen

Sent from my iPhone

---

As shown in the email, Mr. Van Deelen now plans to file a lawsuit against the undersigned counsel, in addition to the one against Mr. Sussberg. Notably, he says: "I am going to go ahead and file my planned trespassing suit against you" because "***the court did not try to prevent me from filing suit against you***." Plainly, Mr. Van Deelen's comment is concrete evidence of his intent to continue pursuing lawsuits against individuals associated with the McDermott bankruptcy and this related adversary proceeding unless and until the Court intervenes to stop him. Mr. Van Deelen's specific targeting of counsel of record in these proceedings is for no purpose other than to harass and intimidate, and is a clear abuse of the judicial process. This Court has the inherent authority to police this

type of conduct, and Defendant and the undersigned counsel respectfully request that the Court do so here.

## **ARGUMENT**

### A. This Court has jurisdiction and authority to order sanctions against Mr. Van Deelen dismissing his lawsuit and enjoining future filings.

As noted in Defendant's original motion for sanctions and reply in support, this Court has "related-to" jurisdiction over this proceeding, and also has jurisdiction and authority pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651(a) (the All Writs Act) to issue an injunction to the extent "necessary and appropriate to address vexatious conduct" by Mr. Van Deelen. *Alkasabi v. Rampart Acquisition Corp. L.L.C.,* 2011 WL 1232341, at \*10 (S.D. Tex. Mar. 31, 2011); *see also Chevron Global Energy Inc. v. Bulls*, 2007 WL 9736125, at \*2 (S.D. Tex. Dec. 5, 2007) (relitigation exception to Anti-Injunction Act permits federal courts to enjoin state court proceedings when necessary to "protect or effectuate its judgments" (internal citations omitted)). In particular, "[t]he United States Supreme Court has held that federal courts possess *the inherent power to police the conduct of the attorneys and parties* who appear in the federal courts." *In re Ruth*, 473 B.R. 152, 166 (Bankr. S.D. Tex. 2012) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991) (emphasis added)). And "[i]n addition to the judicially-created inherent powers articulated in *Chambers,* § 105(a) of the Code specifically allows bankruptcy courts to issue any order that is 'necessary or appropriate to carry out the provisions' of the Bankruptcy Code or 'to prevent an abuse of process.'" *In re David*, 487 B.R. 843, 870 (Bankr. S.D. Tex. 2013) (citing 11 U.S.C. § 105(a)).

3

This Court's authority extends to enjoining "plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). The Fifth Circuit has "defined vexatious litigation as conduct that evidences 'bad faith, motive, or reckless disregard of the duty owed to the courts.'" *In re Ruth*, 473 B.R. at 166 (citing *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998)). At least one bankruptcy judge "has characterized vexatious litigation as conduct that leads to increased costs for the opposing party and multiplicity in litigation." *Id.* (citing *In re Rollings*, 2008 WL 899300, at *9 (Bankr. S.D. Tex. Mar. 31, 2008)). There is no question Mr. Van Deelen's improper targeting of Mr. Sussberg and the undersigned counsel has resulted, and will result, in increased costs and needless multiplicity of litigation. Mr. Van Deelen's tactics are not only harassing, but also needlessly wasting judicial resources.

In considering Defendant's request for sanctions, the bankruptcy case of *In re David* is instructive. 487 B.R. 843 (Bankr. S.D. Tex. 2013). In that case, then Chief Judge Bohm imposed sanctions against the debtor in connection with the Court's order requiring the debtor to show cause why he should not be sanctioned for, in relevant part, using a fake name and social security number in his Chapter 13 petition. *Id.* The Court described the matter as arising "out of violations by a party appearing before the Court of federal law, state law, and various Federal and Local Bankruptcy Rules," as well as the Court's show cause order, which was "issued in order to maintain the integrity of the bankruptcy system." *Id.* at 867. The Court found it had authority pursuant to its inherent authority, 11 U.S.C. §

4

105(a), and *Chambers*, according to which "the Court may police the conduct of parties appearing before it and impose sanctions on those who misbehave." *Id*. (citing *Chambers*, 501 U.S. 32). The Court concluded, therefore, that the matter was "easily distinguishable from *Stern*," and that the court possessed "constitutional authority to enter a final order imposing sanctions." *Id*. Accordingly, this Court has statutory and constitutional authority to enter an order imposing sanctions on Mr. Van Deelen for his abuses of judicial process and harassing conduct, in addition to its inherent authority under *Chambers* and its progeny.

## B. Dismissal and a pre-filing injunction are necessary to stop the misconduct at issue.

As shown in Defendant's Motion to Dismiss, Reply in Support, and herein regarding Mr. Van Deelen's recent threat to file suit against the undersigned counsel, Mr. Van Deelen has engaged in a pattern of vexatious, frivolous and harassing conduct over the course of these proceedings that this Court has the statutory and inherent authority to curb with an appropriate order. Mr. Van Deelen's conduct is plainly vexatious, harassing, and pursued in bad faith. For example, any lawsuit for "trespassing" against the undersigned counsel based on service of a pleading by a process server or courier on Mr. Van Deelen in this proceeding could never pass muster under Federal Rule of Civil Procedure 11. As this Court well knows, any party signing a pleading under Rule 11 must certify that the pleading is filed in good faith, not filed for an improper purpose, and that the claims are supported by the facts and existing law. Fed. R. Civ. P. 11(b)(1)-(3). Mr. Van Deelen could not possibly certify, in good faith, that a legal "trespass" occurred by service of a pleading from

an opposing party in a lawsuit he initiated, especially when he signs his pleadings with his home address as the one to be used for this proceeding. Nor could such service of process constitute a trespass as a matter of law. Mr. Van Deelen's new threatened lawsuit plainly has no legitimate basis or purpose other than to harass, intimidate, and waste the resources of the parties and this Court.

At the August 9 hearing, the undersigned counsel noted, that "if you look at the history of Mr. Van Deelen and his pattern of conduct, you will see, that anybody who confronts his position in any way, suddenly, they become a target." Dkt. 71 (8/9/2021 Hearing AUDIO) at 17:23-17:33. Mr. Van Deelen's post-hearing email to the undersigned counsel regarding filing another lawsuit is just the most recent example of a series of bad faith and vexatious actions Mr. Van Deelen has taken in connection with these proceedings. Resorting to the Court's inherent power "to sanction a vexatious litigant [is] appropriate where there [is] repeated bad-faith conduct," as there is here. *Newby*, 302 F.3d at 302.

## CONCLUSION AND PRAYER FOR RELIEF

Defendant set forth the factors for imposing sanctions and imposing a pre-filing injunction, specifically, under applicable authority, in section C of Defendant's Reply in Support of Motion to Dismiss and for Sanctions and reiterates and incorporates section C by reference as if fully set forth herein. Defendant respectfully submits that for the reasons stated in his prior briefing and in this Supplemental Motion, sanctions in this case, including dismissal of Mr. Van Deelen's suit with prejudice and enjoining Plaintiff from filing or re-filing these or similar claims against Mr. Sussberg, Kirkland & Ellis LLP, David

J. Beck, Beck Redden LLP, the process server, and anyone acting on their behalf in connection with the administration of these proceedings without permission from this Court before doing so.

<div align="right">

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
    David J. Beck
    Texas Bar No. 00000070
    dbeck@beckredden.com
    Jacqueline M. Furlow
    Texas Bar No. 24087551
    jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT
JOSHUA A. SUSSBERG**

</div>

## CERTIFICATE OF SERVICE

    I hereby certify that on August 13, 2021, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF notification system and via email and regular mail to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle, Spring, Texas 77379
michaelvandeelen@gmail.com

<div align="right">

*/s/ Jacqueline M. Furlow*
    Jacqueline M. Furlow

</div>

000876

United States Courts
Southern District of Texas
F I L E D

AUG 1 6 2021

Nathan Ochsner, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| et,al | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTON FOR SANCTIONS (DOC. 72); PLAINTIFF'S MOTION TO STRIKE DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTON FOR SANCTIONS; PLAINTIFF'S MOTION FOR SANCTIONS; REQUEST FOR HEARING; PROPOSED ORDER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

COMES NOW Michael Van Deelen and for his Response to

Defendant Joshua Sussberg's Supplemental Motion ("Supplemental

Motion") for Sanctions (Doc. 72); his Motion to Strike the Supplemental

Motion; and his Motion for Sanctions states as follows:

## The Supplemental Motion was made in bad faith.

Page 2 of the Supplemental Motion shows the Court an email sent to

Sussberg's Counsel David Beck by plaintiff on August 9, 2021, informing

him that plaintiff was going to file a trespassing suit.

What Beck hides from the Court is plaintiff's emails to him on August

13, 2021.

On August 13, 2021, plaintiff became aware that Sussberg probably

had cancer on the date of the plan confirmation hearing, March 12, 2020,

and that he may still have cancer.  When plaintiff found this out, he realized

that Sussberg's improper behavior towards him during and after the plan

confirmation hearing could very well have been due to the stress caused by

his cancer and/or the medication he must have been taking.  Plaintiff cannot,

in all good conscience, sue Sussberg under such circumstances.  Being a

brute is one thing, being sick is quite another.

Accordingly, on August 13, 2021, at 12:50 pm, plaintiff emailed Beck

and informed him that plaintiff would consider dismissing his case against

Sussberg if Sussberg had cancer at the time of the plan confirmation hearing or currently has cancer.  Plaintiff gave Beck until 5:00 pm on August 13, 2021, to respond.  (Exhibit 1, page 3).   Beck never responded.

At 1:27 pm, plaintiff emailed Beck and informed him that the trespassing suit was 'on hold until we get this [dismissal] worked out.' (Exhibit 1, page 5).  Beck never responded.

At 2:10 pm, plaintiff emailed Jamie Aycock, attorney for the other defendants and told him plaintiff would consider dismissing his suit against Sussberg if Sussberg had cancer at the time of the plan confirmation hearing or currently has cancer.  Aycock never responded.

Instead of responding to plaintiff's offer to entertain settlement, Beck waited until 8:37 pm the same day, August 13, 2021, to file and serve the Supplemental Motion.  (Exhibit 2).  Said motion, while continuing to demonize the plaintiff, makes no mention of either plaintiff's offer to entertain settlement or his abeyance of the trespassing suit made seven and one-half hours earlier.  Beck tried to hide plaintiff's good-faith attempts to resolve the disputes from this Court while simultaneously asking this Court to sanction the plaintiff.

There is nothing in the Supplemental Motion which shows that plaintiff has engaged in sanctionable conduct.  (Plaintiff incorporates herein

Doc. 63, Plaintiff's Response to Defendant Joshua Sussberg's Motion to

Dismiss Plaintiff's Third Amended Petition and for Sanctions.)

### The Supplemental Motion violates the court's local rules and should be stricken.

The Supplemental Motion does not include the required boilerplate

that *must* be included (BLR 9013 -1(b)) or a pleading that *must* be included

requesting a hearing setting on his Supplemental Motion.  Plaintiff

accordingly moves that the Supplemental Motion be stricken.

### Sussberg and his counsel David Beck trespassed on plaintiff's property.

On July 22, 2021, Beck and Sussberg trespassed on plaintiff's

property.  (Doc. 67, the CD showing the trespass, is incorporated herein by

reference.)

Trespassing is a tort in Texas and plaintiff can seek redress for it.

A person does not have to physically do the trespassing to be held

liable for it.  The defendant may be any person or entity who actually enters

the property, causes someone  else to enter the property, encourages the

trespass, or adopts the act of a trespasser for his own benefit.  *Gregg v.*

*Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex.1961).

Interestingly, Beck does not argue in his Supplemental Motion that he

or Sussberg didn't trespass on plaintiff's property.  Instead, Beck wants to

4

engage in illegal, thuggish behavior and then run whining to this Court for protection.

Given Sussberg's cancer diagnosis and recovery, plaintiff does not intend to sue Sussberg for trespassing (or anything else). See Plaintiff's Motion to Dismiss Claims Against Joshua Sussberg.

Why would Beck ignore plaintiff's efforts to settle and instead ask this Court to sanction plaintiff by preventing plaintiff from suing Beck (and others)? Precisely because Beck knows he is liable to plaintiff for trespass.

**Sussberg is not immune from suit**

Even if plaintiff still wanted to sue Sussberg after learning of his cancer problems (he does not), he could do so because Sussberg is not immune from plaintiff's suit for assault and common law fraud. The Plan confirmed during the 3/12/20 plan confirmation hearing carves out common law fraud and assault from the Plan's Exculpation Provision. Assault is a willful, direct injury that is not covered by the Plan's Exculpation provision. Plaintiff incorporates herein the Plan confirmed during the 3/12/20 plan confirmation hearing and its subsequent iterations.

The Fifth Circuit, in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987), adopted the "related to" jurisdictional test articulated by the Third Circuit, which enjoys broad support, that looks at "whether the

5

outcome of that proceeding could conceivably have any effect on the estate

being administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor,*

*Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In applying the test, the

Fifth Circuit looked to see whether the proceeding was "sufficiently related

to the pending bankruptcy to allow the district court to exercise jurisdiction

under section 1334," which is to say that **"plaintiff's claims must *affect* the**

**estate, not just the debtor** (emphasis added)." *Id.* at 93-94.

The key word here is *affect*.  Nowhere in Sussberg's Motion to

Dismiss and for Sanctions or his Supplemental Motion does he argue that

plaintiff's allegations against him (fraud, assault) any way affected the

bankruptcy estate.

The Fifth Circuit further fleshed out what it means to "affect the

estate" in *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res.,*

*L.L.C.)*, 912 F.3d 291 (5th Cir. 2019).  In that case, the Fifth Circuit

classified injuries as "direct" or "derivative".

In *Meridian*, the Fifth Circuit stated:

"Whether the bankruptcy estate or a creditor can pursue a claim against third
parties is a recurring issue in bankruptcy law. *In re Seven Seas Petroleum,*
*Inc.*, 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the
creditor has suffered a direct injury or one that is derivative of an injury to
the debtor. Id. at 584. If the harm to the creditor comes about only because
of harm to the debtor, then its injury is derivative, and the claim is property
of the estate. Id.; see also 11 U.S.C. § 541(a)(1). In that situation, only the

6

bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. *Seven Seas*, 522 F.3d at 584.

As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate. Id. at 584 (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. *Seven Seas*, 522 F.3d at 585, 590; Educators Trust, 25 F.3d at 1284–85."

Established Fifth Circuit case law classifies fraud as a direct injury that is beyond the jurisdiction of the Court.  See, for example, *In re Seven Seas Petroleum*, 522 F.3d 575, 584-85 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d at 1284 (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987)); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994).

During the March 10, 2021, hearing in this action, the Court (Judge Jones) stated on the record that fraud is a direct injury.

Furthermore, assault is a willful, direct injury that is not covered by the Plan's Exculpation provision as seen herein.

Nowhere in any of his pleadings does Sussberg controvert plaintiff's Third Amended Petition allegations that his injuries resulting from Sussberg's alleged actions against him were direct injuries or that Sussberg's

alleged actions in no way harmed the debtor. The estate simply has no interest in plaintiff's claims against Sussberg.

The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction. See, for example, *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). "[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug,* 19 B.R. 223, 224-25 (Bankr.D.Ore.1982); See also *In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981). "Bankruptcy court lacks jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest."

### Sanctions against Beck are appropriate because he has continuously attempted to deceive this court.

Beck has continuously attempted to deceive this Court. Of particular concern is Beck's false statement to this Court in Sussberg's Motion to Dismiss and for Sanctions that plaintiff called the court a "son of a b****" during the Plan Confirmation Hearing and his false citation as to an audio clip where the alleged comment can be heard. (Page 25-26, Doc. 63; Doc. 67; Doc. 59).

8

Now in the Supplemental Motion, Beck attempts to deceive this Court once again by not telling the Court that, prior to Beck's filing the Supplemental Motion, plaintiff attempted to discuss dismissing his case against Sussberg and abated the potential trespassing suit complained about in the subsequent Supplemental Motion!

District courts can impose sanctions using their inherent authority only if they find that the sanctioned person acted in bad faith. *Chambers v. NASCO,* inc., 501 U.S. 32, 49-50 (1991).

Bad faith may be found in a party's conduct in *response* to a substantive claim, whether before or after an action is filed. *Prince v. Colven*, case No. 3:13-cv-4804-P-BN, Northern District of Texas, Dallas Division. (Note that bad faith cannot be found in the act of bringing a suit [forming the basis of a substantive claim], *Id.*, which defeats Sussberg's claim for sanctions against the plaintiff.)

For the reasons shown to the Court herein, plaintiff moves this Court to sanction Beck sua sponte in a manner to be fashioned by the Court that will cause Beck to cease his bad faith behavior.

WHEREFORE, Plaintiff respectfully moves this Court to deny in its entirety Defendant Sussberg's Supplemental Motion; to strike Defendant

000885

Sussberg's Supplemental Motion and to sua sponte sanction Beck for his bad faith behavior.

Plaintiff requests a hearing on the motions herein at the earliest possible date.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of August, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

000886

# EXHIBIT 1

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

### Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>
To: "David J. Beck" <DBECK@beckredden.com>

Fri, Aug 13, 2021 at 11:30 AM

Does Sussberg have cance?

Sent from my iPhone
[Quoted text hidden]

000888

 **Gmail**

<div align="right">Michael Van Deelen &lt;michaelvandeelen@gmail.com&gt;</div>

---

### Representation of Joshua Sussberg

---

**Michael Van Deelen** &lt;michaelvandeelen@gmail.com&gt;                    Fri, Aug 13, 2021 at 11:31 AM
To: "David J. Beck" &lt;DBECK@beckredden.com&gt;
Cc: michaelvandeelen@gmail.com

Cancer

Sent from my iPhone
[Quoted text hidden]

000889

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                     Fri, Aug 13, 2021 at 12:50 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

If he has cancer or if he had it at the time of the plan confirmation hearing, I will consider dismissing my case afainst him.
Please respond by 5:00 pm today.
Sent from my iPhone
[Quoted text hidden]

3

000890

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                    Fri, Aug 13, 2021 at 12:52 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

against

Sent from my iPhone
[Quoted text hidden]

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

## Representation of Joshua Sussberg

**Michael Van Deelen** <michaelvandeelen@gmail.com>                    Fri, Aug 13, 2021 at 1:27 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

Trespassing suit on hold untill we get this worked out.

Sent from my iPhone
[Quoted text hidden]

000892

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

## Sussberg health
1 message

**Michael Van Deelen** <michaelvandeelen@gmail.com>                   Fri, Aug 13, 2021 at 2:10 PM
To: jamie.aycock@kirkland.com
Cc: michaelvandeelen@gmail.com

If Mr. Sussberg has cancer now or had it during the plan confirmation hearing, I will consider dismissing my suit against him with prejudice. I have given Mr. Beck until 5 pm today to respond.
Sent from my iPhone

000893

# EXHIBIT 2

To accept charges shown below, click on the 'View Document' button, otherwise click the 'Back' button on your browser.

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| Fri Aug 13 20:37:29 2021 | | | |
| **Pacer Login:** | mvandeelen | **Client Code:** | |
| **Description:** | Image:72-0 | **Case Number:** | 20-03309 |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

View Document

000895

 Gmail

Michael Van Deelen <michaelvandeelen@gmail.com>

---

## Van Deelen v. Sussberg
1 message

---

Jackie M. Furlow <jfurlow@beckredden.com>                    Fri, Aug 13, 2021 at 8:33 PM
To: "michaelvandeelen@gmail.com" <michaelvandeelen@gmail.com>
Cc: "David J. Beck" <DBECK@beckredden.com>, Michelle Bultman <mbultman@beckredden.com>, Debra Hooks
<dhooks@beckredden.com>

Mr. Van Deelen,


Please find attached a copy of Defendant's Supplemental Motion for Sanctions filed this evening in the above-referenced
matter.


Thank you,


Jackie


**JACQUELINE M. FURLOW**
*Associate*


**Beck Redden LLP**


(713) 951-6276 | phone
(713) 951-3720 | fax


Beck | Redden ʟʟᴘ


1221 McKinney Street | Suite 4500 | Houston, Texas 77010-
2010


website | bio | linkedin | vCard | map | jfurlow@beckredden.com


**CONFIDENTIALITY NOTICE:** Unless otherwise indicated or obvious from the nature of the
transmittal, the information contained in this e-mail message is attorney privileged and
confidential information intended for the use of the individual or entity named above. If the
reader of this message is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in
error, do not read it. Please delete it from your system without copying it, and immediately notify
the sender by reply email or by calling 713.951.3700, so that our address record can be
corrected. Thank you.



**Defendant Joshua Sussberg's Supplemental Motion for Sanctions.pdf**
138K

3

000897

United States Courts
Southern District of Texas
F I L E D

AUG 1 6 2021

Nathan Ochsner, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| et,al | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTON FOR SANCTIONS (DOC. 72); PLAINTIFF'S MOTION TO STRIKE DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTON FOR SANCTIONS; PLAINTIFF'S MOTION FOR SANCTIONS; REQUEST FOR HEARING; PROPOSED ORDER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

COMES NOW Michael Van Deelen and for his Response to

Defendant Joshua Sussberg's Supplemental Motion ("Supplemental

Motion") for Sanctions (Doc. 72); his Motion to Strike the Supplemental

Motion; and his Motion for Sanctions states as follows:

**The Supplemental Motion was made in bad faith.**

Page 2 of the Supplemental Motion shows the Court an email sent to

Sussberg's Counsel David Beck by plaintiff on August 9, 2021, informing

him that plaintiff was going to file a trespassing suit.

What Beck hides from the Court is plaintiff's emails to him on August

13, 2021.

On August 13, 2021, plaintiff became aware that Sussberg probably

had cancer on the date of the plan confirmation hearing, March 12, 2020,

and that he may still have cancer.  When plaintiff found this out, he realized

that Sussberg's improper behavior towards him during and after the plan

confirmation hearing could very well have been due to the stress caused by

his cancer and/or the medication he must have been taking.  Plaintiff cannot,

in all good conscience, sue Sussberg under such circumstances.  Being a

brute is one thing, being sick is quite another.

Accordingly, on August 13, 2021, at 12:50 pm, plaintiff emailed Beck

and informed him that plaintiff would consider dismissing his case against

Sussberg if Sussberg had cancer at the time of the plan confirmation hearing or currently has cancer. Plaintiff gave Beck until 5:00 pm on August 13, 2021, to respond. (Exhibit 1, page 3). Beck never responded.

At 1:27 pm, plaintiff emailed Beck and informed him that the trespassing suit was 'on hold until we get this [dismissal] worked out.' (Exhibit 1, page 5). Beck never responded.

At 2:10 pm, plaintiff emailed Jamie Aycock, attorney for the other defendants and told him plaintiff would consider dismissing his suit against Sussberg if Sussberg had cancer at the time of the plan confirmation hearing or currently has cancer. Aycock never responded.

Instead of responding to plaintiff's offer to entertain settlement, Beck waited until 8:37 pm the same day, August 13, 2021, to file and serve the Supplemental Motion. (Exhibit 2). Said motion, while continuing to demonize the plaintiff, makes no mention of either plaintiff's offer to entertain settlement or his abeyance of the trespassing suit made seven and one-half hours earlier. Beck tried to hide plaintiff's good-faith attempts to resolve the disputes from this Court while simultaneously asking this Court to sanction the plaintiff.

There is nothing in the Supplemental Motion which shows that plaintiff has engaged in sanctionable conduct. (Plaintiff incorporates herein

Doc. 63, Plaintiff's Response to Defendant Joshua Sussberg's Motion to

Dismiss Plaintiff's Third Amended Petition and for Sanctions.)

## The Supplemental Motion violates the court's local rules and should be stricken.

The Supplemental Motion does not include the required boilerplate

that *must* be included (BLR 9013 -1(b)) or a pleading that *must* be included

requesting a hearing setting on his Supplemental Motion.  Plaintiff

accordingly moves that the Supplemental Motion be stricken.

## Sussberg and his counsel David Beck trespassed on plaintiff's property.

On July 22, 2021, Beck and Sussberg trespassed on plaintiff's

property.  (Doc. 67, the CD showing the trespass, is incorporated herein by

reference.)

Trespassing is a tort in Texas and plaintiff can seek redress for it.

A person does not have to physically do the trespassing to be held

liable for it.  The defendant may be any person or entity who actually enters

the property, causes someone  else to enter the property, encourages the

trespass, or adopts the act of a trespasser for his own benefit.  *Gregg v.*

*Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex.1961).

Interestingly, Beck does not argue in his Supplemental Motion that he

or Sussberg didn't trespass on plaintiff's property.  Instead, Beck wants to

4

engage in illegal, thuggish behavior and then run whining to this Court for protection.

Given Sussberg's cancer diagnosis and recovery, plaintiff does not intend to sue Sussberg for trespassing (or anything else). See Plaintiff's Motion to Dismiss Claims Against Joshua Sussberg.

Why would Beck ignore plaintiff's efforts to settle and instead ask this Court to sanction plaintiff by preventing plaintiff from suing Beck (and others)? Precisely because Beck knows he is liable to plaintiff for trespass.

## Sussberg is not immune from suit

Even if plaintiff still wanted to sue Sussberg after learning of his cancer problems (he does not), he could do so because Sussberg is not immune from plaintiff's suit for assault and common law fraud. The Plan confirmed during the 3/12/20 plan confirmation hearing carves out common law fraud and assault from the Plan's Exculpation Provision. Assault is a willful, direct injury that is not covered by the Plan's Exculpation provision. Plaintiff incorporates herein the Plan confirmed during the 3/12/20 plan confirmation hearing and its subsequent iterations.

The Fifth Circuit, in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987), adopted the "related to" jurisdictional test articulated by the Third Circuit, which enjoys broad support, that looks at "whether the

outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 825 F.2d at at 93, n.15 (citing to *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In applying the test, the Fifth Circuit looked to see whether the proceeding was "sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334," which is to say that **"plaintiff's claims must *affect* the estate, not just the debtor** (emphasis added)." *Id.* at 93-94.

The key word here is ***affect***. Nowhere in Sussberg's Motion to Dismiss and for Sanctions or his Supplemental Motion does he argue that plaintiff's allegations against him (fraud, assault) any way affected the bankruptcy estate.

The Fifth Circuit further fleshed out what it means to "affect the estate" in *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291 (5th Cir. 2019). In that case, the Fifth Circuit classified injuries as "direct" or "derivative".

In *Meridian*, the Fifth Circuit stated:

"Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. Id. at 584. If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. Id.; see also 11 U.S.C. § 541(a)(1). In that situation, only the

bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. *Seven Seas*, 522 F.3d at 584.

As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate. Id. at 584 (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. *Seven Seas*, 522 F.3d at 585, 590; Educators Trust, 25 F.3d at 1284–85."

Established Fifth Circuit case law classifies fraud as a direct injury that is beyond the jurisdiction of the Court.  See, for example, *In re Seven Seas Petroleum*, 522 F.3d 575, 584-85 (5th Cir. 2008); *In re Educators Group Health Trust*, 25 F.3d at 1284 (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987)); *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994).

During the March 10, 2021, hearing in this action, the Court (Judge Jones) stated on the record that fraud is a direct injury.

Furthermore, assault is a willful, direct injury that is not covered by the Plan's Exculpation provision as seen herein.

Nowhere in any of his pleadings does Sussberg controvert plaintiff's Third Amended Petition allegations that his injuries resulting from Sussberg's alleged actions against him were direct injuries or that Sussberg's

alleged actions in no way harmed the debtor. The estate simply has no interest in plaintiff's claims against Sussberg.

The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction. See, for example, *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). "[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug,* 19 B.R. 223, 224-25 (Bankr.D.Ore.1982); See also *In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981). "Bankruptcy court lacks jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest."

### Sanctions against Beck are appropriate because he has continuously attempted to deceive this court.

Beck has continuously attempted to deceive this Court. Of particular concern is Beck's false statement to this Court in Sussberg's Motion to Dismiss and for Sanctions that plaintiff called the court a "son of a b****" during the Plan Confirmation Hearing and his false citation as to an audio clip where the alleged comment can be heard. (Page 25-26, Doc. 63; Doc. 67; Doc. 59).

8

Now in the Supplemental Motion, Beck attempts to deceive this Court once again by not telling the Court that, prior to Beck's filing the Supplemental Motion, plaintiff attempted to discuss dismissing his case against Sussberg and abated the potential trespassing suit complained about in the subsequent Supplemental Motion!

District courts can impose sanctions using their inherent authority only if they find that the sanctioned person acted in bad faith. *Chambers v. NASCO*, inc., 501 U.S. 32, 49-50 (1991).

Bad faith may be found in a party's conduct in *response* to a substantive claim, whether before or after an action is filed. *Prince v. Colven*, case No. 3:13-cv-4804-P-BN, Northern District of Texas, Dallas Division. (Note that bad faith cannot be found in the act of bringing a suit [forming the basis of a substantive claim], *Id.*, which defeats Sussberg's claim for sanctions against the plaintiff.)

For the reasons shown to the Court herein, plaintiff moves this Court to sanction Beck sua sponte in a manner to be fashioned by the Court that will cause Beck to cease his bad faith behavior.

WHEREFORE, Plaintiff respectfully moves this Court to deny in its entirety Defendant Sussberg's Supplemental Motion; to strike Defendant

Sussberg's Supplemental Motion and to sua sponte sanction Beck for his bad faith behavior.

Plaintiff requests a hearing on the motions herein at the earliest possible date.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of August, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

# EXHIBIT 1

000908

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                                  Fri, Aug 13, 2021 at 11:30 AM
To: "David J. Beck" <DBECK@beckredden.com>

Does Sussberg have cance?

Sent from my iPhone
[Quoted text hidden]

000909

 **Gmail**

Michael Van Deelen <michaelvandeelen@gmail.com>

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

Fri, Aug 13, 2021 at 11:31 AM

Cancer

Sent from my iPhone
[Quoted text hidden]

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                     Fri, Aug 13, 2021 at 12:50 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com


If he has cancer or if he had it at the time of the plan confirmation hearing, I will consider dismissing my case afainst him.
Please respond by 5:00 pm today.
Sent from my iPhone
[Quoted text hidden]

3

000911

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                Fri, Aug 13, 2021 at 12:52 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

against

Sent from my iPhone
[Quoted text hidden]

000912

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Representation of Joshua Sussberg

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                    Fri, Aug 13, 2021 at 1:27 PM
To: "David J. Beck" <DBECK@beckredden.com>
Cc: michaelvandeelen@gmail.com

Trespassing suit on hold untill we get this worked out.

Sent from my iPhone
[Quoted text hidden]

---

$\varsigma$

 Gmail

**Michael Van Deelen <michaelvandeelen@gmail.com>**

---

## Sussberg health
1 message

---

**Michael Van Deelen** <michaelvandeelen@gmail.com>                    Fri, Aug 13, 2021 at 2:10 PM
To: jamie.aycock@kirkland.com
Cc: michaelvandeelen@gmail.com

---

If Mr. Sussberg has cancer now or had it during the plan confirmation hearing, I will consider dismissing my suit against him with prejudice. I have given Mr. Beck until 5 pm today to respond.
Sent from my iPhone

6

000914

# EXHIBIT 2

To accept charges shown below, click on the 'View Document' button, otherwise click the 'Back' button on your browser.

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| Fri Aug 13 20:37:29 2021 | | |
| **Pacer Login:** | mvandeelen | **Client Code:** | |
| **Description:** | Image:72-0 | **Case Number:** | 20-03309 |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

View Document

000916

 Gmail

Michael Van Deelen <michaelvandeelen@gmail.com>

---

## Van Deelen v. Sussberg

1 message

---

**Jackie M. Furlow** <jfurlow@beckredden.com>  Fri, Aug 13, 2021 at 8:33 PM
To: "michaelvandeelen@gmail.com" <michaelvandeelen@gmail.com>
Cc: "David J. Beck" <DBECK@beckredden.com>, Michelle Bultman <mbultman@beckredden.com>, Debra Hooks
<dhooks@beckredden.com>

Mr. Van Deelen,


Please find attached a copy of Defendant's Supplemental Motion for Sanctions filed this evening in the above-referenced
matter.


Thank you,


Jackie


**JACQUELINE M. FURLOW**
*Associate*


**Beck Redden LLP**


(713) 951-6276 | phone
(713) 951-3720 | fax


Beck | Redden ᴸᴸᴾ


1221 McKinney Street | Suite 4500 | Houston, Texas 77010-
2010


**website | bio | linkedin | vCard | map | jfurlow@beckredden.com**


**CONFIDENTIALITY NOTICE:** Unless otherwise indicated or obvious from the nature of the
transmittal, the information contained in this e-mail message is attorney privileged and
confidential information intended for the use of the individual or entity named above. If the
reader of this message is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in
error, do not read it. Please delete it from your system without copying it, and immediately notify
the sender by reply email or by calling 713.951.3700, so that our address record can be
corrected. Thank you.



**Defendant Joshua Sussberg's Supplemental Motion for Sanctions.pdf**
138K

3

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER DENYING DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTION FOR SANCTIONS, GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT JOSHUA SUSSBERG'S SUPPLEMENTAL MOTION FOR SANCTIONS AND GRANTING PLAINTIFF'S MOTION TO SANCTION DAVID BECK FOR HIS BAD FAITH BEHAVIOR

The Court, having considered Defendant Joshua Sussberg's Supplemental Motion

for Sanctions as well as Plaintiff's Response to Defendant Joshua Sussberg's

Supplemental Motion for Sanctions; Plaintiff's Motion to Strike Defendant Joshua

Sussberg's Supplemental Motion for Sanctions and Plaintiff's Motion to Sanction David

Beck, as well as the evidence presented, finds that

Defendant Joshua Sussberg's Supplemental Motion for Sanctions is DENIED.

Plaintiff's Motion to Strike Defendant Joshua Sussberg's Supplemental Motion for

Sanctions is GRANTED.

Plaintiff's Motion to Sanction David Beck for His Bad Faith Behavior is

GRANTED.

The Court:

ORDERS that Defendant Joshua Sussberg's Supplemental Motion for Sanctions is

DENIED.

ORDERS that Plaintiff's Motion to Strike Defendant Joshua Sussberg's

Supplemental Motion for Sanctions is GRANTED.

ORDERS that Plaintiff's Motion to Sanction David Beck for His Bad Faith

Behavior is GRANTED.


_____

JUDGE
UNITED STATES BANKRUPTCY COURT

000920

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

AUG 1 6 2021

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| In re: | ) |
| | ) |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) |
| | ) |
| Reorganized Debtor(s). | ) |
| | ) |
| _____ | ) |
| | ) |
| MICHAEL VAN DEELEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID DICKSON, | ) |
| et,al | ) |
| | ) |
| Defendants. | ) |

Chapter 11

Case No. 20-30336

(Jointly Administered)

Adv. Proc. No. 20-3309

## PLAINTIFF'S MOTION TO DISMISS CLAIMS AGAINST DEFENDANT JOSHUA SUSSBERG; REQUEST FOR HEARING; PROPOSED ORDER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

COMES NOW Michael Van Deelen and moves to dismiss his Third

Amended Petition clams against defendant Joshua Sussberg pursuant to Fed.

R. Civ. Proc. Rule 41(a)(2). Plaintiff incorporates herein his Response to Defendant Joshua Sussberg's Supplemental Motion ("Supplemental Motion") for Sanctions; his Motion to Strike the Supplemental Motion; and his Motion for Sanctions.

Plaintiff seeks dismissal of his claims against Sussberg for the following reasons:

## Until August 13, 2021, plaintiff was not aware that defendant Sussberg had cancer during the 3/12/20 plan confirmation hearing.

On August 13, 2021, plaintiff became aware that Sussberg had cancer on the date of the plan confirmation hearing, March 12, 2020, and that he may still have cancer. When plaintiff found this out, he realized that Sussberg's improper behavior towards him during and after the plan confirmation hearing discussed in Plaintiff's Third Amended Petition could very well have been due to the stress caused by his cancer and/or the medication he must have been taking. Plaintiff cannot, in all good conscience, sue Sussberg under such circumstances. Being a brute is one thing, being sick is quite another.

## Plaintiff did not intend to sue Sussberg in Federal court

Plaintiff incorporates by reference herein his Plaintiff's Response to Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions. (Doc. 63). Plaintiff thought he had an agreement

2

with Sussberg's counsel, David Beck, that Sussberg would not accept service of plaintiff's state law claims until this case was remanded to state court. Instead, Sussberg made an appearance in this court after plaintiff's state law-only claims were filed.  (Doc. 63, p. 2-4).

### This court does not have jurisdiction to hear plaintiff's claims against Sussberg.

Plaintiff alleges in his Plaintiff's Third Amended Petition that the actions of Sussberg against plaintiff were injuries that directly harmed the plaintiff and in no way harmed the debtor.  Nowhere in any of Sussberg's filings does he controvert plaintiff's allegations.

Because the actions of Sussberg against plaintiff were injuries that directly harmed the plaintiff and in no way harmed the debtor, this Court does not have jurisdiction over plaintiff's claims against Sussberg.  (Doc. 63, p. 5-11).

In addition, mandatory abstention from hearing plaintiff's claims against Sussberg is warranted.  (Doc. 63, p. 11-16).

### Voluntary dismissal should be freely granted.

Fed. R. Civ. Proc. Rule 41(a)(2).

WHEREFORE, Plaintiff respectfully moves this Court to dismiss his Third Amended Petition clams against defendant Joshua Sussberg pursuant to Fed. R. Civ. Proc. Rule 41(a)(2).

Plaintiff requests a hearing on the motion herein at the earliest possible date.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of August, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS CLAIMS AGAINST**
**DEFENDANT JOSHUA SUSSBERG**

The Court, having considered Plaintiff's Motion to Dismiss Claims Against

Defendant Joshua Sussberg, as well as the evidence presented, finds that Plaintiff's

Motion to Dismiss Claims Against Defendant Joshua Sussberg is GRANTED.

The Court:

ORDERS that Plaintiff's Motion to Dismiss Claims Against Defendant Joshua

Sussberg is GRANTED.

_____
JUDGE
UNITED STATES BANKRUPTCY COURT

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 16 2021

Nathan Ochsner, Clerk of Court

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |

## **REQUEST FOR HEARING**

Plaintiff seeks a hearing before the Honorable David Jones, United States Bankruptcy Court, Southern District of Texas, Houston Division, at the earliest possible date, as follows:

1. Plaintiff's Motion to Dismiss Claims Against Defendant Joshua Sussberg.

2. Defendant Joshua Sussberg's Supplemental Motion for Sanctions.

3. Plaintiff's Motion to Strike Defendant Joshua Sussberg's Supplemental Motion for Sanctions.

4. Plaintiff's Motion to Sanction David Beck for His Bad Faith Behavior.

5. Defendant Joshua Sussberg's Motion to Take Judicial Notice.

Parties should consult the Court's protocol regarding video and telephonic appearances.

DATED: August 16, 2021

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Plaintiff (Pro Se)
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of August, 2021, served a true and correct copy of the foregoing document on the defendants via the court-approved eFiling system, which will forward a copy thereof to all attorneys of record.

/s/ Michael Van Deelen
Michael Van Deelen

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.*[1] | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**DEFENDANT JOSHUA SUSSBERG'S REPLY IN SUPPORT OF
SUPPLEMENTAL MOTION FOR SANCTIONS, RESPONSE TO
PLAINTIFF'S MOTION TO DISMISS, AND RESPONSE TO
<u>PLAINTIFF'S MOTION TO STRIKE AND FOR SANCTIONS</u>**

TO THE HONORABLE CHIEF JUDGE DAVID R. JONES:

Defendant files this Reply in Support of Supplemental Motion for Sanctions and

Response to Plaintiff's Motion to Strike and for Sanctions, and to Plaintiff's Motion to

Dismiss to make three brief points:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North Eldridge Parkway, Houston, Texas 77079.

1

1. The Supplemental Motion was filed to advise the Court of post-August 9 hearing information relating to issues already addressed in Defendant's original Motion for Sanctions, so the technical requirements Van Deelen cites neither apply nor justify striking the Supplemental Motion;

2. Mr. Van Deelen's August 13 correspondence and Motion to Dismiss are nothing more than an improper attempt to maneuver his lawsuit against Mr. Sussberg out of this Court so that he may re-file it in Texas state court; and

3. Mr. Van Deelen's Motion for Sanctions against the undersigned counsel for filing the Supplemental Motion is patently meritless.

Defendant addresses each of these points, in turn.

### A. The Supplemental Motion for Sanctions should be upheld and the Motion to Strike should be denied.

Defendant filed the Supplemental Motion for Sanctions for the specific purpose of advising the Court of certain developments that occurred after the August 9 hearing related to Mr. Sussberg's original Motion for Sanctions. Specifically, the Supplemental Motion provided this Court with correspondence Mr. Van Deelen sent to the undersigned counsel immediately after the hearing on August 9, in which Mr. Van Deelen informed the undersigned counsel: "I am going to go ahead and file my planned trespassing suit against you" because "***the court did not try to prevent me from filing suit against you***." Mr. Van Deelen asked the undersigned counsel to accept service on behalf of himself and Mr. Sussberg, and said he would directly serve the "process server" who delivered one of Defendant's pleadings to Mr. Van Deelen. In response to Mr. Van Deelen's specific threat in his August 9 email, Defendant filed the Supplemental Motion to make the Court aware of these facts and request that the relief already requested in Mr. Sussberg's original Motion for Sanctions also include Kirkland & Ellis LLP, David J. Beck, Beck Redden LLP, the

"process server," and anyone acting on their behalf in the administration of these proceedings.[2]

Mr. Van Deelen filed a Motion to Strike Defendant's Supplemental Motion for Sanctions on the grounds that it did not contain the boilerplate "negative notice" language in Local Rule 9013-1(b) and did not request a hearing. Defendant respectfully submits such actions were unnecessary. Plainly, Plaintiff has notice of this adversary proceeding, the procedural posture of this case, and the relief Defendant seeks, so that the lack of the negative notice provision does not prejudice Plaintiff in any way. Further, the Supplemental Motion was filed solely to provide additional information regarding a course of misconduct that had already been addressed in Mr. Sussberg's original Motion for Sanctions. Defendant does not believe an additional hearing is necessary or would be productive. Nor do the technicalities on which Mr. Van Deelen's Motion to Strike are based justify the relief he seeks. The Motion to Strike should be denied and Defendant's request for sanctions should be granted.

**B. Plaintiff's Motion to Dismiss should be denied because it is nothing more than a thinly-veiled attempt to maneuver his lawsuit against Mr. Sussberg out of this Court so that he may re-file it in state court.**

Plaintiff's Motion to Dismiss seeks to dismiss his lawsuit against Mr. Sussberg on the purported grounds that Plaintiff believes Mr. Sussberg has or had cancer at the time of the Plan Confirmation Hearing, while in the same breath re-urging his bases for

---

[2] To the extent the Court deems necessary, an amended proposed Order is being filed contemporaneously herewith.

maintaining a suit against Mr. Sussberg in state court. Mr. Van Deelen does not seek to bring finality to his frivolous suit against Mr. Sussberg. Instead, the Motion to Dismiss is nothing more than an improper attempt to obtain dismissal of Van Deelen's suit against Mr. Sussberg *without prejudice* so that he can re-file his claims in Texas state court. Mr. Van Deelen could have asked this Court to dismiss this lawsuit against Mr. Sussberg with prejudice at this time. He did not. Further, Van Deelen's attempt to exploit speculations about Mr. Sussberg's health to extract a dismissal is not just improper, it is harassing and malicious. If anything, the Motion to Dismiss only further underscores the need for this Court's assistance to stop Mr. Van Deelen's misconduct and protect the parties and their counsel appearing before this Court.

### C. Plaintiff's Motion for Sanctions should be denied because it is patently meritless.

Plaintiff contends Defendant's counsel filed the Supplemental Motion in "bad faith" because the motion was filed after Plaintiff claims he made "efforts to settle" his pending lawsuit against Mr. Sussberg and threatened lawsuit against the undersigned counsel. Mr. Van Deelen plainly made no offer to settle, nor did he state an unequivocal intent to dismiss, with prejudice, his lawsuit and refrain from pursuing further action against Mr. Sussberg. Instead, Mr. Van Deelen's email said he would "consider" dismissing his lawsuit "if" Mr. Sussberg has or had cancer at the time of the Plan Confirmation Hearing.

Mr. Van Deelen's emails, like his Motion to Dismiss, do not seek resolution. Rather, it appears Van Deelen was merely attempting to manipulate counsel into providing information he wanted to exploit to extract a dismissal without prejudice. Counsel had no

obligation to respond to these emails. Mr. Van Deelen's machinations in his bad-faith attempt to prolong this frivolous litigation must end. Defendant's Supplemental Motion for Sanctions is appropriate and was filed in good faith. Plaintiff's Motion for Sanctions should be denied. [3]

## CONCLUSION AND PRAYER FOR RELIEF

Defendant set forth the factors for imposing sanctions and imposing a pre-filing injunction in section C of Defendant's Reply in Support of Motion to Dismiss and for Sanctions, and reiterates and incorporates section C by reference as if fully set forth herein. Defendant respectfully submits that for the reasons stated in his prior briefing and in this Supplemental Motion, sanctions in this case, including dismissal of Mr. Van Deelen's suit with prejudice and enjoining Plaintiff from filing or re-filing his meritless claims against Mr. Sussberg, Kirkland & Ellis LLP, David J. Beck, Beck Redden LLP, the process server, and anyone acting on their behalf in connection with the administration of these proceedings without permission from this Court before doing so; and further requests that Plaintiff's Motion to Strike, Motion for Sanctions, and Motion to Dismiss all be denied.

---

[3] Van Deelen cites *Prince v. Colven*, 94 F. Supp. 3d 787 (N.D. Tex. 2015) for the proposition that "bad faith" conduct cannot be found "in the act of bringing a suit" but only "in response to a substantive claim," contending that this both supports his claim for sanctions and defeat's defendant's claim for sanctions. However, *Prince* concerned applying the EAJA's bad-faith exception to a shift of attorney's fees; it does not apply to this case and does not stand for the proposition Mr. Van Deelen claims it does. Mr. Van Deelen cites no applicable authority to contest Defendant's request for sanctions.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ David J. Beck*
      David J. Beck
      Texas Bar No. 00000070
      dbeck@beckredden.com
      Jacqueline M. Furlow
      Texas Bar No. 24087551
      jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR DEFENDANT
JOSHUA A. SUSSBERG**

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF notification system and via email and regular mail to the party listed below at the email address provided.

Michael Van Deelen
16215 Friar Circle, Spring, Texas 77379
michaelvandeelen@gmail.com

      */s/ Jacqueline M. Furlow*
      Jacqueline M. Furlow

6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.* | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ———————————————— | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## <u>ORDER</u>

Pending before the Court are (1) Plaintiff's Motion to Dismiss Claims Against Defendant Joshua Sussberg (Dkt. 75); (2) Plaintiff's Motion to Strike Defendant Joshua Sussberg's Supplemental Motion for Sanctions (Dkt. 74); and (3) Plaintiff's Motion for Sanctions (Dkt. 74). Having considered each of the foregoing motions, responses, any replies, applicable law and arguments, the Court is of the opinion that each of the motions should be DENIED. The Court, therefore:

ORDERS that Plaintiff's Motion to Dismiss Claims Against Defendant Joshua Sussberg is DENIED; the Court further

ORDERS that Plaintiff's Motion to Strike Defendant Joshua Sussberg's Supplemental Motion for Sanctions is DENIED; the Court further

ORDERS that Plaintiff's Motion for Sanctions is DENIED.

SIGNED on _____, 2021 at Houston, Texas.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC., *et al.* | ) | |
| | ) | Case No. 20-30336 (DRJ) |
| Reorganized Debtors. | ) | |
| ──────────────────────────── | ) | (Jointly Administered) |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 20-03309 |
| v. | ) | |
| | ) | |
| DAVID DICKSON, STUART SPENCE, | ) | |
| SCOTT LAMB, JOSHUA SUSSBERG and 10 | ) | |
| JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |
| ──────────────────────────── | ) | |

## ORDER

Pending before the Court is Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions ("Motion"). Having considered the Motion, response, reply, applicable law and arguments, the Court is of the opinion that the Motion should be GRANTED. The Court, therefore:

FINDS that Plaintiff Michael Van Deelen's claims brought against Defendant Joshua Sussberg are frivolous and brought with the intent to harass Defendant Sussberg;

FINDS that Plaintiff Michael Van Deelen has engaged in conduct over the course of these proceedings and in the related bankruptcy proceeding of McDermott International, Inc., Case No. 20-30336, that is vexatious, abusive of judicial process, and malicious;

FINDS that relief other than dismissal of Plaintiff's lawsuit against Defendant Sussberg and a pre-filing injunction in the form set forth below will not suffice to prevent Plaintiff from continuing to pursue vexatious and harassing litigation against Defendant Sussberg, and that the scope of the injunction ordered herein is narrowly prescribed to fit the abuse that this Court seeks to prevent;

ORDERS that all claims alleged against Defendant Sussberg in Plaintiff's Third Amended Petition are dismissed with prejudice;

ORDERS that Plaintiff is enjoined from filing suit against Defendant Sussberg, Kirkland & Ellis LLP, David J. Beck, Beck Redden LLP, the process server who delivered Defendant Sussberg's Original Answer to Mr. Van Deelen, and anyone acting on their behalf in connection with the administration of these proceedings in Texas federal or state court without first seeking leave to do so from this Court;

ORDERS that the Parties shall bear their respective attorneys' fees and costs of court; and

ORDERS the Clerk of the Court to take all necessary steps to close this Adversary Proceeding.

SIGNED on _____, 2021 at Houston, Texas.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 08, 2021

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MCDERMOTT INTERNATIONAL, INC., *et al.*,[3] | § | Case No. 20-30336 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| | § | |
| MICHAEL VAN DEELEN | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 20-03309 |
| | § | |
| v. | § | |
| | § | |
| DAVID DICKSON, | § | |
| and STUART SPENCE, | § | |
| and SCOTT LAMB, | § | |
| and 10 JOHN/JANE DOES | § | |
| | § | |
| Defendants. | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | (Docket No. 36) |

**ORDER GRANTING DEFENDANTS' EMERGENCY MOTION TO SEAL**

Upon the motion (the "Motion")[4] of the above-captioned Defendants (collectively, the

"Defendants" or "McDermott") for entry of an order (this "Order"), authorizing them to file certain

the Van Deelen Communications under seal, all as more fully set forth in the Motion; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. §1334; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); and this Court having found

that it may enter a final order consistent with Article III of the United States Constitution; and this

---

[3] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.primeclerk.com/McDermott. The location of Debtor McDermott
International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 757 North
Eldridge Parkway, Houston, Texas 77079.

[4] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Defendants' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Defendants are authorized to file the Van Deelen Communications under seal.

2.      Except upon further order of the Court after notice to the Defendants, the Van Deelen Communications shall remain under seal, and shall not be made available to anyone without order of the Court including in response to any Freedom of Information Act requests.

3.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

4.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5.      The Defendants are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  September 08, 2021.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

000939

United States Courts
Southern District of Texas
F I L E D

OCT 08 2021

Nathan Ochsner, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MCDERMOTT INTERNATIONAL, INC, *et al* | ) | |
| | ) | Case No. 20-30336 |
| Reorganized Debtor(s). | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MICHAEL VAN DEELEN | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 20-3309 |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DICKSON, | ) | |
| and STUART SPENCE, | ) | |
| and SCOTT LAMB, | ) | |
| and JOSHUA SUSSBERG, | ) | |
| and 10 JOHN/JANE DOES | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S NOTICE OF APPEAL

NOTICE is hereby given that Michael Van Deelen, plaintiff in the above-captioned

action, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the final

Order granting Defendants' Emergency Motion to Seal (Docket 36).

Respectfully submitted:

/s/ Michael Van Deelen
Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

1

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served on the defendants by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on the 8th day of October, 2021.

> /s/ Michael Van Deelen
> Michael Van Deelen
> 16215 Friar Circle
> Spring, TX 77379
> 832-562-0723
> michaelvandeelen@gmail.com

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 12, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-30336** |
| **MCDERMOTT INTERNATIONAL, INC.,** | § | |
| *et al.,* | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **MICHAEL VAN DEELEN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3309** |
| | § | |
| **DAVID DICKSON,** *et al.,* | § | |
| | § | |
| Defendants. | § | |

## ORDER
### (Docket Nos. 4, 5, 7, 51, 54, 59, 60, 68, 72, 74, 75)

Before the Court are multiple motions to dismiss, motions to remand, motions to strike, motions for sanctions and related responses. After a careful review of the pleadings and multiple hearings, the Court grants limited relief as set forth below.

### Main Case Background

The Debtor and approximately 225 affiliates (the "Debtors") filed chapter 11 cases on January 21, 2020. [Docket No. 1, Case No. 20-30336]. The cases were filed as complex cases pursuant to the Procedures for Complex Cases in the Southern District of Texas (the "Complex Procedures") [Docket No. 17, Case No. 20-30336]. By Order entered January 22, 2020, the cases were jointly administered. [Docket No. 57, Case No. 20-30336].

On January 22, 2020, the Debtors filed their proposed disclosure statement and plan of reorganization. [Docket Nos. 4 and 5, Case No. 20-30336]. The Debtors filed their first amended plan of reorganization later the same day (the "Plan"). [Docket No. 121, Case No. 20-30336]. At the time of its filing, the Plan was supported by an overwhelming majority of the Debtors' creditors. [Docket No. 27, Case No. 20-30336]. In accordance with the Complex Procedures, the Debtors requested a consolidated hearing on the adequacy of the disclosure statement and confirmation of the Plan. [Docket No. 27, Case No. 20-30336]. By Order entered January 23, 2020, the Court granted the request and set a joint hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed Plan for March 12, 2020. [Docket No. 160, Case No. 20-30336].

1 / 13

By handwritten letter docketed on January 28, 2020, Michael Van Deelen notified the Court that he was an "equity holder and party in interest" and that he intended "to intervene in this case and argue against the confirmation of McDermott's bankruptcy plan." [Docket No. 253, Case No. 20-30336].  Mr. Van Deelen did not file a proof of claim in the case.

On February 19, 2020, Mr. Van Deelen filed his motion for the appointment of a trustee or examiner under 11 U.S.C. § 1104 and request for hearing. [Docket No. 436, Case No. 20-30336]. Mr. Van Deelen filed his amended motion for a trustee or an examiner on February 20, 2020. [Docket No. 441, Case No. 20-3336].

On February 27, 2020, Mr. Van Deelen filed his "Motion for an Order Sustaining Party in Interest's Opposition and Objection to Confirmation of Debtor's Plan, Granting Party in Interest's Modified Plan, in Whole or in Part, and Ordering an Investigation Pursuant to 18 U.S.C. Section 158(d) and 18 U.S.C. Section 3057; Proposed Order Attached." [Docket No. 509, Case No. 20-30336].  In the motion, Mr. Van Deelen represented that he is "an expert financial analyst" and "a competent pro se litigant." [Docket No. 509, Case No. 20-30336].  Included in the pleading is a list of Mr. Van Deelen's litigation successes.  [Docket No. 509, Case No. 20-30336].

On February 27, 2020, Mr. Van Deelen also filed his objection to confirmation of the Debtors' Plan. [Docket No. 510, Case No. 20-30336].  The pleading is substantially, if not completely, a duplicate of Docket No. 509.  Concurrent with the filing, Mr. Van Deelen also submitted his witness and exhibit list. [Docket No. 511, Case No. 20-30336].  Mr. Van Deelen listed himself both as a fact witness and an expert witness on the Debtors' financial operations. [Docket No. 511, Case No. 20-30336].  On March 2, 2020, Mr. Van Deelen filed his own expert report.  [Docket No. 527, Case No. 20-30336].

On March 4, 2020, Mr. Van Deelen filed a motion to continue the confirmation hearing. [Docket No. 557, Case No. 20-30336].  Mr. Van Deelen's stated basis for the request was the requirement of proof that the purchaser of the Debtors' Lummus Technology business had the financial ability to complete its purchase. [Docket No. 557, Case No. 20-30336].  Mr. Van Deelen filed a separate hearing request on March 5, 2020.  [Docket No. 559, Case No. 20-30336].   After reviewing the pleadings, the Court scheduled a hearing on the motion for continuance for March 9, 2020. [Unnumbered Docket Entry on March 5, 2020, Case No. 20-30336].  The Debtors filed their response on March 8, 2020. [Docket No. 582, Case No. 20-30336].

On March 9, 2020, the Court convened a hearing to consider Mr. Van Deelen's request for a continuance. [Unnumbered Docket Entry on March 9, 2020, Case No. 20-30336].   After considering the arguments of the parties, the Court denied the motion by order entered the same day. [Docket No. 587, Case No. 20-30336]; [Transcript at Docket No. 664].  In its order, the Court stated that it would "consider the issues raised by Mr. Van Deelen in the motion as part of his objection to confirmation of the Debtors' proposed plan." [Docket No. 587, Case No. 20-30336].

The Debtors subsequently resolved substantially all outstanding confirmation objections other than the objections raised by Mr. Van Deelen.  These resolutions and other non-substantive

amendments were embodied in the Second Amended Chapter 11 Plan filed on March 11, 2020 (the "Amended Plan").  [Docket No. 620, Case No. 20-30336].

On March 12, 2020, the Court convened a hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed Amended Plan. [Unnumbered Docket Entry on March 12, 2020, Case No. 20-30336].  After considering the evidence and arguments of the parties, the Court approved the disclosure statement on a final basis and confirmed the Debtors' Amended Plan.  [Docket No. 684, Case No. 20-30336].  During the hearing, Mr. Van Deelen became combative and threatened to sue Debtors' counsel for having threatened him and the Court for violating his civil rights.  [Transcript 3/12/2020, Docket No. 690, pages 172-73].   The Court specifically found Mr. Van Deelen's objection to be frivolous. [Transcript 3/12/2020, Docket No. 690, page 180].

On March 17, 2020, the Debtors filed their motion seeking to have Mr. Van Deelen appear before the Court and show cause why he should not be held in contempt for threatening behavior and inappropriate conduct. [Docket No. 694, Case No. 20-30336].  Mr. Van Deelen filed his response denying the substance of the Debtors' motion on March 18, 2020. [Docket No. 701, Case No. 20-30336].  The Debtors subsequently filed an affidavit of a witness confirming the events set forth in the Debtors' motion. [Docket No. 706, Case No. 20-30336].

By Order entered March 23, 2020, the Court (i) prohibited Mr. Van Deelen from contacting the Court's staff; (ii) required that any communication to the Court be made in writing and filed with the Clerk of the Court; (iii) prohibited Mr. Van Deelen from contacting Joshua Sussberg or any member of his family; and (iv) barred Mr. Van Deelen from entering the federal courthouse unless escorted by a court security officer.  [Docket No. 719, Case No. 20-30336].  In entering this relief, the Court noted Mr. Van Deelen's propensity to make false statements and determined that Mr. Van Deelen posed a legitimate risk to the safety of courthouse staff and litigants that oppose his position. [Docket No. 719, Case No. 20-30336].

Mr. Van Deelen filed a petition for a writ of mandamus with the Fifth Circuit Court of Appeals on June 2, 2020. [Case No. 20-20286, USCA].  The petition was denied by order entered March 12, 2021. [Case No. 20-20286, USCA].

## The Adversary Proceeding

On June 23, 2020, Mr. Van Deelen sued David Dickson, Stuart Spence and Scott Lamb— each a current or former officer of the Debtors—as well as 10 unknown John/Jane Does in the 284th Judicial District Court of Montgomery County, Texas (the "State Court Lawsuit"). [Docket No. 1].   The petition asserts various claims related to the loss of value of Mr. Van Deelen's common shares in the Debtors.  The defendants removed the State Court Lawsuit to this Court on July 17, 2020. [Docket No. 1].  In the Notice of Removal, the defendants stated that removal was proper as the "adjudication of the claims requires interpretation and enforcement of this Court's Confirmation Order, which releases and exculpates Defendants from certain claims that have been brought." [Docket No. 1].

Mr. Van Deelen filed his motion to remand on July 23, 2020. [Docket No. 4].  In the motion, Mr. Van Deelen asserted that the Court lacked jurisdiction to adjudicate the asserted claims.  [Docket No. 4].  Mr. Van Deelen also asserted that mandatory and permissive abstention applied.  [Docket No. 4].  The Defendants responded on August 13, 2020, asserting that the Court had jurisdiction and that abstention was inappropriate under the circumstances. [Docket No. 11].

On July 25, 2020, the Defendants filed their motion to dismiss Mr. Van Deelen's petition. [Docket No. 5].  In their motion, the Defendants asserted that the claims asserted by Mr. Van Deelen were covered by the Amended Plan's exculpation and release provisions.[1] [Docket No. 5]. Mr. Van Deelen filed his response to the motion to dismiss on August 12, 2020. [Docket No. 10]. In his response, Mr. Van Deelen argued that (i) no further proceedings should be held until the Fifth Circuit ruled on his writ of mandamus to remove the undersigned as the presiding judge; (ii) the case should be remanded before the motion to dismiss could be considered; (iii) the Court lacked jurisdiction to consider the motion to dismiss; (iv) mandatory abstention under § 1334(c)(2) applied; and (v) the Amended Plan's exculpation provisions were inapplicable. [Docket No. 10].

Mr. Van Deelen filed a motion for entry of a default on September 24, 2020. [Docket No. 21].  A "corrected" version of the motion was filed on September 25, 2020. [Docket No. 22].  The Defendants filed their response on October 7, 2020, noting that their motion to dismiss remained pending. [Docket No. 23].  *See* FED. R. BANKR. P. 7012.  Mr. Van Deelen filed his reply and motion for entry of a default judgment on October 8, 2020. [Docket No. 26].

On March 10, 2021, the Court held a scheduling conference. [Docket No. 43].  At the beginning of the hearing, the Court advised Mr. Van Deelen that his petition contained potential (i) claims released under the Amended Plan; (ii) derivative claims owned by the bankruptcy estate; and (iii) direct claims.  [Audio at Docket No. 46].  The Court gave Mr. Van Deelen the opportunity to either proceed with his motion to remand or to amend his petition.  [Audio at Docket No. 46]. After much discussion of direct versus derivative claims, Mr. Van Deelen elected to amend his petition.  [Audio at Docket No. 46].

Mr. Van Deelen filed his amended petition on April 8, 2021.  [Docket No. 50].  In his amended petition, Mr. Van Deelen asserted that this Court instructed him to file an amended petition containing only state law claims. [Docket No. 50].  This statement was false as the Court issued no such instruction.  [Audio at Docket No. 46].  In his amended petition, Mr. Van Deelen continued to assert claims against Messrs. Lamb, Dickson, Spence and 10 unknown John/Jane Does for fraud and negligent misrepresentation related to events preceding and after the Debtors' bankruptcy filing.  [Docket No. 50].  Mr. Van Deelen's damage model continued to be based on the cancellation of the Debtors' common shares under the confirmed Amended Plan.  [Docket No. 50].

On May 3, 2021, the defendants filed their amended motion to dismiss. [Docket No. 51]. In the motion, the defendants asserted that (i) the negligent misrepresentation claim was barred by the Court's confirmation order; and (ii) both claims failed to satisfy the heightened pleading requirements required by FED. R. CIV. P. 9(b).  [Docket No. 51].  Mr. Van Deelen filed his response

---

[1]  The Defendants initially asserted that Mr. Van Deelen had not properly opted out of the Amended Plan's third-party release provisions.  The Defendants subsequently acknowledged that Mr. Van Deelen had properly executed and delivered the required opt-out form.  [Audio at Docket No. 46].

to the motion to dismiss on May 20, 2021, asserting (i) that he was not subject to either the exculpation or release provisions under the Amended Plan; (ii) the Court must first consider his motion to remand; (iii) the Court lacked jurisdiction to consider the motion to dismiss; and (iv) abstention was applicable. [Docket No. 52]. The defendants filed their reply on June 3, 2021, arguing that (i) the opt-out mechanism under the Amended Plan applied only to the third-party release provision—not the exculpation; (ii) the Court had jurisdiction to enforce its confirmation order; (iii) abstention was inappropriate; and (iv) the fraud claim was not asserted with sufficient particularity. [Docket No. 53].

On June 4, 2021, Mr. Van Deelen filed his emergency motion to amend his petition to remove the claim for negligent misrepresentation from his first amended petition citing Fed. R. Civ. P. 15. [Docket No. 54]. On June 7, 2021, the Court convened a second hearing on the status of Mr. Van Deelen's petition and all other pending matters. [Docket No. 55]. After a lengthy discussion, the Court provided Mr. Van Deelen another opportunity to file an amended petition. [Docket No. 55].

On June 18, 2021, Mr. Van Deelen filed his third amended petition. [Docket No. 57]. In this version of his petition, Mr. Van Deelen deleted the negligent misrepresentation claim, but continued to assert fraud claims against Messrs. Lamb, Dickson, Spence and 10 unknown John/Jane Does. [Docket No. 57]. In addition, Mr. Van Deelen added assault and fraud claims against the Debtors' former lead counsel, Joshua Sussberg. [Docket No. 57]. The assault claims concerned events that supposedly took place outside the undersigned's courtroom just after the confirmation hearing. [Docket No. 57]. The fraud claim focuses on Mr. Sussberg's purported pre-petition involvement in the concealment of financial losses by the Debtors and the decision to file bankruptcy. [Docket No. 57].

On July 12, 2021, Mr. Sussberg filed his motion to dismiss and request for sanctions. [Docket No. 59]. On the same day, Messrs. Lamb, Dickson and Spence likewise filed a motion to dismiss the third amended petition. [Docket No. 60]. Mr. Van Deelen filed his responses on July 26, 2021. [Docket Nos. 62 and 63].

On August 9, 2021, the Court conducted a hearing on all pending matters. [Unnumbered Docket Entry after Docket No. 70]. At the conclusion of the hearing, the Court took the matter under advisement. [Unnumbered Docket Entry after Docket No. 70].

On August 13, 2021, Mr. Sussberg filed his supplemental motion for sanctions. [Docket No. 72]. In his motion, Mr. Sussberg attached an email from Mr. Van Deelen addressed to David Beck, counsel for Mr. Sussberg, in which Mr. Van Deelen threatened to sue Mr. Sussberg, Mr. Beck and an unnamed process server for serving a subpoena upon Mr. Van Deelen at his home in anticipation of the August 9, 2021, hearing. [Docket No. 72]. Mr. Sussberg requested that the Court determine Mr. Van Deelen to be a vexatious litigant and that Mr. Van Deelen be prohibited from filing any future lawsuits related to these bankruptcy proceedings without first obtaining court approval. [Docket No. 72].

On August 16, 2021, Mr. Van Deelen filed his (i) response to the supplemental motion for sanctions; (ii) motion to strike the supplemental motion for sanctions; and (iii) motion for sanctions

5 / 13

against David Beck—Mr. Sussberg's counsel. [Docket No. 73].   Concurrent with the response, Mr. Van Deelen also filed separate motions (i) to strike the supplemental motion for sanctions [Docket No. 74]; and (ii) to dismiss all claims against Mr. Sussberg pursuant to FED. R. CIV. P. 41(a)(2) due to Mr. Sussberg's purported medical condition. [Docket No. 75].    Mr. Sussberg responded on August 23, 2021. [Docket No. 77].

Having carefully evaluated the pleadings submitted by the parties and having conducted multiple hearings in this adversary proceeding, the Court determines that no further hearings are needed or appropriate.

## Jurisdiction

Bankruptcy jurisdiction is established by 28 U.S.C. § 1334.   Section 1334 grants jurisdiction to the district courts to preside over all cases filed under title 11 as well as all civil proceedings arising under title 11 or related to cases under title 11. *See* 28 U.S.C. § 1334(a) and (b).   In turn, district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts.   28 U.S.C. § 157(a).   Section 157(b)(1) goes on to provide that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title."

For jurisdictional purposes, it is not necessary to distinguish whether a matter "arises under", "arises in" or is "related to." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). The Court need only to determine if the matter is at least "related to" the pending bankruptcy case to determine if jurisdiction exists. *Id*.   Proceedings are "related to" if the outcome "*could* conceivably have any effect on the estate being administered in bankruptcy." *Bass v. Denney (In re Bass)*, 171 F.3d, 1016, 1022 (5th Cir. 1999). A "conceivable effect" is a proceeding that "could alter the Debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankruptcy estate." *Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Group, Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (quoting *FDIC V. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835F.2d 87, 90 (5th Cir. 1988)).

The Court finds that it has jurisdiction over these contested matters pursuant to 28 U.S.C. § 1334 and the Court's inherent authority to enforce its own orders.   These contested matters are core proceedings under 28 U.S.C. §§ 157(b)(2) as they related to the enforcement of the Court's confirmation order and interpretation of a confirmed plan.   *See In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1064 (5th Cir. 1997).   The Court has constitutional authority to enter a final order in these contested matters. *Stern v. Marshall*, 564 U.S. 462 (2011).

## Analysis

## The Third Amended Petition

In his third amended petition, Mr. Van Deelen asserts that each of the defendants "made or caused to be made material representations to the plaintiff about McDermott International, its performance, its financial condition and its outlook which were false." [Docket No. 57].  Further, Mr. Van Deelen asserts that "[t]he defendants concealed adverse material facts from plaintiff to prevent plaintiff from knowing McDermott International's true financial condition and outlook." [Docket No. 57].  In the light most favorable to Mr. Van Deelen, these alleged misrepresentations, omissions and the corresponding timeline consist of the following:

| Date Issued | Author/Declarant | Communication |
|---|---|---|
| 03/22/2019 | Debtors | Mission Statement published on the Debtors' website. |
| 04/29/2019 | Debtors | 2019 First Quarter Report published on the Debtors' website. |
| 05/02/2019 | Debtors | Annual Meeting presentation posted to the Debtors' website. |
| 07/29/2019 | Unidentified/ Dickson | 2019 Second Quarter Report published on the Debtors' website. |
| 08/02/2019 | Van Deelen purchases 22,000 shares despite sharp market price decline. | |
| Mid-Sept. 2019 | Unknown | Failure to tell public that decision had been made to file bankruptcy |
| 09-18-2019 | Debtors | Press release that advisors had been engaged. (Didn't disclose preparation for bankruptcy). |
| 09-20-2019 | Debtors | Press release that investment bank was engaged to market the Lumus Technology division. (Didn't disclose preparation for bankruptcy). |
| 10/21/2019 | Debtors/ Dickson | Press release regarding securing additional financing (didn't disclose that financing was |

| | | just interim while bankruptcy was being prepared). |
|---|---|---|
| 11/04/2019 | Debtors | 2019 Third Quarter Report published on the Debtors' website reflecting large loss (didn't previously issue release that loss was imminent). |
| 11/04/2019 | Debtors | 10-Q disclosing SEC investigation (didn't notify earlier and statement that chapter 11 might occur). |
| 11/08/2019-12/26/2019 | Van Deelen purchases additional 8,000 shares | |
| 12/02/2019 | Debtors | Press release regarding access to $350 million in additional financing (failed to disclose that lenders did not expect to provide additional financing outside of chapter 11). |
| 01/21/2020 | Debtors | Formal announcement of chapter 11 (failed to previously announce that equity would be cancelled). |

Notably, Mr. Van Deelen's allegations all concern the Debtors' failure to inform **him and "the investing public"** about the Debtors' financial status and the potential for a chapter 11 filing. Mr. Van Deelen states that all misrepresentations were made by the defendants outside the scope and course of their employment, yet Mr. Van Deelen fails to make any allegation that any specific individual defendant made a specific misrepresentation to him at any particular time. To the contrary, the source of all of the identified communications referenced in the third amended petition was the Debtors.

**The Plan and Confirmation Order**

Under the confirmed Amended Plan, the Debtors released all direct and derivative claims held by the bankruptcy estate. [Docket No. 684, attached plan, Art. VIII.C, Case No. 20-30336]. This release encompasses all claims against management arising in connection with their employment. [Docket No. 684, attached plan, Art. VIII.C.1., Case No. 20-30336]. In addition, the Amended Plan contains an exculpation provision that releases all claims arising out of or related to the bankruptcy process. [Docket No. 684, attached plan. Art. VIII.E, Case No. 20-30336]. While the Amended Plan also contains a third-party release provision in Art. VIII.D, Mr. Van Deelen exercised his opt-out right. [Docket No. 52-1]. Finally, the Amended Plan provides an injunction that prohibits the initiation or continuation of any litigation for any released or exculpated claim. [Docket No. 684, attached plan, Art. VIII.F, Case No. 20-30336].

8 / 13

**Motion to Amend (Docket No. 54)**

On June 4, 2021, Mr. Van Deelen filed his emergency motion to amend his petition to remove the claim for negligent misrepresentation. [Docket No. 54]. During the June 7, 2021 hearing, the Court gave Mr. Van Deelen the opportunity to file an amended petition thereby implicitly granting Mr. Van Deelen's request. [Audio at Docket No. 56]  To avoid any confusion, the motion to amend is granted.

**Motion to Take Judicial Notice (Docket No. 68)**

By motion filed August 6, 2021, Mr. Sussberg requested that the Court take judicial notice of certain pleadings filed in the underlying bankruptcy proceeding as well as certain decisions entered by other courts regarding Mr. Van Deelen's litigation tactics. With respect to the request to take judicial notice of the identified matters in the underlying bankruptcy case, the motion is granted. With respect to the request to take judicial notice of decisions entered by other courts, the motion is denied. The Court was previously aware of the identified decisions. The Court is also sufficiently familiar with Mr. Van Deelen tactics in this bankruptcy case. [Docket No. 719, Case No. 20-30336]. The documents for which judicial notice is requested, however, shall be part of the record and available to any reviewing court.

**Motion to Strike and Motion for Sanctions (Docket No. 74)**

On August 16, 2021, Mr. Van Deelen filed a pleading styled as (i) a response to Mr. Sussberg supplemental sanctions motion; (ii) a motion to strike Mr. Sussberg's supplemental sanctions motion for failure to meet Local Rule 9013-1(b); and (iii) a request for sanctions against David Beck, counsel for Mr. Sussberg. The pleading contains a series of random arguments and borders on the frivolous. The motion to strike is denied as Mr. Van Deelen failed to include the required language in his pleadings on multiple occasions and no prejudice was shown. The motion for sanctions against Mr. Beck for allegedly deceiving the Court has no legal or factual basis as written and is denied. To the contrary, the Court finds Mr. Beck's conduct before the Court to have been exemplary and in accordance with all applicable rules and ethical standards.

**Motion to Dismiss Joshua Sussberg (59)**

In his third amended petition, Mr. Van Deelen asserts, for the first time, that Mr. Sussberg made fraudulent misrepresentations with respect to the Debtors' financial status. [Docket No. 57]. The Court can only glean from the third amended petition that these purported misrepresentations were made in the course of Mr. Sussberg providing legal services to the Debtors. The third amended petition identifies no legal duty owed by Mr. Sussberg to make any disclosure to Mr. Van Deelen nor does it identify any statement made or adopted by Mr. Sussberg that constituted a misrepresentation.

The third amended petition also asserts claims for an alleged altercation with Mr. Sussberg that Mr. Van Deelen asserts took place just outside the courtroom after the confirmation hearing.

These asserted claims consist primarily of a listing of state law tort claim elements along with unsupported conclusions.

Although motions to dismiss under Rule 12(b)(6) are generally disfavored, a court must grant a motion to dismiss if the complaint fails to state a "plausible claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "formulaic recitation of the elements of a cause of action will not do." *Id.*; *Twombly*, 550 U.S. at 555. Allegations made in support of a claim that "stop short of the line between possibility and plausibility" are insufficient to prevent dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

With respect to the asserted fraud claim against Mr. Sussberg, there is simply no legal or factual basis which could support such a claim. There are no facts to answer the "who, what, when, where and why" requirements of FED. R. CIV. P. 9. The Court further questions the motivation behind the late inclusion by Mr. Van Deelen of Mr. Sussberg into his third amended petition. The Court finds that the assertion of a fraud claim against Mr. Sussberg violates FED. R. BANKR. P. 9011(b). The motion to dismiss the fraud claim is granted with prejudice.

With respect to the "assault" claims, the Court takes notice of its prior findings regarding Mr. Van Deelen's veracity [Docket No. 719, Case No. 20-30336] as well as the attached affidavits to the motion to dismiss. [Docket No. 59-1-3]. The Court has further considered Mr. Van Deelen's subsequent conduct and filings, including his failure to make an incident report when invited to do so by courthouse security. When combined with the scant recitals of the elements of state law tort claims, the Court grants the motion to dismiss the "assault-related" claims with prejudice.

## Motion to Dismiss Joshua Sussberg (Docket No. 75)

On August 16, 2021, Mr. Van Deelen filed a motion to dismiss Mr. Sussberg under FED. R. CIV. P. 41(a)(2). In the motion. Mr. Van Deelen seeks the dismissal of claims against Mr. Sussberg based on his belief that Mr. Sussberg had cancer at the time of the confirmation hearing. Cancer is a serious disease and the second-leading cause of death in the world. https://www.mayoclinic.org/diseases-conditions/cancer/symptoms-causes/syc-20370588#. The Court accepts Mr. Van Deelen's gesture regardless of motive. Under FED. R. CIV. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." As alternative relief, the Court grants Mr. Van Deelen's motion and dismisses all claims against Mr. Sussberg in the third amended petition with prejudice.

## Motion to Dismiss Lamb, Dickson and Spence (Docket Nos. 5, 51 and 60)

With each version of the petition filed by Mr. Van Deelen, Messrs. Lamb, Dickson and Spence filed a motion to dismiss. As the third amended petition dropped many of the original claims, the Court will address the arguments raised in each of the motions only as to the remaining fraud claim asserted by Mr. Van Deelen. The movants' first argument concerns the failure of the

third amended petition to set forth the specifics of the false representations that form the basis of the claim. The Court agrees. As set forth above, Mr. Van Deelen fails to identify any specific statement, omission or adoption by a specific defendant that forms the basis of the asserted fraud claim. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 373-74 (5th Cir. 2004) (holding that the pleading should "point to specific interactions between the [defendant] and the [third party] which allegedly gave rise to the entanglement [between the defendant's and third party's statements]," and state the dates on which these interactions occurred); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, No. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) (group pleading fails to satisfy the requirement of the "who, what, when, where and why" requirements to assert a fraud claim).

More problematic is Mr. Van Deelen's attempt to distance himself from the McDermott bankruptcy proceeding and the releases/exculpations contained in the Amended Plan. To avoid their impact, Mr. Van Deelen asserts that none of the identified statements were made in the course and scope of the defendants' employment by the Debtors. Such an assertion belies common sense as each of the communications identified in the third amended petition is a corporate statement on behalf of the Debtors.

Second, to the extent that the third amended petition relies on the allegation of an omission as the basis for the fraud claim, Mr. Van Deelen fails to identify the existence and nature of any legal duty that would require Messrs. Lamb, Dickson or Spence to make such a disclosure. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("[a] failure to disclose information does not constitute fraud unless there is a duty to disclose the information."). Officers and directors of a corporation owe no formal fiduciary duty to individual shareholders. *Ritchie v. Rupe*, 443 S.W.3d 856, 890 & n.62 (Tex. 2014).

Mr. Van Deelen has had multiple opportunities to assert any valid claim that he rightfully possesses. Any claim that he may have had against the Debtors was lost when he failed to timely file a proof of claim. Mr. Van Deelen voluntarily chose to only assert only a proof of interest as a shareholder. The movants' motion is granted and all claims against Messrs. Lamb, Dickson and Spence are dismissed with prejudice.

## Motion to Remand (Docket Nos. 4 and 7)

Mr. Van Deelen seeks the remand of this adversary proceeding to Montgomery County state court. As no claims remain, there is nothing left to remand. In an abundance of caution, however, the Court will address Mr. Van Deelen's request as if some claim remained.

Mr. Van Deelen first asserts that this Court lacks jurisdiction over this adversary proceeding. This adversary proceeding touches and concerns the sanctity of this Court's confirmation order and implementation of the Amended Plan. As set forth above, the Court has the jurisdiction to enforce its own orders and the Amended Plan. Moreover, the Court finds that it has the requisite jurisdiction applying the *Craig's Stores* factors of (1) the claims primarily arose from pre-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th

Cir. 2001); *In re Blast Energy Servs., Inc.*, 396 B.R. 676, 684 (Bankr. S.D. Tex. 2008); *In re MSB Energy, Inc.*, 438 B.R. 571, 586 (Bankr. S.D. Tex. 2010).

Mr. Van Deelen next asserts that mandatory abstention under 28 U.S.C. § 1334(c)(2) applies to this adversary proceeding. The party seeking mandatory abstention must show that: (1) the claim has no independent basis for federal jurisdiction, other than section 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir.), *cert. denied*, 552 U.S. 1022, 128 S. Ct. 613 (2007). As discussed above, this adversary proceeding is a core proceeding as it involves (i) the interpretation and enforcement of the Amended Plan and confirmation order; (ii) the enforcement of the Court's injunction contained in the Amended Plan; and (iii) matters that occurred before the Court in connection with the underlying bankruptcy proceeding. Moreover, in consideration of the orders issued by the Texas Supreme Court regarding the status of state court proceedings and the resulting backlog of priority criminal cases, no genuine basis exists to suggest that adjudication in state court would occur any time soon. In contrast, this Court has conducted its docket each day throughout the pandemic, continues to do so, and has no backlog. The motion for mandatory abstention is denied.

Mr. Van Deelen also requests the Court to abstain from this adversary proceeding under the permissive abstention provisions of 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) provides that a court may abstain from hearing a matter if such abstention is "in the interest of justice, or in the interest of comity with the State courts or respect for State law." *See Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1206 (5th Cir. 1996). Mr. Van Deelen argues that the existence of his writ of mandamus to the Fifth Circuit Court of Appeals serves as a basis for abstention. As previously noted, the Fifth Circuit has denied the writ.

When evaluating a request for permissive abstention, courts have developed the following list of nonexclusive factors to consider: (i) the effect or lack thereof on the efficient administration of the estate; (ii) extent to which state law issues predominate over bankruptcy issues; (iii) difficult or unsettled nature of applicable law; (iv) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (v) jurisdictional basis, if any, other than § 1334; (vi) degree of relatedness or remoteness of proceeding to main bankruptcy case; (vii) the substance rather than the form of an asserted core proceeding; (viii) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (ix) the burden of the bankruptcy docket; (x) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (xi) the existence of a right to a jury trial; (xii) the presence in the proceeding of non-debtor parties; (xiii) comity; and (xiv) the possibility of prejudice to other parties in the action. *J.T. Thorpe Co.*, No. H-02-4598, 2003 U.S. Dist. LEXIS 26016, at *23. The only factor addressed by Mr. Van Deelen in his motion is that of forum shopping. As this Court is the only proper court to enforce its injunction preventing the assertion of released claims, this argument necessarily fails. An evaluation of the other *Thorpe* factors suggests that no basis exists for permissive abstention. The motion is denied.

12 / 13

**Sanctions Against Van Deelen (59 and 72)**

Mr. Sussberg seeks sanctions against Mr. Van Deelen for his vexatious conduct in this adversary proceeding under the Court's inherent authority to oversee the conduct of litigants that appear before it and 11 U.S.C. § 105.  *In re Ruth*, 473 B.R. 152, 166 (Bankr. S.D. Tex. 2012) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).  Mr. Sussberg asserts that Mr. Van Deelen is entitled no special deference as a *pro se* litigant due to his extensive litigation experience as chronicled by Mr. Sussberg.  On this point, the Court agrees.  Mr. Van Deelen employs a designed, deliberate, and practiced litigation strategy free from the confines of honesty and ethics that bind attorneys that appear before the Court.  No special consideration as a *pro se* litigant is deserved or given.

The sanction sought by Mr. Sussberg is that of a pre-filing injunction against Mr. Van Deelen.  When imposing sanctions, the Court recognizes that it must impose the least onerous sanction to address the situation.  *In re Parsley*, 384 B.R. 138, 182 (Bankr. S.D. Tex. 2008).  The McDermott bankruptcy case is over.  The Court's confirmation order is final and binding.  In the hope that common sense will prevail, the Court denies the motions for sanctions without prejudice.  Any further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed immediately to this Court.  If such litigation is initiated and the current pattern of behavior continues, the Court will revisit the issue of compensatory and coercive sanctions necessary to protect the sanctity of the Court's orders, the bankruptcy process, and the rule of law.

This adversary proceeding is dismissed as set forth above.  The Clerk is directed to close this adversary proceeding.

All other relief not specifically granted is denied.

 **SIGNED: October 12, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**