Case No. 4:21-cv-03369

United States Courts
Southern District of Texas
F I L E D

DEC 0 7 2021

Nathan Ochsner, Clerk of Court

In the United States District Court
for the Southern District of Texas
Houston Division

In Re McDermott International, Inc.
Debtor

Michael Van Deelen
Appellant

v.

David Dickson, Stuart Spence, Scott Lamb, Joshua Sussberg
Appellees

On Appeal from the U.S. Bankruptcy Court for the Southern
District of Texas (the Hon. David Jones)
Bankruptcy No. 20-30336
Adversary Proceeding No. 20-3309

## **APPELLANT'S BRIEF**

Michael Van Deelen
Appellant
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

# TABLE OF CONTENTS

Table of Authorities                                                    4

Jurisdictional Statement                                               9

Standard of Review                                                     10

Statement of the Issues Presented                                      11

Statement of the Case                                                  13

Summary of the Argument                                                16

Argument                                                               19

1.  Plaintiff's Common Law Fraud Claim                                 19

2.  Plaintiff's Suit is Non-Core                                       24

3.  The Bankruptcy Court Did Not Have Authority or Jurisdiction to     27
Issue It's October 12, 2021, Final Order Because Plaintiff Did Not
Consent to Entry of Final Orders or Judgment by the Bankruptcy Court

4.  Besides Being Non-Core, Plaintiff's Suit Is Not Related to the     29
Bankruptcy Case and the Bankruptcy Court Does Not Have Jurisdiction
to Hear It.

5.  The Bankruptcy Court Was Required to Remand Plaintiff's            35
State-Law Cause of Action Because It Lacked "Related-To" Subject
Matter Jurisdiction.

6.  Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)                   37

7.  The Factual Allegations Included in Plaintiff's Third Amended       41
Petition Satisfy the Heightened Federal Pleading Standard.

8.  The Factual Allegations Included in Plaintiff's Third Amended       42
Petition Satisfy the Texas State Pleading Standard for Common
Law Fraud.

9.  The Bankruptcy Court's October 12, 2021, Order Was Illegal        47
and Violated Plaintiff's Constitutional Rights.

10.  It Was Erroneous for the Bankruptcy Court to Grant the          50
Defendants' Emergency Motion to Seal.

11.  The Cancel Culture and the Demonization of the Plaintiff        52

12.  The Bankruptcy Court Erred By Denying Plaintiff's Motion to     63
Recuse Judge Jones.

Conclusion                                                          65

Certificate of Compliance                                           66

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Alexander v. Kent*, 480 S.W.3d 676, 698                                        46
(Tex,App. - Fort Worth 2015, no pet.)

*Allen v. Devon Entergy Holdings, L.L.C.*, 367 S.W.3d 355, 370                  43, 44
 (Tex.App. - Houston [1st Dist.] 2012)

*American General Life Insurance Company v.*                                    40
*Schahin II Finance Company (SPV) Limited,*
Civil Action No. H-19-4025, U.S. District Court, S.D. Texas,
Houston Division (June 16, 2020)

*Aquaplex, Inc. v. Rancho La Valencia, Inc.* 297 S.W.3d 768, 774               44
 (Tex.2009)

*Blackburn v. Columbia Med. Ctr.* 58 S.W.3d 263, 272-73                         45
(Tex.App. - Fort Worth 2001, pet. denied)

*Bowen v. Robinson*, 227 S.W.3d 86, 91                                          43
(Tex. App.--Houston [1st Dist.] 2006, pet. denied).

*Bradley v. Ackal*, No. 18-31052 (5th Cir. 2020)                               52

Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust                         10, 30
(In re Nat'l Gypsum Co.), 208 F.3d 498, 504 (5th Cir. 2000)

*Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 825                        33, 36,48
(Bankr. S.D. Tex. 2012)

*Dodd V. Savino*, 426 S.W.3d 275, 291 (Tex.App. - Houston                       45
[14th Dist.] 2014, no pet.)

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573               45
(Tex.2001)

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 753                       31
(5th Cir. 1995)

*First State Bank v. Fatheree*, 847 S.W.2d 391, 396      45
(Tex.App. - Amarillo 1993, writ denied)

*Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994)      48

*Guevara v. Lackner*, 447 S.W.3d 566, 577      44
(Tex.App. - Corpus Christi 2014)

*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896      42
(Tex. 2000)

*In Re: Petroleum Products $ Services, Inc., et al, v.*      25, 26
*McClinton Energy Group, LLC, et al*, 561 B.R. 662,
U.S. Bankruptcy Court, S.D. Texas, Houston Division (2016)

*In re Doctors Hosp.*, 351 B.R. at 846 n.29      40

*In re Educators Group Health Trust*, 25 F.3d 1281, 1284,1285      10, 30, 31,
(5th Cir. 1994)      32

*In re Enron Securities*; Civil Action No. H-01-3624      26
Consolidated Cases, Civil Action No. G-02-0299
(S.D. Tex. Aug. 9, 2002)

*In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702      49
(Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.),
*aff'd*, 41 F.3d 1502 (2d Cir. 1994)

*In Re: Petroleum Products & Services, Inc.*, 561 B.R. 662,      25, 37
United States Bankruptcy Court, S.D. Texas, Houston Division
(2016)

*In re Ramirez*, 413 B.R. 621, 627 (Bankr. S.D. Tex. 2009)      28, 48

*In re Seven Seas Petroleum*, 522 F.3d 575, 583 (5th Cir. 2008)    30, 32, 33, 35, 48

*In Re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347      41
(Bankr. S.D. Tex. Apr. 19, 2016)

*Japhet v. Kenneth R. Lyle Estate (In re Hous. Bluebonnet, L.L.C.),*     25
CASE NO: 16-34850, at *6-7 (Bankr. S.D. Tex. Dec. 6, 2016)

*JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.,*     46, 47
546 S.W.3d 648, 653 (Tex.2018)

*J.T. Thorpe Co.,* 2003 U.S. Dist. LEXIS 26016, at *10, *12-13     38

*Matter of Gober,* 100 F.3d 1195, 1206 (5th Cir. 1996)     38

*Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.),*     32, 35
912 F.3d 291 (5th Cir. 2019)

*MFS Telecom, Inc. v. Motorola, Inc.*     49
*(In re Conxus Communications, Inc.),* 262 B.R. 893, 899
(D. Del. 2001)

*Mirant Corp. v. the Southern Co.,* 337 B.R. 107 (N.D. Tex. 2006)     26

*Nancarrow v. Whitmer,* 463 S.W.3d 243, 252     44
(Tex.App. - Waco 2015)

 *Nat'l Broiler Mktg. Ass'n v. United States,* 436 U.S. 816, 819 n.5     24
(1978)

*Roark v. Allen,* 633 S.W.2d 804, 810 (Tex. 1982)     43

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83,     35
118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998)

*Schertz-Cibolo-Universal City, Indep. School District v.*     10, 30
*Wright (In re Educators Group Health Trust),* 25 F.3d 1281,
1285 (5th Cir. 1994)

*Stern v. Marshall,* 564 U.S. 462, 469 (2011)     27

*Taylor v. United States (In re Taylor),* 263 B.R. 139     49
(N.D. Ala. 2001)

*Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 277 (Tex. 1995)     44

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)   43, 44

*U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*,   10, 30, 48
301 F.3d 296, 303 (5th Cir. 2002)

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)   52

*United States v. Sealed Search Warrants*, 868 F.3d 385, 395   52
(5th Cir. 2017)

*United States v. Troescher*, 99 F.3d 933, 934 n. 1 (9th Cir.1996))   35

*Unsecured Creditors Disbursement Committee v.*   34
*Antill Pipeline Constr. Co. (In re Equinox Oil Co.),*
300 F.3d 614, 618 (5th Cir.2002)

*Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451   49
(Bankr. E.D. Ark. 1994)

*Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987)   25, 26

## **Statutes**

11 U.S.C. 105(a)   48

11 U.S.C. 107(a)(b)   51

11 U.S.C. Section 1129(3)   53

11 U.S.C. Section 1129 (b)(1)   53

18 U.S.C. Section 152   53

18 U.S.C. Section 154   53

18 U.S.C. Section157   25, 28

18 U.S.C. 158(d)   32

18 U.S.C. Section 3057                                                52

28 U.S.C.  Section 157(c)(1)(2)                                       28

28 U.S.C. Section 158(a)(1)                                            9

28 U.S.C. Section 455(a)                                              65

28 U.S.C. Section 455(b)(1)                                           65

28 U.S.C. Section 1334                                    17, 37, 38, 47

## Rules

Bankruptcy Rule 9027(e)(3)                                           28

Fifth Circuit *Rules for Judicial-Conduct and Judicial-Disability*   55
*Proceedings*

Texas Rules Civ. Proc. Rule 45(b)                                    42

Texas  Rule of Civil Procedure Rule 47                               42

## U.S. Constitution

U.S. Constitution, Article I                          9, 16, 18, 27, 48, 49

U.S. Constitution, Article III                                   27, 48

## Other Authorities

*Recusal: Analysis of Case Law Under 28 U.S.C.*                      10
*Sections 455 & 144*, Federal Judicial Center, 2002.

## JURISDICTIONAL STATEMENT

As seen herein, the bankruptcy court did not have jurisdiction to hear plaintiff's adversary proceeding.  Plaintiff's adversary proceeding was a state-law common law fraud claim against non-debtor defendants.  Plaintiff's adversary proceeding was non-core and not related to the underlying McDermott bankruptcy case.  Plaintiff denied the Article I bankruptcy court permission to issue a final order in the adversary proceeding.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Section 158(a)(1) as this is an appeal from a final order of the bankruptcy court.

The bankruptcy court issued a final order in the adversary proceeding on October 12, 2021.  Plaintiff timely filed his Notice of Appeal on October 14, 2021, and his Second Amended Notice of Appeal on October 20, 2021.

Plaintiff's appeal is from a final order, judgment or decree of the bankruptcy court.

## STANDARD OF REVIEW

In a district court review of a bankruptcy court's rulings, conclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo." Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000) (citing *Traina v. Whitney Nat'l Bank*, 109 F.3d 244, 246 (5th Cir. 1997)). The bankruptcy court's finding that it had subject matter jurisdiction is a legal determination that the district court reviews de novo. *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002). **Whether a specific cause of action belongs to a bankruptcy estate is likewise a matter of law that is decided by reference to the facial allegations in the complaint.** *Schertz-Cibolo-Universal City, Indep. School District v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1285 (5th Cir. 1994).

Motions for recusal of a judge are reviewable for abuse of discretion. See *Recusal: Analysis of Case Law Under 28 U.S.C. Sections 455 & 144*, Federal Judicial Center, 2002.

## STATEMENT OF THE ISSUES PRESENTED

1.  In its 10/12/21 Order, the bankruptcy court erred when it ruled that plaintiff's claim (state-law common law fraud) is a core proceeding.

Standard of review: de novo.

2.  The bankruptcy court did not have authority or jurisdiction to issue it's October 12, 2021, final order because plaintiff did not consent to entry of final orders or judgment by the bankruptcy court.

Standard of review: de novo.

3.  The bankruptcy court erred when it ruled it had 'related-to' jurisdiction over plaintiff's case.

Standard of review: de novo.

4.  The bankruptcy court erred in not remanding plaintiff's common law fraud claim.

Standard of review: de novo.

5.  The bankruptcy court erred by not exercising mandatory abstention in plaintiff's case.

Standard of review: de novo.

6.  The factual allegations included in Plaintiff's Third Amended Petition satisfied the heightened federal pleading standard.

Standard of review: de novo.

7.  The bankruptcy court erred in dismissing plaintiff's state-law common law fraud claim because the factual allegations included in Plaintiff's Third Amended Petition satisfy the Texas state pleading standard for common law fraud. Standard of review: de novo.

8.  The bankruptcy court's October 12, 2021, Order was illegal and violated plaintiff's Constitutional rights when it threatened the plaintiff with sanctions if he filed future state court suits.

Standard of review: de novo.

9.  The bankruptcy court erred in granting the Defendants' Emergency Motion to Seal.

Standard of review: de novo.

10.  The Bankruptcy Court Erred By Denying Plaintiff's Motion to Recuse Judge Jones.

Standard of review: abuse of discretion.

## STATEMENT OF THE CASE

Plaintiff filed his Plaintiff's Original Petition against defendants David Dickson, Stuart Spence, and Scott Lamb in Montgomery County, Texas, District Court (case number 20-06-07348) on June 23, 2020.  The petition included various claims against the defendants, including common law fraud.  (ROA 10-main/18).

On July 17, 2020, the defendants removed plaintiff's case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division, as an adversary proceeding (case number 20-3309) under the McDermott International, Inc., Chapter 11 bankruptcy action (case number 20-30336).  (ROA 10-main/12).

Plaintiff filed and served his Motions to Recuse Judge Jones in the adversary case on July 27, 2020, and on July 31, 2020 (ROA 10-main/69; 10-main/142).

On March 8, 2021, plaintiff filed and served his Plaintiff's Addendum to his Motion to Recuse Judge Jones (DOC 39).  Plaintiff's Addendum was sealed on March 9, 2021 (ROA 10-main/267).  On October 27, 2021, plaintiff filed in this appeal his Appellants' Motion to Accept Documents Under Seal Into Appellate Record which asked that Plaintiff's Addendum be unsealed.  This Court has yet to rule on plaintiff's motion.

On March 10, 2021, plaintiff's Motion to Recuse (ROA 10-main/69; 10-main/142) was heard via telephonic conference by Judge Marvin Isgur.  Without

issuing findings of fact or conclusions of law, Judge Isgur denied plaintiff's motion to recuse.  (ROA 10-main/267; 10-main/268; 10-main/277).

Defendants Dickson, Lamb and Spence filed their Emergency Motion to Seal on March 8, 2021, (ROA 10-main/260).  On March 10, 2021, plaintiff filed his Response to Defendants' Emergency Motion to Seal (ROA 10-main/269) and his request for hearing (ROA 10-main/274) on that motion.

On September 8, 2021, Judge Jones issued his Order Granting Defendants' Emergency Motion to Seal (ROA 10-1/437).

On October 27, 2021, plaintiff filed in this appeal his Appellants' Motion to Accept Documents Under Seal Into Appellate Record, including the documents filed by the defendants (DOC 37).  This Court has yet to rule on plaintiff's motion.

Plaintiff filed his Third Amended Petition on June 18, 2021.  The complaint, which included only state-law causes of action, included a claim of common law fraud against all defendants and various assault claims against defendant Sussberg (ROA 10-main/458-500; 10-1/1-7).  On August 16, 2021, after learning of defendant Sussberg's cancer diagnosis, plaintiff voluntarily dismissed all claims against defendant Sussberg (ROA 10-1/420).  The bankruptcy court granted Sussberg's dismissal (ROA 10-1/441, 450).   That left only one claim, the common law fraud state claim, against non-debtor defendants Dickson, Spence and Lamb.

On October 12, 2021, the bankruptcy court issued its final Order, dismissing plaintiff's state-law common law fraud claim against the defendants.  (ROA 10-1/441).

Plaintiff's Second Amended Notice of Appeal was filed in this Court on October 20, 2021. (DOC. 4).

## SUMMARY OF THE ARGUMENT

In its 10/12/21 Order, the bankruptcy court erred when it ruled that plaintiff's claim (state-law common law fraud) was a core proceeding (ROA 10-1/446). Plaintiff's state law common law fraud claim did not invoke a substantive right provided by title 11. It involved only fraudulent misrepresentations made to the plaintiff by the defendants that occurred prior to the bankruptcy filing. Plaintiff's suit, which was removed by the defendants from Montgomery County, Texas, District Court, could have been, and would have been, adjudicated in state court absent the bankruptcy filing.

In its 10/12/21 Order (ROA 10-1/441), the bankruptcy court erred when it ruled that "The Court has constitutional authority to enter a final order in these contested matters." Under the Constitution, Article I bankruptcy courts can issue final orders only with respect to public rights, unless all parties consent to the issuance of final orders by the bankruptcy judge. Plaintiff denied the bankruptcy court consent to issue final orders. (ROA 10-main/67; 10-main/134; 10-1/368).

The bankruptcy court was required to remand plaintiff's state-law only cause of action to Montgomery County, Texas, District Court where it was originally filed because the bankruptcy court lacked "related-to" subject matter jurisdiction. The bankruptcy court ignored clear law in incorrectly ruling that it had subject matter jurisdiction over plaintiff's common law fraud claim.

Even if the bankruptcy court had "related-to" jurisdiction (which it didn't), the bankruptcy court erred in not granting mandatory abstention pursuant to 28 U.S.C. Section 1334(c)(2) in plaintiff's case. The bankruptcy court ignored clear law in refusing to grant plaintiff's case mandatory abstention.

Even though the bankruptcy court did not have jurisdiction to reach Plaintiff's Third Amended Petition (it did anyway), the factual allegations underlying plaintiff's state common law fraud claim, together with Count I (Common Law Fraud), contained therein (ROA 10-main/455; 10-1/1) satisfied the heightened federal pleading standard for fraud and the bankruptcy court erred in dismissing plaintiff's common law fraud complaint.

The bankruptcy erred in dismissing plaintiff's state-law common law fraud claim. Even though the bankruptcy court did not have jurisdiction to reach plaintiff's state-law common law fraud claim (it apparently did anyway), the factual allegations included in Plaintiff's Third Amended Petition satisfy the Texas state pleading standard for common law fraud.

In his October 12, 2021, Order, Judge Jones stated that "Any further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed immediately to this Court. If such litigation is initiated and the current pattern of behavior continues, the Court will revisit the issue of compensatory and coercive sanctions necessary to protect the sanctity of

17

the Court's orders, the bankruptcy process, and the rule of law [Emphasis added]."
(ROA 10-1/441, 453).  The Article I bankruptcy judge Judge Jones has no
authority to prevent plaintiff from initiating any state court litigation against
McDermott (whom plaintiff has never sued) or nebulously relating to "these
proceedings" (that are over and have been finalized).

The bankruptcy court erred in granting the Defendants' Emergency Motion
to Seal.  The bankruptcy court ignored clear law in granting the motion.  Plaintiff
had not filed, and had no intention to file, the documents contained in the
Defendants' Emergency Motion to Seal.  They were private communications
between the defendant attorneys and the plaintiff that were not in the form of a
motion or other pleading.  (ROA 10-main/269).

Plaintiff's motions to recuse set out numerous examples of Judge Jones'
unfair, biased, unlawful and unconstitutional treatment of plaintiff.  On March 10,
2021, plaintiff's Motions to Recuse (ROA 10-main/69; 10-main/142) were heard
via telephonic conference by Judge Marvin Isgur.  Without issuing findings of fact
or conclusions of law, Judge Isgur denied plaintiff's motions to recuse.  (ROA 10-
main/267; 10-main/268; 10-main/277).

## ARGUMENT

**Plaintiff's Common Law Fraud Claim**

Appellant refers to himself as 'plaintiff' herein.

The Record on Appeal appears in three volumes: 10-main, 10-1, and 10-2. Citations to the record are in the form of 'volume number/page numbers in that volume'.  For example, '10-main/24, 35-50' refers to pages 24 and 35 through 50 of the 10-main volume.

Pages 4 to 35 of Plaintiff's Third Amended Petition detail the factual allegations underlying plaintiff's common law fraud claim against defendants Dickson, Spence and Lamb (ROA 10-main/455, 461-492).  (The factual allegations are much more detailed and robust than what is summarized in a page-and-a-half in the bankruptcy court's October 12, 2021, Order dismissing plaintiff's complaint. (ROA 10-1/441, 447-448))

Pages 41 to 45 of Plaintiff's Third Amended Petition (ROA 10-main/498-500; 10-1/1-2) contain Count I, plaintiff's state-law common law fraud claim, against defendants Dickson, Spence and Lamb:

**"COUNT 1**
**COMMON LAW FRAUD**
**(State Claim against all defendants)**

97.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  As seen herein:

98.  The defendants made or caused to be made material representations to the plaintiff about McDermott International, its performance, its financial condition and its outlook which were false.

99.  The defendants concealed adverse material facts from plaintiff to prevent plaintiff from knowing McDermott International's true financial condition and outlook.

100.  When the defendants made the representations to the plaintiff, they knew the representations were false or they made the representations recklessly, as positive assertions, and without knowledge of their truth.

101.  The defendants made the representations with the intent that the plaintiff would act on them.

102.  The plaintiff relied on the representations.

103.  The plaintiff acted on the representations.

104.  The representations caused the plaintiff injury.

105.  The defendants agreed upon and operated a scheme ("the scheme") to conceal and misrepresent McDermott's true financial condition and outlook from and to plaintiff and the investing public.

106.  The defendants did not have a reasonable basis for their scheme and engaged in practices and a course of business that operated as a fraud and deceit upon plaintiff.

107. Neither the creation of the scheme nor the defendants' acts under the scheme, including those acts mentioned, discussed or detailed herein, were done while the defendants were acting under the scope of their employment. Nothing herein alleges, assumes or implies that the defendants were acting under the scope of their employment when they acted under the scheme or when their actions harmed the plaintiff.

108. The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent adverse material information about McDermott International, including, but not limited to, its actual (poor) present financial condition, its current earnings losses, its projected large earnings losses, its deteriorating financial condition and its impending bankruptcy filing from and to plaintiff and the investing public.

109. The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent the fact that McDermott International's Cameron LNG and Freeport LNG operations were experiencing large losses and were projected to continue experiencing large losses from and to plaintiff and the investing public.

110.  The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent the fact that the company had already made the decision to file for bankruptcy and that a bankruptcy filing was imminent from and to plaintiff and the investing public.

111.  The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent the fact that the company only planned to sell its Lummus Technology business as part of a negotiated, pre-packaged bankruptcy plan from and to plaintiff and the investing public.

112.  The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct (the scheme) to conceal and misrepresent the fact that its lenders informed it that no further funds would be made available to the company outside of  a negotiated bankruptcy filing from and to plaintiff and the investing public.

113.  The defendants and their representatives, with prior knowledge and approval of the defendants, individually and in concert, directly and indirectly,

concealed and made the misrepresentations of the material facts set forth herein with the intent to induce the plaintiff to rely on such concealment and material misrepresentations.

114.  Such material misrepresentations were done knowingly, and without a reasonable basis, for the purpose and effect of concealing the true status of McDermott's financial condition and outlook from plaintiff and the investing public.

115.  Plaintiff reasonably relied on the defendants' misrepresentations of material facts in connection with his purchases and retention of McDermott International common stock.  Plaintiff, not knowing that adverse material facts had been concealed, relied on the defendants' material misrepresentations both directly to the extent they were personally made to plaintiff and indirectly to the extent they artificially inflated the market price.  But for the defendants' concealment of adverse material facts and their material misrepresentations (wrongful conduct), plaintiff would not have purchased and retained (held) his McDermott International stock.

116.  Plaintiff alleges that he was directly harmed by the actions of the defendants as described herein.  Plaintiff further alleges that the actions of the defendants as described herein did not harm or deplete the assets of the bankruptcy estate.

117. As a direct and proximate result of the defendants' concealment of adverse material facts and the defendants' misrepresentations of material facts (wrongful conduct), plaintiff suffered damages in connection with his purchases and his retention (holding) of McDermott International common stock in excess of the jurisdictional limits of the Montgomery County, Texas, District Court.

118. Pursuant to Section 41.003 of the Texas Civil Practice and Remedies Code, plaintiff is entitled to recover exemplary damages in an amount to be determined by the trier of fact."

## Plaintiff's Suit is Non-Core.

Plaintiff filed his Third Amended Petition on June 18, 2021. The complaint, which included only state-law causes of action, included a claim of common law fraud against all defendants and various assault claims against defendant Sussberg (ROA 10-main/458-500; 10-1/1-7). The bankruptcy court subsequently granted plaintiff's request to dismiss all claims against Sussberg (ROA 10-1/420, 10-1/441, 450). That left only one claim, the common law fraud state claim, against non-debtor defendants Dickson, Spence and Lamb. When a plaintiff voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction. *Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816, 819 n.5

(1978). (In the following, the word 'defendants' or 'defendant' does not include to Sussberg.)

In its 10/12/21 Order, the bankruptcy court erred when it ruled that plaintiff's claim (state-law common law fraud) is a core proceeding (ROA 10-1/446) because it relates 'to the enforcement of the court's confirmation order and interpretation of a confirmed plan'. The bankruptcy court's incorrect claim that the proceeding is core relies on 28 U.S.C. Section 157(b)(2). Section 157(b)(2) provides a list of events, none of which are mentioned by the 10/12/21 Order, which could make a proceeding core (events 'A' through 'P'). None of these events state a claim is core because it relates 'to the enforcement of the court's confirmation order and interpretation of a confirmed plan'. Furthermore, allowing any claim that relies on the enforcement of the court's confirmation order and interpretation of a confirmed plan would impermissibly make every claim core in violation of the Bankruptcy Act of 1984. *Japhet v. Kenneth R. Lyle Estate (In re Hous. Bluebonnet, L.L.C.)*, CASE NO: 16-34850, at *6-7 (Bankr. S.D. Tex. Dec. 6, 2016).

A proceeding is core under 28 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987); *In Re: Petroleum Products $ Services, Inc., et al, v. McClinton Energy Group, LLC, et al*, 561 B.R. 662, United States Bankruptcy Court, S.D.

Texas, Houston Division (2016).  Plaintiff's state law common law fraud claim did not invoke a substantive right provided by title 11.  It involved only fraudulent misrepresentations made to the plaintiff by the defendants *that occurred prior to the bankruptcy filing*.  Plaintiff's suit, which was removed by the defendants from Montgomery County, Texas, District Court, could have been, and would have been, adjudicated in state court absent the bankruptcy filing.

*In re Wood* cautions against interpreting § 157(b) in a way that causes "the entire range of proceedings under bankruptcy jurisdiction [t]o fall within the scope of core proceedings." 825 F.2d at 95. A claim based on state created rights, which could have proceeded in state court had there been no bankruptcy, is likely not core. *Id.* at 97.  *McClinton*, Supra.

If a *proceeding* does not invoke a substantive right created by Title 11, is based on *state law*, and could exist outside of the *bankruptcy*, it is a non-*core proceeding.  In re Enron Securities*; Civil Action No. H-01-3624 Consolidated Cases, Civil Action No. G-02-0299 (S.D. Tex. Aug. 9, 2002).

"Suits that could proceed in another court even in the absence of *bankruptcy* — are not *core proceedings*." *Mirant Corp. v. the Southern Co.*, 337 B.R. 107 (N.D. Tex. 2006).

**The Bankruptcy Court Did Not Have Authority or Jurisdiction to Issue It's
October 12, 2021, Final Order Because Plaintiff Did Not Consent to Entry of
Final Orders or Judgment by the Bankruptcy Court.**

The Bankruptcy Court issued its final Order in plaintiff's suit against the
defendants on October 12, 2021 (ROA 10-1/441).  It can be seen from the above
that plaintiff's complaint, a private, state-law only, cause of action between non-
debtors, did not implicate public rights (was not core).

The bankruptcy court's 10/12/21 Order (ROA 10-1/441) erred when it stated
that "The Court has constitutional authority to enter a final order in these contested
matters."  The bankruptcy court's 10/12/21 Order miscited *Stern v. Marshall*, 564
U.S. 462, 469 (2011), in reaching its incorrect conclusion.  Actually, *Stern v.
Marshall, Id.*, states that  **a bankruptcy court lacks the constitutional authority
to enter a final judgment on a state law [counter]claim that is not resolved in
the process of ruling on a creditor's proof of claim**.  (The defendants have never
claimed that plaintiff has filed a proof of claim in the McDermott International
bankruptcy proceedings.  Plaintiff has not filed a proof of claim.)

"Under the Constitution, Article I bankruptcy courts can issue final orders
only with respect to public rights, **unless all parties consent to the issuance of
final orders by the bankruptcy judge.** Accordingly, the Supreme Court held that
state law causes of action that do not implicate bankruptcy-related public rights
could only be resolved through final orders by Article III courts. Subsequently, §

157's core versus non-core claims provision and the report and recommendation

system were born." *In re Ramirez*, 413 B.R. 621, 627 (Bankr. S.D. Tex. 2009).

28 U.S.C.  Section 157(c)(1)(2) states:

"(1)
A bankruptcy judge may hear a proceeding that is not a core proceeding but
that is otherwise related to a case under title 11. In such proceeding, the bankruptcy
judge shall submit proposed findings of fact and conclusions of law to the district
court, and any final order or judgment shall be entered by the district judge after
considering the bankruptcy judge's proposed findings and conclusions and after
reviewing de novo those matters to which any party has timely and specifically
objected.
(2)
Notwithstanding the provisions of paragraph (1) of this subsection, the
district court, with the consent of all the parties to the proceeding, may refer a
proceeding related to a case under title 11 to a bankruptcy judge to hear and
determine and to enter appropriate orders and judgments, subject to review under
section 158 of this title."

Plaintiff, pursuant to Bankruptcy Rule 9027(e)(3), signed, filed and served

the following statement in his Motion to Remand (ROA 10-main/67; 10-main/134)

filed on 7/23/2021 (six days after the defendants Notice of Removal (ROA 10-

main/12) was filed on 7/17/21):

"Plaintiff does not consent to entry of final orders or judgment by the

bankruptcy court."

Furthermore, plaintiff further told the bankruptcy court and counsel for all

defendants during an August 9, 2021, hearing on plaintiff's suit that plaintiff did

not consent to entry of final orders or judgment by the bankruptcy court (ROA 10-

1/368).

It can be seen from the above that, because plaintiff's complaint is non-core, the bankruptcy court could not statutorily or jurisdictionally issue a final Order, which it did anyway.  The bankruptcy court had two choices if plaintiff's complaint was non-core **but otherwise related to the bankruptcy case** (which it is not as seen below): 1) submit proposed findings of fact and conclusions of law to the district court, which it did not do or 2) issue a final Order if it had permission from all the parties to do so, which it did not have.

Because the bankruptcy court unconstitutionally issued its October 12, 2021, final Order as well as its September 8, 2021, Order Granting Defendants' Emergency  Motion to seal, those orders must be vacated.


## **Besides Being Non-Core, Plaintiff's Suit Is Not Related to the Bankruptcy Case and the Bankruptcy Court Does Not Have Jurisdiction to Hear It.**

The bankruptcy erred when it ruled it had 'related-to' jurisdiction over plaintiff's case.

Plaintiff's Third Amended Petition and his 8/9/2021 hearing testimony allege that plaintiff was directly harmed by the actions of the non-debtor defendants when they intentionally fraudulently misrepresented to *him* (and other members of the investing public) the true financial condition of McDermott International (ROA 10-main/455; 10-1/1; 10-1/368).  Plaintiff's Third Amended Petition and his 8/9/21 hearing testimony also allege that the assets of the bankruptcy estate were not

depleted by the actions of the defendants (ROA 10-main/455; 10-1/1; 10-1/368).

(Neither in their Motions to Dismiss Plaintiff's Third Amended Complaint (ROA

10-1/8; 10-1/45; 10-1/105; 10-1/132; 10-1/319; 10-1/357) nor in the 8/9/21 hearing

(ROA 10-1/368) do the defendants controvert plaintiff's allegations that he was

directly harmed by the actions of the defendants or that the assets of the

bankruptcy estate were not depleted by the actions of the defendants.)

*In re Seven Seas Petroleum*, 522 F.3d 575, 583 (5th Cir. 2008), the Fifth

Circuit stated (emphasis added):

"Bankruptcy court rulings and decisions are reviewed by a court of appeals under
the same standards employed by the district court hearing the appeal from
bankruptcy court; conclusions of law are reviewed *de novo*, findings of fact are
reviewed for clear error, and mixed questions of fact and law are reviewed *de
novo.*" *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l
Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000) (citing *Traina v. Whitney Nat'l
Bank*, 109 F.3d 244, 246 (5th Cir. 1997)). **The bankruptcy court's finding that it
had subject matter jurisdiction is a legal determination that we review de
novo.** *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d
296, 303 (5th Cir. 2002). **Whether a specific cause of action belongs to a
bankruptcy estate is likewise a matter of law that we decide by reference to
the *facial allegations* in the complaint.** *Schertz-Cibolo-Universal City, Indep.
School District v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281,
1285 (5th Cir. 1994).

Whether a particular state-law claim belongs to the bankruptcy estate depends on
whether under applicable state law the debtor could have raised the claim as of the
commencement of the case. *In re Educators Group Health Trust*, 25 F.3d at 1284
(citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*,
817 F.2d 1142 (5th Cir. 1987); *In re MortgageAmerica*, 714 F.2d at 1275-77). As
part of this inquiry, we look to the nature of the injury for which relief is sought
and consider the relationship between the debtor and the injury. *Id.* at 1284-85; *see
In re E.F. Hutton Sw. Props. II, Ltd.*, 103 B.R. 808, 812 (Bankr.N.D.Tex. 1989)
("The injury characterization analysis should be considered as an inseparable

component of whether an action belongs to the [estate] or [creditor]."). "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *In re Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted). **"Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."** *Id.*

Our decision in *Educators Group Health Trust* illustrates these principles. There, a group of school districts obtained health benefits for their teachers from Educators Group Health Trust ("EGHT"). *Id.* at 1283. When EGHT went bankrupt, the school districts sued the principals of EGHT's third party-administrator on various theories, including mismanagement of EGHT and fraud. *Id.* We held that certain claims relating to the alleged mismanagement, such as claims that the principals of the third-party administrator negligently managed EGHT or conspired to make it insolvent, were property of the EGHT bankruptcy estate, reasoning that the claims alleged an injury to the school districts that derived from a direct injury to EGHT. *Id.* at 1285. **However, we held that other claims, such as fraud, conspiracy to commit fraud, and misrepresentation, belonged solely to the school districts, *id.* at 1286,** after explaining that:

'We do agree . . . with the plaintiff school districts' contention that some of the causes of action allege a direct injury to themselves, which is not derivative of any harm to the debtor. For example, the plaintiff school districts allege . . . that the defendants intentionally misrepresented *to them* the financial situation of EGHT, and that they materially relied on such representations to their detriment. To the extent that this cause of action and others allege a direct injury to the plaintiff school districts, they belong to the plaintiff school districts and not the estate.

*Id.* at 1285.'

**However, the existence of common parties and shared facts between the bankruptcy and the bondholders' suit does not necessarily mean that the claims asserted by the bondholders are property of the estate.** Indeed, as *Educators Group Health Trust* demonstrates, it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct. *See also Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 753 (5th Cir. 1995) (**"Shared facts between the third-party action and a debtor-creditor conflict do not in and of**

**themselves suffice to make the third-party action `related to' the bankruptcy [for purposes of finding bankruptcy jurisdiction].").** We turn our focus, then, to the specific claims at issue here.

**If Chesapeake knew that the reserve estimates *were* false and used them to induce the bondholders to purchase or refrain from selling the unsecured notes, then there was a direct injury to the bondholders that was independent of any injury to Seven Seas. Indeed, we fail to see what direct injury Seven Seas might have suffered on account of the specific wrongdoing that the bondholders complain of here."**

The Fifth Circuit further fleshed out what it means to "affect the estate" in

*Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291

(5th Cir. 2019). In that case, the Fifth Circuit classified injuries as "direct" or

"derivative".

In *Meridian*, the Fifth Circuit stated (emphasis added):

"Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. Id. at 584. If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. Id.; see also 11 U.S.C. § 541(a)(1). In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. *Seven Seas*, 522 F.3d at 584.

**As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate.** Id. at 584 (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). **But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events.** *Seven Seas*, 522 F.3d at 585, 590; Educators Trust, 25 F.3d at 1284–85."

In plaintiff's case, the debtor could not have raised a state common law fraud claim against the defendants because the debtor was not, and could not have been, harmed by the non-debtor defendants' state common law fraud against the plaintiff. Indeed, the defendants' misrepresentations to plaintiff concerning the outlook for McDermott undoubtedly kept McDermott's stock price artificially high which served to actually help the debtor.

Furthermore, in view of the above, because plaintiff's cause of action did not explicitly or implicitly allege harm to the debtor (ROA 10-main/455; 10-1/1), the cause of action could not have been asserted by the debtor as of the commencement of the case and was accordingly not property of the debtor.

**Plaintiff's allegations against the defendants raised in his Third Amended Petition must be taken on their face.** The fact that the plaintiff ultimately may be unable to prevail on his common law fraud claim does not render the claim the property of the bankruptcy estate. *In re Seven Seas Petroleum, Supra.* Furthermore, a claim does not belong to the estate merely because it could be brought by a number of creditors, instead of just one. *In re Seven Seas Petroleum, Supra.*

In *Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 825 (Bankr. S.D. Tex. 2012), Intervenors alleged that the defendants made false representations upon which the intervenors relied when they invested in defendant property. The

33

intervenors allege that the defendants solicited investments by falsely representing that the property was worth $100 million and, later, $300 million, that the corporations would use the investment money to build a reactor, and that an investment was in place when it had in fact been cancelled.  The intervenors allege that they "suffered actual damages proximately caused by the defendants' fraud." The bankruptcy court ruled that the intervenors' claims, *as pleaded,* were direct claims owned by the intervenors.

The defendants have admitted that plaintiff had opted out of the Confirmation Plan's third party release provisions (ROA 10-1/444 (footnote 1); 10-main/367).  But even if he would have not opted out, the release provisions do not release the defendants from plaintiff's common law fraud claim (ROA 10-2/410).  Neither does the Plan's Exculpation or Injunction provisions save the defendants from plaintiff's common law fraud claim (ROA 10-2/410-411).

The defendants are not indemnified by the debtor as to plaintiff's common law fraud claim (ROA 10-2/173-174, 321, 393).  But even if they were, insurance proceeds that are applied to a claim against directors and officers are not property of the estate. *Id.  See Unsecured Creditors Disbursement Committee v. Antill Pipeline Constr. Co. (In re Equinox Oil Co.),* 300 F.3d 614, 618 (5th Cir.2002). And even if insurance proceeds could be applied to the property of the McDermott estate, the estate would have to had made a claim against the defendants, which it

hasn't done.  Most importantly, as we have seen in *Meridian, Supra,* and *In re Seven Seas, Supra,* **the estate and a creditor may have separate claims against a third party arising out of the same events.**

### The Bankruptcy Court Was Required to Remand Plaintiff's State-Law Cause of Action Because It Lacked "Related-To" Subject Matter Jurisdiction.

The bankruptcy court erred in not remanding plaintiff's state common law fraud claim.

Plaintiff's Motion to Remand (ROA 10-main/67; 10-main/134) challenged the bankruptcy court's jurisdiction to hear the adversary proceeding.  So did Plaintiff's Response to Defendants David Dickson, Stuart Spence, and Scott Lamb's Motion to Dismiss Plaintiff's Third Amended Petition (ROA 10-1/100, 103) and his Plaintiff's Response to Defendant Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition (ROA 10-1/126, 129).  This jurisdictional challenge should have been (but wasn't) addressed by the bankruptcy court before hearing the defendants' motions to dismiss.

The Supreme Court has stated that jurisdiction must be  considered at the outset of a case.  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (majority opinion) (quoting *United States v. Troescher,* 99 F.3d 933, 934 n. 1 (9th Cir.1996)).

In *Steel, Supra*, the U.S. Supreme Court stated:

35

"this Court has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit. See, *e. g., Capron* v. *Van Noorden,* 2 Cranch 126; *Arizonans for Official English* v. *Arizona,* 520 U. S. 43, 73. *Bell* v. *Hood, supra; National Railroad Passenger Corp.* v. *National Assn. of Railroad Passengers,* 414 U. S. 453, 465, n. 13; *Norton* v. *Mathews,* 427 U. S. 524, 531; *Secretary of Navy* v. *Avrech,* 418 U. S. 676, 678 *(per curiam); United States* v. *Augenblick,* 393 U. S. 348; *Philbrook* v. *Glodgett,* 421 U. S. 707, 721; and *Chandler* v. *Judicial Council of Tenth Circuit,* 398 U. S. 74, 86-88, distinguished. For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an ultra vires act. Pp. 93-102."

Because the bankruptcy court lacked "related-to" subject matter jurisdiction, as seen above, it was required to remand plaintiff's state-law only cause of action to Montgomery County, Texas, District Court where it was originally filed.

If the Court lacks subject matter jurisdiction over claims because the claims are not related to a bankruptcy, then the Court must remand the claims. *Collins v. Sydow, Supra.*

Instead, the bankruptcy court, in its 10/12/21 Order dismissing plaintiff's case, clearly erred when it ignored plaintiff's jurisdictional argument and his Motion to Remand, considered plaintiff's state-law common law fraud claim as a federal claim, applied the federal heightened pleading standards of 12(b)(6) and 9(b) to the state common law fraud claim, dismissed plaintiff's state common law fraud claim and **then** dismissed plaintiff's remand argument by stating that the dismissal of plaintiff's state common law fraud claim left nothing to remand (ROA 10-1/441)!

## Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)

The bankruptcy court erred by not exercising mandatory abstention in plaintiff's case.

Even if plaintiff's common law fraud claim was only "related to" McDermott's bankruptcy case (which it isn't), mandatory abstention under 28 U.S.C. Section 1334(c)(2) would apply. In his Motion to Remand, plaintiff moved (among other things) for mandatory abstention (ROA 10-main/67; 10-main/134).

Section 1334(c)(2) states:

"Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

*In Re: Petroleum Products & Services, Inc.*, 561 B.R. 662, United States Bankruptcy Court, S.D. Texas, Houston Division (2016) states:

"A district court must abstain from hearing state law claims when: "(1) the claims have no independent basis for federal jurisdiction other than § 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be timely adjudicated in state court." *In re Mugica,* 362 B.R. at 792 (citing *Schuster v. Mims (In re Rupp & Bowman Co.),* 109 F.3d 237, 240 (5th Cir. 1997)). The burden to prove that all of these elements of mandatory abstention are present is on the moving party. *See In re Petroleum Prod. & Servs., Inc.,* 556 B.R. 296 (Bankr. S.D. Tex. 2016)."

"Mandatory abstention applies only to non-core proceedings — that is, proceedings "related to a case under title 11," but not "arising under title 11, or arising in a case

under title 11." 28 U.S.C. §§ 157(b)(1), 1334(c)(2). *Matter of Gober,* 100 F.3d 1195, 1206 (5th Cir. 1996)."

Plaintiff has satisfied the first factor. Plaintiff's claims (assuming they were "related to" the bankruptcy, which they aren't) would have no independent basis for federal jurisdiction other than Section 1334(b) as seen herein and in Plaintiff's Third Amended Petition (ROA 10-main/455; 10-1/1). There is no federal subject matter jurisdiction over plaintiff's state law claims absent jurisdiction pursuant to Section 1334(b) and diversity of citizenship is lacking.

Plaintiff has also satisfied the second factor. As seen herein and in Plaintiff's Third Amended Petition, plaintiff's claims are non-core (ROA 10-main/455; 10-1/1).

Plaintiff has also satisfied the third factor. Plaintiff's suit was timely commenced in Montgomery County, Texas, District Court (ROA 10-1/443-444; 10-main/57-64).

The fourth factor looks to whether "the action could be adjudicated timely in state court." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10. The standard for timely adjudication in state court does not place a burden upon the movant to show a "*more timely* adjudicat[ion] in state court, but only that the matter can be timely adjudicated..." *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *12-13. However, plaintiff addresses this 'burden'.

On information and belief, Montgomery County is 'open' and not subject to a shelter-in-place order. The Montgomery County District Court Clerk's office is currently fully staffed and open to the public during the COVID-19 pandemic. The Clerk's office dockets cases and events on a normal basis. Court 284 (Judge Bays), where the defendants' case was removed from, is open and holding jury trials. There is no indication that the Montgomery County Court or its staff is unable to efficiently and normally handle its case load during the pandemic. Plaintiff is approved and has been able to electronically file documents in Montgomery County District Court. The Montgomery County Court, including Court 284, hears cases on a full-time basis in Montgomery County. Montgomery County held its annual rodeo on April 9 through April 18, 2021. (ROA 10-1/134-136)

On the other hand, on information and belief, Harris County bankruptcy court is still following its COVID protocol. On November 16, 2021, Judge Jones, the bankruptcy judge who oversaw plaintiff's adversary proceeding against the defendants stated:

"Although the Houston Courthouse has been reopened to the public, hearings will continue to be by video/audio except as authorized by General Order 2020-11" (Southern District of Texas Bankruptcy Court website).

Whereas the Montgomery County, Texas, District Court Judge assigned to plaintiff's case against the defendants (Judge Bays) is overseeing cases on a full-time basis, Judge Jones is only hearing Houston cases (including the instant action)

on a part-time basis as he divides his time between hearing separate cases in

Houston, Corpus Christi and Laredo.  (ROA 10-1/134-136).

Plaintiff is not allowed to electronically file documents in the Southern

District Bankruptcy Court.  This results in plaintiff's filings being delayed until

plaintiff can make the seventy mile dangerous and costly round trip from his

residence to the bankruptcy courthouse.  The 2021 Harris County Rodeo was

cancelled due to COVID.  (ROA 10-1/134-136).

"[The] Covid-19 [pandemic] ....does not weigh in favor of retaining federal

jurisdiction".  Southern District of Texas Chief Judge Lee H. Rosenthal in

*American General Life Insurance Company v. Schahin II Finance Company (SPV)*

*Limited*, Civil Action No. H-19-4025, U.S. District Court, S.D. Texas, Houston

Division (June 16, 2020).

The above illustrates that there is an exceedingly high likelihood that

plaintiff's state-law case against the defendants will be adjudicated much more

quickly in Montgomery County District Court than it would be in the Southern

District of Texas Bankruptcy Court.

Furthermore, since the defendants have rendered no evidence to indicate that

the state court could *not* adjudicate the matter in a timely fashion, the Court must

presume that the state court will timely adjudicate the matter, given the immense

policy interest in comity.  *In re Doctors Hosp.*, 351 B.R. at 846 n.29.

Most importantly, **"While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not necessary where the movant is contesting the removal of his own state action."** (Emphasis added.) *In Re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *Abadie v. Poppin*, 154 B.R. 86, 90 (N.D. Cal. 1993)).

Given the above, plaintiff has satisfied the fourth factor that the action should be adjudicated in state court.


**The Factual Allegations Included in Plaintiff's Third Amended Petition Satisfy the Heightened Federal Pleading Standard.**

Even though the bankruptcy court did not have jurisdiction to reach Plaintiff's Third Amended Petition (it did anyway), the factual allegations underlying plaintiff's state common law fraud claim, together with Count I (Common Law Fraud), contained therein (ROA 10-main/455; 10-1/1) satisfied the heightened federal pleading standard for fraud and the bankruptcy court erred in dismissing plaintiff's common law fraud complaint against the defendants. (The common law fraud factual allegations, together with Count I, contained in 37 pages of Plaintiff's Third Amended Petition, are much more detailed and robust than what is summarized in a page-and-a-half in the bankruptcy court's October 12, 2021,

Order dismissing plaintiff's complaint  (ROA 10-main/455; 10-1/1; 10-1/441, 447-448)).

### The Factual Allegations Included in Plaintiff's Third Amended Petition Satisfy the Texas State Pleading Standard for Common Law Fraud.

The bankruptcy erred in dismissing plaintiff's state-law common law fraud claim.  Even though the bankruptcy court did not have jurisdiction to reach plaintiff's state-law common law fraud claim (it apparently did anyway), the factual allegations included in Plaintiff's Third Amended Petition satisfy the Texas state pleading standard for common law fraud.

Texas Rules Civ. Proc. Rule 45(b) states that pleadings shall **"consist of a statement in plain and concise language of the plaintiff's cause of action** or the defendant's grounds of defense. **That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole."** (Emphasis added.)

Rule 45 also states that "All pleadings shall be construed so as to do substantial justice."

Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000).  Rule 47 of the Texas  Rule of

Civil Procedure provides a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved . . . ." Tex. R. Civ. P. 47. "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). The test of fair notice is whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant. *Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). **The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. Id.** (Emphasis added.)

As seen in Plaintiff's Third Amended Petition (10-main/455; 10-1/1) , the defendants made numerous false statements of fact to plaintiff in furtherance of their scheme.  Some of the defendants' statements may be construed as actionable opinion. Plaintiff's Third Amended Petition (ROA 10-main/455; 10-1/1) alleges that the defendants made representations to plaintiff that they knew were false.  An opinion may support a fraud claim if the defendant knows the statement of opinion is false. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Allen v. Devon Entergy Holdings, L.L.C.*, 367 S.W.3d 355, 370 (Tex.App. - Houston [1st Dist.] 2012).

Plaintiff's third Amended Petition (ROA 10-main/455; 10-1/1) alleges that the defendants made representations to plaintiff based on false statements of fact. An opinion may support a fraud claim if the opinion is based on or supported with false statements of fact. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995); *Trenholm*, supra; *Allen*, supra. If an opinion is intertwined with misstatements of fact, the opinion amounts to a false representation of fact. *Trenholm*, supra; *Allen*, supra.

An opinion about the happening of a future event may be actionable if the defendant (1) purports to have special knowledge of facts that will occur in the future, (2) has present knowledge that the statement is false, or (3) offers an opinion based on facts known to be false. *Trenholm*, supra, (element 1); *Nancarrow v. Whitmer*, 463 S.W.3d 243, 252 (Tex.App. - Waco 2015) (element 2); *Guevara v. Lackner*, 447 S.W.3d 566, 577 (Tex.App. - Corpus Christi 2014) (elements 2, 3). Plaintiff's Third Amended Petition is actionable against the defendants on all three elements (10-main/455; 10-1/1).

A false promise of future performance is actionable as a false representation when the defendant had no intention of performing it. *Aquaplex, Inc. v. Rancho La Valencia, Inc*. 297 S.W.3d 768, 774 (Tex.2009).

Even though the defendants communicated with plaintiff through press releases, quarterly and annual reports and other documents (ROA 10-main/455; 10-

1/1), they are still liable to plaintiff for their fraudulent scheme. A plaintiff can be a member of a class of people who relied on the defendants' misrepresentations. Even if a defendant does not know the specific identity of a plaintiff, the defendant can be held liable for fraud if the defendant had information that would have led a reasonable person to believe that the misrepresentation would reach the class of people (i.e. - the investing public) the plaintiff belongs to, and that the class would rely on the misrepresentation. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573 (Tex.2001).

A person may be vicariously liable for the fraudulent act of another if the person benefited from a fraudulent transaction and had knowledge of the fraud. *First State Bank v. Fatheree*, 847 S.W.2d 391, 396 (Tex.App. - Amarillo 1993, writ denied).

Plaintiff's Third Amended Petition (ROA 10-main/455; 10-1/1) alleges the elements of joint enterprise in its allegation that the defendants participated in a "scheme". Vicarious liability can be imposed on a defendant under the theory of joint enterprise (e.g. - the defendants' "scheme"). *Blackburn v. Columbia Med. Ctr.* 58 S.W.3d 263, 272-73 (Tex.App. - Fort Worth 2001, pet. denied).

The concept of piercing the corporate veil does not apply to this action as it applies in holding an individual liable for a cause of action that otherwise could have been brought against only the corporation. *Dodd V. Savino*, 426 S.W.3d 275,

291 (Tex.App. - Houston [14th Dist.] 2014, no pet.).  In an action to hold a

corporate officer liable for her own tortious conduct, the corporate veil is not

required to be pierced.  *Alexander v. Kent*, 480 S.W.3d 676, 698 (Tex,App. - Fort

Worth 2015, no pet.).

Texas Common Law Fraud elements are:

1.  The defendant made a representation to the plaintiff.

2.  The representation was material.

3.  The representation was false.

4.  When the defendant made the representation, the defendant

(1)  knew the representation was false, or

(2)  made the representation recklessly, as a positive assertion, and

without knowledge of the truth.

5.  The defendant made the representation with the intent that the plaintiff act on it.

6.  The plaintiff relied on the representation.

7.  The representation caused the plaintiff injury.

See, for example, *JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*, 546 S.W.3d

648, 653 (Tex.2018).

On page 14 of his Motion to Dismiss (ROA 10-1/25), Defendant Sussberg

states that "a failure to disclose information does not constitute fraud unless there is

a duty to disclose the information".  He is incorrect.  Defendant Sussberg is

confusing fraud by nondisclosure with fraudulent misrepresentation (commonly

referred to as 'common law fraud'), which plaintiff sues the defendants for in state

court. The elements of fraudulent misrepresentation do not include a duty to

disclose (or the existence of a fiduciary duty). See above. *JPMorgan Chase Bank*

*v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex.2018).

Plaintiff's Third Amended Petition (ROA 10-main/455; 10-1/1) contains

plain and concise statements stating the elements of Texas state-law common law

fraud that allow the defendants to ascertain the nature and the basic issues of the

controversy and the testimony probably relevant. **Nowhere in their pleadings do
the defendants claim that plaintiff's *state-law* claim for common law fraud is
insufficiently pleaded. In fact, they do not even *address* plaintiff's state law
claim for common law fraud. Accordingly, the state-law claim for common
law fraud must stand.** (ROA 10-1/8; 10-1/45; 10-1/319; 10-1/357).

## The Bankruptcy Court's October 12, 2021, Order Was Illegal and Violated Plaintiff's Constitutional Rights.

28 U.S.C. Section 1334 confines a bankruptcy court's subject matter

jurisdiction to matters that are at least related to a bankruptcy case.

The Bankruptcy Court's subject matter jurisdiction is limited to bankruptcy

cases and proceedings that arise under the Bankruptcy Code, arise in a bankruptcy

case, or are related to a bankruptcy case. 28 U.S.C. § 1334. *Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 825 (Bankr. S.D. Tex. 2012).

Bankruptcy courts are Article I courts. State law causes of action that do not implicate bankruptcy-related public rights can only be resolved through final orders by Article III courts. *In re Ramirez*, 413 B.R. 621, 627 (Bankr. S.D. Tex. 2009).

*In re Seven Seas Petroleum*, 522 F.3d 575, 583 (5th Cir. 2008) states:

"After a plan is confirmed, the bankruptcy court's jurisdiction is limited to matters pertaining to the implementation or execution of the plan. *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). This jurisdiction extends to matters that "impact compliance with or completion of the reorganization plan." *In re U.S. Brass Corp.*, 301 F.3d at 305."

**A plan only releases the estate's claims against a debtor and third party pursuits of their own claims against the debtor cannot be characterized as an attempt to invalidate the release contained in the plan, and jurisdiction is not available on this basis** (emphasis added). *Seven Seas, Supra.*

The bankruptcy court does not have jurisdiction of plaintiff's private actions unrelated to the judicial proceedings under 11 U.S.C. 105(a). Section 105(a) authorizes the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code:

"The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 301 (7th Cir. 1994) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)). Thus, courts may not use § 105 to

create substantive rights unavailable under the Code. *See Taylor v. United States (In re Taylor)*, 263 B.R. 139 (N.D. Ala. 2001) (note: on appeal to 11th Cir.); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.)*, 262 B.R. 893, 899 (D. Del. 2001); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 451 (Bankr. E.D. Ark. 1994); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

Apparently not realizing the limits of his authority, Judge Jones, in his October 12, 2021, Order, after stating that "The McDermott bankruptcy case is over. The Court's confirmation order is final and binding.", ordered that **"*Any* further *state court litigation* brought by Mr. Van Deelen regarding *McDermott* or *these proceedings* should be removed immediately to this Court. If such litigation is initiated and the current pattern of behavior continues, the Court will *revisit* the issue of *compensatory* and coercive sanctions necessary to protect the sanctity of the Court's orders, the bankruptcy process, and the rule of law."** (Emphasis added.) (ROA 10-1/441, 453).

As seen herein, the Article I bankruptcy judge Judge Jones has no authority whatsoever to prevent plaintiff from initiating *any state court litigation* against *McDermott* (whom plaintiff has never sued) *or* nebulously relating to "*these proceedings*" (that are over and have been finalized). Furthermore, during the motion hearing held on August 9, 2021, the defendants, through their attorneys, each told Judge Jones that they were not seeking monetary sanctions against the plaintiff (ROA 10-2/278). The court is simply attempting to further intimidate

plaintiff into not exercising his fundamental rights of freedom of speech and equal access to the courts and to further retaliate against plaintiff for having already done so in his suit against the current defendants, each of whom is no longer employed by McDermott.

The appellate court must overturn the bankruptcy court's illegal, unconstitutional, Order discussed above.

## It Was Erroneous for the Bankruptcy Court to Grant the Defendants' Emergency Motion to Seal.

The bankruptcy court erred in granting the Defendants' Emergency Motion to Seal.

Defendants Dickson, Lamb and Spence filed their Emergency Motion to Seal on March 8, 2021, (ROA 10-main/260).  On March 10, 2021, plaintiff filed his Response to Defendants' Emergency Motion to Seal (ROA 10-main/269) and his request for hearing (ROA 10-main/274) on that motion.

On September 8, 2021, Judge Jones issued his Order Granting Defendants' Emergency Motion to Seal (ROA 10-1/437).  Although plaintiff requested a hearing on the motion to seal (ROA 10-main/274) and although Judge Jones' Order (ROA 10-1/437) states that 'this Court... [has] heard the statements in support of the relief requested therein at a hearing before this Court;', **there was no hearing.**

The Court can only seal documents that have been filed with it. 11 U.S.C.

107(a)(b) states:

'(a)
Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
(1)
protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
(2)
protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.'

The documents had nothing to do with minor children (Section 112).

Plaintiff had not filed, and had no intention to file, the documents contained in the Defendants' Emergency Motion to Seal. They were private communications between the defendant attorneys and the plaintiff that were not in the form of a motion or other pleading. (ROA 10-main/269).

Incredibly, the defendants filed their own documents and then asked Judge Jones to seal them. The defendants filed their own documents (Doc 37) and then asked the court to grant them relief by sealing them.

On October 27, 2021, plaintiff filed in this appeal his Appellants' Motion to Accept Documents Under Seal Into Appellate Record, including the documents filed by the defendants (Doc 37). This Court has yet to rule on plaintiff's motion.

In *Bradley v. Ackal*, No. 18-31052 (5th Cir. 2020), the Fifth Circuit stated:

"The public "has a common law right to inspect and copy judicial records." Van Waeyenberghe, 990 F.2d at 848. This right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness[, and] serves as a check on the integrity of the system." United States v. Sealed Search Warrants, 868 F.3d 385, 395 (5th Cir. 2017) (citation, internal quotation marks, and brackets omitted); see also United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[T]he bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.") (quoting Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir. 1993))."

This Court must vacate the granting of the Defendants' Emergency Motion to Seal (ROA 10-main/260).

## The Cancel Culture and the Demonization of the Plaintiff

(Note: Plaintiff would not normally include this heading's discussion in a pleading and he is uncomfortable doing so now.  However, plaintiff has been falsely accused on the record of improper behavior by defendants and the bankruptcy court.  Plaintiff accordingly feels he has no choice but to respond to the false allegations herein.)

On February 27, 2020, plaintiff filed his "Motion for an Order Sustaining Party in Interest's Opposition and Objection to Confirmation of Debtor's Plan, Granting Party in Interest's Modified Plan, in Whole or in Part, and Ordering an Investigation Pursuant to 18 U.S.C. Section 158(d) and 18 U.S.C. Section 3057".

In part, the motion sought an investigation into improper, criminal activities

pursued by McDermott and its advisors before and during the pendency of the

bankruptcy proceedings. (ROA 10-1/442; 10-2/475, 484-485). The motion

concluded:

"Based on the above, Van Deelen alleges that McDermott, certain members of its
management and its advisors, violated 18 U.S.C. Section 152 when they made
various false oaths and accounts to the bankruptcy court, including when they
claimed that McDermott had to re-equitize the company as part of its bankruptcy
plan and that certain documents filed with the court were accurate; violated 18
U.S.C. Section 154 when they failed to provide the U.S. Trustee documents which
showed that they had previously concluded that the company did not have to file
for Chapter 11 bankruptcy and documents which showed that, once Chapter 11
bankruptcy was filed, the company did not have to re-equitize; and violated 18
U.S.C. Section157 when they filed documents with the bankruptcy court
purporting to show that McDermott had to re-equitize the company in order to
satisfactorily exit bankruptcy when they knew that the reason they claimed the
need to re-equitize was so that they could be granted 7.5% of the company's new
shares upon emergence from bankruptcy.
      Van Deelen alleges that McDermott's bankruptcy plan has not been
proposed in good faith and has been proposed by a means forbidden by law in
violation of 11 U.S.C. Section 1129(3) because the plan calls for the cancellation
of existing shares, the elimination of virtually all of the company's outstanding debt
and the re-equitization of the company for the sole purpose of enriching
McDermott's management and Board and not because said cancellation of shares,
elimination of all debt and re-equitization of the company is necessary for the
satisfactory emergence of the company from bankruptcy.
      Van Deelen alleges that McDermott's bankruptcy plan discriminates unfairly
and is not fair and equitable with respect to current shareholders in violation of 11
U.S.C. Section 1129 (b)(1) because it is not necessary to cancel the shares of the
existing shareholders, to eliminate virtually all of the company's outstanding debt
and to re-equitize the company in order for the plan to be viable. The plan calls for
the cancellation of existing shares, the elimination of virtually all of the company's
outstanding debt and the re-equitization of the company for the sole purpose of
enriching McDermott's management and Board and not because said cancellation
of shares, elimination of all debt and re-equitization of the company is necessary
for the satisfactory emergence of the company from bankruptcy.

Van Deelen, pursuant to 18 U.S.C. 158(d) and 18 U.S.C. Section 3057, moves the court to refer for investigation the claims of McDermott, certain members of its management and its advisors **(including Joshua Sussberg)** (emphasis added) that McDermott has to re-equitize the company in order to satisfactorily exit bankruptcy."

(ROA 10-2/480-481).

In violation of plaintiff's Constitutional rights of equal access to the courts, due process and equal protection of the laws and in retaliation against plaintiff for plaintiff's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc., Judge Jones refused to calendar or hear plaintiff's motion even though plaintiff had requested the same pursuant to local rule and custom and the Fed. R. Civ. Proc.   (ROA 10-2/481-482; 10-2/422).  During the March 12, 2020, Plan Confirmation Hearing, plaintiff told the bankruptcy court that he wanted to discuss the motion.  Judge Jones refused to hear or take evidence on the motion.  Nevertheless, at the end of the hearing, without having heard the motion, Judge Jones declared the motion 'frivolous' and then taunted plaintiff by stating 'Now who are you going to have to pay?' or words to that effect (ROA 10-2/422).

Kirkland and Ellis, including attorney Joshua Sussberg, was one of McDermott's bankruptcy advisors.  (ROA 10-2/263,418).

On March 4, 2020, plaintiff filed and served in bankruptcy case 20-30336, *In re: McDermott International, Inc.*, his Expedited Motion for an Order Continuing

the March 12, 2020, Plan Confirmation Hearing Until Such Time as the Lummus

Stalking Horse Purchaser Has Shown It Has Obtained, or Can Obtain, Funds to

Consummate the Lummus Purchase.  (ROA 10-2/268).

A hearing on plaintiff's motion was held on March 9, 2020.  During the

hearing, in which plaintiff's motion was denied, Judge Jones constantly and

repeatedly treated the plaintiff in a demonstrably egregious and hostile manner.

(ROA 10-2/278).

The Fifth Circuit's *Rules for Judicial-Conduct and Judicial-Disability*

*Proceedings* defines judicial misconduct, in part, as:

"treating litigants, attorneys, judicial employees, or others in demonstrably
egregious and hostile manner"

During the March 9, 2020, hearing, plaintiff told Judge Jones that plaintiff is

a Phi Beta Kappa graduate of Stanford, has a Master's from M.I.T. and is a member

of Mensa.  (ROA 10-2/484; 10-2/278).

The McDermott Plan Confirmation hearing was held at 9:00 a.m., C.S.T., on

March 12, 2020.

During the Plan Confirmation hearing, Judge Jones continued to treat

plaintiff in a demonstrably egregious and hostile manner.  Evidence of Judge Jones'

improper behavior towards the plaintiff is available on the audio recording of the

March 12, 2020, Plan Confirmation Hearing (ROA 10-2/422).  Judge Jones'

actions toward the plaintiff were in violation of plaintiff's Constitutional rights of

equal access to the courts, due process and equal protection of the laws and in retaliation against the plaintiff for plaintiff's attempted exercising of his right of equal access to the courts and in violation of local rule and custom and the Fed. R. Civ. Proc. and made in the attempt to chill further protected speech by the plaintiff. (ROA 10-2/483; 10-2/422).

During the March 12, 2020, Plan Confirmation hearing, Judge Jones violated all appearance of impartiality when he told the packed courtroom that the McDermott bankruptcy advisors, including Mr. Sussberg, were "the smartest people in the country" or words to that effect.  (ROA 10-2/483-484; 10-2/422).  On the other hand, the trial court publicly told plaintiff during the March 9, 2020, hearing referenced above: "You know nothing!" when discussing plaintiff's qualifications and knowledge of the case in open court.  (ROA 10-2/483-484; 10-2/278).

During the McDermott Plan Confirmation Hearing held on March 12, 2020, plaintiff visibly angered Kirkland (Joshua Sussberg) when he objected to the reading of Kirkland's expert witness reports favoring bankruptcy directly into the record.  Instead, plaintiff made the experts testify during the hearing so that he could ask them questions.  This took a lot of time.  One of the Kirkland attorneys, Joshua Sussberg, (whom plaintiff had asked to be investigated as noted above) was sitting next to plaintiff in the courtroom.  The longer the testimony took, the

angrier Mr. Sussberg appeared.  Eventually, Mr. Sussberg began to glare at plaintiff and subsequently told plaintiff 'You are disgusting!" and made other insults to plaintiff.  At the time, plaintiff did not know Mr. Sussberg's name.  (ROA 10-2/475; 10-2/535-536).

After the hearing was over, plaintiff went to the restroom.  As plaintiff was entering the restroom, Mr. Sussberg was coming out.  Plaintiff politely asked him for his name.  Mr. Sussberg would not give plaintiff his name.  He became very angry and once again told plaintiff 'You are disgusting!' and also told plaintiff 'You are a fool!'  Mr. Sussberg then went around a corner towards the elevators.  For some reason, Mr. Sussberg turned around and came storming back to the restroom area.  He aggressively charged plaintiff and stopped just a couple of inches from plaintiff, made contact with the plaintiff, and once again began to berate plaintiff.  Plaintiff was very frightened.  Plaintiff was a 70 year-old senior citizen and Mr. Sussberg was a muscular person who appeared to be in his late 30's or early 40's. (ROA 10-main/492-497; 10-2/476; 10-2/535-536).

Plaintiff was determined to find the name of this person so plaintiff could complain about his terrible behavior, including his assault of plaintiff.  Plaintiff got on the Kirkland website and found Sussberg's picture which identified him as Joshua Sussberg.  Plaintiff then sent Mr. Sussberg a courtesy email asking him if he was the one who had sat across from plaintiff at the March 12, 2020, Plan

Confirmation Hearing.  Plaintiff gave Mr. Sussberg until Wednesday, March 18, 2020, to reply.  (ROA 10-2/476; 10-2/537).

On March 17, 2020, one day before Mr. Sussberg's reply deadline, attorneys for McDermott International, including Mr. Sussberg of Kirkland & Ellis, LLP, filed their 'Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt Of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel. (ROA 10-2/477; 10-2/496).

The motion falsely accused plaintiff of a host of improprieties during the March 12, 2020, Plan Confirmation Hearing, including calling Judge Jones a 'Son-of-a-Bitch' during the Plan Confirmation Hearing.  To "prove" that plaintiff called Judge Jones a 'Son-of-a-Bitch', the attorneys for McDermott, including Sussberg, provided an audio clip of the alleged words:

AUDIO CLIP, March 12, 2020 Hearing, 3:19:29-3:21:20.

The attorneys also provided a YouTube link to the supposed name calling:

https://youtu.be/XkyjeEEAklI

The problem for the defendants is that neither the audio clip nor the youtube citations contains the plaintiff calling Judge Jones a 'Son-of-a-Bitch'!  (ROA 10-2/498; 10-1/177).  The allegation made by the defendant attorneys was fraudulent.

Plaintiff believes Kirkland's motion was an attempt to intimidate plaintiff, color plaintiff in a false light in the eyes of the court, retaliate against plaintiff and frustrate plaintiff for his desire to complain about Mr. Sussberg for his bad acts against plaintiff as described herein. (ROA 10-2/478).

After being served the Kirkland motion, plaintiff filed and served his 'Party In Interest Michael Van Deelen's Response to Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held In Contempt of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel', on March 18, 2020. Said response denied the allegations of improper behavior raised in the Kirkland motion. (ROA 10-2/435; 10-2/478; 10-2/533-538).

On March 23, 2020, the trial court, apparently without listening to the audio clip and youtube citation to determine that they were fraudulent and without holding the hearing requested by the defendants' Motion to Appear and Show Cause, signed and issued its Order (ROA 10-2/456), which was **effective immediately** (emphasis added), denying McDermott's contempt request and its request to permanently enjoin plaintiff from contacting the debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication, with the exception of Mr. Sussberg and his family. (Note: the Kirkland motion did

not use the word 'permanent injunction', but a plain reading of the motion makes it clear that a permanent injunction was what was being requested.)

However, without notice or trial, the trial court's March 23, 2020, Order permanently enjoined plaintiff 1) from contacting or associating with attorney Sussberg or members of his family in any manner; 2) from contacting the court and its staff 'by any means' and 3) from visiting the Houston federal courthouse without being escorted by courthouse security.  The Order stated that plaintiff would be subject to arrest if he attempted to contact Mr. Sussberg or his family. (ROA 10-2/456).

Judge Jones' denial of plaintiff's right to notice and a trial before the implementation of a permanent injunction was contrary to law and a violation of plaintiff's rights of equal access to the courts, due process and equal protection of the laws.

The trial court's March 23, 2020, Order (ROA 10-2/456) informed plaintiff that if plaintiff sought relief from the Order or if plaintiff wanted a hearing on the Order, plaintiff could request a hearing within the next 14 days.  On March 24, 2020, the day after the permanent injunction was issued by Judge Jones, plaintiff filed his 'Party In Interest Michael Van Deelen's Request for Hearing' seeking clarification of the March 23, 2020, Order and requesting a hearing.  (ROA 10-2/458).  Plaintiff was sitting just a few feet from Judge Jones during the Plan

Confirmation Hearing.  If plaintiff would have called Judge Jones a 'Son of a Bitch', Judge Jones would certainly have heard him do so.  (ROA 10-2/435; 10-2/450).  In his March 23, 2020, Order, Judge Jones admits that he did not hear plaintiff call him a 'Son-of-a-Bitch'.  However the Order claims that the words could be heard on the 'original audio with headphones'.  Accordingly, plaintiff wanted to find out precisely where on the audio tape of the March 12, 2020, Plan Confirmation Hearing plaintiff can be heard calling the trial court a 'Son of a Bitch' and he requested the promised hearing.  (ROA 10-2/458; 10-2/486-487).

On April 20, 2020, in violation of his own March 23, 2020, Order, Judge Jones issued an Order which denied plaintiff's request for a hearing.  (ROA 10-2/463).  The April 20, 2020, Order denying plaintiff's request for a hearing stated, "The pleading does nothing more than seek to disrupt further the legitimate ends of the bankruptcy process and has no legitimate purpose."  (ROA 10-2/463).

Judge Jones' March 23, 2020, Order accused plaintiff of lying about calling Judge Jones a 'Son-of-a-Bitch'.  Plaintiff requested a hearing in which, among other things, Judge Jones could prove his allegation.  Rather than grant the hearing (as promised in Judge Jones' March 23, 2020, Order), Judge Jones passed.  The trial court's animosity towards plaintiff could not have been made more clear.  (ROA 10-2/456; 10-2/463; 10-2/479-480).

Likely because the fraudulent strategy had worked before, as seen above, and not letting the facts get in the way of their argument, Mr. Sussberg and his attorney, David Beck, in their Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions (ROA 10-1/8) repeated the false claim that plaintiff had called Judge Jones a 'Son-of-a-Bitch' by citing the same portion of the audio clip that had previously been falsely cited to the court by Sussberg and the other McDermott attorneys as discussed above, 3:19:29-3:21:20. (ROA 10-1/16; 10-1/177). Not surprisingly, the audio clip still did not include plaintiff calling Judge Jones a 'Son-of-a-Bitch'. Plaintiff once again refuted the maliciously false claim on pages 25 and 26 of his Plaintiff's Response to Defendant Joshua Sussberg's Motion to Dismiss Plaintiff's Third Amended Petition and for Sanctions. (ROA 10-1/146-147; 10-1/177).

Judge Jones' 10/12/21 Order states that plaintiff became combative during the 3/12/21 Plan Confirmation Hearing in threatening to sue the debtors' counsel [Sussberg] for having threatened him and Judge Jones for having violated his civil rights (ROA 10-1/441, 443). Listening to the audio from the Plan Confirmation Hearing will show that plaintiff was not at all combative during the hearing.

Contrarily, a large part of the interaction time during the hearing was spent by Judge Jones berating the plaintiff. (ROA 10-2/422). The 10/12/21 Order also states: 'Mr. Van Deelen employs a designed, deliberate, and practiced litigation

strategy free from the confines of honesty and ethics that bind attorneys that appear before the Court'.  (ROA 10-1/441, 453).  Not surprisingly, Judge Jones offers no examples to back up his denigration of the plaintiff because there are no examples. It is telling that Judge Jones' 10/12/21 Order does not allege that plaintiff called him a 'Son-of-a-Bitch' during the 3/12/21 Plan Confirmation Hearing.

### The Bankruptcy Court Erred By Denying Plaintiff's Motion to Recuse Judge Jones.

Plaintiff filed and served his Motions to Recuse Judge Jones in the adversary case on July 27, 2020, and on July 31, 2020 (ROA 10-main/69; 10-main/142).  The motions incorporated by reference plaintiff's previously filed Petition for Writ of Mandamus Against the Honorable David R. Jones in the Fifth Circuit Court of Appeals (case number 20-20286).  (ROA 10-2/466).  (The Writ was eventually dismissed on technical grounds rather than the merits.)  Plaintiff's Motions to Recuse (including the Petition for Writ) alleged the same facts about Judge Jones' abusive, unconstitutional behavior towards the plaintiff as alleged herein.

On March 8, 2021, plaintiff filed and served his Plaintiff's Addendum to his Motion to Recuse Judge Jones (DOC 39).  The Addendum contained an anonymous letter received by plaintiff on or about March 5, 2021, that accused Judge Jones of 'corruption' in his role as Chief Bankruptcy Judge for the Southern District of Texas Bankruptcy Court.

Plaintiff's Addendum was sealed on March 9, 2021 (ROA 10-main/267).  On October 27, 2021, plaintiff filed in this appeal his Appellants' Motion to Accept Documents Under Seal Into Appellate Record which asked that Plaintiff's Addendum be unsealed.  This Court has yet to rule on plaintiff's motion.

On March 10, 2021, plaintiff's Motions to Recuse (ROA 10-main/69; 10-main/142) were heard via telephonic conference by Judge Marvin Isgur.  Without issuing findings of fact or conclusions of law, Judge Isgur denied plaintiff's motions to recuse.  (ROA 10-main/267; 10-main/268; 10-main/277).

The denial of plaintiff's Motion to Recuse was erroneous and should be vacated by this Court.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1.      Vacate the bankruptcy court's October 12, 2021, final Order.

2.      Vacate the dismissal of plaintiff's Third Amended Petition.

3.      Remand plaintiff's case to Montgomery County, Texas, District Court.

4.      Vacate the bankruptcy court's October 12, 2021, Order's constraints on plaintiff filing which state:

> *"Any* further *state court litigation* brought by **Mr. Van Deelen regarding** *McDermott* **or** *these proceedings* **should be removed immediately to this Court."**

5.      Vacate the order granting the Defendants' Emergency Motion to Seal and unseal the documents (DOC. 37 in adversary proceeding 20-3309).

6.      Vacate the order sealing Plaintiff's Addendum to Plaintiff's Motion Pursuant to 28 U.S.C. Sections 455(a) and 455(b)(1) to Disqualify Bankruptcy Court Judge David Jones From Presiding Over the Above-Captioned Adversary Proceeding and unseal the documents (DOC. 39 in adversary proceeding 20-3309).

7.      Recuse bankruptcy court Judge Jones from any further participation in plaintiff's case.

8.      Grant such other and further relief as the Court deems just.

Dated this 3rd day of December, 2021.

Respectfully submitted,

/s/ Michael Van Deelen
Michael Van Deelen
Appellant
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains 12,962 words, not including items

excluded pursuant to Rule 8015(g).  I further certify that this document has been

prepared in a conventional typeface no smaller than 14-point for text.

Dated: December 3, 2021

/s/ Michael Van Deelen
Appellant

## CERTIFICATE OF SERVICE

I, Michael Van Deelen, do hereby certify that I caused a copy of the foregoing document to be served on the defendants by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on December 7, 2021.  I further certify that, by prior custom, I emailed copies of the foregoing documents to:

**Matthew D Cavenaugh**
Jackson Walker LLP
Email: mcavenaugh@jw.com

**Jamie Alan Aycock**
Kirkland & Ellis LLP
Email: jamie.aycock@kirkland.com

**Anna Rotman**
Kirkland & Ellis LLP
Email: anna.rotman@kirkland.com

Attorneys for defendants Dickson, Spence and Lamb

And:

**David J. Beck**
Beck Redden LLP
Email: dbeck@beckredden.com

Attorney for dismissed defendant Joshua Sussberg

/s/ Michael Van Deelen
Michael Van Deelen
Appellant
16215 Friar Circle
Spring, TX 77379
832-562-0723
michaelvandeelen@gmail.com