CASE NO. 4:21-cv-03369

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In Re McDermott International, Inc.

Debtor

***Michael Van Deelen***
**Appellant**

v.

***David Dickson, Stuart Spence, Scott Lamb, Joshua Sussberg***
**Appellees**

On Appeal from the U.S. Bankruptcy Court for the Southern District of Texas
(Honorable David Jones)

Bankruptcy No. 20-30336
Adversary Proceeding No. 20-3309

**APPELLEES' BRIEF**

Dated: January 6, 2022

| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Anna G. Rotman, P.C. (TX Bar No. 24046761) |
| Veronica A. Polnick  (TX Bar No. 24079148) | Jamie Alan Aycock   (TX Bar No. 24050241) |
| 1401 McKinney Street, Suite 1900 | 609 Main Street |
| Houston, TX 77010 | Houston, TX 77002 |
| Telephone:      (713) 752-4200 | Telephone:      (713) 836-3600 |
| Fascimile:      (713) 752-4221 | Facsimile:      (713) 836-3601 |
| Email:      mcavenaugh@jw.com | Email:      anna.rotman@kirkland.com |
|             jwertz@jw.com |             jamie.aycock@kirkland.com |
|             vpolnick@jw.com | |

***Counsel for Appellees David Dickson, Stuart Spence, and Scott Lamb***

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, the following table identifies each debtor not named in the case caption and, for each debtor corporation not named in the case caption, any parent corporation or publicly held corporation owning 10% or more of such debtor corporation's stock.

| Debtor | Parent for Debtor Corporations |
|---|---|
| | |
| 850 Pine Street LLC | CB&I Group Inc. |
| A & B Builders, Ltd. | Matrix Engineering, Ltd. (MANAGED BY HOWE-BAKER INTERNATIONAL MANAGEMENT, L.L.C.) |
| Aiton & Co Limited | Shaw Group UK Limited |
| Arabian CBI Co Ltd. | CB&I Singapore Pte. Ltd.; Chicago Bridge & Iron Company B.V. |
| Arabian CBI Tank Manufacturing Company Ltd. | CB&I Singapore Pte. Ltd.; Chicago Bridge & Iron Company B.V. |
| Asia Pacific Supply Co. | Chicago Bridge & Iron Company |
| Atlantic Contingency Constructors II, LLC | Shaw Home Louisiana, LLC |
| Atlantis Contractors Inc. | Chicago Bridge & Iron Company |
| CB&I (US) Holdings, Limited | Comet II B.V. |
| CB&I Brazil Holdings, Inc. | CB&I International, Inc. |
| CB&I Canada Ltd. | CB&I Power Company B.V. |
| CB&I Clearfield, Inc. | CB&I Group Inc. |
| CB&I Cojafex B.V. | CB&I Group Inc. |
| CB&I Connecticut, Inc. | CB&I Group Inc. |
| CB&I Constructors Limited | CB&I Holdings (UK) Limited |
| CB&I El Dorado, Inc. | CB&I Group Inc. |
| CB&I Energy Services, LLC | CB&I Group Inc. |
| CB&I Europe B.V. | CB&I Power Company B.V. |
| CB&I Fabrication, LLC | CB&I Group Inc. |
| CB&I Finance Company Limited | Chicago Bridge & Iron Company B.V. |
| CB&I Financial Resources LLC | Chicago Bridge & Iron Company |

i

| Debtor | Parent for Debtor Corporations |
|---|---|
| CB&I Global Operations International, Pte. Ltd. | CB&I Singapore Pte. Ltd. |
| CB&I Global Operations US Pte. Ltd. | CB&I Singapore Pte. Ltd.; Chicago Bridge & Iron Company |
| CB&I Global, L.L.C. | CB&I UK LIMITED |
| CB&I Group Inc. | Chicago Bridge & Iron Company |
| CB&I Group UK Holdings | CB&I Global, L.L.C. |
| CB&I Holdco International, LLC | CB&I Holdco, LLC |
| CB&I Holdco, LLC | CB&I Group Inc. |
| CB&I Holdings (UK) Limited | Chicago Bridge & Iron Company B.V. |
| CB&I Holdings B.V. | Comet II B.V. |
| CB&I Houston 06 LLC | CB&I UK LIMITED |
| CB&I Houston 07 LLC | CB&I UK LIMITED |
| CB&I Houston 08 LLC | CB&I UK LIMITED |
| CB&I Houston 09 LLC | CB&I UK LIMITED |
| CB&I Houston 10 LLC | CB&I UK LIMITED |
| CB&I Houston 11 LLC | CB&I UK LIMITED |
| CB&I Houston 12 LLC | CB&I UK LIMITED |
| CB&I Houston 13 LLC | CB&I UK LIMITED |
| CB&I Houston LLC | CB&I UK LIMITED |
| CB&I International One, LLC | CB&I International, Inc. |
| CB&I International, Inc. | CB&I Group Inc. |
| CB&I International, LLC | CB&I Holdco, LLC |
| CB&I Laurens, Inc. | CB&I Group Inc. |
| CB&I LLC | CB&I Holdco, LLC |
| CB&I London | CB&I Paddington Limited |
| CB&I Matamoros, S. de R. L. de C.V. | CB&I Rio Grande Valley Fabrication & Manufacturing, L.L.C. |
| CB&I Middle East Holding, Inc. | CB&I International, Inc. |
| CB&I Nederland B.V. | CB&I Oil & Gas Europe B.V. |
| CB&I North Carolina, Inc. | CB&I Holdco, LLC |
| CB&I Offshore Services, Inc. | CB&I Energy Services, LLC |
| CB&I Oil & Gas Europe B.V. | Chicago Bridge & Iron Company B.V. |
| CB&I Paddington Limited | CB&I Tyler LLC |
| CB&I Power Company B.V. | Chicago Bridge & Iron Company B.V. |
| CB&I Power International, Inc. | CB&I International, Inc. |
| CB&I Power Limited | CB&I Oil & Gas Europe B.V. |
| CB&I Power, LLC | CB&I Group Inc. |

| Debtor | Parent for Debtor Corporations |
|---|---|
| CB&I Project Services Group, LLC | CB&I Holdco, LLC |
| CB&I Rio Grande Holdings, L.L.C. | CB&I Rio Grande Valley Fabrication & Manufacturing, L.L.C. |
| CB&I Rio Grande Valley Fabrication & Manufacturing, L.L.C. | Shaw Power Services, LLC |
| CB&I Rusland B.V. | CB&I Oil & Gas Europe B.V. |
| CB&I Singapore Pte. Ltd. | CB&I Oil & Gas Europe B.V. |
| CB&I Storage Tank Solutions LLC | CB&I LLC |
| CB&I STS Delaware LLC | Chicago Bridge & Iron Company |
| CB&I STS Holdings LLC | Chicago Bridge & Iron Company |
| CB&I Tyler LLC | Chicago Bridge & Iron Company |
| CB&I UK LIMITED | |
| CBI Americas Ltd. | Chicago Bridge & Iron Company |
| CBI Company B.V. | CBI Company Two B.V. |
| CBI Company Ltd. | Chicago Bridge & Iron Company |
| CBI Company Two B.V. | CB&I Oil & Gas Europe B.V. |
| CBI Constructors Pty. Ltd. | Chicago Bridge & Iron Company B.V. |
| CBI Eastern Anstalt | Chicago Bridge & Iron (Antilles) N. V. |
| CBI HoldCo Two Inc. | CBI Company B.V. |
| CBI Overseas (Far East) Inc. | CB&I International, Inc.; CBI UK Cayman Acquisition Limited |
| CBI Overseas, LLC | Chicago Bridge & Iron (Antilles) N. V. |
| CBI Panama, S.A. | Chicago Bridge & Iron Company B.V. |
| CBI Services, LLC | CB&I Holdco, LLC |
| CBI UK Cayman Acquisition Limited | CB&I International, Inc. |
| CBI US Holding Company Inc. | Comet II B.V. |
| Central Trading Company Ltd. | |
| Chartering Company (Singapore) Pte. Ltd. | J. Ray McDermott, S.A. |
| Chicago Bridge & Iron (Antilles) N.V. | Chicago Bridge & Iron Company B.V. |
| Chicago Bridge & Iron Company | Chicago Bridge & Iron Company |
| Chicago Bridge & Iron Company (Delaware) | Chicago Bridge & Iron Company |
| Chicago Bridge & Iron Company B.V. | Lealand Finance Company B.V. |
| Chicago Bridge de Mexico, S.A. de C.V. | Chicago Bridge & Iron Company B.V. |

| Debtor | Parent for Debtor Corporations |
|---|---|
| Comet II B.V. | |
| Constructors International, L.L.C. | Howe-Baker International, L.L.C. |
| CSA Trading Company Ltd. | Chicago Bridge & Iron Company |
| Eastern Marine Services, Inc. | Hydro Marine Services, Inc. |
| EDS Equipment Company, LLC | Shaw Transmission & Distribution Services, Inc. |
| Environmental Solutions (Cayman) Ltd. | Environmental Solutions Holding Ltd. |
| Environmental Solutions Holding Ltd. | Shaw Home Louisiana, LLC |
| Environmental Solutions Ltd. | Environmental Solutions (Cayman) Ltd. |
| HBI Holdings, LLC | Howe-Baker International Management, LLC |
| Highland Trading Company, Ltd. | Chicago Bridge & Iron Company |
| Horton CBI, Limited | Chicago Bridge & Iron Company B.V. |
| Howe-Baker Engineers, Ltd. | Howe-Baker Holdings, L.L.C. |
| Howe-Baker Holdings, L.L.C. | Howe-Baker International, L.L.C. |
| Howe-Baker International Management, LLC | Howe-Baker International, L.L.C. |
| Howe-Baker International, L.L.C. | CB&I LLC |
| Howe-Baker Management, L.L.C. | Howe-Baker Holdings, L.L.C. |
| Hydro Marine Services, Inc. | J. Ray McDermott, S.A. |
| International Consultants, L.L.C. | CB&I Holdco, LLC |
| J. Ray Holdings, Inc. | J. Ray McDermott (Luxembourg) S.ar.l. |
| J. Ray McDermott (Aust.) Holding Pty. Limited | North Atlantic Vessel, Inc. |
| J. Ray McDermott (Norway), AS | J. Ray McDermott International, Inc. |
| J. Ray McDermott (Qingdao) Pte. Ltd. | McDermott Asia Pacific Pte. Ltd. |
| J. Ray McDermott de Mexico, S.A. de C.V. | J. Ray McDermott Underwater Services, Inc. |
| J. Ray McDermott Far East, Inc. | J. Ray McDermott International, Inc. |
| J. Ray McDermott Holdings, LLC | J. Ray Holdings, Inc. |
| J. Ray McDermott International Vessels, Ltd. | OPI Vessels, Inc. |
| J. Ray McDermott International, Inc. | J. Ray McDermott, S.A. |
| J. Ray McDermott Solutions, Inc. | McDermott, Inc. |
| J. Ray McDermott Technology, Inc. | J. Ray McDermott Holdings, LLC |
| J. Ray McDermott Underwater Services, Inc. | J. Ray McDermott International, Inc. |

| Debtor | Parent for Debtor Corporations |
|---|---|
| Lealand Finance Company B.V. | Comet II B.V. |
| Lummus Arabia Ltd. Co. | CB&I Nederland B.V. |
| Lutech Project Solutions B.V. | CB&I Oil & Gas Europe B.V. |
| Lutech Projects B.V. | CB&I Oil & Gas Europe B.V. |
| Lutech Resources B.V. | CB&I Oil & Gas Europe B.V. |
| Lutech Resources Canada Ltd. | Chicago Bridge & Iron Company B.V. |
| Lutech Resources Inc. | Chicago Bridge & Iron Company |
| Lutech Resources Limited | CB&I Oil & Gas Europe B.V. |
| Matrix Engineering, Ltd. | Howe-Baker Holdings, L.L.C. |
| Matrix Management Services, L.L.C. | Matrix Engineering, Ltd. (MANAGED BY HOWE-BAKER INTERNATIONAL MANAGEMENT, L.L.C.) |
| McDermott (Amazon Chartering), Inc. | J. Ray McDermott, S.A. |
| McDermott Arabia Company Limited | J. Ray McDermott, S.A.; McDermott Arabia Holdings, Inc. |
| McDermott Asia Pacific Pte. Ltd. | J. Ray McDermott, S.A. |
| McDermott Asia Pacific Sdn. Bhd. | J. Ray McDermott, S.A. |
| McDermott Australia Pty. Ltd. | J. Ray McDermott (Aust.) Holding Pty. Limited |
| McDermott Blackbird Holdings, LLC | McDermott, Inc. |
| McDermott Caspian Contractors, Inc. | J. Ray McDermott, S.A. |
| McDermott Eastern Hemisphere, Ltd. | McDermott Middle East, Inc. |
| McDermott Engineering, LLC | J. Ray McDermott Solutions, Inc. |
| McDermott Finance L.L.C. | McDermott International, Inc. |
| McDermott Gulf Operating Company, Inc. | J. Ray McDermott, S.A. |
| McDermott Holdings (U.K.) Limited | J. Ray McDermott, S.A. |
| McDermott International Management, S. de RL. | McDermott International, Inc. |
| McDermott International Marine Investments N.V. | J. Ray McDermott International, Inc. |
| McDermott International Trading Co., Inc. | McDermott International Investments Co., Inc. |
| McDermott International Vessels, Inc. | J. Ray McDermott, S.A. |
| McDermott Investments, LLC | J. Ray Holdings, Inc. |

| Debtor | Parent for Debtor Corporations |
|---|---|
| McDermott Marine Construction Limited | McDermott International Trading Co., Inc. |
| McDermott Marine Mexico, S.A. de C.V. | McDermott Offshore Services Company, Inc. |
| McDermott Middle East, Inc. | J. Ray McDermott International, Inc. |
| McDermott Offshore Services Company, Inc. | J. Ray McDermott, S.A. |
| McDermott Old JV Office, Inc. | J. Ray McDermott International, Inc. |
| McDermott Overseas Investment Co. N.V. | McDermott International Trading Co., Inc. |
| McDermott Overseas, Inc. | J. Ray McDermott, S.A. |
| McDermott Servicos Offshore do Brasil Ltda. | McDermott, Inc. |
| McDermott Subsea Engineering, Inc. | J. Ray McDermott Holdings, LLC |
| McDermott Subsea, Inc. | J. Ray McDermott International, Inc. |
| McDermott Technology (Americas), Inc. | McDermott International, Inc. |
| McDermott Technology (US), Inc. | McDermott International, Inc. |
| McDermott Technology, B.V. | McDermott International, Inc. |
| McDermott Technology, LLC | |
| McDermott Trinidad Ltd | J. Ray McDermott International, Inc. |
| McDermott, Inc. | J. Ray McDermott Holdings, LLC |
| Netherlands Operating Company B.V. | CB&I Oil & Gas Europe B.V. |
| North Atlantic Vessel, Inc. | J. Ray McDermott Holdings, LLC |
| North Ocean 105 AS | J. Ray McDermott (Norway), AS |
| Nuclear Energy Holdings, L.L.C. | CB&I Group Inc. |
| Oasis Supply Company, Ltd. | Chicago Bridge & Iron Company |
| Oceanic Contractors, Inc. | Chicago Bridge & Iron Company |
| Offshore Pipelines International, Ltd. | McDermott, Inc. |
| OPI Vessels, Inc. | |
| Oxford Metal Supply Limited | CB&I Constructors Limited |
| Pike Properties II, Inc. | CB&I Group Inc. |
| Pipework Engineering and Developments Limited | CB&I Group UK Holdings |
| Prospect Industries (Holdings) Inc. | Shaw Power Services, LLC |
| S C Woods, L.L.C. | CB&I Holdco, LLC |
| Servicios de Fabricacion de Altamira, S.A. de C.V. | J. Ray McDermott Underwater Services, Inc. |

| Debtor | Parent for Debtor Corporations |
|--------|-------------------------------|
| Servicios Profesionales de Altamira, S.A. de C.V. | J. Ray McDermott Underwater Services, Inc. |
| Shaw Beneco, Inc. | CB&I Group Inc. |
| Shaw Connex, Inc. | Prospect Industries (Holdings) Inc. |
| Shaw Dunn Limited | CB&I Group UK Holdings |
| Shaw E & I International Ltd. | CB&I International, Inc. |
| Shaw Energy Services, Inc. | Shaw Transmission & Distribution Services, Inc. |
| Shaw Fabricators, Inc. | CB&I Group Inc. |
| Shaw Far East Services, LLC | S C Woods, L.L.C. |
| Shaw Group UK Limited | CB&I Group UK Holdings |
| Shaw Home Louisiana, LLC | CB&I Group Inc. |
| Shaw International Inc. | CB&I International, Inc.; CBI UK Cayman Acquisition Limited |
| Shaw International Management Services Two, Inc. | CB&I International, Inc. |
| Shaw JV Holdings, L.L.C. | CB&I International, Inc.; CBI UK Cayman Acquisition Limited |
| Shaw Managed Services, LLC | CB&I Fabrication, LLC |
| Shaw Management Services One, Inc. | CB&I Group Inc. |
| Shaw NC Company, Inc. | Shaw Transmission & Distribution Services, Inc. |
| Shaw Nuclear Energy Holdings (UK), Inc. | Shaw Transmission & Distribution Services, Inc. |
| Shaw Power Delivery Systems, Inc. | CB&I Group Inc. |
| Shaw Power Services Group, L.L.C. | CB&I Group Inc. |
| Shaw Power Services, LLC | CB&I Fabrication, LLC |
| Shaw Power Technologies, Inc. | |
| Shaw Process Fabricators, Inc. | CB&I Group Inc. |
| Shaw Services, L.L.C. | CB&I Group Inc. |
| Shaw SSS Fabricators, Inc. | CB&I Group Inc. |
| Shaw Transmission & Distribution Services International, Inc. | Shaw Transmission & Distribution Services, Inc. |
| Shaw Transmission & Distribution Services, Inc. | Shaw Power Delivery Systems, Inc. |
| SparTEC, Inc. | McDermott, Inc. |
| TVL Lender II, Inc. | CB&I Group Inc. |
| Varsy International N.V. | J. Ray McDermott International, Inc. |

| Debtor | Parent for Debtor Corporations |
|---|---|
| Whessoe Piping Systems Limited | Chicago Bridge & Iron Company |

## TABLE OF CONTENTS

**Page**

**CORPORATE DISCLOSURE STATEMENT**......................................................I

**TABLE OF AUTHORITIES** ...............................................................XI

**JURISDICTIONAL STATEMENT** .........................................................1

**STATEMENT REGARDING ORAL ARGUMENT** .........................................2

**STATEMENT OF ISSUES** ...............................................................3

**STATEMENT OF THE CASE** ............................................................4

**SUMMARY OF THE ARGUMENT** ......................................................11

**ARGUMENT** .........................................................................14

**I.   THE BANKRUPTCY COURT PROPERLY EXERCISED JURISDICTION OVER THIS ACTION GIVEN MR. VAN DEELEN'S ALLEGATIONS DIRECTLY IMPLICATE THE CHAPTER 11 PROCEEDINGS AND ORDERS AND HE IMPLIEDLY CONSENTED TO JURISDICTION.** ................................14**

    A.    The bankruptcy court had subject matter jurisdiction because this was a core proceeding. ....................................................18

    B.    The bankruptcy court had subject matter jurisdiction under Craig's Stores because Mr. Van Deelen's claims arose from pre-confirmation relations between the parties and because there were clear antagonisms between the parties on the date of confirmation. ...................................................................19

    C.    Mr. Van Deelen impliedly consented to the bankruptcy court's jurisdiction. ..............................................................21

**II.   MANDATORY ABSTENTION IS INAPPROPRIATE HERE BECAUSE MR. VAN DEELEN'S CLAIM COULD NOT HAVE BEEN TIMELY ADJUDICATED IN STATE COURT.** .........................23**

**III.   THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THIS CASE FOR FAILURE TO STATE A CLAIM BECAUSE MR. VAN DEELEN DID NOT SATISFY RULE 9(B)'S HEIGHTENED PLEADINGS STANDARDS.** ..........................................**26**

**IV.   THE BANKRUPTCY COURT DID NOT ERR IN DENYING MR. VAN DEELEN'S MOTION TO RECUSE GIVEN THAT HE DID NOT PRESENT ANY EVIDENCE OF UNFAIR ANTAGONISM OR PREJUDICE BY THE COURT.** ...........................**34**

**V.   THE BANKRUPTCY COURT DID NOT ERR IN GRANTING MDR DEFENDANTS' MOTION TO SEAL** ...........................................**39**

**CONCLUSION** ..............................................................................**40**

**CERTIFICATE OF COMPLIANCE** ...............................................**43**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrade v. Chojnacki*,
　　338 F.3d 448 (5th Cir. 2003) ........................................................34, 35

*United States ex rel. Barrett v. Johnson Controls, Inc.*,
　　No. 3:01-CV-1641-M, 2003 U.S. Dist. LEXIS 5973 (N.D. Tex.
　　Apr. 9, 2003) ................................................................................26

*Beitel v. OCA, Inc. (In re OCA, Inc.)*,
　　551 F.3d 359 (5th Cir. 2008) ........................................................17, 22

*Bell Atl. Corp. v. Twombly*,
　　127 S. Ct. 1955 (2007) ..................................................................32

*In re Blast Energy Servs., Inc.*,
　　396 B.R. 676 (Bankr. S.D. Tex. 2008) ...........................................20

*Braden v. Tornier, Inc.*,
　　No. C09-5529RJB, 2009 WL 3188075 (W.D. Wash. Sept. 30,
　　2009) ...........................................................................................33

*Bradford v. Vento*,
　　48 S.W.3d 749 (Tex. 2001) ...........................................................31

*Brown v. Shepherd (In re Lorax Corp.)*,
　　295 B.R. 83 (Bankr. N.D. Tex. 2003) ....................................23, 24, 26

*Cano v. GMAC Mortg. Corp. (In re Cano)*,
　　410 B.R. 506 (Bankr. S.D. Tex. 2009) ..........................................16, 18

*Coates v. Heartland Wireless Commc'ns., Inc.*,
　　26 F. Supp. 2d 910 (N.D. Tex. 1998) .............................................29

*In re Craig's Stores of Texas, Inc.*,
　　266 F.3d 388 (5th Cir. 2001) .....................................................*passim*

*DuVoisin v. Foster (In re S. Indus. Banking Corp.)*,
　　809 F.2d 329 (6th Cir. 1987) .........................................................23

*Edge Petroleum Operating Co. v. GPR Holdings, LLC (In re TXNB*
  *Internal Case)*,
  483 F.3d 292 (5th Cir.), *cert. denied*, 128 S. Ct. 613 (2007) ............................23

*Faulkner v. Eagle View Cap. Mgmt. (In re The Heritage Org., LLC)*,
  454 B.R. 353 (Bankr. N.D. Tex. 2011) .................................................15

*Frisia Hartley, LLC v. Wells Fargo Bank, N.A. (In re Talsma)*,
  509 B.R. 535 (Bankr. N.D. Tex. 2014) .................................................15

*In re G.S.F. Corp.*,
  938 F.2d 1467 (1st Cir. 1991) ...........................................................22

*Glaser v. Enzo Biochem, Inc.*,
  303 F. Supp. 2d 724 (E.D. Va. 2003) .................................................29

*Haskett v. Orange Energy Corp.*,
  161 F. Supp. 3d 471 (S.D. Tex. 2015) .................................................39

*Ingalls v. Edgewater Private Equity Fund III, L.P.*,
  No. H-05-1392, 2005 WL 2647962 (S.D. Tex. Oct. 17, 2005) .........................29

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998) .......................................................31, 32

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................33

*Kinnear-Weed Corp. v. Humble Oil & Refin. Co.*,
  441 F.2d 631 (5th Cir. 1971) .......................................................34, 36

*Liteky v. United States*,
  114 S. Ct. 1147 (1994) .....................................................35, 36, 37, 38

*LoCascio v. United States*,
  473 F.3d 493 (2d Cir. 2007) ...........................................................38

*Luppino v. York*,
  No. SA-16-CV-00409-RCL, 2017 WL 8161008 (W.D. Tex. Nov.
  27, 2017) ...............................................................................29

*M.A. Baheth & Co. v. Schott (In re M.A. Baheth Const. Co.)*,
  118 F.3d 1082 (5th Cir. 1997) .........................................................17

*In re Martinez-Catala*,
  129 F.3d 213 (1st Cir. 1997) ................................................................38

*McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*,
  52 F.3d 1330 (5th Cir. 1995) ..............................................................17

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
  583 S.W.3d 553 (Tex. 2019) ................................................................31

*Meyer v. Cathey*,
  167 S.W.3d 327 (Tex. 2005) ................................................................32

*Montalvo v. Vela (In re Montalvo)*,
  559 B.R. 825 (Bankr. S.D. Tex. 2016) ...........................................24, 25

*Mugica v. Helena Chem. Co. (In re Mugica)*,
  362 B.R. 782 (Bankr. S.D. Tex. 2007) .................................................25

*Newby v. Enron Corp. (In re Enron Corp. Sec.)*,
  535 F.3d 325 (5th Cir. 2008) .............................................1, 15, 19, 21

*Parker v. MSB Energy, Inc. (In re MSB Energy, Inc.)*,
  438 B.R. 571 (Bankr. S.D. Tex. 2010) ...........................15, 19, 20, 21

*Petroleum Prods. & Servs., Inc. v. McClinton Energy Grp., LLC (In re
  Petroleum Prods. & Servs., Inc.)*,
  561 B.R. 662 (Bankr. S.D. Tex. 2016) .................................................25

*Premier Pipe, LLC v. J.D. Fields & Co. (In re Hallwood Energy,
  L.P.)*,
  No. 09-31253-H4-11, 2009 WL 2601294 (Bankr. S.D. Tex. Aug.
  24, 2009) ..........................................................................................24

*Ritchie v. Rupe*,
  443 S.W.3d 856 (Tex. 2014) ................................................................31

*Rohi v. Brewer & Pritchard, P.C. (In re ABC Dentistry, P.A.)*,
  No. H-16-34221-11, 2019 WL 6894775 (S.D. Tex. Dec. 17, 2019)...........16, 18

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group*,
  193 F.3d 304 (5th Cir. 1999) ..............................................................26

*SEC v. Van Waeyenberghe*,
   990 F.2d 845 (5th Cir. 1993) ...............................................................39

*Silva v. Spring Branch Indep. School Dist.*,
   No. H-16-0545, 2016 WL 7441709 (S.D. Tex. Dec. 22, 2016) ........................38

*Smith v. Houston EEOC*,
   No. 4:20-CV-1664, 2020 WL 3542433 (S.D. Tex. June 30, 2020) ..................38

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) .....................................................28, 29

*Travelers Indemnity Co. v. Bailey*,
   129 S. Ct. 2195 (2009)..............................................................1, 16, 18

*U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*,
   301 F.3d 296 (5th Cir. 2002) .........................................................14, 16

*United States v. Pearson*,
   203 F.3d 1243 (10th Cir. 2000) ..........................................................38

*Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.)*,
   351 B.R. 813 (Bankr. S.D. Tex. 2006) ................................17, 23, 25

*Villegas v. Texas State Bank (In re BFG Invs. LLC)*,
   366 F. App'x. 513 (5th Cir. 2010) .................................................17, 22

*Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*,
   401 B.R. 848 (Bankr. S.D. Tex. 2009) ...............................................37

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .........................................................26, 28

## Statutes

11 U.S.C. 550 ...................................................................................16

28 U.S.C. § 157 ..............................................................14, 16, 17, 18

28 U.S.C. § 158 .................................................................................1

28 U.S.C. § 455 ................................................................................34

28 U.S.C. § 1334 ......................................................................6, 14, 23

xiv

Corp. L. 45, 42 (2005)...............................................................................32

**Rules**

Fed. R. Bankr. P. 8015................................................................................44

Fed. R. Bankr. P. 8018................................................................................23

Fed. R. Civ. P. 9 ................................................................................*passim*

Fed. R. Civ. P. 41 .........................................................................................9

Fed. R. Civ. P. 81(c)(1)..............................................................................33

**Other Authorities**

Mark J. Loewenstein & William K.S. Wang, *The Corporation as Insider Trader* ....................................................................................32

## JURISDICTIONAL STATEMENT

This appeal is from a final order of the Bankruptcy Court for the Southern District of Texas.  As set forth in more detail below, the bankruptcy court had jurisdiction here because this was a core proceeding requiring the bankruptcy court to interpret and enforce its confirmation order.  *See Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders").  The bankruptcy court also had "related to" jurisdiction because Mr. Van Deelen's claims primarily arise from pre-confirmation relations between the parties; there were clear antagonisms pending between the parties on the date of plan confirmation; and facts or law deriving from the bankruptcy were necessary to the claim.  *See Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)).

The District Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees David Dickson, Stuart Spence, and Scott Lamb (collectively, the "MDR Defendants") respectfully suggest that oral argument is not likely to assist the District Court in adjudicating this matter.  The issues involved herein are not legally or factually complex, nor do they present matters of first impression.  For these reasons, the MDR Defendants do not believe oral argument would be necessary or helpful in this appeal.

## **STATEMENT OF ISSUES**

1.   Whether the bankruptcy court erred in ruling that it had jurisdiction over the instant action.

   Standard of Review: *De Novo*

2.   Whether the bankruptcy court erred in issuing a final order dismissing Mr. Van Deelen's claim.

   Standard of Review: *De Novo*

3.   Whether the bankruptcy court erred in ruling that mandatory abstention was inappropriate.

   Standard of Review: *De Novo*

4.   Whether the heightened pleading standards of Federal Rule of Civil Procedure 9(b) applied to Mr. Van Deelen's complaint.

   Standard of Review: *De Novo*

5.   Whether the bankruptcy court erred in ruling that Mr. Van Deelen's complaint did not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

   Standard of Review: *De Novo*

6.   Whether the bankruptcy court erred in denying Mr. Van Deelen's motion for recusal.

   Standard of Review: Abuse of Discretion

7.   Whether the bankruptcy court erred in granting MDR Defendants' motion to seal.

   Standard of Review: Abuse of Discretion

## STATEMENT OF THE CASE

The chapter 11 plan of McDermott International, Inc. ("McDermott" or "Debtor") recognized that the value that had been held by shareholders like Mr. Van Deelen was lost.  Upset about this loss, Mr. Van Deelen objected to confirmation of the chapter 11 plan in February 2020, based on various allegations about the transactions leading up to filing of the chapter 11 petition as well as during the chapter 11 proceedings.   The bankruptcy court overruled Mr. Van Deelen's objections and confirmed the plan on March 14, 2020.

During the course of the proceedings, in his unbridled enthusiasm for his position, Mr. Van Deelen made certain threatening and vulgar remarks to counsel for the Debtors, such that the Debtors sought emergency relief from the bankruptcy court to prohibit Mr. Van Deelen from further direct contact with the Debtors, their current or former officers, directors and employees, and their counsel. (Bankr. Dkt. 694 ¶¶ 7, 16.)  Mr. Van Deelen also made vulgar remarks toward the bankruptcy court but later denied doing so under oath, even though such comments were overheard by court staff and audible via microphone.  (Bankr. Dkt. 719 at 1.)  The bankruptcy court observed that it was "willing to overlook the insult" but could not "overlook a false statement."  (*Id.*).

Just three months after Mr. Van Deelen's objection to confirmation was overruled, on June 23, 2020, Mr. Van Deelen filed suit asserting virtually the same

allegations against the MDR Defendants—each a current or former officer of the Debtor—as well as 10 unknown John/Jane Does in the 284th Judicial District Court of Montgomery County, Texas (the "State Court Lawsuit"). (ROA 10-main/18.) Among other things, Mr. Van Deelen asserted claims that were explicitly exculpated and released in the bankruptcy court's confirmation order.

Given the overlap with the chapter 11 proceedings and the confirmation order, the MDR defendants removed the State Court Lawsuit to the Bankruptcy Court for the Southern District of Texas on July 17, 2020. (ROA 10-main/12.)  Mr. Van Deelen filed a motion to remand on July 23, 2020. (ROA 10-main/67.) In the motion, Mr. Van Deelen asserted that the bankruptcy court lacked jurisdiction to adjudicate the asserted claims. (*Id.*) Mr. Van Deelen also asserted that mandatory and permissive abstention applied. (*Id.*) The MDR Defendants responded on August 13, 2020, arguing that the bankruptcy court had jurisdiction and that abstention was inappropriate under the circumstances. (ROA 10-main/188.)

On July 25, 2020, the MDR Defendants filed a motion to dismiss Mr. Van Deelen's complaint, arguing that, among other things, the claims asserted by Mr. Van Deelen were covered by the confirmation order's exculpation and release provisions, and that Mr. Van Deelen had failed to satisfy the heightened pleading standards of Rule 9(b). (ROA 10-main/93.) Two days later, on July 27, 2020, Mr. Van Deelen filed a motion to recuse Judge Jones on the ground that, among other

5

things, Judge Jones had "shredded Plaintiff's Constitutional rights" during the chapter 11 proceedings. (ROA 10-main/127.) Mr. Van Deelen then filed a response to MDR Defendants' motion to dismiss on August 12, 2020. (ROA 10-main/151.) In his response, Mr. Van Deelen argued that the case should be remanded before the motion to dismiss could be considered; the bankruptcy court lacked jurisdiction to consider the motion to dismiss; mandatory abstention under § 1334(c)(2) applied; and the confirmation order's exculpation provisions were inapplicable. (*Id.*)

Mr. Van Deelen filed a motion for entry of a default against MDR Defendants on September 24, 2020. (Bankr. Dkt. 21.) A "corrected" version of the motion was filed on September 25, 2020. (Bankr. Dkt. 22.) The MDR Defendants filed a response on October 7, 2020, noting that their motion to dismiss remained pending. (Bankr. Dkt. 23.) Mr. Van Deelen filed a reply and motion for entry of a default judgment on October 8, 2020. (Bankr. Dkt. 26.)

On March 10, 2021, Judge Marvin Isgur conducted a hearing on, and ultimately denied, Mr. Van Deelen's motion to recuse. (Audio at ROA 10-main/277.) Thereafter, the bankruptcy court held a scheduling conference. (Docket No. 43.) At the beginning of the scheduling conference, the bankruptcy court advised Mr. Van Deelen that his complaint contained potential (i) claims released under confirmation order; (ii) derivative claims owned by the bankruptcy estate; and (iii) direct claims. (Audio at ROA 10-main/276.) The bankruptcy court then gave Mr.

6

Van Deelen the opportunity to either proceed with his motion to remand or to amend his petition. (*Id.*) Mr. Van Deelen elected to amend his petition. (*Id.*)

Mr. Van Deelen filed his amended petition on April 8, 2021. (ROA 10-main/278.) In his amended petition, Mr. Van Deelen continued to assert claims against MDR Defendants for fraud and negligent misrepresentation related to events preceding and following the Debtors' bankruptcy filing. (*Id.*)

On May 3, 2021, the MDR Defendants filed an amended motion to dismiss. (ROA 10-main/325.) In the motion, the MDR Defendants asserted that (i) the negligent misrepresentation claim was barred by the bankruptcy court's confirmation order; and (ii) both claims failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (*Id.*) Mr. Van Deelen filed a response to MDR Defendant's motion to dismiss on May 20, 2021, arguing that, among other things, (i) he opted out of the exculpation and release provisions under the amended plan; (ii) the bankruptcy court lacked jurisdiction to consider the motion to dismiss; and (iii) abstention was applicable. (ROA 10-main/349.) The MDR Defendants filed a reply in support of their motion to dismiss on June 3, 2021, arguing that (i) the opt-out mechanism under the amended plan applied only to the third-party release provision—not the exculpation; (ii) the bankruptcy court had jurisdiction to enforce its confirmation order; (iii) abstention was inappropriate; and

(iv) the fraud claim was not asserted with sufficient particularity. (ROA 10-main/390.)

On June 4, 2021, Mr. Van Deelen filed an emergency motion to remove the claim for negligent misrepresentation from his first amended complaint. (ROA 10-main/405.) On June 7, 2021, the bankruptcy court convened a second hearing on the status of Mr. Van Deelen's complaint and all other pending matters. (Bankr. Dkt. 55.) After a lengthy discussion, the bankruptcy court provided Mr. Van Deelen another opportunity to file an amended complaint. (Bankr. Dkt. 55.)

On June 18, 2021, Mr. Van Deelen filed his third amended complaint. (ROA 10-main/455.) In this version of his complaint, Mr. Van Deelen removed the negligent misrepresentation claim, but continued to assert fraud claims against MDR Defendants. (*Id.*) In addition, Mr. Van Deelen added assault and fraud claims against the Debtors' former lead counsel, Joshua Sussberg. (*Id.*) The assault claims concerned events that supposedly took place outside the courtroom just after the confirmation hearing. (*Id.*) The fraud claim focused on Mr. Sussberg's purported pre-petition involvement in the concealment of financial losses by the Debtors and the decision to file bankruptcy. (*Id.*)

On July 12, 2021, Mr. Sussberg filed a motion to dismiss and request for sanctions. (ROA 10-1/8.) On the same day, the MDR Defendants likewise filed a

motion to dismiss the third amended petition. (ROA 10-1/45.) Mr. Van Deelen filed his responses thereto on July 26, 2021. (ROA 10-1/99; 10-1/122.)

On August 9, 2021, the bankruptcy court conducted a hearing on all pending matters. At the conclusion of the hearing, the bankruptcy court took the matter under advisement.

On August 13, 2021, Mr. Sussberg filed his supplemental motion for sanctions. (ROA 10-1/369.) In his motion, Mr. Sussberg attached an email from Mr. Van Deelen addressed to David Beck, counsel for Mr. Sussberg, in which Mr. Van Deelen threatened to sue Mr. Sussberg, Mr. Beck and an unnamed process server for serving a subpoena upon Mr. Van Deelen at his home in anticipation of the August 9, 2021, hearing. (*Id.*) Mr. Sussberg requested that the bankruptcy court find Mr. Van Deelen to be a vexatious litigant and that Mr. Van Deelen be prohibited from filing any future lawsuits related to these bankruptcy proceedings without first obtaining court approval. (*Id.*)

On August 16, 2021, Mr. Van Deelen filed his (i) response to the supplemental motion for sanctions; (ii) motion to strike the supplemental motion for sanctions; and (iii) motion for sanctions against David Beck—Mr. Sussberg's counsel. (ROA 10-1/376.) Concurrent with the response, Mr. Van Deelen also filed separate motions (i) to strike the supplemental motion for sanctions (ROA 10-1/397); and (ii) to dismiss all claims against Mr. Sussberg pursuant to Federal Rule of Civil Procedure

41(a)(2) due to Mr. Sussberg's purported medical condition. (ROA 10-1/420.) Mr. Sussberg responded on August 23, 2021. (ROA 10-1/427.)

On October 12, 2021, the bankruptcy court issued an order, which, among other things, granted MDR Defendants' motion to dismiss with prejudice; granted Mr. Sussberg's motion to dismiss with prejudice; granted Mr. Van Deelen's motion to dismiss Mr. Sussberg in the alternative; denied Mr. Van Deelen's motion to remand; and denied Mr. Sussberg's motion for sanctions without prejudice. (ROA 10-1/441.)

## SUMMARY OF THE ARGUMENT

Mr. Van Deelen actively participated in McDermott's bankruptcy proceedings and objected to confirmation of McDermott's chapter 11 plan of reorganization on the unsupported theory that McDermott never should have filed for chapter 11 and that its filing and the transactions leading up to and included as part of the plan were somehow fraudulent or otherwise wrongful.  Despite having the opportunity, he presented no evidence in support of his theory, and McDermott's plan was confirmed over his objection.  Mr. Van Deelen was made fully aware that the confirmed plan would include the exculpation and injunction provision and would thus prohibit parties from bringing a wide range of claims.  But in complete disregard of the bankruptcy court's confirmation order, Mr. Van Deelen then brought this lawsuit against McDermott officers and employees based on alleged conduct related to the chapter 11 proceedings and related transactions, conduct explicitly exculpated in the confirmation order.

In his original petition, Mr. Van Deelen brought claims against the MDR Defendants for conversion, breach of fiduciary duty, conspiracy, negligent misrepresentation, and statutory and common law fraud based on actions the MDR Defendants allegedly took in connection with McDermott's bankruptcy.  (ROA 10-main/18.)  MDR Defendants removed the case to the bankruptcy court and then moved to dismiss these claims because they were subject to certain provisions of the

11

court's confirmation order, including the exculpation provision, and because the claims did not satisfy federal pleading standards. Since that time, Mr. Van Deelen amended his petition ***three*** times and dropped all of his claims against the MDR Defendants except for common law fraud. Though Mr. Van Deelen amended his claims to remove the specific claims against the MDR Defendants that had been exculpated, the substance of his allegations remained virtually the same.

In spite of having had four bites at the apple, Mr. Van Deelen failed to allege with particularity the circumstances giving rise to the MDR Defendants' purported fraud, or to allege facts showing that the MDR Defendants had a duty to disclose any information they allegedly omitted to provide him. Because Mr. Van Deelen demonstrated that he could not provide even basic information necessary to plead fraud allegations, the bankruptcy court properly dismissed Mr. Van Deelen's claim against the MDR Defendants.

In so doing, the bankruptcy court properly found that, given the nature of Mr. Van Deelen's lawsuit and its connection to McDermott's restructuring, these were core proceedings over which the court could exercise jurisdiction. Given these facts, and the fact that Mr. Van Deelen consented to the bankruptcy court's jurisdiction by seeking multiple default judgments against the MDR Defendants, the bankruptcy court did not err in issuing a final order dismissing Mr. Van Deelen's action.

Nor did the bankruptcy court err in rejecting Mr. Van Deelen's requests for mandatory abstention and recusal.  In making these requests, Mr. Van Deelen failed to show that his case could have been timely adjudicated in state court, as required for mandatory abstention, or that Judge Jones was so biased against him as to make fair judgment impossible, as required for recusal.  The bankruptcy court was not required, in the face of such glaring deficiencies, to grant either request.

For these and other reasons set forth more fully below, the District Court should deny Mr. Van Deelen's appeal.

## **ARGUMENT**

**I.    THE BANKRUPTCY COURT PROPERLY EXERCISED JURISDICTION OVER THIS ACTION GIVEN MR. VAN DEELEN'S ALLEGATIONS DIRECTLY IMPLICATE THE CHAPTER 11 PROCEEDINGS AND ORDERS AND HE IMPLIEDLY CONSENTED TO JURISDICTION.**

Bankruptcy courts derive their subject matter jurisdiction from 28 U.S.C. §§ 1334 and 157. *See U.S. Brass Corp. v. Travelers Ins. Grp., Inc., (In re U.S. Brass Corp.)*, 301 F.3d 296, 303-05 (5th Cir. 2002). Together, and "[b]y way of district-court referral," these sections provide bankruptcy courts with the power to hear (1) cases under title 11; (2) core proceedings "arising under" title 11; (3) core proceedings "arising in" a case under title 11; and (4) non-core proceedings "related to" a case under title 11. *See* 28 U.S.C. §§ 1334(b), 157(a)-(c)(1).

The fourth category—"related to" proceedings—is the broadest, and encompasses any proceeding for which "the outcome . . . could *conceivably* have any effect . . . on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d at 304 (emphasis in original). Moreover, and because "the second, third, and fourth categories . . . operate conjunctively to define the scope of jurisdiction," bankruptcy courts often just need "to determine whether a matter is . . . 'related to' the bankruptcy." *Id*.

Still, the distinction between these categories becomes more important after the bankruptcy court has confirmed the debtor's plan of reorganization. The Fifth

14

Circuit has held that, following confirmation, and as far as non-core, "related to" proceedings are concerned, "bankruptcy jurisdiction[] ceases to exist, other than for matters pertaining to the implementation or execution of the plan[,]" if: (1) the claims primarily arise from post-confirmation relations between the parties; (2) no claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) no facts or law deriving from the bankruptcy are necessary to the claims. *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). But the Fifth Circuit has also emphasized that all three of these *Craig's Stores* factors "[need] not weight heavily in the bankruptcy court's favor" for there to be jurisdiction. *Parker v. MSB Energy, Inc. (In re MSB Energy, Inc.)*, 438 B.R. 571, 586 (Bankr. S.D. Tex. 2010); *In re Enron Corp. Sec.*, 535 F.3d at 335-36.

The Fifth Circuit has not similarly limited post-confirmation bankruptcy jurisdiction over "core" (i.e., "arising under" or "arising in") proceedings. *See, e.g.*, *Frisia Hartley, LLC v. Wells Fargo Bank, N.A. (In re Talsma)*, 509 B.R. 535, 547 (Bankr. N.D. Tex. 2014) ("*Craig's Stores* involved claims that invoked only "related to" jurisdiction. . . . [C]ourts have treated core proceedings differently post-confirmation than the "related to" proceedings within the scope of *Craig's Stores*."); *Faulkner v. Eagle View Cap. Mgmt. (In re The Heritage Org., LLC)*, 454 B.R. 353,

364-65 (Bankr. N.D. Tex. 2011) (concluding that *Craig's Stores* did not apply to an "arising under" proceeding brought pursuant to 11 U.S.C. 550 post-confirmation).

In this context, "core proceedings" are those that "invoke[] a substantive right provided by title 11" or "could arise only in the context of a bankruptcy case," *In re U.S. Brass Corp.*, 301 F.3d at 304, and include proceedings which would require interpretation of bankruptcy court orders. For example, "bankruptcy courts retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders . . . Such matters fall within the Court's 'arising in' and arising under' jurisdiction." *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 546 (Bankr. S.D. Tex. 2009); *see also Rohi v. Brewer & Pritchard, P.C. (In re ABC Dentistry, P.A.),* No. H-16-34221-11, 2019 WL 6894775, at *7 (S.D. Tex. Dec. 17, 2019) (because the removed action would require the bankruptcy court to interpret rights associated with its order dividing settlement proceeds, "the Bankruptcy Court did not err in determining that it had 'arising in or under jurisdiction' over the removed action"); *see also Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders").

In any such core proceeding, a bankruptcy court "may enter appropriate orders and judgments" without the consent of the parties.  *See* 28 U.S.C. § 157(b)(1).

By contrast, in any post-confirmation, non-core proceedings, a bankruptcy court exercising "related to" jurisdiction under *Craig's Stores* may "hear and determine and []enter appropriate orders and judgments" only "with the consent of all the parties" thereto.  *See* 28 U.S.C. § 157(c)(2).  Such consent may be express or implied.  *See, e.g.*, *Villegas v. Texas State Bank (In re BFG Invs. LLC)*, 366 F. App'x. 513, 515 (5th Cir. 2010) (holding that party impliedly consented to the bankruptcy court's entry of final judgment); *Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 368 (5th Cir. 2008) (same); *M.A. Baheth & Co. v. Schott (In re M.A. Baheth Const. Co.)*, 118 F.3d 1082, 1084 (5th Cir. 1997) (same); *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1337 (5th Cir. 1995) (same); *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.)*, 351 B.R. 813, 834 (Bankr. S.D. Tex. 2006) (finding that, based on affirmative representations, a party had waived any right they might have had "to prosecute their claims in the District Court or any state court").

In this case, the bankruptcy court properly found that Mr. Van Deelen's action constituted a core proceeding over which the court could, at the very least, exercise "related to" jurisdiction.  Moreover, and even if this were not a core proceeding, the bankruptcy court nonetheless had "related to" jurisdiction under *Craig's Stores*, and obtained implied consent from the parties to issue final orders and judgments in this action.

### A. The bankruptcy court had subject matter jurisdiction because this was a core proceeding.

In its final order, the bankruptcy court concluded that "[t]hese contested matters are core proceedings under 28 U.S.C. []§ 157(b)(2)" because they "related to the enforcement of the Court's confirmation order and interpretation of the confirmed plan," (ROA 10-1/446), and "involve[d] (i) the interpretation and enforcement of the Amended Plan and confirmation order; (ii) the enforcement of the Court's injunction contained in the Amended Plan; and (iii) matters that occurred before the Court in connection with the underlying bankruptcy proceeding," (ROA 10-1/452).

Despite repeated opportunities to amend his complaint, Mr. Van Deelen continues to set forth allegations that directly implicate the chapter 11 proceedings and the terms of the confirmation order.  This type of matter falls squarely within the definition of core proceedings.  Courts have consistently held that, even following confirmation of a debtor's reorganization plan, the bankruptcy court retains jurisdiction over core proceedings, including proceedings that would require the court to interpret or enforce its orders. *See, e.g.*, *In re Cano*, 410 B.R. at 546; *In re ABC Dentistry, P.A.*, 2019 WL 6894775 at *7; *see also Travelers Indemnity Co.*, 129 S. Ct. at 2205.  For that reason, it was not error for the bankruptcy court to exercise jurisdiction in this case.

**B.** **The bankruptcy court had subject matter jurisdiction under** *Craig's Stores* **because Mr. Van Deelen's claims arose from pre-confirmation relations between the parties and because there were clear antagonisms between the parties on the date of confirmation.**

Even if this were not a core proceeding, the bankruptcy court would still have had "related to" jurisdiction. In determining whether post-confirmation "related to" jurisdiction exists, courts first examine the *Craig's Stores* factors, which are whether: (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *In re Enron Corp. Sec.*, 535 F.3d at 335; *In re MSB Energy, Inc.*, 438 B.R. at 571 (applying factors and finding that post-confirmation "related to" bankruptcy jurisdiction existed).

In this case, it is clear that Mr. Van Deelen's common law fraud claim arose from pre-confirmation relations between the parties. Indeed, Mr. Van Deelen based this claim on actions that the MDR Defendants allegedly took and misrepresentations MDR Defendants allegedly made in connection with and in the months leading up to McDermott's petition for relief under chapter 11. (ROA 10-main/471 ¶ 35, 474-475 ¶¶ 39-40, 476-477 ¶¶ 42-43, 477-478 ¶¶ 45-46, 48, 480 ¶ 51, 481-482 ¶ 55, 483-484 ¶ 58, 490-491 ¶ 74, 498 ¶ 99, 499 ¶ 105, 500 ¶¶ 108-112; ROA 10-1/1 ¶ 112.) Similarly, Mr. Van Deelen's other allegations concerned purported conduct during the plan confirmation hearing that Mr. Van Deelen alleged

was intended to discourage him from challenging the plan and further pursuing the fraud allegations he had already raised to the bankruptcy court in connection with the plan's confirmation.  Mr. Van Deelen's claims thus clearly concerned and arose from pre-confirmation relations between the parties, such that the first *Craig's Stores* factor weighed in favor of the bankruptcy court's jurisdiction. *See, e.g.*, *In re Blast Energy Servs., Inc.*, 396 B.R. 676, 684 (Bankr. S.D. Tex. 2008) ("[A]lthough the dispute arose post-confirmation, the claims against Hallwood . . . arose pre-confirmation. Thus, the claims at issue primarily deal with pre-confirmation relations between the parties[.]"); *In re MSB Energy, Inc.*, 438 B.R. at 586 (holding that the first factor "weighs heavily in favor of bankruptcy court jurisdiction" because "the subject of the Adversary Proceeding" occurred before the confirmation date).

With regard to the second factor, there were obvious "antagonisms" pending between the parties on the date of confirmation. At that time, Mr. Van Deelen had already filed a motion objecting to McDermott's plan of reorganization, and had accused the company and the MDR Defendants of acting in bad faith "for the sole purpose of enriching McDermott's management and Board." (Bankr. Dkt. 510, Motion at 6-15.) Moreover, during the confirmation hearing itself, Mr. Van Deelen made certain threatening and vulgar remarks to counsel for the Debtors, such that the Debtors sought emergency relief from the bankruptcy court to prohibit Mr. Van

Deelen from further direct contact with the Debtors, their current or former officers, directors and employees, and their counsel. (Bankr. Dkt. 694 ¶¶ 7, 16.). This is more than enough to satisfy the second factor. *See, e.g.*, *In re MSB Energy, Inc.*, 438 B.R. at 586 (second factors "weighs heavily in favor" of bankruptcy court jurisdiction because the plaintiffs had filed a motion to lift the automatic stay and objected the reorganization plan prior to the confirmation hearing).

At this point, and given that the first and second factors were satisfied here, the bankruptcy court did not even need to consider the third factor to find that it had jurisdiction over this proceeding. *Id*. at 586-87 ("[P]ursuant to the analysis presented in *Enron*, the Court retains its jurisdiction even if the third factor fails."). Nonetheless, the third factor is also met because Mr. Van Deelen's factual allegations continue to rely on claims about the chapter 11 proceedings themselves. (ROA 10-main/480-481 ¶¶ 52-54, 490 ¶ 73, 492-495 ¶¶ 81-86.)

### C.   Mr. Van Deelen impliedly consented to the bankruptcy court's jurisdiction.

In his brief, Mr. Van Deelen argues that he never consented to the bankruptcy court's jurisdiction, such that the bankruptcy court could not issue any final orders on the MDR Defendants' motion to dismiss.  (Dkt. 12 at 28.)  That is not the case. Though Mr. Van Deelen has previously objected to the bankruptcy court's jurisdiction, he waived any such objections by seeking to have the bankruptcy court enter a default judgment against MDR Defendants in these proceedings.

Specifically, in September 2020, Mr. Van Deelen filed three requests for entry of default, (Bankr. Dkt. 17, 19, 21), and one "corrected" request for entry of default, (Bankr. Dkt. 22) (the "Requests"), against the MDR Defendants.  In each of these Requests, Mr. Van Deelen not only sought a final order and judgment against the MDR Defendants, but he also expressly acknowledged that "[t]his [bankruptcy] Court has jurisdiction over this matter . . . ."  (Dkt. Nos. 17, 19, 21, 22.)  These actions are patently inconsistent with Mr. Van Deelen's current position that the bankruptcy court lacked the consent of the parties (and thus jurisdiction) to enter a final judgment in this case.

Because the bankruptcy court had "related to" jurisdiction for the reasons set forth above, and because the parties impliedly consented (or otherwise waived their existing objections) to the entry of a final order or judgment, this Court should reject Mr. Van Deelen's argument.  *See, e.g.*, *In re BFG Invs. LLC*, 366 F. App'x. at 515 (holding that party impliedly consented to the bankruptcy court's entry of final judgment); *In re OCA, Inc.*, 551 F.3d at 368 (same); *In re G.S.F. Corp.*, 938 F.2d 1467, 1476-77 (1st Cir. 1991) ("Rather than submitting proposed findings to the district court. . . the bankruptcy court purported to enter a final order on the matter. We find, however, that this flaw was cured by the parties' consent . . . The determinative indication of acquiescence was the decision of Lowell and Chase to to file [a stipulation] with the bankruptcy court, for entry as a final judgment. There

can be no clearer sign of consent."); *DuVoisin v. Foster (In re S. Indus. Banking Corp.)*, 809 F.2d 329, 331 (6th Cir. 1987) ("We also find that appellant Foster consented to jurisdiction by acknowledging the jurisdiction of the bankruptcy court several times during the proceedings."); *In re Doctors Hosp. 1997, L.P.*, 351 B.R. at 834 (finding that, based on affirmative representations, a party had waived any right they might have had "to prosecute their claims in the District Court or any state court").[1]

## II.   MANDATORY ABSTENTION IS INAPPROPRIATE HERE BECAUSE MR. VAN DEELEN'S CLAIM COULD NOT HAVE BEEN TIMELY ADJUDICATED IN STATE COURT.

The party seeking mandatory abstention must show that: (1) the claim has no independent basis for federal jurisdiction, other than section 1334(b); (2) the claim is a non-core proceeding, *i.e.*, it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *Edge Petroleum Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir.), *cert. denied*, 128 S. Ct. 613 (2007).

Specifically, the party seeking mandatory abstention must prove the existence of each element by a preponderance of the evidence. *Brown v. Shepherd (In re Lorax*

---

[1]   Nevertheless, and to the extent this Court determines that Mr. Van Deelen did not impliedly consent to the bankruptcy court's jurisdiction, or that the bankruptcy court otherwise did not have the authority to enter its final order, the MDR Defendants respectfully request that the District Court treat the final order as proposed findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 8018.1.

*Corp.)*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003). A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements. *Id*.; *see also Montalvo v. Vela (In re Montalvo)*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016) (the bankruptcy court refused to abstain because the fourth factor was not demonstrated).

Mr. Van Deelen did not satisfy his burden of showing that this action could be adjudicated timely in state court, such that the bankruptcy court should have abstained here. Factors relevant to this prong include "(a) the extent to which the suit has already been prosecuted in state court, (b) the expectation of when the state court trial will commence, and (c) evidence in contravention that the state court could adjudicate the case timely." *Premier Pipe, LLC v. J.D. Fields & Co. (In re Hallwood Energy, L.P.)*, No. 09-31253-H4-11, 2009 WL 2601294, at *8 (Bankr. S.D. Tex. Aug. 24, 2009).

In this case, Mr. Van Deelen presented no evidence of prosecution, nor could he—Mr. Van Deelen did not prosecute this action beyond filing his original petition in state court in 2020. While Mr. Van Deelen repeatedly amended his complaint to *remove* claims against the MDR Defendants—from six claims to one—the basic underlying allegations remained the same in that Mr. Van Deelen took issue with the bankruptcy filing and the confirmed plan of reorganization.

Nor did Mr. Van Deelen serve or otherwise engage in any discovery on any of his claims (new or old), file any motions or set such motions for hearing, or seek

or obtain any orders from the state court. Given this lack of prosecution, and the bankruptcy court's intimate familiarity with the bankruptcy proceedings on which Mr. Van Deelen has based his claims against the MDR Defendants, mandatory abstention was inappropriate here. *See, e.g.*, *In re Doctors Hosp. 1997, L.P.*, 351 B.R. at 846 n.29 ("[T]he record reflects that during the 41 days that the suit was pending in [state] court, virtually nothing occurred. No hearings were held, no motions were filed, no discovery was conducted, and no orders were entered on the docket. Thus, unlike this Court, the Harris County District Court has no background at all about the nature of this lawsuit or the substantive issues to be adjudicated.").

Another factor relevant to this analysis is whether the case was set for trial. Because Mr. Van Deelen did not—and could not—show that his case against the MDR Defendants was set for trial prior to removal, the fourth prong of the mandatory abstention analysis weighs against abstention. *See, e.g.*, *In re Montalvo*, 559 B.R. at 842 (the bankruptcy court refused to abstain because the fourth factor was not demonstrated); *Petroleum Prods. & Servs., Inc. v. McClinton Energy Grp., LLC (In re Petroleum Prods. & Servs., Inc.)*, 561 B.R. 662, 666 (Bankr. S.D. Tex. 2016) (courts in this circuit view a docket-control order setting dates for trial as evidence "sufficient to show that the state court will be familiar with the case and prosecute it efficiently"); *see also Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007) (mandatory abstention was required when

the plaintiffs demonstrated a history of prosecution in state court, including a trial setting).

As such, in the absence of any evidence that Mr. Van Deelen had prosecuted his action or that trial was to commence on a given date, the fourth prong of the mandatory abstention analysis weighed against abstention, and the bankruptcy court's decision not to abstain was proper. *See In re Lorax Corp.*, 295 B.R. at 90 (party not entitled to mandatory abstention if it fails to prove any one of the statutory requirements).

## III. THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THIS CASE FOR FAILURE TO STATE A CLAIM BECAUSE MR. VAN DEELEN DID NOT SATISFY RULE 9(B)'S HEIGHTENED PLEADINGS STANDARDS.

Federal Rule 9(b) requires that a complaint state "the who, what, when, and where" of the alleged fraud. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). In other words, "to plead fraud with particularity a plaintiff must include the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the defendant] obtained thereby.'" *United States ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 U.S. Dist. LEXIS 5973, at *32 (N.D. Tex. Apr. 9, 2003) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)). Further, courts are required to "apply the rule with force, without apology." *Williams*, 112 F.3d at 178.

Despite having had numerous opportunities to amend his allegations and address any pleading defects, Mr. Van Deelen failed to satisfy his burden of pleading common law fraud, and the bankruptcy court properly dismissed his complaint. The issues with his complaint were two-fold.

***First***, Mr. Van Deelen did not identify with sufficient particularity the "false representations" that the MDR Defendants individually made to him or show why such statements were false. Instead, Mr. Van Deelen ***repeatedly*** excerpted various letters, press releases, or reports, and then alleged, in conclusory fashion, that "Defendants"—as an undifferentiated whole—made or reviewed or approved statements in the excerpted material. (ROA 10-main/466-467 ¶ 24 (Defendants published a letter), 468 ¶ 26 (Defendants reviewed and approved first quarter report), 469-470 ¶ 30 (Defendants reviewed and approved reports, slides, and presentations), 472 ¶ 37 (Defendants issued a statement), 477 ¶ 44 (Defendants issued a press release), 477-478 ¶ 46 (Defendants had subsequent communications with plaintiff), 478 ¶ 48 (Defendants issued a press release), 482 ¶ 56 (Defendants created and issued a press release), 485 ¶ 63 (Defendants approved Form 10-Q), 488 ¶ 68 (Dickson, Lamb, and Sussberg wrote and issued a press release).)

This did not satisfy Mr. Van Deelen's burden under Federal Rule 9(b). As a threshold matter, it was not enough for Mr. Van Deelen to excerpt third-party statements, allege that Defendants collectively reviewed or approved such

statements, and then sue Defendants for fraud. *See Williams*, 112 F.3d at 179 ("These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants. Many of the newspaper excerpts attached to [plaintiffs'] complaint . . . [do not] specify[] who gave information to the paper. These excerpts, standing alone, cannot satisfy the "who, what, when, where, and how" required by Rule 9(b).").

Mr. Van Deelen, at the very least, had to show either that the MDR Defendants adopted the statements; the MDR Defendants represented the statements "were true or at least in accordance with [their] view[s]"; or the MDR Defendants "used the [third party] as a conduit, making false and misleading statements to the [third party] with the intent that the [third party] communicate those statements to the market." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 373-74 (5th Cir. 2004) (also holding that the pleading should "point to specific interactions between the [defendant] and the [third party] which allegedly gave rise to the entanglement [between the defendant's and third party's statements]," and state the dates on which these interactions occurred). Mr. Van Deelen failed to allege any such facts.

Mr. Van Deelen also failed to plead, with respect to the statements that "Defendants" allegedly authored themselves, *which* Defendant(s) individually made the statements. Instead, Mr. Van Deelen repeatedly referred to Defendants as a collective whole and failed to distinguish among them—exactly the kind of "group

pleading" that courts in the Fifth Circuit have found not to satisfy the heightened pleading requirements of Federal Rule 9(b). *See, e.g.*, *Southland*, 365 F.3d at 365 ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Luppino v. York*, No. SA-16-CV-00409-RCL, 2017 WL 8161008, at *3 (W.D. Tex. Nov. 27, 2017) ("[H]is failure to state with particularity in what fraudulent conduct each particular defendant engaged (i.e. what representations each made in his individual capacity, what knowledge each had of the falsity of any representations, etc.) was fatal to his claim for fraud."); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, No. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) ("Group pleading fails to satisfy the requirement of the who, what, where, why, and when of the fraud to be specified.") (quoting *Glaser v. Enzo Biochem, Inc.*, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003) (internal citation omitted)); *Coates v. Heartland Wireless Commc'ns., Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998) ("[A] plaintiff must 'plead with sufficient particularity attribution of the alleged misrepresentations and omissions to each defendant; the plaintiff is obligated to 'distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'").

In his voluminous complaint, Mr. Van Deelen only pointed to a couple of specific statements by a particular Defendant.  But Mr. Van Deelen did not identify what was allegedly fraudulent about those particular statements, which were general in nature, or allege that these statements reasonably induced reliance.  (ROA 10-main/482 ¶ 56 (citing statement allegedly made by David Dickson that "This new credit agreement is a continued signal from our lenders that they support McDermott, our underlying business growth strategy and ability to achieve a long-term balance sheet solution.  The Agreement provides near-term liquidity for the Company to manage working capital and provide performance guarantees on expected new awards.  We remain focused on serving our customers' needs, supporting our dedicated employees and maintaining our valued relationships with our subcontractors, suppliers and other business counterparties, all as part of our efforts to enhance our position as a premier, fully integrated provided to technology, engineering and construction solutions to the energy industry.").)

***Second***, and as it concerns Defendants' alleged omissions,[2] Mr. Van Deelen failed to plead facts showing that the MDR Defendants had a duty to disclose the

---

[2]   ROA 10-main/467-568 ¶ 25 (Defendants concealed material losses), 468 ¶ 28; 469 ¶ 29 (same), 470 ¶¶ 32, 33 (same), 471 ¶ 34 (Defendants did not disclose investigation), 471 ¶ 35 (Defendants did not disclose "Financing Case"), 474 ¶ 39 (same), 475 ¶ 40 (Defendants concealed financial condition of company, losses, capital needs, Financing Case, and SEC investigation), 476 ¶ 42 (Defendants concealed financial condition of company), 476-477 ¶ 43 (Defendants concealed decision to declare bankruptcy), 477 ¶ 45   (same), 477-478 ¶ 46 (Defendants concealed financial condition of company), 478 ¶ 48 (Defendants concealed decision to declare bankruptcy), 480 ¶ 51 (Defendants concealed financial condition of

allegedly omitted information to him. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."); *id.* ("Whether such a duty exists is a question of law.").

But that is not surprising. Under Texas law, "no duty of disclosure [generally] arises without evidence of a confidential or fiduciary relationship." *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). In this case, Mr. Van Deelen did not and could not plead facts to show that the MDR Defendants had a formal fiduciary relationship with him. *See Morris*, 981 S.W.2d at 674 (a fiduciary duty can arise "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships") (citations omitted). Indeed, the Texas Supreme Court has expressly declined to "impos[e] on directors and officers a [formal] fiduciary duty to individual shareholders". *Ritchie v. Rupe*, 443 S.W.3d 856, 890 & n.62 (Tex. 2014). Moreover, and in reaching this decision, the court

---

company), 481-482 ¶ 55  (same), 483-484 ¶ 58 (same), 484 ¶ 60 (Defendants concealed "October 22 Agreement"), 485 ¶ 62 (Defendants concealed third quarter results), 485-486 ¶ 64 (Defendants concealed SEC investigation), 490-491 ¶ 74  (Defendants concealed financial condition of company and decision to declare bankruptcy), 498 ¶ 99  (Defendants concealed financial condition of company), 499 ¶ 105 (same), 499 ¶ 108 (same), 500 ¶ 109 (Defendants concealed losses), 500 ¶ 110 (Defendants concealed decision to file for bankruptcy), 500 ¶ 111 (Defendants concealed pre-packaged bankruptcy plan), 500-501 ¶ 112 (Defendants concealed that future lending was tied to bankruptcy).

cited Mark J. Loewenstein & William K.S. Wang, *The Corporation as Insider Trader*, 30 Del. J. Corp. L. 45, 42 (2005) for the proposition that:

> The very idea that a corporation has a fiduciary duty to individual shareholders is troubling. The corporation can act only through its board of directors, officers, employees, and other agents. These actors are obligated to act in the best interests of the corporation, which may not coincide with the best interests of an individual shareholder transacting business with the corporation. ***There is no reason to impose a fiduciary obligation on these actors to act in the best interest of an individual shareholder when that shareholder proposes a course of conduct not in the best interests of the corporation***.

*Id*. (emphasis added).

The same reasoning applies with equal force here: the MDR Defendants were obligated to act in the best interests of McDermott, and owed only McDermott—not individual shareholders like Mr. Van Deelen—a formal fiduciary duty.  Mr. Van Deelen's conclusory argument to the contrary was therefore doomed to fail. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (plaintiff required to provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action").

As was any argument concerning informal fiduciary duties. Informal fiduciary duties arise where the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674; *see also Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (an informal relationship giving rise to a duty may also be formed

from "a moral, social, domestic or purely personal relationship of trust and confidence"). Mr. Van Deelen pleaded no facts to show that he had any such relationship of trust with Defendants.

Finally, Mr. Van Deelen argues in his brief, as he did in the bankruptcy court, that because he did not plead federal claims, he was not required to satisfy the heightened pleading standards under Rule 9(b). (ROA 10-1/114.) But whether Rule 9(b) applies to a given claim simply turns on the forum in which such claim is pending and the nature of the allegations supporting the claim. Where, as here, a party is litigating his claims in federal court, and where the claims "alleg[e] fraud or mistake," the heightened pleading standards of Rule 9(b) apply. *See* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *see also, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("It is well settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."); *Braden v. Tornier, Inc.*, No. C09-5529RJB, 2009 WL 3188075, at *2 (W.D. Wash. Sept. 30, 2009) ("The Court understands Plaintiffs' plight—being held to one pleading standard in state court, where they chose to file their case, and being held to another after the case is removed. However, the law is clear . . . This action has now been removed the federal rules apply.").

For these reasons, Mr. Van Deelen failed to plead his common law fraud claim with sufficient particularity, and the bankruptcy court properly dismissed such claim under Rule 9(b).

## IV.   THE BANKRUPTCY COURT DID NOT ERR IN DENYING MR. VAN DEELEN'S MOTION TO RECUSE GIVEN THAT HE DID NOT PRESENT ANY EVIDENCE OF UNFAIR ANTAGONISM OR PREJUDICE BY THE COURT.

28 U.S.C. § 455 provides that a party may request a judge recuse himself if "his impartiality might reasonably be questioned," *id*. § 455(a), or "he has a personal bias or prejudice concerning a party," *id*. § 455(b)(1).

In interpreting this statute, the Fifth Circuit has held that "the standard for bias is not subjective," and that "it is with reference to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person that the objective standard is currently established." *Andrade v. Chojnacki*, 338 F.3d 448, 454-455 (5th Cir. 2003). The Fifth Circuit has also held that the relevant context for purposes of 28 U.S.C. § 455 is "the entire course of judicial proceedings, rather than isolated incidents," *id*. at 455, and that the movant bears the burden of proving bias or partiality by clear and convincing evidence. *Kinnear-Weed Corp. v. Humble Oil & Refin. Co.*, 441 F.2d 631, 634 (5th Cir. 1971).

Finally, the Supreme Court has applied the "extrajudicial source rule" to disputes concerning the interpretation of § 455. This rule "divides events occurring or opinions expressed in the course of judicial proceedings from those that take place

outside of the litigation context and holds that the former rarely require recusal,"

*Chojnacki,* 338 F.3d at 455.:

> ***First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.*** In and of themselves (*i.e.*, apart from surrounding comments or accompany opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not recusal. ***Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.*** They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . ***Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger***, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. ***A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune***.

*Liteky v. United States*, 114 S. Ct. 1147, 1157 (1994) (emphases added).

Mr. Van Deelen based his requests for recusal on the same arguments that the

*Liteky* Court found insufficient: namely, that the bankruptcy court "shredded" his

Constitutional rights by "refusing to hear Plaintiff's motions in the McDermott International bankruptcy case"; "by falsely accusing Plaintiff of improper acts during the pendency of the bankruptcy case"; "by telling the attorneys for the Defendants herein that they 'were the smartest people in the country' while accusing Plaintiff in open court of 'knowing nothing'"; and "by unconstitutionally issuing a permanent injunction against the Plaintiff without affording a hearing or trial." (ROA 10-main/69, 81.)

These arguments do not demonstrate *any* prejudice or antagonism, much less what would be required for recusal. *See, e.g.*, *Liteky*, 114 S. Ct. at 1157 (holding that movant for recusal would need to show "a deep-seated . . . antagonism that would make fair judgment impossible").

As a threshold matter, Mr. Van Deelen failed to provide any evidence in support of his arguments—much less the "clear and convincing" evidence he needed for his recusal motion. *See Kinnear-Weed Corp.*, 441 F.2d at 634. Mr. Van Deelen specifically failed to explain the context in which the bankruptcy court's alleged actions or statements arose. Such context is important because "[t]he judge who presides [over the proceedings] may, upon completion of the evidence, be exceedingly ill disposed towards [a party], who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily

acquired in the course of the proceedings, and are indeed sometimes . . . necessary to the completion of the judge's task." *Liteky*, 114 S. Ct. at 1155.

In this case, for example, Mr. Van Deelen repeatedly acted in an unprofessional manner toward the bankruptcy court and Debtors' counsel. As previously discussed, Mr. Van Deelen made certain threatening and vulgar remarks to Debtors' counsel during the confirmation hearing, prompting the Debtors to seek emergency relief from the bankruptcy court prohibiting Mr. Van Deelen from further direct contact with the Debtors, their current or former officers, directors and employees, and their counsel. (ROA 10-1/193-194 ¶ 7, 197 ¶ 16.) Mr. Van Deelen also made vulgar remarks toward the bankruptcy court during the confirmation hearing and later appeared unannounced and uninvited at one of the Defendants' homes. (*Id*. 193-194 ¶ 7, 194 ¶ 8.) Most significantly, Mr. Van Deelen denied under oath that any such comments were made, even though they were overheard by court staff and audible via microphone. (ROA 10-2/456.) As the bankruptcy court observed, "the Court was willing to overlook the insult" but it could not "overlook a false statement." (*Id.*)

Thus, any "critical or disapproving" remarks arising from this context are to be expected, not the sort that could not give rise to recusal. *See Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 401 B.R. 848, 860 (Bankr. S.D. Tex. 2009) ("A judge's comments that form the basis of a recusal motion should not be viewed in

isolation, but rather must be viewed in context."); *LoCascio v. United States*, 473 F.3d 493, 497 (2d Cir. 2007) (judge's comments during a scheduling hearing, when read in context, "revealed neither 'an opinion that derives from an extrajudicial source' nor 'such a high degree of favoritism or antagonism as to make fair judgment impossible'"): *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) (holding that recusal based on the judge's comments relating to a party's pleadings was not warranted "after reviewing the judge's comments in context"); *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997) (judge's remark that the plaintiffs were "political sweet potatoes" did not warrant recusal when viewed in context).

Finally, Mr. Van Deelen failed to show how the bankruptcy court's alleged actions represent anything more than "critical or disapproving" remarks, "expressions of impatience, dissatisfaction, annoyance, [or] anger," or "ordinary efforts at courtroom administration." *Liteky*, 114 S. Ct. at 1157. In short, Mr. Van Deelen failed to show the prejudice or antagonism necessary to support his requests for recusal. *See, e.g.*, *Smith v. Houston EEOC*, No. 4:20-CV-1664, 2020 WL 3542433, at *5 (S.D. Tex. June 30, 2020) (unsupported allegations that the court "spent an eternity degrading and attac[k]ing people [and] stating on the record that [the Court] had no regard for anything the Plaintiff had to say" did not set forth legally recognizable basis for recusal); *Silva v. Spring Branch Indep. School Dist.*,

No. H-16-0545, 2016 WL 7441709, at *2 (S.D. Tex. Dec. 22, 2016) (unsupported allegations that magistrate judge "repeatedly yelled" at pro se Plaintiff and refused to let her argue any of the facts in her motions did not support recusal); *Haskett v. Orange Energy Corp.*, 161 F. Supp. 3d 471, 474 (S.D. Tex. 2015) (no bias or impartiality where movant alleged that the court "permitted the defendants . . . to engage in an extensive campaign of *ad hominem* personal attacks having no relevance to the merits of the cases whatsoever, but which appear to have palpably prejudiced [the Court] against Plaintiff").

## V.    THE BANKRUPTCY COURT DID NOT ERR IN GRANTING MDR DEFENDANTS' MOTION TO SEAL

Mr. Van Deelen has not shown that the bankruptcy court abused its discretion by granting the MDR Defendant's motion to seal.  *See, e.g., SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) ("Because '[t]he decision as to access is one left to the sound discretion of the trial court,' we review the district court's decision to seal the settlement agreement for abuse of discretion.'") (internal citations omitted).  Instead, Mr. Van Deelen's sole objection appears to be that the order was improper because *Mr. Van Deelen* "had no intention to file[] the documents contained in the Defendants' Emergency Motion to Seal."  (Dkt. 12 at 51).  That is plainly irrelevant.  As Mr. Van Deelen concedes, the Bankruptcy Code empowers the bankruptcy court to seal documents containing confidential or "defamatory matter," *id*., and the MDR Defendants expressly sought a sealing order

*because* the underlying documents contained defamatory matter. (ROA 10-main/261.) Given that Mr. Van Deelen does not dispute that the documents contain defamatory material, he has not satisfied his burden of showing the bankruptcy court abused its discretion by sealing the documents, and the District Court should deny his appeal.

## **CONCLUSION**

Mr. Van Deelen's appeal continues to press the same theories he argued in objecting to confirmation of McDermott's chapter 11 plan. Mr. Van Deelen impliedly consented to the bankruptcy court's jurisdiction by seeking a default judgment. But even if he had not done so, the allegations in his lawsuit are so intertwined with the chapter 11 proceedings and interpretation of the confirmation order that there can be no genuine question about whether the bankruptcy court had subject matter jurisdiction over, and could enter a final order or judgment in, these proceedings and that abstention was not appropriate. Nor was there was any error in the bankruptcy court denying Mr. Van Deelen's motion to recuse given he has never pointed to any evidence of unfair prejudice. And the bankruptcy court properly dismissed Mr. Van Deelen's case because he failed to satisfy the heightened pleading standard of Rule 9(b), a standard that he never argued he met but instead wrongly contended did not apply. Finally, the bankruptcy court did not abuse its broad discretion in granting the MDR Defendant's motion to seal.

Houston, Texas
Dated:  January 6, 2022

Respectfully submitted,

*/s/ Jamie Alan Aycock*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Facsimile:(713) 752-4221
Email:     mcavenaugh@jw.com
             jwertz@jw.com
             kpeguero@jw.com
             vpolnick@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS**
**INTERNATIONAL LLP**
Anna G. Rotman, P.C. (TX Bar No. 24046761)
Jamie Alan Aycock (TX Bar No. 24050241)

609 Main Street
Houston, TX 77002
Telephone:(713) 836-3600
Facsimile:(713) 836-3601
Email:     anna.rotman@kirkland.com
             jamie.aycock@kirkland.com

-and-

John Christian (TX Bar No. 24109727)
1601 Elm Street
Dallas, TX 75201
Telephone:(214) 972-1770
Facsimile:(214) 972-1771
Email:     john.christian@kirkland.com

***Counsel for Appellees David Dickson, Stuart Spence, and Scott Lamb***

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2022, I caused a true and correct copy of

the foregoing document to be served via the Court's ECF notification system to the

parties listed below at the email addresses listed

      Michael Van Deelen
      16215 Friar Circle
      Spring, TX 77379
      michaelvandeelen@gmail.com

                              */s/ Jamie Alan Aycock*
                              Jamie Alan Aycock

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing document contains 9,349 words, excluding the portions of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

*/s/ Jamie Alan Aycock*
Jamie Alan Aycock