No. 4:21-cv-03369

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL VAN DEELEN,

*Appellant,*

v.

DAVID DICKSON, STUART SPENCE, SCOTT LAMB, JOSHUA SUSSBERG,

*Appellees.*

On Appeal from the U.S. Bankruptcy Court for the Southern District of Texas
Hon. David Jones, Presiding
Bankruptcy No. 20-30336
Adversary Proceeding No. 20-3309

BRIEF OF APPELLEE JOSHUA SUSSBERG

BECK REDDEN LLP

David J. Beck
dbeck@beckredden.com
Jacqueline M. Furlow
jfurlow@beckredden.com
Owen J. McGovern
omcgovern@beckredden.com
Hannah L. Roblyer
hroblyer@beckredden.com
1221 McKinney, Suite 4500
Houston, TX  77010
(713) 951-3700
(713) 951-3720 (Fax)

*Counsel for Appellee, Joshua Sussberg*

### TABLE OF CONTENTS

**Page**

Table of Contents.................................................................................... i

Index of Authorities ............................................................................... iii

Statement of the Case............................................................................vi

Statement Regarding Oral Argument...............................................vii

Issues Presented...................................................................................viii

Statement of Facts...................................................................................1

Summary of Argument............................................................................6

Argument ...................................................................................................9

    I.    The bankruptcy court properly dismissed Appellant's claims against Mr. Sussberg. .........................................................................9

        A.    Appellant accepts Mr. Sussberg's dismissal..........................9

        B.    The bankruptcy court had jurisdiction to dismiss the claims..........................................................................................10

            1.    The adversary proceeding was a core proceeding. .......11

            2.    The bankruptcy court had "related-to" subject matter jurisdiction to issue its Order. .........................16

            3.    Appellant consented to the bankruptcy court's authority to enter judgment......................................20

            4.    Alternatively, absent consent, this Court may treat the bankruptcy court's final order as proposed findings and conclusions.........................................22

        C.    The bankruptcy court had cause to dismiss Appellant's claims against Mr. Sussberg. .............................................22

1.      Appellant was not entitled to the leniency typically afforded *pro se* litigants in evaluating the sufficiency of his pleadings. ......................................22

2.      Appellant's Third Amended Petition failed under Rule 12(b)(6). ...........................................................23

   a.     Appellant's fraud allegations failed under Rule 9(b). ......................................................24

   b.     Appellant's assault and false imprisonment allegations did not permit a reasonable inference of liability. ......................................29

II.    Appellant's arguments are unavailing. .........................................31

   A.     No claims existed to remand. ...............................................31

   B.     Appellant did not satisfy the mandatory abstention standard. ..........................................................................31

   C.     Appellant did not show permissive abstention applies. ...........34

   D.     Appellant identifies no legal error with the final order's statement regarding sanctions. ...........................................34

III.   The bankruptcy court properly adjudicated pending motions. ...........35

Conclusion and Prayer. ................................................................................35

Certificate of Service. .................................................................................37

Certificate of Compliance ..........................................................................38

## INDEX OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*In re ABC Dentistry, P.A.*,
2019 WL 6894775 (S.D. Tex. Dec. 17, 2019) ............................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................... 23, 24, 30

*United States ex rel. Barrett v. Johnson Controls, Inc.*,
2003 WL 21500400 (N.D. Tex. Apr. 9, 2003)........................................... 24

*Bauer v. Texas*,
341 F.3d 352 (5th Cir. 2003)........................................................ 29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................23, 24

*In re Blast Energy Servs., Inc.*,
396 B.R. 676 (Bankr. S.D. Tex. 2008)...................................................19

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001)........................................................... 28

*In re Briar Bldg. Houston LLC*,
609 B.R. 589 (Bankr. S.D. Tex. 2019)...................................................16

*Cano v. GMAC Mortg. Corp. (In re Cano)*,
410 B.R. 506 (Bankr. S.D. Tex. 2009)..................................................11

*In re Craig's Stores of Texas, Inc.*,
266 F.3d 388 (5th Cir. 2001)........................................................18

*Davis v. Bayless*,
70 F.3d 367 (5th Cir. 1995) ........................................................ 29

*In re Enron Corp. Sec.*,
535 F.3d 325 (5th Cir. 2008)........................................................18, 20

*Executive Benefits Ins. Agency v. Arkison*,
573 U.S. 25 (2014)................................................................21, 22

*FDIC V. Majestic Energy Corp. (In re Majestic Energy Corp.)*,
  835 F.2d 87 (5th Cir. 1988) .......................................................... 17

*Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*,
  710 F.3d 299 (5th Cir. 2013).......................................................... 16

*In re Galaz*,
  665 Fed. App'x 372 (5th Cir. 2016)........................................... 10, 12

*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) ...................................................... 22

*In re Hallwood Energy, L.P.*,
  2009 WL 2601294 (Bankr. S.D. Tex. Aug. 24, 2009)................................. 33

*Ingalls v. Edgewater Private Equity Fund III, L.P.*,
  No. H-05-1392, 2005 WL 2647962 (S.D. Tex. Oct. 17, 2005)...................... 26

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998) .......................................................... 28

*Little v. KPMG LLP*,
  575 F.3d 533 (5th Cir. 2009)......................................................... 23

*In re Lorax Corp.*,
  295 B.R. 83 (Bankr. N.D. Tex. 2003)................................................. 32

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
  583 S.W.3d 553 (Tex. 2019)........................................................... 28

*In re Montalvo*,
  559 B.R. 825 (Bankr. S.D. Tex. 2016)................................................ 32

*In re MSB Energy, Inc.*,
  438 B.R. 571 (Bankr. S.D. Tex. 2010).......................................... 18, 19, 20

*United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*,
  193 F.3d 304 (5th Cir. 1999).......................................................... 24

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004).......................................................25, 26

iv

*Travelers Indemnity Co. v. Bailey*,
　557 U.S. 137 (2009) ................................................................ 12

*In re TXNB Internal Case*,
　483 F.3d 292 (5th Cir. 2007)..................................................... 32

*In re U.S. Brass Corp.*,
　301 F.3d 296 (5th Cir. 2002)................................................ 10, 16

*Van Deelen v. Alamogordo Public Schools*,
　2008 WL 11417175 (D.N.M. Mar. 14, 2008) .......................... 23, 30

*Wellness Int'l Network, Ltd. v. Sharif*,
　575 U.S. 665 (2015) ............................................................ 21, 22

*Williams v. WMX Techs.*,
　112 F.3d 175 (5th Cir. 1997)................................................ 24, 25

*Wood v. Wood (In re Wood)*,
　825 F.2d 90 (5th Cir. 1987) ...................................................... 11

## STATUTES

28 U.S.C.
　§ 157(a)-(c)(1) ........................................................................ 10
　§ 157(b)(1) ............................................................................. 15
　§ 157(b)(2) ............................................................................. 12
　§ 157(c)(2) ............................................................................. 21
　§ 1334(b)................................................................................ 10
　§ 1334(c)(1) ........................................................................... 33

## RULES

Fed. R. Civ. P. 9(b) ..................................................................... 24

Fed. R. Civ. P. 12(b)(6) ................................................................ 23

Fed. R. Civ. P. 41(a)(1)-(2) ............................................................. 9

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | This is an appeal from a final order of the United States Bankruptcy Court for the Southern District of Texas dismissing the claims in an underlying adversary proceeding with prejudice. ROA 10-1/441. |

Appellant, an experienced *pro se* litigant, unsuccessfully challenged confirmation of a bankruptcy plan to restructure McDermott International, Inc. and related entities (the "Debtors"). Bankr. Dkt. 510; Bankr. Dkt. 684. Appellees Dickson, Spence, and Lamb are current or former officers of the Debtors.  Appellee Sussberg was Debtors' counsel.

After failing to stop plan confirmation, Appellant filed a state court lawsuit against Dickson, Spence and Lamb, alleging that their actions regarding Debtors' pre-petition financial activities and the decision to file bankruptcy were fraudulent or otherwise wrongful. ROA 10-main/18. That suit was removed to bankruptcy court. In the adversary proceeding, Appellant also alleged in his amended petition that Sussberg assaulted him after the confirmation hearing to allegedly discourage him from objecting to plan confirmation. ROA 10-main/455.

*Trial Court*

U.S. Bankruptcy Court
for the Southern District of Texas,
Hon. David Jones

*Parties on Appeal*

Appellant:
    Michael Van Deelen

Appellees:
    David Dickson, Stuart Spence, Scott Lamb, Joshua Sussberg

*Proceedings*

The bankruptcy court dismissed all of Appellant's claims with prejudice.  ROA 10-1/441.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Joshua Sussberg respectfully submits that oral argument is unlikely to assist the Court in adjudicating this matter and is therefore unnecessary because the issues presented are not legally or factually complex and do not present matters of first impression.

## ISSUES PRESENTED

1.  Appellant sued Appellees for actions regarding the financial representations of reorganized debtor entities, actions taken in the bankruptcy proceedings, and other related transactions; Appellant also requested a default judgment from the bankruptcy court. The bankruptcy court did not abstain, and instead exercised jurisdiction over the dispute. Was this error?

2.  Appellee Sussberg moved to dismiss Appellant's claims with prejudice because Appellant's claims failed to state a claim upon which relief could be granted and failed to state with particularity the circumstances constituting alleged fraud. The bankruptcy court granted Appellee Sussberg's motion. Was this error?

3.  Appellant moved to dismiss Appellee Sussberg from the adversary proceeding. As relief alternative to granting Appellee Sussberg's motion to dismiss, the bankruptcy court dismissed Appellant's claims against Appellee Sussberg with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Was this error?

4.  Appellees sought to seal documents that contained defamatory matters. Appellant objected that he did not intend to use the documents. The bankruptcy court sealed the documents. Did the bankruptcy court abuse its discretion?

5.  Judge Jones permitted Appellant to file his plan objection, examine witnesses at the confirmation hearing, argue his objection, argue later motions, and file and amend his pleadings in the adversary proceeding. Appellant moved to recuse Judge Jones for allegedly "shredd[ing]" his Constitutional rights. Judge Isgur denied the motion. Did the bankruptcy court abuse its discretion?

6.  The bankruptcy court denied Appellee Sussberg's motion for sanctions without prejudice and advised that any further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed to the bankruptcy court. Did the bankruptcy court abuse its discretion?

### STATEMENT OF FACTS

#### *The McDermott International, Inc. Bankruptcy Proceeding*

The underlying adversary proceeding arises from the McDermott International, Inc. ("McDermott") bankruptcy proceeding. ROA 10-1/13. McDermott is a century-old multinational procurement, construction, and installation company in the energy space. *Id*. In September 2019, after many years of growth and success, McDermott began facing severe liquidity issues due to a combination of culminating factors, including McDermott's cash being trapped in its joint venture operations and its inheritance of certain legacy projects that resulted in significant, unanticipated losses. *Id*.

McDermott tried to restructure and avoid liquidation by obtaining, on an emergency basis, a liquidity infusion through a superpriority financing facility, the first tranche of which it received in October 2019. *Id*. In the last months of 2019, McDermott engaged financial and legal advisors, as well as lenders and stakeholders, in an effort to reassess its operations and financial condition. *Id*. Ultimately, McDermott concluded a pre-packaged balance sheet restructuring was the best way to maximize value for its stakeholders. ROA 10-1/14.

Accordingly, on January 21, 2020, McDermott filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. *See* Voluntary Petition

for Non-Individuals Filing for Bankruptcy; *In re McDermott International, Inc. et al.*; Case No. 20-30336; Dkt. 1 (Bankr. S.D. Tex.) (filed Jan. 21, 2020) (hereinafter "Bankr. Dkt."). And on January 22, 2020, McDermott filed a chapter 11 plan of reorganization, which it subsequently amended or supplemented several times during the course of the bankruptcy proceedings. *See* Bankr. Dkt. 121, 520, 620, 622, 647, 651, 684 (collectively, the "Plan"). ROA 10-1/14. The Plan reflected substantial levels of support among McDermott's lenders, which was difficult to accomplish given the scale and complexity of McDermott's operations, the number of stakeholder constituencies and their divergent interests, and the urgent nature of McDermott's capital needs. *Id.*

### The Bankruptcy Court Confirms the Plan over Van Deelen's Objection

On February 27, 2020, Mr. Van Deelen filed a motion (Bankr. Dkt. 510) (the "Motion") with the bankruptcy court alleging that McDermott had improperly sought chapter 11 relief and seeking denial of the Plan. *Id.* Specifically, Mr. Van Deelen alleged that McDermott had proposed the Plan in bad faith because the Plan called for the cancellation of existing shares and the re-equitization of the company "for the sole purpose of enriching McDermott's management and Board." Bankr. Dkt. 510. Based on these allegations, Mr. Van Deelen requested that the bankruptcy court deny McDermott's Plan. *Id.*

2

The bankruptcy court overruled and denied Mr. Van Deelen's Motion at a hearing on confirmation of the Debtors' plan of reorganization on March 12, 2020 (the "March 12th Hearing"). *See* Bankr. Dkt. 665, later amended at Bankr. Dkt. 684. The bankruptcy court specifically found that Mr. Van Deelen's Motion was not filed in good faith. Bankr. Dkt. 664 at 31:19. On March 14, 2020, the bankruptcy court entered its *Amended Order Approving the Debtors' Disclosure Statement and Confirming the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization (Technical Modifications) of McDermott International, Inc. and Its Debtor Affiliates.* Bankr. Dkt. 684 (the "Confirmation Order" and "Amended Plan").

### The March 12, 2020 Plan Confirmation Hearing

Mr. Van Deelen and Mr. Sussberg both personally attended the March 12 Hearing. *See* ROA 10-1/36. During and immediately after the hearing, Mr. Van Deelen made certain vulgar and threatening remarks to Mr. Sussberg, such that the Debtors and their counsel sought emergency relief from the bankruptcy court to prohibit Mr. Van Deelen from further direct contact with the Debtors, their current or former officers, directors and employees and their counsel. ROA 10-1/36-44; Bankr. Dkt. 694. The bankruptcy court granted relief as to Mr. Sussberg and his family, as well as the Court and its staff. ROA 10-2/456. Mr. Van Deelen also made certain vulgar remarks to the bankruptcy court but later denied doing so under oath, despite the fact that his comments were overheard by court staff and audible on the

audio recording of the hearing. *Id*.; ROA 10-2/422 (AUDIO CLIP, March 12, 2020 Hearing, 3:19:29-3:21:20). The bankruptcy court later noted in its order granting emergency relief that it was "willing to overlook the insult," but could not "overlook a false statement," and that Mr. Van Deelen "pose[d] a legitimate risk to the safety of courthouse staff and litigants that oppose his position." ROA 10-2/456.

### *The Adversary Proceeding*

On June 23, 2020, just three months after the Court confirmed the Plan, Van Deelen filed suit against Defendants Dickson, Spence and Lamb (the "MDR Defendants") in Texas state court asserting claims for fraud, negligent misrepresentation, conversion, breach of fiduciary duty and conspiracy. ROA 10-main/18. At the core of Mr. Van Deelen's suit were the same allegations made in his Motion objecting to confirmation of the Plan—that Defendants allegedly caused McDermott to undergo an unnecessary chapter 11 restructuring for their own benefit and to the detriment of Van Deelen and other shareholders. Bankr. Dkt. 510. The claims concerned actions taken by McDermott officers, employees, or agents in association with the bankruptcy proceedings and related transactions. ROA 10-main/18. Defendants removed the lawsuit to the bankruptcy court and moved to dismiss Van Deelen's claims on the grounds that they were subject to the exculpation, release and injunction provisions in the Confirmation Order and failed to satisfy federal pleading standards. ROA 10-main/12.

Mr. Van Deelen moved to remand the case to state court, arguing the bankruptcy court lacked jurisdiction and that mandatory and permissive abstention applied, to which the MDR Defendants responded. ROA 10-main/67; ROA 10-main/188. Mr. Van Deelen proceeded to amend his complaint three times. ROA 10-main/278; ROA 10-main/413; ROA 10-main/455. On June 18, 2021, Mr. Van Deelen filed his most recent amendment, his Third Amended Petition, which alleged for the first time claims against Mr. Sussberg for fraud, assault and false imprisonment, thereby adding Mr. Sussberg as a Defendant in the case. ROA 10-main/455. Mr. Sussberg and the MDR Defendants filed motions to dismiss the Third Amended Petition for failure to state a claim on July 12, 2021, to which Mr. Van Deelen responded. ROA 10-1/8; ROA 10-1/45; ROA 10-1/99; ROA 10-1/122. Mr. Sussberg also sought sanctions in the form of a pre-suit injunction prohibiting Mr. Van Deelen from filing or re-filing his claims at issue in the adversary proceeding against the parties or their counsel and representatives without first obtaining the bankruptcy court's permission. ROA 10-1/369.

The bankruptcy court held a hearing on August 9, 2021 concerning all pending matters and took the parties' briefing and argument under advisement. ROA 10-1/368.

5

*The Bankruptcy Court Issues a Final Order in the Adversary Proceeding*

On October 12, 2021, the bankruptcy court issued a final order (the "Order"), which, among other things, granted the MDR Defendants' and Mr. Sussberg's motions to dismiss and dismissed all of Mr. Van Deelen's claims with prejudice; granted as alternative relief Mr. Van Deelen's motion to dismiss Mr. Sussberg and dismissed all of Mr. Van Deelen's claims against Mr. Sussberg with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); denied Mr. Van Deelen's motion to remand; and denied Mr. Sussberg's motion for sanctions without prejudice. ROA 10-1/441.

## SUMMARY OF ARGUMENT

Mr. Van Deelen was an active participant in McDermott's bankruptcy proceedings and objected to confirmation of the chapter 11 plan of reorganization on the purported grounds that the chapter 11 filing and transactions leading up to filing were somehow fraudulent or otherwise wrongful. Mr. Van Deelen appeared at the confirmation hearing but failed to present any evidence or valid argument supporting his theory challenging confirmation of the plan, and the plan was confirmed over his objection. Mr. Van Deelen never filed a proof of claim in the bankruptcy proceeding. *See* ROA 10-1/451.

Through his involvement in the bankruptcy proceedings, Mr. Van Deelen was aware of the exculpation and injunction provisions in the plan and confirmation

order that barred a wide variety of claims. In contravention of those provisions, Mr. Van Deelen filed suit in Texas state court against certain of McDermott's officers and employees. After the case was removed to the bankruptcy court, and after multiple amendments to his complaint, Mr. Van Deelen added frivolous fraud and assault claims against one of the McDermott debtors' lead bankruptcy attorneys, Joshua Sussberg, based on alleged conduct relating to the bankruptcy proceedings and associated transactions.

The defendants all moved to dismiss Mr. Van Deelen's suit for failure to state a claim. With respect to Mr. Sussberg, specifically, Mr. Van Deelen failed to allege any facts to plead fraud with the particularity required under Federal Rule of Civil Procedure 9 and failed to allege a plausible claim for assault or false imprisonment against Mr. Sussberg, particularly considering Mr. Van Deelen's history of making false statements to the court and the conclusory nature of the allegations. The bankruptcy court properly granted Defendants' respective motions and dismissed Mr. Van Deelen's claims with prejudice.

In granting the motions to dismiss, the bankruptcy court properly found that it had subject matter jurisdiction over Mr. Van Deelen's suit as a core proceeding because it involved interpretation and enforcement of the exculpation and injunction provisions, and otherwise sufficiently related to the bankruptcy proceedings. The

bankruptcy court also properly found that neither mandatory nor permissive abstention applied to require remand. *See* ROA 10-1/441-453.

While the motions to dismiss were pending, Mr. Van Deelen filed a motion to dismiss his claims against Mr. Sussberg pursuant to Federal Rule of Civil Procedure 41(a)(2). ROA 10-1/420. The bankruptcy court granted Mr. Van Deelen's motion as alternative relief and dismissed all claims against Mr. Sussberg with prejudice. ROA 10-1/450. Notably, Mr. Van Deelen does not dispute his claims against Mr. Sussberg have been dismissed with prejudice, nor does he challenge any aspect of their dismissal on appeal. *See* Dkt. 12 at 14, 24-25. However, by the same token, Mr. Van Deelen's appeal seeks broad relief, including to vacate the bankruptcy court's entire order and vacate the dismissal of his live complaint without qualification, among other relief. *See* Dkt. 12 at 65. Accordingly, while Appellee contends the bankruptcy court's order should be affirmed in its entirety as to Mr. Sussberg given that Mr. Van Deelen does not challenge Mr. Sussberg's dismissal on appeal, Appellee nonetheless addresses the merits of Mr. Van Deelen's appeal herein in support of affirming the bankruptcy court's Order in its entirety. The bankruptcy court's order should be affirmed, and Mr. Van Deelen's appeal should be dismissed.

ARGUMENT

**I.    The bankruptcy court properly dismissed Appellant's claims against Mr. Sussberg.**

**A.    Appellant accepts Mr. Sussberg's dismissal.**

Appellant appears to accept that his claims against Mr. Sussberg have been dismissed with prejudice and represents that he is not challenging their dismissal on appeal. *See* Dkt. 12 at 14, 24-25. For this reason alone, the bankruptcy court's Order should be affirmed in its entirety as to Mr. Sussberg.

However, Appellant also seems to mischaracterize the dismissal of his claims against Mr. Sussberg as based only on his "voluntary" dismissal of Mr. Sussberg, eliding the bankruptcy court's grant, in the first instance, of Mr. Sussberg's motion to dismiss, and the dismissal of Mr. Van Deelen's claims, with prejudice, in response to Mr. Sussberg's motion to dismiss. *See id*. To the extent Mr. Van Deelen is trying to suggest the bankruptcy court's Order is not central to Mr. Sussberg's relief, that suggestion is misleading. Mr. Van Deelen filed a motion to dismiss his claims against Mr. Sussberg but did <u>not</u> request dismissal with prejudice. Because Mr. Sussberg had filed an answer in the adversary proceeding before Mr. Van Deelen filed his motion to dismiss, Mr. Van Deelen was not permitted to voluntarily dismiss his claims without a court order. *See* Fed. R. Civ. P. 41(a)(1)-(2) (plaintiff may only voluntarily dismiss without court order if, in relevant part, notice of dismissal is filed before the opposing party serves an answer, otherwise an action may only be

9

dismissed by court order on terms the court considers proper). Therefore, as alternative relief, the bankruptcy court granted Mr. Van Deelen's motion and dismissed all claims against Mr. Sussberg *with prejudice*. ROA 10-1/450. In other words, the bankruptcy court's Order is integral to the proper dismissal of Mr. Van Deelen's claims against Mr. Sussberg.

Further, Mr. Van Deelen's brief seeks broad relief in the form of vacating, <u>without qualification</u>, the bankruptcy court's Order and dismissal of his Third Amended Petition entirely, among other expansive relief that would affect Mr. Sussberg. *See* Dkt. 12 at 65. Accordingly, Mr. Sussberg files this response to address the merits of Mr. Van Deelen's appeal and to support affirmance of the bankruptcy court's Order in its entirety.

### B.    The bankruptcy court had jurisdiction to dismiss the claims.

The bankruptcy court properly found that it had jurisdiction to issue its Order pursuant to 28 U.S.C. § 1334 and "the Court's inherent authority to enforce its own orders." ROA 10-1/446; *see In re U.S. Brass Corp.*, 301 F.3d 296, 303-05 (5th Cir. 2002); *In re Galaz*, 665 Fed. App'x 372, 376 (5th Cir. 2016). The applicable statutes provide bankruptcy courts with subject matter jurisdiction to hear (1) cases under title 11; (2) core proceedings "arising under" title 11; (3) core proceedings "arising in" a case under title 11; and (4) non-core proceedings "related to" a case under title 11. *See* 28 U.S.C. §§ 1334(b), 157(a)-(c)(1). The underlying adversary proceeding

was a core proceeding "arising in" a case under title 11 because it involved interpreting and enforcing the Court's Confirmation Order and Amended Plan and events arising in the bankruptcy proceedings. It accordingly had jurisdiction to dismiss the claims. Alternatively, even if it were not a core proceeding (it was), the proceeding would have nonetheless "related to" the McDermott bankruptcy case arising under title 11 such that the Court had jurisdiction to hear the contested matters and order dismissal (or alternatively, propose it).

### 1. The adversary proceeding was a core proceeding.

After a bankruptcy plan is confirmed, the bankruptcy court retains jurisdiction over a proceeding as core if it invokes "a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case," which includes any proceeding that would require the court to interpret or enforce its prior orders. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). For instance, a bankruptcy court "retain[s] significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders," which "matters fall within the Court's 'arising in' and 'arising under' jurisdiction." *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 548-49 (Bankr. S.D. Tex. 2009); *see also In re ABC Dentistry, P.A.*, 2019 WL 6894775 at *6 (S.D. Tex. Dec. 17, 2019) (bankruptcy court "did not err in determining that it had 'arising in or under jurisdiction' over the removed

action" when court was required to interpret rights associated with its order dividing settlement proceeds); *see also Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) (bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders"); *In re Galaz*, 665 Fed. App'x at 376 (same).

Here, the bankruptcy court specifically found that the underlying adversary proceeding constituted a core proceeding pursuant to 28 U.S.C. § 157(b)(2) because it involved "(i) the interpretation and enforcement of the Amended Plan and Confirmation Order; (ii) the enforcement of the Court's injunction contained in the Amended Plan; and (iii) matters that occurred before the Court in connection with the underlying bankruptcy proceeding." ROA 10-1/452. The Amended Plan, as approved in the Confirmation Order, contained three different release provisions and an injunction. ROA 10-1/448; ROA 10-2/334-338. The Debtors' release released all direct and derivative claims belonging to the bankruptcy estate, including claims against McDermott's management. ROA 10-1/448; ROA 10-2/335 (Art. VIII.C.). The exculpation provision "released and exculpated [the Exculpated Parties] from any [non-fraud] Claims and Cause[s] of Action . . . related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 cases, . . . the filing of the Chapter 11 Cases, the pursuit of Confirmation, [and] the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the plan[.]" ROA 10-1/448; Bankr. Dkt. 684 ¶ 52. The Exculpated Parties

included the Debtors and their officers, directors, managers, principals, members, employees, agents and attorneys, among others. ROA 10-2/337-338 (Art. VIII.E.). The Amended Plan also contained a third-party release, but Mr. Van Deelen exercised his right to opt out of that specific release. ROA 10-1/448. Finally, the Amended Plan included the traditional injunction prohibiting commencement or continuation of any action or proceeding with respect to any released or exculpated claim. ROA 10-1/448; ROA 10-2/338 (Art. VIII.F.).

Mr. Van Deelen's Original Petition alleged causes of action for conversion, fraud, negligent misrepresentation, breach of fiduciary duty and conspiracy against the MDR Defendants. ROA 10-main/18. Mr. Van Deelen's claims were all based on actions those Defendants allegedly took in connection with McDermott's bankruptcy; they all related to Mr. Van Deelen's alleged loss of value in his McDermott common stock through McDermott's bankruptcy. *Id.* The MDR Defendants removed to the bankruptcy court on the grounds that Mr. Van Deelen's claims implicated the exculpation and injunction provisions in the Amended Plan. ROA 10-main/12. More specifically, despite participating in the bankruptcy proceedings, Mr. Van Deelen brought suit against McDermott officers and employees based on alleged conduct related to the bankruptcy proceedings that was exculpated in the Amended Plan and Confirmation Order, in disregard of the bankruptcy court's orders. Although Mr. Van Deelen later amended his complaint

(three times) in an apparent attempt to remove claims subject to the exculpation provision, the substance of his allegations remained the same. *See* ROA 10-main/278; ROA 10-main/413; ROA 10-main/455.

Mr. Van Deelen also added Mr. Sussberg as a defendant, asserting the same blanket allegations of misconduct in connection with the bankruptcy he had alleged against the other Defendants. ROA 10-main/455. In addition, he asserted meritless claims of assault allegedly perpetrated in furtherance of the same alleged "scheme" to misrepresent McDermott's financial viability before filing for Chapter 11 that he originally alleged. *Id.*

Ultimately, despite amending his pleading, Appellant continually re-urged the same allegations he had originally made in his motion objecting to confirmation of the Plan—that Defendants allegedly misrepresented McDermott's financial viability to the investing public and caused McDermott to undergo an allegedly unnecessary chapter 11 restructuring for its own benefit and to the detriment of Mr. Van Deelen and other shareholders. *Id.* As noted in the bankruptcy court's order, the claims concerned actions taken by McDermott officers, employees, or agents in the course and scope of their employment in association with the bankruptcy proceedings and related transactions. ROA 10-1/447-453. In its Order, the bankruptcy court detailed these allegations and their failure to allege any specific individual Defendant made any specific misrepresentation to Mr. Van Deelen at any particular time. *Id.* The

Court also noted that Mr. Van Deelen's alleged damages consistently related to cancellation of the Debtors' common shares under the Amended Plan. ROA 10-1/444.

Appellant's allegations required the bankruptcy court to interpret and enforce its Confirmation Order and the terms of the Amended Plan, specifically the exculpation provision and injunction against actions concerning or arising from the bankruptcy proceedings. Defendants, as current or former officers and/or employees of and counsel for McDermott, qualified as "Exculpated Parties" for purposes of the Confirmation Order. ROA 10-2/290. Further, Mr. Van Deelen's claims concerned actions Defendants allegedly took in connection with McDermott's restructuring and administration and confirmation of the Plan. Indeed, Van Deelen specifically alleged he was harmed because he "would not have purchased or retained McDermott International stock if [he] had been provided accurate and not misleading information by the defendants about . . . the defendants' plan to take the company into bankruptcy." *See* ROA 10-main/278.

Mr. Van Deelen took issue with the bankruptcy process itself and alleged actions by Defendants taken in the course and scope of their employment in connection with the bankruptcy proceedings and related transactions. The underlying suit was a core proceeding. The bankruptcy court properly heard and determined the case and entered judgment pursuant to its § 157(b)(1) authority.  It

similarly had inherent constitutional authority to enforce its own Confirmation Order and dismiss Appellant's lawsuit against Mr. Sussberg with prejudice. *See In re Briar Bldg. Houston LLC*, 609 B.R. 589, 596 (Bankr. S.D. Tex. 2019) ("the request that this Court enforce its own Order is a core proceeding").

### 2. The bankruptcy court had "related-to" subject matter jurisdiction to issue its Order.

The bankruptcy court properly ruled that the adversary proceeding was a core proceeding over which it could exercise its jurisdiction to issue its final Order dismissing Mr. Van Deelen's claims with prejudice. But, even if the adversary proceeding were not a core proceeding, it plainly fell within the broad category of proceedings "related to" the bankruptcy such that the bankruptcy court nonetheless had jurisdiction to issue its Order.

"Related-to" jurisdiction is the broadest category of bankruptcy jurisdiction, "encompass[ing] any proceeding for which 'the outcome . . . could *conceivably* have an effect . . . on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d at 304 (emphasis in original). As the bankruptcy court noted, a proceeding has a "conceivable effect" if it "could alter the Debtor's rights, liabilities, options or freedom of action (either positively or negatively) and . . . *in any way* impacts upon the handling and administration of the bankruptcy estate." *Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (quoting

*FDIC V. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir. 1988)).

The claims asserted in Mr. Van Deelen's Third Amended Petition plainly "related to" the McDermott Debtors' bankruptcy proceeding under title 11. The Third Amended Petition made clear that Mr. Van Deelen took issue with the bankruptcy itself, and that his claims and alleged damages arose from the McDermott bankruptcy proceedings. ROA 10-main/455. Van Deelen alleged the same common law fraud claim and pre-petition conduct against each of the Defendants, including Mr. Sussberg. *Id*. Mr. Van Deelen also alleged that Mr. Sussberg purportedly assaulted Mr. Van Deelen in furtherance of an alleged "scheme" to misrepresent McDermott's financial viability and deter Van Deelen from challenging the Plan. *See, e.g.*, ROA 10-main/497. In sum, Mr. Van Deelen's claims concern: (1) alleged pre-petition conduct concerning McDermott's decision to file for bankruptcy, of which he complained at and before the confirmation hearing; and (2) alleged conduct during the plan confirmation hearing that Mr. Van Deelen alleges was intended to discourage him from challenging the plan and further pursuing the fraud allegations he had already raised to the bankruptcy court in connection with the plan's confirmation. ROA 10-main/455. Further, due to Mr. Van Deelen's misconduct at the confirmation hearing on March 12, 2020, the bankruptcy court signed an order ("March 23 Order") prohibiting Mr. Van Deelen from directly

17

contacting Mr. Sussberg or his family and referring the matter to the United States Marshal and United States Attorney for further investigation of Van Deelen's conduct. ROA 10-2/456.

The foregoing facts satisfy the *Craig's Stores* factors establishing "related to" jurisdiction. In determining whether post-confirmation "related to" jurisdiction exists, courts apply the Fifth Circuit's *Craig's Stores* factors, which concern whether: (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2008) (citing *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)); *In re MSB Energy, Inc.*, 438 B.R. 571, 585-89 (Bankr. S.D. Tex. 2010) (applying factors and finding that post-confirmation "related to" bankruptcy jurisdiction existed). "[T]he Fifth Circuit has emphasized that . . . all three factors [need] not weigh heavily in the bankruptcy court's favor" for there to be jurisdiction. *In re MSB Energy, Inc.*, 438 B.R. at 586; *In re Enron Corp. Sec.*, 535 F.3d at 335-36.

The first factor weighs in favor of jurisdiction because Mr. Van Deelen's alleged claims against Mr. Sussberg arise entirely from pre-confirmation conduct concerning either actions Mr. Sussberg allegedly took in connection with

McDermott's decision to file for bankruptcy leading up to when its petition was filed, or at the confirmation hearing in an alleged effort to discourage Mr. Van Deelen from challenging the plan. *See, e.g.*, ROA 10-main/471-484, 498-500; *In re Blast Energy Servs., Inc.*, 396 B.R. 676, 684 (Bankr. S.D. Tex. 2008) ("[A]lthough the dispute arose post-confirmation, the claims against Hallwood . . . arose pre-confirmation. Thus, the claims at issue primarily deal with pre-confirmation relations between the parties[.]"); *In re MSB Energy, Inc.*, 438 B.R. at 586 (holding that the first factor "weighs heavily in favor of bankruptcy court jurisdiction" because "the subject of the Adversary Proceeding" occurred before the confirmation date).

The second factor weighs in favor of jurisdiction because there were claims and "antagonisms" pending between the parties on the date of plan confirmation. On the date of the confirmation hearing, Van Deelen had already filed his objection to the plan and accused McDermott and its officers of acting in bad faith to enrich themselves at the expense of the shareholders (an alleged "scheme" in which Mr. Van Deelen later claimed Mr. Sussberg was involved). Bankr. Dkt. 510. And during the hearing, Van Deelen made vulgar and threatening remarks to Mr. Sussberg and to the bankruptcy court more broadly, necessitating the bankruptcy court's March 23 Order granting emergency relief. ROA 10-1/36-44; ROA 10-2/456; Bankr. Dkt. 694; *see, e.g.*, *In re MSB Energy, Inc.*, 438 B.R. at 586 (second factor "weigh[ed]

heavily in favor" of bankruptcy court jurisdiction where plaintiffs had filed motion to lift stay and objected to the reorganization plan prior to the confirmation hearing).

The third factor is also satisfied because resolution of the underlying action on the merits turns, at least in part, on facts and law derived from the bankruptcy with respect to interpreting and enforcing the Amended Plan, Confirmation Order and other orders, evaluating the alleged misconduct with respect to the decision to file for bankruptcy and alleged representations regarding the same, and Mr. Van Deelen's alleged damage attributed to the devaluation of his McDermott common stock. *See In re MSB Energy, Inc.*, 438 B.R. at 588 ("The Complaint represents a formal lawsuit reflecting the pre-confirmation conflict between the parties, the resolution of which assuredly hinges on an evaluation of facts and law derived from the underlying Chapter 11 case."). Even if the third factor were to fail, however, the bankruptcy court would have still retained jurisdiction, pursuant to the analysis in *Enron. Id.* at 586 (citing *In re Enron Corp. Sec.*, 535 F.3d at 336). Accordingly, at the very least, the bankruptcy court had "related to" jurisdiction to hear the adversary proceeding.

### 3. Appellant consented to the bankruptcy court's authority to enter judgment.

Section 157 permits a bankruptcy court to adjudicate contested claims to final judgment when either the proceeding is core, or the proceeding is non-core but falls within "related to" jurisdiction and the parties consent to entry of final judgment.

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) (citing 28 U.S.C. § 157(c)(2)). Mr. Van Deelen argues in his brief he never consented to the bankruptcy court's authority to issue final orders (Dkt. 12 at 28), but that is incorrect. Although Mr. Van Deelen previously objected to the bankruptcy court's authority to enter final orders, he waived such objections by seeking to have the bankruptcy court enter a default judgment against the MDR Defendants in these proceedings. Specifically, in September 2020, Mr. Van Deelen filed three requests for entry of default and one "corrected" request for entry of default (the "Requests for Entry of Default Judgment"), against the MDR Defendants. *See* Requests for Entry of Default Judgment; *Michael Van Deelen v. David Dickson et al.*; Adv. Proc. No. 20-03309; Dkts. 17, 19, 21, 22 (Bankr. S.D. Tex.) (filed Sept. 24, 2020 & Sept. 25, 2020) (hereinafter "Adv. Dkt."). In each of these Requests, Mr. Van Deelen not only sought a final order and judgment against the MDR Defendants, but he also expressly acknowledged that "[t]his [bankruptcy] Court has jurisdiction over this matter . . . ." *See id.* These statements and requests for entry of judgment are patently inconsistent with Mr. Van Deelen's current position that the bankruptcy court lacked the consent of the parties (and thus jurisdiction) to enter a final judgment in this case. Mr. Van Deelen impliedly consented to the bankruptcy court's authority to enter a final judgment by seeking default judgment against the MDR Defendants. *See Wellness*

*Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683-84 (2015) (consent to adjudication by a bankruptcy court may be implied).

> **4.    Alternatively, absent consent, this Court may treat the bankruptcy court's final order as proposed findings and conclusions.**

The bankruptcy court properly found it had jurisdiction over the underlying proceeding and constitutional authority to issue a final Order. Nonetheless, if this Court were to determine the adversary proceeding was non-core and consent to entry of final judgments was lacking, it may treat the bankruptcy court's Order as "recommended findings and conclusions" and conduct a *de novo* review. *Executive Benefits*, 573 U.S. at 34, 38 (holding that the debtor's fraudulent conveyance claims "fit comfortably within the category of claims governed by § 157(c)(1)" and that the bankruptcy court would have been permitted to submit proposed findings of fact and conclusions of law on such claims for *de novo* review and entry of judgment). For the reasons explained below, the bankruptcy court's findings and conclusions provide ample support for affirming the bankruptcy court's Order and dismissing Plaintiff's claims with prejudice.

> **C.    The bankruptcy court had cause to dismiss Appellant's claims against Mr. Sussberg.**

> **1.    Appellant was not entitled to the leniency typically afforded *pro se* litigants in evaluating the sufficiency of his pleadings.**

The bankruptcy court properly found that Mr. Van Deelen, though a *pro se* litigant, has extensive litigation experience and is therefore not entitled to the "less

stringent standard" typically applied to *pro se* litigants' pleadings due to the litigants' lack of special training in the law. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Another district court had similarly ruled that because Mr. Van Deelen had such extensive experience filing and litigating lawsuits on his own behalf, including lawsuits involving complex constitutional rights claims, he was not a "'run-of-the-mill' pro se litigant" and was not entitled to any leniency in adjudicating the sufficiency of his pleadings. *See Van Deelen v. Alamogordo Public Schools*, 2008 WL 11417175, at *1-2 (D.N.M. Mar. 14, 2008). Therefore, Mr. Van Deelen was and is not entitled to any solicitous construction of his pleadings merely because he is a *pro se* litigant. *See id.*

### 2. Appellant's Third Amended Petition failed under Rule 12(b)(6).

Appellant's Third Amended Petition failed to state a plausible claim for relief against Mr. Sussberg as a matter of law and, therefore, was properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, the Third Amended Petition was required to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "formulaic recitation of the elements of a cause of action will not do." *Id.*; *Twombly*, 550 U.S. at 555. The complaint's factual allegations "must be enough to raise a right to relief above the speculative level;" they must rise into the "realm of plausible liability." *Id.* The Third Amended Petition did not do so.

### a.   Appellant's fraud allegations failed under Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, a plaintiff must state "the who, what, when, and where" of the alleged fraud. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997). In other words, "to plead fraud with particularity a plaintiff must include the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [the defendant] obtained thereby.'" *United States ex rel. Barrett v. Johnson Controls, Inc.*, 2003 WL 21500400, at *8 (N.D. Tex. Apr. 9, 2003) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999)). Further, courts are required to "apply the rule with force, without apology." *Williams*, 112 F.3d at 178.

The Third Amended Petition failed to identify the "false representations" any individual Defendant made to Mr. Van Deelen or why such alleged statements were

false. Instead, Mr. Van Deelen excerpted certain press releases, letters, or reports and alleged in conclusory fashion that "Defendants," without specification, "wrote, reviewed, approved and published" these statements. *See* ROA 10-main/466-482 ¶ 24 (letter on company website), ¶ 26 (first quarter report), ¶ 30 (reports, slides, presentations), ¶ 37 (statement in connection with second quarter report), ¶ 44 (press release), ¶ 48 (press release), ¶ 56 (press release).

These allegations were plainly insufficient to satisfy Rule 9(b)'s requirements. Applicable Fifth Circuit authority expressly holds that merely reciting third-party public statements and vaguely attributing those statements to a collective group of Defendants fails the test. *See Williams*, 112 F.3d at 179 ("These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants. Many of the newspaper excerpts attached to [plaintiffs'] complaint . . . [do not] specify[] who gave information to the paper. These excerpts, standing alone, cannot satisfy the "who, what, when, where, and how" required by Rule 9(b)."). At a minimum, Van Deelen would need to either show each of the Defendants adopted the allegedly false statements or represented them to be true or "in accordance with [their] view[s]," or that each of the Defendants "used the [third party] as a conduit, making false and misleading statements to the [third party] with the intent that the [third party] communicate those statements to

25

the market." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 373-74 (5th Cir. 2004).

In *Southland*, for example, the Fifth Circuit held a complaint would need to "point to specific interactions between the [defendant] and the [third party] which allegedly gave rise to the entanglement [between the defendant's and third party's statements']," and state the dates the interactions occurred. *Id.* The Third Amended Petition failed to allege any such facts.

Further, Fifth Circuit courts have expressly and repeatedly rejected, as failing to satisfy Rule 9(b), attempts like Mr. Van Deelen's to "group plead" fraud claims against multiple Defendants collectively. *See, e.g.*, *Southland*, 365 F.3d at 365 ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Ingalls v. Edgewater Private Equity Fund III, L.P.*, No. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) ("Group pleading fails to satisfy the requirement of the who, what, where, why, and when of the fraud to be specified."). And yet that is precisely what Mr. Van Deelen did here.

The Third Amended Petition's pleading deficiencies were particularly pronounced as to Mr. Sussberg. Mr. Van Deelen did not allege *any* "false

representations" Mr. Sussberg individually made to Van Deelen whatsoever, let alone in Mr. Sussberg's *individual capacity*, which is the only capacity in which Mr. Van Deelen sued Mr. Sussberg (*see* ROA 10-main/499 ¶ 107), even though Mr. Sussberg, at all relevant times, acted in his capacity as one of the lead counsel for the Debtors. *See* ROA 10-1/8-44.

Instead, Mr. Van Deelen alleged in conclusory fashion without any factual support that Mr. Sussberg joined an alleged "scheme" to misrepresent McDermott's financial viability and "advised the other members of the scheme as to how to carry out and advance the scheme." ROA 10-main/478 ¶ 47. Such vague, conclusory allegations that fail to identify any particular statement made by Mr. Sussberg to Mr. Van Deelen do not satisfy Rule 9(b). And the only other mention of Mr. Sussberg, specifically, alleged he, Dickson and Lamb "wrote, approved and issued" a press release in December 2019. ROA 10-main/488 ¶ 68. Mr. Van Deelen neither attributed any specific statement from the press release to Mr. Sussberg nor identified what was allegedly fraudulent about the particular statements in the press release. And while Mr. Van Deelen alleged the press release was misleading because it did not disclose future funding plans or that the Lummus sale would occur through the Chapter 11 process, Mr. Van Deelen did not allege Mr. Sussberg owed Mr. Van Deelen any duty to disclose such information. ROA 10-main/488-489 ¶ 69.

Nor did Mr. Van Deelen more generally identify any legal duty owed by Mr. Sussberg to make any disclosure to Mr. Van Deelen. Under Texas law, "a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Whether a duty to disclose exists is a question of law. *Id.* Mr. Van Deelen did not allege Mr. Sussberg or any other Defendant owed any duty of disclosure to Mr. Van Deelen, nor did he allege any facts to establish Mr. Sussberg had any special relationship with him requiring disclosure (*see Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (a fiduciary duty can arise "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships" or informally when "parties have dealt with each other in such a manner for a long period of time")), or that Mr. Sussberg individually made any "representations" or "partial disclosures" to Mr. Van Deelen that would trigger a duty, as set forth above. *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562-63 (Tex. 2019) (defendants made no affirmative disclosure or representation that could have triggered a legal duty to disclose more). For the reasons stated above, Mr. Van Deelen failed to plead a claim for common law fraud against Mr. Sussberg in accordance with Rules 9(b) and 12(b)(6) and such claim was, therefore, properly dismissed.

### b. Appellant's assault and false imprisonment allegations did not permit a reasonable inference of liability.

Mr. Van Deelen's claims for assault and false imprisonment against Mr. Sussberg were likewise facially implausible and therefore properly dismissed pursuant to Rule 12(b)(6). Although the 12(b)(6) inquiry is focused on the pleadings, a court may consider certain specific categories of evidence in ruling on the motion, including documents in the public record and matters subject to judicial notice, such as public court records. *Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). The bankruptcy court therefore could have properly considered pleadings and other matters arising in the underlying bankruptcy proceeding and the adversary proceeding in ruling on Mr. Sussberg's motion to dismiss. *See* ROA 10-1/449.

For example, Mr. Van Deelen's filings in the bankruptcy court contained numerous self-contradictions and inaccuracies. Neither Mr. Van Deelen's response to the Debtors' Emergency Motion, nor the affidavit to his response, which were filed on March 18, 2020, just six days after the events of the March 12 Hearing, stated that Mr. Sussberg had any physical contact with Mr. Van Deelen whatsoever or made any attempt to physically block Mr. Van Deelen from leaving. Bankr. Dkt. 701. Yet, in his Third Amended Petition, Mr. Van Deelen alleged that Mr. Sussberg "chest-bumped" and physically blocked him. ROA 10-main/495-496 ¶¶ 88-89. If Mr. Van Deelen had experienced physical contact of the kind he later alleged, he

29

would have raised it in his response. He did not, because it did not happen. Mr. Van Deelen's allegations even mimicked language he used in the *Alamogordo* lawsuit, in which one of his allegations was that a student's mother "approached Van Deelen and 'bumped' him with her body." *Alamogordo*, 2008 WL 11417175, at *5.

Mr. Van Deelen also asserted on numerous occasions, including in his brief to this Court, that he did not call the Court a "son of a b****" during the March 12 Hearing, despite clear evidence of the statement in the audio recording of the hearing in the record and the bankruptcy court's confirmation that such a comment was made. Bankr. Dkt. 701 ¶ 24; ROA 10-2/456. Finally, Mr. Van Deelen's affidavit to his response misrepresented the Eighth Circuit's holding in his case against the City of Kansas City, Missouri as "significantly reduc[ing]" the sanctions against him on appeal, when in reality the court of appeals upheld the monetary sanctions entirely, and only limited the scope of the injunction on future filings to courts within the Eighth Circuit. Bankr. Dkt. 701 ¶ 16. In light of Mr. Van Deelen's misstatements and misrepresentations in sworn filings, his claims against Mr. Sussberg are facially implausible.

Mr. Van Deelen's assault and false imprisonment claims presented nothing more than conclusory allegations manufactured to fit the elements of those causes of action. *See Iqbal*, 556 U.S. at 679 (where the alleged facts do no more than permit an inference of the mere possibility of misconduct, then "the complaint has

alleged—but it *has not shown*—that the pleader is entitled to relief" (emphasis added)). Considered in the context of Mr. Van Deelen's contradictory recitation of the alleged facts in his filings in the underlying proceedings and Mr. Van Deelen's history as a vexatious litigant, Mr. Van Deelen's allegations plainly failed to state a claim for which relief may plausibly be granted. *See id.* (the inquiry on a Rule 12(b)(6) motion is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense").

## II.    Appellant's arguments are unavailing.

### A.    No claims existed to remand.

In concluding Appellant's fraud, assault and false imprisonment allegations all failed under Rule 12(b)(6), the bankruptcy court found no claims existed to remand to state court. ROA 10-1/451-452. As established above, the bankruptcy court properly dismissed Mr. Van Deelen's claims against Mr. Sussberg with prejudice, such that nothing existed to remand. Indeed, Mr. Van Deelen does not contest the dismissal of his claims against Mr. Sussberg with prejudice. *See* Dkt. 12 at 24-25. Accordingly, the bankruptcy court's Order should be affirmed and there is no basis to remand any of Mr. Van Deelen's claims against Mr. Sussberg.

### B.    Appellant did not satisfy the mandatory abstention standard.

Even if there were a remaining claim against Mr. Sussberg that might be subject to remand, Mr. Van Deelen failed to show mandatory abstention applies to

require such remand. Mandatory abstention requires the party seeking abstention to show by a preponderance of the evidence that: (1) the action has no independent basis for federal jurisdiction, other than § 1334(b); (2) the action is a non-core proceeding, i.e., it is "related to" a case under title 11; (3) the action was commenced in state court; and (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007); *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003).

As to Van Deelen's claims against Mr. Sussberg, Mr. Van Deelen failed to show there is no independent basis for federal jurisdiction. At least as to Mr. Sussberg, complete diversity would exist. *See, e.g.*, ROA 10-main/459 ¶ 5. Mr. Van Deelen also failed to show he commenced an action in state court against Mr. Sussberg—he did not; rather, the first time he alleged claims against Mr. Sussberg was in the adversary proceeding. ROA 10-main/458. Mr. Van Deelen also failed to show the action was not a core proceeding, which it was, for the reasons stated above, and even if the proceeding were non-core, Mr. Van Deelen's failure to satisfy other elements of mandatory abstention means abstention should be denied. *See In re Lorax Corp.*, 295 B.R. at 90 (party not entitled to mandatory abstention if it fails to prove any one of the statutory requirements); *In re Montalvo*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016) (the bankruptcy court refused to abstain because the fourth factor was not demonstrated).

Mr. Van Deelen also failed to show his action against Mr. Sussberg could be adjudicated timely in state court. This factor considers "(a) the extent to which the suit has already been prosecuted in state court, (b) the expectation of when the state court trial will commence, and (c) evidence in contravention that the state court could adjudicate the case timely." *In re Hallwood Energy, L.P.*, 2009 WL 2601294, at *8 (Bankr. S.D. Tex. Aug. 24, 2009). Because Mr. Van Deelen filed his claims against Mr. Sussberg for the first time in this federal bankruptcy court and no lawsuit has been filed against Mr. Sussberg in state court, there is no evidence of prosecution in state court and no evidence of any trial setting in state court. Mr. Van Deelen pointed to the Montgomery County district court where he filed his original lawsuit against the other named Defendants based on his assumption that his new lawsuit against Mr. Sussberg would be remanded with his other claims to the Montgomery County court, but even if that were proper, which Defendant disputes, Mr. Van Deelen still could not satisfy his burden because he did not prosecute his original action beyond filing his original petition, and no trial was set. And, as the bankruptcy court noted, the Texas Supreme Court's recent orders and attendant backlog of priority criminal cases casts doubt on timely adjudication in state court, as compared to the bankruptcy court, which has no backlog. ROA 10-1/452. There is no evidence a state court would adjudicate Mr. Van Deelen's claims in a timelier fashion than the bankruptcy court. Mandatory abstention fails.

### C.      Appellant did not show permissive abstention applies.

Appellant does not address in his brief and therefore appears to have waived the issue of permissive abstention on appeal. Permissive abstention may be exercised when it "is in the interest of justice, comity with state courts, or respect for state law." 28 U.S.C. § 1334(c)(1). For the reasons stated herein, in Defendant's Motion to Dismiss, and in the bankruptcy court's Order (*see* ROA 10-1/452), no basis exists for exercising permissive abstention. To the extent Mr. Van Deelen is still urging permissive abstention, his request should be rejected and the bankruptcy court's Order affirmed.

### D.      Appellant identifies no legal error with the final order's statement regarding sanctions.

As part of the relief Appellant seeks, he asks this Court specifically to vacate the Order's statement: "Any further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed immediately to this Court." As stated in the Order, the bankruptcy court *denied* without prejudice Mr. Sussberg's request for sanctions in the form of a pre-suit injunction. The court's suggestion that state court litigation concerning the McDermott bankruptcy or associated adversary proceeding should be removed to the bankruptcy court does not order any immediate action or relief. And, in any event, Mr. Van Deelen fails to identify any error or legal deficiency in the bankruptcy court's suggestion that would require vacatur. The Order should be affirmed in its entirety.

**III.    The bankruptcy court properly adjudicated pending motions.**

Mr. Van Deelen also appeals orders granting a motion to seal and denying Mr. Van Deelen's motion to recuse Judge David Jones. The recusal was addressed before Mr. Sussberg was named a party in this case, and the motion to seal was filed by the MDR Defendants. Accordingly, though Appellee does not brief those issues here, he incorporates by reference the MDR Defendants' briefing regarding these motions and likewise submits they were properly addressed by the bankruptcy court.

## CONCLUSION AND PRAYER

For the reasons stated herein, Appellee Joshua Sussberg respectfully requests that the Court affirm the bankruptcy court's final Order (ROA 10-1/441) and deny Appellant Michael Van Deelen's appeal.

Respectfully submitted,

**BECK REDDEN LLP**

By:  */s/ David J. Beck*
      David J. Beck
      Texas Bar No. 00000070
      dbeck@beckredden.com
      Jacqueline M. Furlow
      Texas Bar No. 24087551
      jfurlow@beckredden.com
      Owen J. McGovern
      State Bar No. 24092804
      omcgovern@beckredden.com
      Hannah L. Roblyer
      State Bar No. 24106356
      hroblyer@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

***Counsel for Appellee, Joshua Sussberg***

### CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2022, a true and correct copy of the foregoing Brief of Appellee has been electronically filed and served on all counsel and parties below.

Michael Van Deelen
16215 Friar Circle
Spring, TX 77379
michaelvandeelen@gmail.com

*Pro Se Appellant*

| | |
|---|---|
| Matthew D. Cavenaugh | Anna G. Rotman |
| Jennifer F. Wertz | Jamie Alan Aycock |
| Veronica A. Polnick | **KIRKLAND & ELLIS LLP** |
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 1401 McKinney, Suite 1900 | 609 Main Street |
| Houston, Texas 77010 | Houston, Texas 77002 |
| mcavenaugh@jw.com | anna.rotman@kirkland.com |
| jwertz@jw.com | jamie.aycock@kirkland.com |
| vpolnick@jw.com | |

*Counsel for Appellees David Dickson, Stuart Spence, and Scott Lamb*

/s/ David J. Beck
David J. Beck

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation because it contains 8,621 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

2.      This brief complies with the typeface because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: January 6, 2022

*/s/ David J. Beck*
 David J. Beck
*Counsel for Appellee*
